# Exhibit 2

12/5/2024 11:54 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 94978384
By: Wanda Chambers
Filed: 12/5/2024 10:49 AM

# 2024-84902 / Court: 11

## CAUSE NO. _____

| | | |
|---|---|---|
| THE BUZBEE LAW FIRM, | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| QUINN EMANUEL URQUHART & | § | |
| SULLIVAN, LLP | § | |
| | § | |
| | § | |
| *Defendant.* | § | _____ DISTRICT COURT |

## PLAINTIFF'S ORIGINAL PETITION AND APPLICATION
## FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

Plaintiff The Buzbee Law Firm (the "Firm") files this Original Petition and Application for Temporary Restraining Order and Temporary Injunction against Defendant Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), seeking damages and injunctive relief, and respectfully shows this Honorable Court the following:

## INTRODUCTION

This case arises out of outrageous litigation gamesmanship by defendant Quinn Emanuel, one of the nation's largest law firms, that cannot be countenanced.  In response to a simple demand letter seeking a mediation with Plaintiff's client, Quinn Emanuel first filed a baseless complaint for "extortion" against Plaintiff and its principal Tony Buzbee.  But now Quinn Emanuel has gone too far.  This Goliath of a law firm retained a team of private investigators to intimidate, harass, malign, and threaten Plaintiff and Plaintiff's current and former employees, family members, *and even its current clients* – including making baseless accusations of fraud or other malfeasance.  Moreover, Quinn Emanuel's hired henchmen are fishing for claims to bring against Plaintiff in clear violation of Texas law.  Quinn Emanuel must be stopped.

## I.
## PARTIES

Plaintiff is a law firm and resident of Texas and Harris County.

Defendant Quinn Emanuel Urquhart & Sullivan, LLP is a limited liability partnership which may be served at its Houston office located at 700 Louisiana Street, Suite 3900, Houston, Texas 77002.

## II.
## VENUE AND JURISDICTION

Venue is proper in Harris County, Texas pursuant to Section 15.002(a)(1) of the Texas Civil Practices and Remedies Code because all or a substantial part of the events or omissions giving rise to the claims occurred in Harris County, Texas.

The Court has subject matter jurisdiction because the amount in controversy is within the jurisdictional limits of this Court. Plaintiff seeks damages in excess of $25,000,000.00.

## III.
## DISCOVERY CONTROL PLAN

Plaintiff intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4 and affirmatively pleads that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169, because Plaintiff requests injunctive relief and Plaintiff seeks monetary relief over $100,000.

## IV.
## EVIDENCE

This filing is supporting by the following evidence, which is attached and incorporated herein:

A.  Affidavit of Deseree McIntosh.

B.  Affidavit of Tori Conklin.

C. Affidavit of Angelique Townsend.

D. Affidavit of Laura Delacruz.

E. Declaration of Fernando Garza.

F. Affidavit of Anna Faubus.

G. Affidavit of Liz Buzbee.

H. Affidavit of Mauricio Guevara.

I. Affidavit of David Fortney.

## V.
## FACTS

**A.  The Firm's Representation of Plaintiffs against Sean "Diddy" Combs and others.**

Attorney Tony Buzbee, the Firm's principal, announced on October 1, 2024 that the Firm represented over one hundred victims of sexual assault perpetrated by Sean "Diddy" Combs. Combs is a rapper and businessman who is currently in federal prison, awaiting trial on sex-trafficking and other charges.  Combs, along with others, is alleged to have used his fame, money and power to systematically abuse men, women and children sexually over decades, and then by bribes or threats ensure his victims' silence afterwards.  His scheme worked for many years, but the dam has now broken as his victims pursue long-delayed justice.  On October 14, 2024, the Firm filed the first round of complaints against Combs, and over the ensuing six weeks the Firm has filed dozens more.

### B.  The Multiple Lawsuits Intended to Silence the Firm

As Mr. Buzbee indicated at his initial press conference on the "Diddy" cases, the evidence indicates that while Combs was at the epicenter of a large web of abuse and violence, he did not always act alone as a perpetrator.  Other celebrities – rich, famous, and powerful themselves – have been identified by victims as participants in Combs' depraved and illegal activities.

On behalf of its clients, the Firm sent a demand letter to one such celebrity – "Celebrity A." In response, two lawsuits were filed simultaneously against Mr. Buzbee and the Firm. One lawsuit filed in New York alleged a purported malpractice claim brought by an alleged former client. Another, filed in Los Angeles by Quinn Emanuel, alleged that the Firm was trying to extort Celebrity A. The timing of the lawsuits clearly indicated that they were coordinated by persons acting on behalf of Celebrity A. Moreover, it is equally clear that the lawsuits are intended to intimidate and silence Mr. Buzbee and the Firm as the Firm pursues justice for its clients.

### C. Defendant's Harassment and Tortious Conduct

Filing meritless litigation is behavior that will not work to intimidate or otherwise harass the Buzbee Law Firm. The law firm of Quinn Emanuel has a long history of outrageous, sanctionable conduct and reputation to match.[1] However, rather than addressing the merits of a case, Quinn Emanuel apparently believes it is more productive and more effective to attack and harass the attorneys involved in a case. As agents presumably working on behalf of Celebrity A, Defendant recently crossed the line from merely bullying behavior into that of actual tortious conduct.

Shortly after the two bogus lawsuits were filed, persons representing themselves as "researchers," "investigators" and in some cases as "attorneys," began contacting a wide array of people associated with the Firm. In some cases, these persons identified themselves as working for Lex Intelligence, or as having been hired by defendant Quinn Emanuel; in other cases, the phone numbers used for the contact were associated with Lex Intelligence. On information and

---

[1] This reputation is even well-known to law school students seeking a job after graduation. *See, e.g.,* https://www.top-law-schools.com/forums/viewtopic.php?f=23&t=309287&start=25 ("Quinn has the reputation of being a shop full of assholes who engage in ethically questionable and unnecessarily aggressive practice."). Quinn Emanuel proudly boasts that it is the "most feared" law firm in the United States. *See* https://www.quinnemanuel.com/the-firm/news-events/award-another-year-still-most-feared/#rootNodeId=1054&pageNumber=1&byNewsType=1749

belief, all of the various contacts described herein were made by investigators from Lex Intelligence or attorneys at Quinn Emanuel, and all investigators working for Lex Intelligence were working at the direction of attorneys at Quinn Emanuel.

These investigators and attorneys contacted all of the following categories of people: *former employees* of the Firm, *family members* of employees of the Firm, *family members* of Mr. Buzbee, *witnesses* in cases handled by the Firm; *current clients* of the Firm; and other third parties associated with the Firm or Mr. Buzbee. In addition, one *current employee* of the Firm caught on video two different men with tripods taking pictures of and around his house. It is unknown at this time whether the "investigators" have stalked the residences of any other current employees.

The pretense for calling, and the questions asked, by these "investigators" varies according to the person contacted. Particular descriptions are detailed in the affidavits filed herewith in support of this Petition. However, a few themes have been apparent as described below.

**Former clients.** The investigators have approached former clients, *including by going to the clients' residences*, and stated that they were part of an ongoing investigation into "fraud in Texas," implying that fraud was committed by the Firm. According to the former clients, the investigators were harassing and aggressive and proposed filing claims against the Firm. On occasion the investigators even asked former clients for contact information for additional former clients. The investigators also solicited these former clients with regard to potential claims they may have against the Firm, in violation of Texas Penal Code section 38.12 (barratry).

**Former employees.** The investigators have contacted numerous former employees of the Firm, some of whom have not worked at the Firm for more than ten years. The investigators asked the former employees for salacious information regarding Mr. Buzbee and the Firm, including information regarding employee departures and information suggesting discriminatory practices.

One former lawyer for the Firm was solicited for purposes of bringing a wrongful termination case by an investigator, who suggested that the former Firm lawyer "could be a client." Yet again, this solicitation is barratry in violation of Texas Penal Code section 38.12.

**Witnesses**. Investigators have contacted witnesses in a number of the Firm's cases. In one instance, the investigator was aggressive and harassing, asking for information about other Firm clients and ominously noting to the witness that the investigator was aware that the witness had warrants out for her arrest.

**Co-counsel.** The Firm is aware of at least one instance in which an investigator contacted one of the Firm's co-counsel to ask about the Firm's business practices.

**Family members of Firm employees**. Numerous family members of Firm employees, including Mr. Buzbee's daughter, have been contacted by investigators seeking controversial, salacious or disparaging information about the Firm under the pathetic pretense of "doing due diligence" on the Firm when in reality these claims are clearly and obviously solicitation attempts to garner more clients against the Firm, or to harass members of lawyers' families.

**Current clients**. Most recently, investigators contacted several of the Firm's *current* clients. As with former clients, these contacts inquired into "fraud" and, in one instance, whether the client was "coerced" into signing with the Firm for representation.

The behavior described above goes well beyond purported "due diligence" into a litigation opponent. It is outrageous, despicable, harassing behavior that is clearly intended to besmirch the name and reputation of the Firm, start rumors regarding bogus "investigations" or business practices, and to bother and harass persons associated with the Firm in order to apply pressure on Mr. Buzbee and the Firm. It is beyond the bounds of decency and the law and it needs to end.

This Court must stop Quinn Emanuel's blatantly wrongful conduct. The Firm faces a threat of imminent harm if Defendant's conduct is allowed to continue. The Firm will suffer probable, imminent and irreparable injuries should the Court not grant Plaintiff's relief sought herein.

**V.**
**CAUSES OF ACTION**

**A.  TORTIOUS INTERFERENCE WITH CONTRACT**

Plaintiff incorporates the preceding paragraphs of this Petition as if set forth fully herein.

At all times relevant hereto, Plaintiff had contractual relationships with its current clients. Defendant was aware of Plaintiff's contractual relationships with its current clients.

By contacting Plaintiff's current clients and insinuating, among other things, that Plaintiff is the subject of ongoing fraud investigations, Defendant or its agents have sabotaged and are actively attempting to sabotage Plaintiff's contractual relationships, and to cause Plaintiff's clients to end their engagements with Plaintiff.

As a result of Defendant's conduct or the conduct of Defendant's agents, Plaintiff has suffered damages in an amount to be proven at trial.

Because Defendant's conduct and its agents' conduct was committed with actual malice, Plaintiff seeks exemplary damages against Defendant.

**B.  TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**

Plaintiff incorporates the preceding paragraphs of this Petition as if set forth fully herein.

Plaintiff's former employees and former clients often serve as referral sources for business to Plaintiff.

By contacting Plaintiff's former employees and former clients and insinuating, among other things, that Plaintiff is the subject of ongoing fraud investigations or that Plaintiff is the subject of other salacious rumors, and/or by being harassing and burdensome to former clients or

former employees, Defendant or its agents are damaging Plaintiff's reputation and dissuading Plaintiff's referral sources from referring new work to Plaintiff.

Defendant's conduct and the conduct of its agents is independently tortious due to the fact that it is defamatory and slanderous, by implying that Plaintiff is the subject of a fraud investigation or that Plaintiff is the subject of ongoing controversy.

As a proximate result of Defendant's conduct and that of its agents, Plaintiff has suffered damages in an amount to be proven at trial.

### C.  SOLICITATION AND BARRATRY (TEXAS PENAL CODE § 38.12)

Plaintiff incorporates the preceding paragraphs of this Petition as if set forth fully herein.

Defendant is a law firm which has retained private investigators to work on its behalf.

With the intent to obtain an economic benefit, Defendant or its agents solicited employment with Plaintiff's former employees and/or former clients, specifically with regard to bringing lawsuits on those persons' behalf against Plaintiff.

Defendant's conduct and that of its agents was in violation of Texas Penal Code section 38.12.

As a proximate result of Defendant's conduct and the conduct of its agents, Plaintiff suffered damages in an amount to be proven at trial.

## VI.
## DAMAGES

Plaintiff incorporates the preceding paragraphs of this Petition as if set forth fully herein.

As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff suffered injury.

As a result of Defendant's acts, Plaintiff has suffered damage, including damage to its contractual relationships, reputational damage, and further damages more fully set forth below. Plaintiff seeks the following damages pursuant to Texas law:

A.  Compensatory damages in an amount to be proven at trial;

B.  Consequential and special damages in an amount to be proven at trial;

C.  Exemplary damages;

D.  Interest on damages (pre- and post-judgment) in accordance with law;

E.  Costs of court;

F.  Attorneys' fees;

G.  Such other and further relief to which Plaintiff is entitled.

## VII.
## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

The following action by the Court is necessary to protect the interests of Plaintiff.  Plaintiff is likely to prevail on the merits of its lawsuit as Defendant and/or its agents have no basis for any of their defamatory statements and their actions are intended only to harass Plaintiff for purposes of leverage in other litigation.

Plaintiff's application for a temporary restraining order is authorized by TEX. CIV. PRAC. & REM. CODE § 65.011(1) and (2).  Plaintiff is entitled to the relief demanded in the complaint. The relief sought by Plaintiff requires the restraint of further acts by Defendant and its agents which interfere with Plaintiff's business relationships in a prejudicial manner.  An injunction is required to prevent imminent harm to Plaintiff.

Defendant and its agents are currently engaged in the harassment of Plaintiff's clients, employees, and family members, all of whom have reported and complained of the harassment to

Plaintiff.  Defendant and its agents have further engaged in spreading malicious rumors about Plaintiff, including that Plaintiff is being investigated for fraud or has otherwise unsavory business practices.  Plaintiff has already suffered harm to its reputation and its business relationships from Defendant's actions.  Restraint of Defendant and Defendant's agents is necessary to protect and preserve Plaintiff's reputation and business relationships from further harm.

If Plaintiff's application is not granted, harm is imminent and harm is irreparable because Plaintiff cannot be adequately compensated for damage to its reputation or for the loss of current or potential business relationships.  Plaintiff thus has no adequate remedy at law.

Plaintiff asks the Court to restrain, *ex parte*, Quinn Emanuel as well as any other persons or entities working with them, in concert with them, on their behalf, or which are in any way affiliated with them, from the following:

a.  Contacting any person or entity with any connection to Plaintiff;

b.  Stating, implying or otherwise insinuating to any person or entity that Plaintiff committed fraud, or is the subject of a fraud investigation;

c.  Stating, implying or otherwise insinuating to any person or entity that Plaintiff committed other wrongful or actionable conduct, including with regard to its business or employment practices;

d.  Surveilling, following, photographing, videorecording, recording by audio, or otherwise tracking any current employee of the Firm, spouses of the firm's employees, children of the firm's employees or the Firm's principal Anthony Buzbee.

There is insufficient time to serve notice on Defendant and to hold a hearing on this application.  Should this harassment of the Firm's clients, former clients, and other related third parties continue, Plaintiff will suffer irreparable harm.

## VIII.
## DEMAND FOR JURY

Plaintiff respectfully demands a jury trial on those issues where appropriate.

## IX.
## CONCLUSION AND PRAYER

Upon trial of this matter, Plaintiff respectfully prays for judgment as follows:

    a.    That the Defendant and its agents be restrained as set forth herein;

    b.    That a hearing on Plaintiff's Request for Temporary Restraining Order and Injunction be held;

    c.    The Court enter judgment in favor of Plaintiff for damages permitted by law;

    d.    Such other relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

THE BUZBEE LAW FIRM

By: /s/ Anthony G. Buzbee
Anthony G. Buzbee
State Bar No. 24001820
tbuzbee@txattorneys.com
David C. Fortney
State Bar No. 24068740
dfortney@txattorneys.com
JPMorgan Chase Tower
600 Travis Street, Suite 7500
Houston, Texas 77002
Tel: (713) 223-5393
Fax: (713) 223-5909
www.txattorneys.com

**ATTORNEYS FOR PLAINTIFF**

Unofficial Copy Office of Marilyn Burgess District Clerk

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been duly served on all known counsel of record pursuant to the Texas Rules of Civil Procedure on December 4, 2024.

/s/ David C. Fortney
David C. Fortney

Docusign Envelope ID: DF92B954-8685-4819-8921-7C23F6A52D29

# 2024-84902 / Court: 11

## <u>AFFIDAVIT OF DESEREE MCINTOSH</u>

This instrument was acknowledged before me by means of an interactive two-way audio and video communication on December 3, 2024 by Deseree McIntosh. This notarial act was an online notarization with electronic signatures. Before me, the undersigned Notary, Deseree McIntosh personally came and appeared and, after being duly sworn, did state that:

1. My name is Deseree McIntosh. I am an adult resident of the State of Louisiana, of sound mine, and capable in all respects of executing this Affidavit under oath.

2. The information contained in this Affidavit is made upon my personal knowledge and is true and correct.

3. I was a former client of The Buzbee Law Firm and my spouse, Shannon Champagne, is a current client. On December 2, 2024, two men came to my house harassing me for information about the Buzbee Law Firm. Specifically, these men asked if they could speak to Shannon Champagne and claimed to be investigating The Buzbee Law Firm for fraud.

4. I was uncomfortable with these men showing up to our house unannounced.

5. The above and foregoing is true and correct to the best of my knowledge, information, and belief.

Signed by:

*Deseree McIntosh*

08A117B2C70849F...

DESEREE MCINTOSH

**Notary Seal**                              **Digital Certificate**

ALIZA NOEMI TRIGO
Notary Public, State of Texas
ID# 129727161
My Commission Expires
May 21, 2027

1 of 1

*Exhibit A*

# 2024-84902 / Court: 11

## <u>AFFIDAVIT OF TORI CONKLIN</u>

This instrument was acknowledged before me by means of an interactive two-way audio and video communication on December 3, 2024 by Tori Conklin. This notarial act was an online notarization with electronic signatures.

1. My name is Tori Conklin. I am an adult resident of the State of Louisiana, of sound mine, and capable in all respects of executing this Affidavit under oath.

2. The information contained in this Affidavit is made upon my personal knowledge and is true and correct.

3. My husband Robert Conklin is a former client of The Buzbee Law Firm. On November 30, 2024, two men came to my house harassing me and my husband for information about the Buzbee Law Firm. Specifically, these men claimed to be investigating The Buzbee Law Firm for fraud and asked prying questions about how we found The Buzbee Law Firm, whether we were coerced into having the Buzbee Law Firm represent us, whether we had any problems with their representation, what compensation we received from the firm, and whether we had received Venmo funds from the firm.

4. We were uncomfortable with these men showing up to our house unannounced and asking such prying questions.

5. The above and foregoing is true and correct to the best of my knowledge, information, and belief.

_____
TORI CONKLIN

**Notary Seal**

ALIZA NOEMI TRIGO
Notary Public, State of Texas
ID# 129727161
My Commission Expires
May 21, 2027

**Digital Certificate**

Aliza Noemi Trigo

Exhibit B

# 2024-84902 / Court: 11

## AFFIDAVIT OF ANGELIQUE TOWNSEND

This instrument was acknowledged before me by means of an interactive two-way audio and video communication on December 3, 2024 by Angelique Townsend. This notarial act was an online notarization with electronic signatures. Before me, the undersigned Notary, Angelique Townsend, personally came and appeared and, after being duly sworn, did state that:

1. My name is Angelique Townsend. I am an adult resident of the State of Louisiana, of sound mine, and capable in all respects of executing this Affidavit under oath.

2. The information contained in this Affidavit is made upon my personal knowledge and is true and correct.

3. I was a previously a girlfriend of a client of The Buzbee Law Firm, Cody Matherne. On November 30, 2024 at approximately 8:00 p.m., one man and a woman came to my house harassing me, threatening me, and demanding information about clients of the Buzbee Law Firm. Specifically, these "investigators" pretended to be trying to serve a warrant upon me for an alleged crime of fraud and identity theft in New York that I had nothing to do with. I later found out that the names of the alleged co-conspirators in this made-up crime who these "investigators" asked me about were also clients of The Buzbee Law Firm and these "investigators" were really trying to pry information from me about them.

4. I believe that the purpose of this visit was to harass and intimidate me and my family. This visit scared me and my family.

5. The above and foregoing is true and correct to the best of my knowledge, information, and belief.

DocuSigned by:

*Angelique Townsend*

B889584BD99444S

ANGELIQUE TOWNSEND

**Notary Seal**                                        **Digital Certificate**

ALIZA NOEMI TRIGO
Notary Public, State of Texas
ID# 129727161
My Commission Expires
May 21, 2027

1 of 1

Exhibit C

# 2024-84902 / Court: 11

## AFFIDAVIT OF LAURA DE LA CRUZ

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF HARRIS** | § |

Before me, the undersigned notary, on this day personally appeared Laura De La Cruz, a person whose identity is known to me.  After I administered an oath to the affiant, she testified as follows:

1. "My name is Laura De La Cruz, I am over 21 years old, of sound mind, and capable of making this affidavit.  The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I reside in Houston, Texas and am an attorney at Schechter, Shaffer & Harris LLP in Houston, Texas, with a business address of 3200 Travis Street, Third Floor, Houston, Texas 77006.

3. I am licensed to practice law in the states of Texas and Louisiana.

4. I am currently co-counsel with The Buzbee Law Firm on a case pending in Washington.

5. I formerly worked as a receptionist and paralegal at the Buzbee Law Firm from approximately December 2008 to August 2010.

6. On November 25, 2024, at 1:09 PM, I received a voicemail on my cell phone from a woman stating she was doing "research" on The Buzbee Law Firm.  The caller identified herself as "Chrissy", and the call came in from phone number: 518-662-0616.

7. A few minutes later, I returned her call from my cell phone.  The reception quality was poor on my end.  I offered to call "Chrissy" back from my office line, which I promptly did.  When she answered, Chrissy explained she was doing "opposition research" on Tony Buzbee and The Buzbee Law Firm.  I asked on whose behalf she was doing this research.  Chrissy said she did not know the identity of the ultimate client.

8. I spoke with this woman for a few minutes. She knew I had worked for The Buzbee Law Firm.  I confirmed that I had worked there years ago, beginning as a receptionist and then as a paralegal.  She asked me about the conditions at The Buzbee Law Firm, whether I saw any poor treatment of employees or clients, whether I saw anything out of the ordinary for a law firm, and the reason why I stopped working for The Buzbee Law Firm.  She stated she had been contacting several employees of The Buzbee Law Firm.  She also asked if I had read the recent allegations against Tony Buzbee. I asked what she was referring to, and she mentioned extortion and his treatment of clients. I replied that I was unaware of any such allegations.  She kept probing me about what I witnessed as an employee of The

1

Exhibit D

Buzbee Law Firm and was quite suggestive in her questioning by feeding me certain phrases, such as discrimination, the treatment of women, and handling of clients. She asked whether I had experienced or witnessed discriminatory practices by the Firm. She was pushy and was pressing hard for some sort of negative information about Tony Buzbee and/or The Buzbee Law Firm. She quickly ended our conversation when it became clear I had not witnessed anything damaging that would assist in her research.

9. My conversation with the investigator left me with no doubt that she was searching for persons with either potential claims against The Buzbee Law Firm or who might have disparaging things to say about Tony Buzbee and/or the Buzbee Law Firm."

Further affiant sayeth not.

Laura De La Cruz

December 4, 2024
Date

**SWORN TO AND SUBSCRIBED BEFORE ME**, the undersigned authority, on this the 4th day of December 2024, to certify which witness my hand and seal of office.

CRISTINA DE LA CRUZ
Notary ID #131788779
My Commission Expires
November 7, 2026

Cristina De La Cruz
Notary Public, State of Texas

My Comm. Exp.: 11/7/26

2

# 2024-84902 / Court: 11

CAUSE NO. _____

| | | |
|---|---|---|
| THE BUZBEE LAW FIRM, | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| QUINN EMANUEL URQUHART & | § | |
| SULLIVAN, LLP, and LEX | § | |
| INTELLIGENCE LLC, | § | |
| | § | |
| | § | |
| *Defendants.* | § | _____ DISTRICT COURT |

## DECLARATION OF FERNANDO R. GARZA

I, Fernando R. Garza, declare and state as follows, in accordance with section 132.001(a) of the Texas Civil Practice and Remedies Code:

1.      My name is Fernando R. Garza. I am a licensed attorney in the State of Texas. I was formerly employed at the Buzbee Law Firm as an associate. Several years ago, I parted ways to open my own firm.

2.      On or around November 25, 2024, I saw an Instagram post made by Tony Buzbee concerning a young female investigator employed by Lex Intelligence. I learned from this post that this woman and her associates were attempting to solicit former employees of the Buzbee Law Firm related to alleged wrongful termination and harassment related cases.

3.      On November 26, 2024, I received a call from who I believe is the same investigator Mr. Buzbee posted about the day prior. She identified herself as an employee of Lex Intelligence and that she was conducting investigations on the Buzbee Law Firm.  The caller called from the following telephone number: (332) 255-8548. During the phone call, she informed me she was hired by New York counsel to investigate potential claims related to Buzbee Law Firm's former employees. It was

Exhibit E

clear her unsolicited communication with me was for the purposes of soliciting a wrongful termination or harassment claim related to my employment at the Buzbee Law Firm.

4.      I asked her to discontinue her shake down efforts against Tony Buzbee and the Buzbee Law Firm and ended the call.

I swear under penalty of perjury that the foregoing is true and correct. My office address is 5317 S. McColl Road, Edinburg, Texas, 78539. My date of birth is September 13, 1989.

/s/ *Fernando R. Garza*
Fernando R. Garza

# 2024-84902 / Court: 11

STATE OF CALIFORNIA §
§
COUNTY OF LOS ANGELES §


## **SWORN AFFIDAVIT OF ANNA FAUBUS**

BEFORE ME, the undersigned authority, personally appeared, Anna Faubus, who being duly

sworn by me, upon her oath stated as follows:

1. My name is Anna E. Faubus.

2. I am over the age of twenty-one (21) and am fully competent to execute this affidavit. All
   of the facts stated herein are within my personal knowledge and are true and correct.

3. I work as a legal intern for the Buzbee Law Firm.

4. I received a telephone on November 27, 2024 at 10:21 a.m. from a female caller who did
   not identify herself. The call came from a New York, NY phone number; (917) 730-9068.

5. The unknown caller left a voicemail message stating that she was conducting "due
   diligence on a law firm that [I] used to work at" and requested I give her a call back at the
   New York, New York number stated above and wanted to chat.

6. She called me back and wanted me to share my experiences about the Buzbee Law Firm.

7. She was not interested in any positive comments about the Buzbee Law Firm but wanted
   to know if there was anything controversial that happened while I was working at the firm.

8. I am related to a lawyer who works at the Buzbee Law Firm.

FURTHER, AFFIANT SAYETH NAUGHT.

Exhibit F

DocuSigned by:

_____

Anna E Faubus

Fourth

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, on the _____ day of December, 2024.

ALIZA NOEMI TRIGO
Notary Public, State of Texas
ID# 129727161
My Commission Expires
May 21, 2027

_____

Notary in and for the State of Texas

My Commission expires: __05/21/2027__

Unofficial Copy Office of Marilyn Burgess District Clerk

# 2024-84902 / Court: 11

STATE OF TEXAS       §

                          §

COUNTY OF HARRIS     §

## <u>SWORN AFFIDAVIT OF ELIZABETH ANNE BUZBEE</u>

BEFORE ME, the undersigned authority, personally appeared, Elizabeth Anne Buzbee, who being duly sworn by me, upon her oath stated as follows:

1. My name is Elizabeth Anne Buzbee.

2. I am over the age of twenty-one (21) and am fully competent to execute this affidavit. All of the facts stated herein are within my personal knowledge and are true and correct.

3. I am Tony Buzbee's daughter.

4. I received a telephone on November 27, 2024 at 9:56 a.m. from an unknown caller. This caller did not identify herself, but called from a New York, New York phone number; (332) 255-8548.

5. The unknown caller left a voicemail message stating that she was conducting "due diligence" on The Buzbee Law Firm and requested I give her a call back at the New York, New York number stated above.

Exhibit G

FURTHER, AFFIANT SAYETH NAUGHT.



Signed by:

*Elizabeth Anne Buzbee*

Elizabeth Anne Buzbee

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, on the _____4th_____ day of December, 2024, by Elizabeth Anne Buzbee. This notarial act was an online notarization with electronic signatures.

ALIZA NOEMI TRIGO
Notary Public, State of Texas
ID# 129727161
My Commission Expires
May 21, 2027

_____
Notary in and for the State of Texas

My Commission expires: ___05/21/2027___

Unofficial Copy Office of Marilyn Burgess District Clerk

# 2024-84902 / Court: 11

## <u>AFFIDAVIT OF MAURICIO GUEVARA</u>

**STATE OF TEXAS**                          §
                                            §
**COUNTY OF HARRIS**                         §

     Before me, the undersigned notary, on this day personally appeared Mauricio Guevara, a person whose identity is known to me.  After I administered an oath to the affiant, he testified as follows:

1. "My name is Mauricio Guevara, I am over 21 years old, of sound mind, and capable of making this affidavit.  The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am an attorney at the Buzbee Law Firm in Houston, Texas.

3. I reside at 4108 Childress Street in Houston, Texas.

4. On December 2, 2024 at 9:41 AM an unknown man stood in front of my home and took pictures with a portable electronic device.

5. On December 2, 2024 at 12:16 PM a separate unknown man lurked in front of my house with a professional grade single-lens reflex camera and tripod. Then lightly tapped on my front door. The same man then lurked for a couple of minutes on my front patio and made a telephone call.

6. On December 3, 2024 I showed my neighbor the surveillance videos of the two unknown men and inquired if they were perhaps contractors that she hired. After that conversation with my neighbor I understood that the two men were not her hired contractors.

7. On December 3, 2024 I reviewed separate surveillance video of two men in front of the home of Robert Conklin. Mr. Conklin is a former client of the Buzbee Law Firm. It is my understanding that the two men were attempting to solicit Mr. Conklin for a claim against the Buzbee Law Firm.

8. After reviewing the surveillance videos from both my home and Mr. Conklin's home, it appears to me that the two men in front of Robert Conklin's home are the same two men in front of my home.

1

Exhibit H

Further affiant sayeth not.

_Mauricio Guevara_
Mauricio Guevara

_December 3, 2024_
Date

       **SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, on this the** 3ᵗʰ **day of** December **2024, to certify which witness my hand and seal of office.**

Joanna Ferrara-Nava
My Commission Expires
4/3/2027
Notary ID131856318

Notary Public, State of Texas

My Comm. Exp.: 4/3/27

Unofficial Copy Office of Marilyn Burgess District Clerk

# 2024-84902 / Court: 11

## AFFIDAVIT OF DAVID FORTNEY

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF HARRIS** | § |

Before me, the undersigned notary, on this day personally appeared David Fortney, a person whose identity is known to me. After I administered an oath to the affiant, he testified as follows:

1. "My name is David Fortney, I am over 21 years old, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am an attorney at the Buzbee Law Firm in Houston, Texas.

3. The phone number noted by Laura Delacruz in her affidavit, (518) 662-0616, as that of the person who contacted her, is listed as the contact phone number for Lex Intelligence, LLC on Lex Intelligence's website. That website is now private and cannot be viewed in full. See https://www.lex-intelligence.com/about-us . However, I viewed the website prior to it being made private in order to confirm the identity of the entity to which the phone number belonged.

4. I understand from other members of the firm that several persons contacted by these investigators stated that the investigators identified Quinn Emanuel as the "New York law firm" that hired them, although the investigators would not reveal Quinn Emanuel's ultimate client.

5. "Christina S." is identified on LinkedIn as the Founder of Lex Intelligence LLC. Her LinkedIn page can be viewed at https://www.linkedin.com/in/christina-s-33b02a21/.

6. I visited Christina S.'s page this morning and it appears to have been stripped of any reference to Quinn Emanuel. However, when members of our firm first received information regarding Lex Intelligence as the investigators in question, the information in the screenshot below (on following page) was visible, indicating Christina S.'s connection to Quinn Emanuel.

1

Exhibit 1

Top companies your searchers work at

 Docusign

 Fluor Corporation

 O'Melveny & Myers LLP

 Quinn Emanuel

Further affiant sayeth not.

_____
David Fortney

December 4, 2024
Date

**SWORN TO AND SUBSCRIBED BEFORE ME**, the undersigned authority, on this the 4th day of December 2024, **to certify which witness my hand and seal of office.**


ALIZA NOEMI TRIGO
My Notary ID # 129727161
Expires May 21, 2027

_____
Notary Public, State of Texas

My Comm. Exp.: 5/21/2027

2

12/5/2024 1:13 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 94983763
By: Patricia Gonzalez
Filed: 12/5/2024 1:13 PM

## CAUSE NO. 2024-84902

| | | |
|---|---|---|
| THE BUZBEE LAW FIRM, | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| QUINN EMANUEL URQUHART & | § | |
| SULLIVAN, LLP | § | |
| | § | |
| | § | |
| *Defendant.* | § | _11th_ DISTRICT COURT |

### NOTICE OF ORAL HEARING ON PLAINTIFF'S APPLICATION
### FOR TEMPORARY RESTRAINING ORDER

Please be advised that an oral hearing on Plaintiff's Application for Temporary Restraining Order is set on Thursday, December 5, 2024, at 2:15 p.m. in the 129th District Court of Harris County, Texas.

Respectfully submitted,

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
State Bar No. 24001820
tbuzbee@txattorneys.com
David C. Fortney
State Bar No. 24068740
dfortney@txattorneys.com
JPMorgan Chase Tower
600 Travis Street, Suite 7500
Houston, Texas 77002
Tel: (713) 223-5393
Fax: (713) 223-5909
www.txattorneys.com

**ATTORNEYS FOR PLAINTIFF**

Unofficial Copy Office of Marilyn Burgess District Clerk

1

## Automated Certificate of eService
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Anthony  Buzbee on behalf of Anthony Buzbee
Bar No. 24001820
efiling@txattorneys.com
Envelope ID: 94983763
Filing Code Description: Notice
Filing Description: Notice of Oral Hearing on Plaintiff's Application for
Temporary Restraining Order
Status as of 12/5/2024 1:23 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Anthony Buzbee | | tbuzbee@txattorneys.com | 12/5/2024 1:13:53 PM | SENT |
| Buzbee Law Firm | | efiling@txattorneys.com | 12/5/2024 1:13:53 PM | SENT |
| Colby Holler | | CHoller@txattorneys.com | 12/5/2024 1:13:53 PM | SENT |
| David C.Fortney | | dfortney@txattorneys.com | 12/5/2024 1:13:53 PM | SENT |
| Leticia De La Cruz | | ledelacruz@txattorneys.com | 12/5/2024 1:13:53 PM | ERROR |

Unofficial Copy Office of Marilyn Burgess District Clerk

12/6/2024 10:26 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 95021406
By: Patricia Gonzalez
Filed: 12/6/2024 10:26 AM

### CAUSE NO. <u>2024-84902</u>

| | | |
|---|---|---|
| THE BUZBEE LAW FIRM, | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| QUINN EMANUEL URQUHART & | § | |
| SULLIVAN, LLP | § | |
| | § | |
| | § | |
| *Defendant.* | § | <u>  11th  </u> DISTRICT COURT |

### AMENDED NOTICE OF ORAL HEARING ON PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER

Please be advised that an oral hearing on Plaintiff's Application for Temporary Restraining Order is set on Friday, December 6, 2024, at 1:30 p.m. in the 129th District Court of Harris County, Texas.

Respectfully submitted,

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
State Bar No. 24001820
tbuzbee@txattorneys.com
David C. Fortney
State Bar No. 24068740
dfortney@txattorneys.com
JPMorgan Chase Tower
600 Travis Street, Suite 7500
Houston, Texas 77002
Tel: (713) 223-5393
Fax: (713) 223-5909
www.txattorneys.com

**ATTORNEYS FOR PLAINTIFF**

Unofficial Copy Office of Marilyn Burgess District Clerk

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Anthony  Buzbee on behalf of Anthony Buzbee
Bar No. 24001820
efiling@txattorneys.com
Envelope ID: 95021406
Filing Code Description: Notice
Filing Description: Amended Notice of Hearing on Plaintiff's Application for Temporary Restraining Order
Status as of 12/6/2024 10:54 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Anthony Buzbee | | tbuzbee@txattorneys.com | 12/6/2024 10:26:48 AM | SENT |
| Buzbee Law Firm | | efiling@txattorneys.com | 12/6/2024 10:26:48 AM | SENT |
| Colby Holler | | CHoller@txattorneys.com | 12/6/2024 10:26:48 AM | SENT |
| David C.Fortney | | dfortney@txattorneys.com | 12/6/2024 10:26:48 AM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

2/6/2024 1:01 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 95033608
By: Patricia Gonzalez
Filed: 12/6/2024 1:01 PM

## CAUSE NO. 2024-84902

| | | |
|---|---|---|
| **THE BUZBEE LAW FIRM,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **QUINN EMANUEL URQUHART** | § | |
| **& SULLIVAN, LLP,** | § | |
| | § | |
| **Defendant.** | § | **11th JUDICIAL DISTRICT** |
| | § | |

### QUINN EMANUEL URQUHART & SULLIVAN, LLP'S RESPONSE IN OPPOSITION TO PLAINTIFF'S PROCEDURALLY DEFECTIVE APPLICATION FOR TEMPORARY RESTRAINING ORDER

Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") hereby files its Response in Opposition to Plaintiff The Buzbee Law Firm's ("Buzbee") procedurally defective Application for Temporary Restraining Order ("TRO Application"), and in support respectfully shows as follows:

### I.
### INTRODUCTION

1.    ***Buzbee's TRO Application is procedurally defective on its face and must be denied because it is unverified.*** As a threshold matter, Buzbee's TRO Application is unverified. In filing an unverified paper and styling it as a TRO Application, Buzbee has filed a pleading that Texas law neither recognizes nor condones. Texas Rule of Civil Procedure 682 expressly states that *"[n]o writ of*

*injunction shall be granted <u>unless</u>* the applicant therefor shall present his petition to the judge *<u>verified</u>* by his affidavit and containing a plain and intelligible statement of the grounds for such relief." The Court enjoys no discretion in enforcing this pleading proscription, which applies to TRO Applications, <u>In re MetroPCS Comm'ns, Inc.</u>, 391 S.W.3d 329, 337 (Tex. App.—Dallas 2013, no pet.); <u>accord Ex parte Rodriguez</u>, 568 S.W.2d 894, 897 (Tex. Civ. App.—Fort Worth, no pet.) ("A temporary restraining order is a 'writ of injunction' within the meaning of Tex. R. Civ. P. 682 (citing <u>Ex parte Coffee</u>, 328 S.W.2d 283, 290 (Tex. 1959) (orig. proceeding).[1]

      2.    ***Buzbee's requested TRO is unlawful and unconstitutional.*** On this score, Buzbee has outdone itself. By its TRO Application, Buzbee invites this Court to enjoin a law firm, who presently represents a client prosecuting a case against Buzbee, from contacting "*<u>any</u>* person or entity with *<u>any</u>* connection to Buzbee." In other words, Buzbee invites the Court to enjoin a law firm from practicing law. Why? Because, it alleges, "on information and belief," that private investigators allegedly hired by Quinn Emanuel supposedly contacted witnesses in connection with a "Diddy"-related lawsuit, in which Buzbee is accused of extortion. Buzbee

---

[1] Quinn Emanuel would be remiss not to note that Buzbee's TRO Application is also defective because it fails to express a willingness to post a bond. TEX. R. CIV. P. 684. And, while Buzbee subsequently filed a proposed order that leaves a blank for a bond, Buzbee curiously proposes no amount.

argues Quinn Emanuel should be prohibited from "insinuating" that Buzbee has committed "wrongful or actionable conduct." But Quinn Emanuel represents a person who has, rightfully, _sued Buzbee for wrongful and actionable conduct_. Again—and put plainly— Buzbee wants the Court to prohibit Quinn Emanuel from doing its job. Even taking all of its preposterous allegations as true—an evidentiary presumption to which Buzbee, as a TRO Applicant, is decidedly unentitled—the TRO Buzbee demands would obliterate Quinn Emanuel's constitutional rights to petition and of free speech. It ignores the Rules. It ignores the judicial proceedings privilege. The list goes on.

3.       ***Even setting aside the TRO Application's procedural defects or the illegality of the requested relief (which the Court can't), the TRO Application still must be denied because: (a) Buzbee has not carried its burden to demonstrate a probable right of recovery; (b) it will destroy, rather than preserve, the status quo; and (c) the requested relief is woefully overbroad.*** Suffice to say, Buzbee's TRO Application should be denied for a multitude of reasons, but three are briefed herein.[2]

---

[2] To be clear, Quinn Emanuel is submitting briefing in opposition to Buzbee's TRO Application subject to, and without waiver of, its right to challenge venue and file other pre-answer motions. Texas courts have continuously held that a party does not waive its right to assert a venue challenge merely by participating in preliminary matters that do not involve the merits of the case. *Compare Gentry v. Tucker*, 891 S.W.2d 766, 768 (Tex. App—Texarkana 1995, no pet.) (acknowledging that a party does not waive their right to a motion to transfer venue by appearing at a preliminary hearing because a preliminary hearing does not invoke a decision on the merits) and *In re Leder*, 263 S.W.3d 283, 284 (Tex. App.—Houston [1st] 2007, no pet.) (finding that a party does not waive a venue challenge by first arguing preliminary matters) with *In re Lambdin*, No. 07-03-0328-CV, 2003 WL 21981975, at *1 (Tex. App.—Amarillo Aug. 20, 2003, no pet.) (concluding that an individual's participation in her trial on the merits thereby waived her pending venue motion). *See also Vinmar Trade Fin., Ltd. V. Util. Trailers de Mexico, S.A. de C.V.*, 336 S.W.3d 664 (Tex. App.—Houston [1st] 2010, no pet.) (recognizing that forum non conveniens is also not an issue of the merits and

a.    First, Buzbee has not shown a probable right of recovery on its claims, nor can it. It alleges only three claims—tortious interference with existing contracts, tortious interference with prospective relations, and "solicitation and barratry." Buzbee's TRO Application comes nowhere close to pleading the facts necessary to support these claims. Buzbee does not even identify a "contract" or "relation" it claims Quinn Emanuel interfered with. With respect to the puzzling third claim, barratry is a criminal infraction. It is not an actionable civil claim, and certainly not one that belongs to Buzbee. Buzbee's entire lawsuit also flies in the face of sacrosanct doctrines—the right to petition, the right of free speech, the attorney immunity doctrine, and the judicial proceedings privilege. Buzbee cannot be awarded injunctive relief based on non-actionable conduct.

b.    Second, the requested TRO will destroy, rather than preserve, the status quo. Buzbee will inevitably use it to try to argue that the TRO requires Quinn Emanuel to withdraw as counsel in a California lawsuit with Buzbee (which lawsuit is receiving national attention).

---

acknowledging that the United States Supreme Court found the same). Further, the Texas Rules of Civil Procedure state that a party does not waive a motion to transfer venue by filing a motion to dismiss under Rule 91a. See Tex. R. Civ. P. 91a(8).

      c.    Third, the requested relief is woefully broad. Again, one component of the requested relief is a ban on "contacting any person or entity with any connection to Buzbee." Tony Buzbee is a self-proclaimed public figure. Buzbee seems to want to enjoin Quinn Emanuel from contacting the entirety of America.

For these and other reasons,[3] Buzbee falls far short of carrying its heavy burden for obtaining the extraordinary injunctive relief it seeks, and its TRO application ought to be denied accordingly.

## II.
## RELEVANT FACTUAL BACKGROUND

**A.**    **The Sean Combs scandal begets a campaign of extortion.**

It was hard to miss the wave of explosive allegations against Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy""), including in lawsuits filed by eight women and one man, which allegations resulted in his indictment for racketeering, sex trafficking by force, and transportation for purposes of prostitution. In the wake of those staggering headlines, Buzbee[4] almost immediately managed to

---

[3] In an effort not to throw the proverbial "book" at Buzbee, and in there interest of brevity, Quinn Emanuel will not brief the fact that Buzbee has not and cannot show that harm is imminent and irreparable, or that there is no adequate remedy at law. This can be addressed more fulsomely elsewhere.

[4] As the pleadings in the California lawsuit reflect, both Buzbee and its principal, Anthony Buzbee, have been implicated in the conduct described in this section. To be clear, for the purposes of the instant action, when this brief refers to "Buzbee," it is referring to The Buzbee Law Firm alone.

find some 120 plaintiffs (half male and half female), including 25 minors, who claim to have been sexually assaulted by Combs and others. That number has continued to rise.

Meanwhile, Buzbee created a new pocket industry that capitalizes on the bravery of those victims who came forward to shakedown innocent celebrities, politicians, and business people with an army of masked accusers. Through use of a hotline advertised at press appearances and on a website, Buzbee leveraged the media attention from the Combs allegations, emphasizing to potential accusers that there was money to be made.

With Combs behind bars, and payment unlikely to be forthcoming any time soon, Buzbee devised a scheme to obtain payments through the use of coercive threats from anyone with any ties to Combs—no matter how remote—who was of sufficient means and reputation for Buzbee to expect they would pay an exorbitant sum of money rather than be named.

Buzbee specifically targeted high-profile individuals who would suffer immeasurable loss from being publicly accused of committing sex crimes, including drugging and raping minors, even if those allegations were false. In order to effectuate its campaign of widespread extortion and extract the maximum amount of money from as many high-profile individuals as possible, Buzbee concocted a narrative alleging the worst harm imaginable, including stories of alleged child

victims, both male and female, who were as young as nine years old at the time of their rape.

Through a series of media statements and lawsuits describing the acts of unnamed individual defendants, Buzbee made his threats to his celebrity targets clear—pay exorbitant sums of money to remain anonymous, or be publicly named and shamed, offered up to the FBI for criminal investigation, and accused of vile acts in statements to the media.

In November of 2024, Buzbee began making demands by written correspondence to a John Doe celebrity represented by Quinn Emanuel ("John Doe"). The correspondence contained false allegations of vile conduct by John Doe, and characterized John Doe as having been friends with Combs based on the fact that the two attended similar, celebrity-packed parties. In the correspondence, Buzbee alleged that John Doe raped multiple minors, both male and female, who had been drugged at parties hosted by Combs.

Buzbee further threatened to find an untold number of other "victims" to bring claims against John Doe.

Buzbee put a ticking clock in these extortion demands, threatening to "take a different course" if John Doe did not commit to a "confidential mediation" to "resolve this delicate and important matter" by the deadline. He also suggested he would find and bring additional suits from unidentified (and likely nonexistent)

plaintiffs he would purportedly find at a later date if settlement funds were not forthcoming. John Doe was faced with a gun to his head—either repeatedly pay an exorbitant sum of money to stop Buzbee from the wide publication of wildly false allegations of sexual assault that would subject John Doe to opprobrium and irreparably harm John Doe's reputation, family, career and livelihood, or else face the threat of an untold number of civil suits and financial and personal ruin.

**B.** **Based on this conduct, Quinn Emanuel, representing John Doe, sues Buzbee in California.**

On or about November 18, 2024, Quinn Emanuel filed a lawsuit against The Buzbee Law Firm and Anthony G. Buzbee in the Superior Court of the State of California, County of Los Angeles, on behalf of John Doe. That lawsuit is, rightfully, for extortion, intentional infliction of emotional distress, and a civil harassment restraining order.[5]

**C.** **Less than a month later, Buzbee brings the instant lawsuit.**

Buzbee did not like being called out for extortion. Less than a month after the California lawsuit was filed, Buzbee brought the instant proceeding against Quinn Emanuel. Buzbee claims, inter alia, that private investigators have reached out to its former employees and clients. It then, haphazardly, insinuates that the private

---

[5] *See* Complaint for Extortion and Intentional Infliction of Emotional Distress, *John Doe v. The Buzbee Law Firm and Anthony F. Buzbee*, Case No. 24SMCV05637, proceeding in the Superior Court of the State of California, County of Los Angeles, attached as <u>Exhibit A</u>.

investigators were hired by Quinn Emanuel, but does not posit a single fact in support of that leap. Buzbee also wrongly insinuates that Quinn Emanuel is somehow behind a separate lawsuit against Buzbee for legal malpractice, fraud, and a host of other illuminating claims. That lawsuit is based on Anthony Buzbee's "assault of [that plaintiff]," which "escalated during his representation of her in divorce proceedings." The claimant is represented by a *different law firm in a different state*. That lawsuit has nothing to do with Quinn Emanuel.

## III.
### STANDARD OF REVIEW

As this Court is aware, under Texas law, "a temporary injunction is an extraordinary remedy and does not issue as a matter of right." Shoreline Gas, Inc. v. McGaughey, No. 13-07-364-CV, 2008 WL 1747624, at *3 (Tex. App.—Corpus Christi April 17, 2008, no pet.) (citing Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002)). To obtain a temporary injunction, the party seeking the injunction bears the burden of proving each and every one of the following elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* If the party's burden is not met as to any one element, then the party is not entitled to a temporary injunction. See, e.g., Dallas Anesthesiology Assocs. v. Texas Anesthesia Group, P.A., 190 S.W.3d 891, 898 (Tex. App.—Dallas 2006, no pet.).

"A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it." E.g., Argyle Indep't Sch. Dist. v. Wolf, 234 S.W.3d 229, 236 (Tex. App.—Fort Worth 2007, no pet.). "A party seeking a temporary injunction must have at least one valid legal theory to support a probable right to recover." E.g., id. Moreover, while the decision to grant or deny a temporary injunction is within the sound discretion of the court, this discretion is abused "when the evidence does not reasonably support a conclusion that the applicant has a probable right of recovery." W. Moon v. Estate of L.A. Moon, 221 S.W.3d 327, 329, 331 (Tex. App.—Texarkana 2007, pet. denied).

Here, Buzbee has not met these heavy burdens, and its TRO Application should be denied.

## IV.
### ARGUMENTS AND AUTHORITIES

**A.   Buzbee cannot show a probable right of recovery on its claims.**

Buzbee asserts only three claims in this lawsuit—tortious interference with existing contracts, tortious interference with prospective relations, and "solicitation and barratry." Buzbee does not have a probable right of recovery on these claims, not even close. This is so for a few reasons.

First, Buzbee cannot and does not establish the elements of its claims for tortious interference with existing contract and tortious interference with prospective business relations.

The essential elements of a claim for tortious interference with an existing contract are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) that caused actual damage or loss. Prudential Ins. Co. of Am. v. Fin. Review Sevs., Inc., 29 S.W.3d 74, 77 (Tex. 2000). In its TRO Application, Buzbee offers no *allegation*, let alone any evidence, of Elements Two through Four. With respect to Element No. 2, in particular, Texas law is clear that, "[t]o prevail on a tortious-interference claim, a plaintiff must present evidence that the defendant interfered with a *specific* contract" (or relationship). McGehee v. Hagan, 367 S.W.3d 848, 854 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). As a TRO Applicant, Buzbee bears the burden of bringing forth allegations and evidence of this element. See, e.g., Super Starr Int'l, LLC v. Fresh Tex. Produce, LLC, 531 S.W.3d 829, 847 (Tex. App.—Corpus Christi 2017, pet. granted) (affirming order dissolving temporary injunction on relevant grounds) (emphasis in the original). Buzbee does not identify a single "contract" or "relation" it claims Quinn Emanuel interfered with. This wholly prevents it from receiving injunctive relief tied to those claims. See, e.g., Super Star*r*, 531 S.W.3d at 847 (reversing grant of injunction based on tortious interference claims where plaintiff "presented no evidence of a *specific* contract with which [defendants] interfered") (emphasis in the original).

The essential elements of a claim for tortious interference with a prospective business relationship are:

> (1) a reasonable probability that the plaintiff would have entered into a business relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.

Dunham Eng'g v. Sherwin-Williams Co., 404 S.W.3d 785, 798 n.7 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing Baty v. ProTech Ins. Agency, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)).

Even worse than its half-hearted attempt at pleading and making a threshold showing with respect to its claim for tortious interference with existing contract, Buzbee's TRO Application makes no showing whatsoever as to *any* element of tortious interference with a prospective business relationship. The utter absence of evidence and allegation with respect to Elements One and Two is particularly egregious: With what specific prospective business relationship did Quinn Emanuel supposedly interfere? What independently tortious or unlawful act did *Quinn Emanuel* supposedly perpetrate? Buzbee says nothing on either score, and its silence on these essential elements is fatal to its TRO Application, which must demonstrate a probable right to relief and the likelihood of success on the merits.

Third, with respect to the puzzling "barratry" claim, barratry is a criminal infraction. Further, it is certainly not a claim that belongs to Buzbee. It is axiomatic that an application for injunctive relief must plead a valid cause of action against the defendant to support injunctive relief. If the applicant pleads a cause of action that is not recognized in Texas, the trial court cannot grant an injunction. See, e.g., Valenzuela v. Aquino, 853 S.W.2d 512, 513 (Tex. 1993) (concluding that because Texas does not recognize cause of action for intentional infliction of emotional distress, the trial court could not enjoin non-movants basing their request for injunctive relief on same). That is precisely what is happening here.

Finally, while a story for a different day, the alleged conduct upon which Buzbee bases its specious claims is protected by sacrosanct principles—the right to petition, the right of free speech, and many more. It cannot support the sweeping relief sought.

**B.    Buzbee's TRO Application is procedurally defective.**

The Texas Rules of Civil Procedure are clear as to what must be present in a valid request for injunctive relief. For starters, Buzbee's TRO Application was required to be verified. Texas Rule of Civil Procedure 682 provides that "[n]o writ of injunction shall be granted unless the applicant therefor shall present his petition to the judge verified by his affidavit and containing a plain and intelligible statement

of the grounds for such relief." TEX. R. CIV. P. 682. Buzbee's TRO Application is not verified. Any grant of the TRO would be improper for this reason alone.

Applications for temporary restraining orders must also contain a statement of the applicant's willingness to post a bond. See TEX. R. CIV. P. 684. Buzbee does not, in its TRO Application, state that Buzbee is willing to post a bond. This also in and of itself renders Buzbee's TRO Application defective and unsupportable.

**C.    Buzbee's requested TRO will destroy the status quo.**

The purpose of temporary injunctive relief is to preserve the status quo. E.g., Butnaru, 84 S.W.3d at 204. Buzbee's requested injunctive relief will do anything but. Again, Buzbee will surely use it to argue that Quinn Emanuel withdraw from representing a current client in a critical piece of litigation that is receiving national attention (which, perhaps, explains the purpose behind Buzbee's procedurally defective and pretextual TRO Application). This is an unacceptable departure from the status quo. Buzbee seems to acknowledge as much—it does not dare state in its TRO Application that the requested relief is needed to protect the status quo.

**D.    Buzbee's requested TRO is woefully overbroad.**

"A trial court abuses its discretion by entering an overbroad injunction which grants more relief than a plaintiff is entitled to by enjoining a defendant from conducting lawful activities or from exercising legal rights." E.g., Harbor Perfusion, Inc. v. Floyd, 45 S.W.3d 713, 718 (Tex. App.—Corpus Christi 2001, no pet.). This

is just what Buzbee is asking the Court to do here. By way of example, Buzbee is requesting the Court to order Quinn Emanuel to refrain from "contacting _any_ person or entity with _any_ connection to Buzbee."[6] These days, everyone under the sun has a connection to Buzbee. Its principal, Anthony Buzbee, is a regular fixture in the news and on social media. He even ran for Mayor of Houston, Texas. One struggles to think of persons who do _not_ have a "connection to Buzbee."

The TRO Application should be denied.

## V.
## MOTION TO STRIKE

In addition, Quinn Emanuel respectfully submits that the Court should strike the "evidence" Plaintiff purports to attach to its TRO Application, as follows:

| "Evidence" to Oppose | Basis |
|---|---|
| McIntosh Affidavit, at para. 3 ("On December 2, 2024, two men came to [sic] house harassing me for information about the Buzbee Law Firm. Specifically, these men asked if they could speak to [my spouse] and claimed to be investigating The Buzbee Law Firm for fraud."). | This statement—which was made by an out-of-court declarant and is being offered for the truth of the matter asserted—contains hearsay for which there are no exceptions and is therefore inadmissible. TEX. R. EVID. 801(d); 802.<br><br>Factual conclusions, opinions, and subjective beliefs unsupported by evidence are not probative of any fact. _Bavishi v. Sterling Air Conditioning, Inc._, No. 01-10-00610-CV, 2011 |

---

[6] Buzbee's TRO Application, at p. 10.

| | WL 3525417, at *7 (Tex. App.—Houston [1st Dist.] Aug. 11, 2011, no pet.) (memo op.). |
|---|---|
| McIntosh Affidavit, at para. 4 ("I was uncomfortable with these men showing up to our house unannounced."). | Opinions that are unsupported by evidence are not probative of any fact. *Bavishi*, 2011 WL 3525417, at *7. |
| Conklin Affidavit, at para. 3 ("On November 30, 2024, two men came to my house harassing me and my husband for information about the Buzbee Law Firm."). | Factual conclusions and subjective beliefs unsupported by evidence are not probative of any fact. *Bavishi*, 2011 WL 3525417, at *7. |
| Conklin Affidavit, at para. 3 ("Specifically, these men claimed to be investigating the Buzbee Law Firm for fraud and asked prying questions about how we found The Buzbee Law Firm, whether we were coerced into having the Buzbee Law Firm represent us, whether we had any problems with their representation, what compensation we received from the firm, and whether we had received Venmo funds from the firm."). | These claims are proffers of inadmissible hearsay under the Texas Rules of Evidence. TEX. R. EVID. 801(d); 802. |
| Conklin Affidavit, at para. 3 ("We were uncomfortable with these men showing up to our house unannounced and asking such prying questions."). | Factual conclusions, opinions, and subjective beliefs unsupported by evidence are not probative of any fact. *Bavishi*, 2011 WL 3525417, at *7. |
| Townsend Affidavit, at para. 3 ("On November 30, 2024 at approximately 8:00 p.m., one | Factual conclusions, opinions, and subjective beliefs unsupported by evidence are not |

| | |
|---|---|
| man and a woman came to my house harassing me, threatening me, and demanding information about clients of the Buzbee Law Firm."). | probative of any fact. *Bavishi*, 2011 WL 3525417, at *7.<br><br>These claims are hearsay and are therefore inadmissible under the Texas Rules of Evidence. TEX. R. EVID. 801(d); 802. |
| Townsend Affidavit, at para. 3 ("Specifically, these 'investigators' pretended to be trying to serve a warrant upon me for an alleged crime of fraud and identity theft in New York that I had nothing to do with."). | This is irrelevant to the allegations before the Court. TEX. R. EVID. 401, 402. |
| Townsend Affidavit, at para. 3 ("I later found out that the names of the alleged co-conspirators in this made-up crime who these 'investigators' asked me about were also clients of The Buzbee Law Firm and these 'investigators' were really trying to pry information from me about them."). | These accusations completely lack any factual basis or support and are thus not probative of what they suggest. *Bavishi*, 2011 WL 3525417, at *7. |
| Townsend Affidavit, at para. 4 ("I believe the purpose of this visit was to harass and intimidate me and my family. This visit scared me and my family."). | This is an opinion and factual conclusion and is unsupported by evidence. *Bavishi*, 2011 WL 3525417, at *7. |
| De La Cruz Affidavit, at para. 6 ("On November 25, 2024, at 1:09 PM, I received a voicemail on my cell phone from a woman stating she was doing 'research' on The Buzbee Law Firm. The | Out of court statements offered for the truth of the matter asserted are inadmissible hearsay under the Texas Rules of Evidence. TEX. R. EVID. 801(d); 802. |

| | |
|---|---|
| caller identified herself as 'Chrissy', and the call came in from phone number: 518-662-0616."). | |
| De La Cruz Affidavit, at para. 7 ("When she answered, Chrissy explained she was doing 'opposition research' on Tony Buzbee and The Buzbee Law Firm."). | This is inadmissible hearsay with no exception. TEX. R. EVID. 801(d); 802. |
| De La Cruz Affidavit, at para. 7 ("Chrissy said she did not know the identity of the ultimate client.") | Once again, this is inadmissible hearsay with no exception and should be excluded. TEX. R. EVID. 801(d); 802. |
| De La Cruz Affidavit, at para. 8 ("She asked me about the conditions at The Buzbee Law Firm, whether I saw any poor treatment of employees or clients, whether I saw anything out of the ordinary for a law firm, and the reason why I stopped working for The Buzbee Law Firm. She stated she had been contacting several employees of The Buzbee Law Firm. She also asked if I had read the recent allegations against Tony Buzbee... she mentioned extortion and his treatment of clients."). | Inadmissible hearsay with no exception. TEX. R. EVID. 801(d); 802. |

| | |
|---|---|
| De La Cruz Affidavit, at para. 8 ("She kept probing me about what I witnessed as an employee of The Buzbee Law Firm and was quite suggestive in her questioning by feeding me certain phrases, such as discrimination, the treatment of women, and handling of clients. She was pushy and was pressing hard for some sort of negative information about Tony Buzbee and/or The Buzbee Law Firm. She quickly ended our conversation when it became clear I had not witnessed anything damaging that would assist in her research."). | Inadmissible hearsay with no exception. TEX. R. EVID. 801(d); 802.<br><br>Further, this is an opinion and factual conclusion and is unsupported by evidence. *Bavishi*, 2011 WL 3525417, at *7. |
| De La Cruz Affidavit, at para. 9 ("My conversation with the investigator left me with no doubt that she was searching for persons with either potential claims against The Buzbee Law Firm or who might have disparaging things to say about Tony Buzbee and/or the Buzbee Law Firm."). | This is clearly an opinion that is proffered as a factual conclusion. *Bavishi*, 2011 WL 3525417, at *7. It is also inadmissible hearsay. |

| | |
|---|---|
| Garza Affidavit, at para. 2 ("I learned from this post that this woman and her associates were attempting to solicit former employees of the Buzbee Law Firm related to alleged wrongful termination and harassment related cases."). | This is, once again, an opinion that is proffered as a factual conclusion. *Bavishi*, 2011 WL 3525417, at *7. |
| Garza Affidavit, at para. 3 ("On November 26, 2024, I received a call from who I believe is the same investigator Mr. Buzbee posted about the day prior. She identified herself as an employee of Lex Intelligence and that she was conducting investigations on the Buzbee Law Firm . . . . During the phone call, she informed me she was hired by New York counsel to investigate potential claims related to Buzbee Law Firm's former employees.). | These claims are proffers of inadmissible hearsay under the Texas Rules of Evidence. TEX. R. EVID. 801(d); 802. <br><br> This is clearly an opinion that is proffered as a factual conclusion. *Bavishi*, 2011 WL 3525417, at *7. |
| Garza Affidavit, at para. 3 ("It was clear her unsolicited communication with me was for the purposes of soliciting a wrongful termination or harassment claim related to my employment at the Buzbee Law Firm."). | Once again, this is a factual conclusion predicated solely upon the affiant's opinion. *Bavishi*, 2011 WL 3525417, at *7. This is also based on inadmissible hearsay. |
| Garza Affidavit, at para. 4 ("I asked her to discontinue her shake down efforts against Tony Buzbee and the Buzbee Law Firm and ended the call."). | Factual conclusions and subjective beliefs unsupported by evidence are not probative of any fact. *Bavishi*, 2011 WL 3525417, at *7. |



| | |
|---|---|
| Faubus Affidavit, at para. 5 ("The unknown caller left a voicemail message stating that she was conducting 'due diligence on a law firm that [I] used to work at' and requested I give her a call back at the New York, New York number stated above and wanted to chat."). | This is inadmissible hearsay with no exception. TEX. R. EVID. 801(d); 802. |
| Faubus Affidavit, at para. 6 ("She called me back and wanted me to share my experiences about the Buzbee Law Firm."). | This is also inadmissible hearsay with no exception. TEX. R. EVID. 801(d); 802. |
| Faubus Affidavit, at para. 7 ("She was not interested in any positive comments about the Buzbee Law Firm but wanted to know if there was anything controversial that happened while I was working at the firm."). | Once again, this is inadmissible hearsay with no exception. TEX. R. EVID. 801(d); 802.<br><br>Opinions that are unsupported by evidence are not probative of any fact. *Bavishi*, 2011 WL 3525417, at *7. |
| Buzbee Affidavit, at para. 5 ("The unknown caller left a voicemail message stating that she was conducting 'due diligence' on The Buzbee Law Firm and requested I give her a call back at the New York, New York number stated above."). | This is inadmissible hearsay with no exception. TEX. R. EVID. 801(d); 802. |

| | |
|---|---|
| Guevara Affidavit, at para. 4 ("On December 2, 2024 at 9:41 AM an unknown man stood in front of my home and took pictures with a portable electronic device."). | This is irrelevant to the matter before the Court, as there is no evidence connecting this unknown man to Quinn Emanuel. Further, this claim is speculative because it suggests that this unknown man was indeed connected to Quinn Emanuel. TEX. R. EVID. 401; 402. |
| Guevara Affidavit, at para. 5 ("On December 2, 2024 at 12:16 PM a separate unknown man lurked in front of my house with a professional grade single-lens reflex camera and tripod. Then lightly tapped on my front door. The same man then lurked for a couple of minutes on my front patio and made a telephone call.") | Once again, this is irrelevant and speculative. The is insufficient evidence to prove or even suggest that this unknown man was even connected to the first unknown man, and further that he was in any way related to Quinn Emanuel. TEX. R. EVID. 401; 402. |
| Guevara Affidavit, at para. 6 ("On December 3, 2024 I showed my neighbor the surveillance videos of the two unknown men and inquired if they were perhaps contractors that she hired. After that conversation with my neighbor I understood that the two men were not her hired contractors."). | This is irrelevant to the matter before the Court. TEX. R. EVID. 401; 402. |

| | |
|---|---|
| Guevara Affidavit, at para. 7 ("On December 3, 2024 I reviewed separate surveillance video of two men in front of the home of Robert Conklin.") | The best-evidence rule requires that the party produce the original writing or recording is required to prove its contents. TEX. R. EVID. 1002. "The best evidence rule, as applied in Texas, mandates that the only competent evidence to prove the contents of a document is the document itself." *Prudential Ins. Co. of Am. v. Black*, 572 S.W.2d 379, 380 (Tex. App.—Houston [14th Dist.] 1978, no writ). |
| Guevara Affidavit, at para. 7 ("It is my understanding that the two men were attempting to solicit Mr. Conklin for a claim against the Buzbee Law Firm."). | Factual conclusions and subjective beliefs unsupported by evidence are not probative of any fact. *Bavishi*, 2011 WL 3525417, at *7. |
| Guevara Affidavit, at para. 8 ("After reviewing the surveillance videos from both my home and Mr. Conklin's home, it appears to me that the two men in front of Robert Conklin' s home are the same two men in front of my home." | Once again, this is an opinion proffered as a factual conclusion and is unsupported by evidence. *Bavishi*, 2011 WL 3525417, at *7. |
| Fortney Affidavit, at para. 3 ("That website is now private and cannot be viewed in full. See https://www.lex-intelligence.com/about-us."). | A website's ability to be viewed is irrelevant and this proffer speculates both that the website had changed and that the owners (whoever they may be) secured it for a reason. TEX. R. EVID. 401; 402. |

| | |
|---|---|
| Fortney Affidavit, at para. 4 ("I understand from other members of the firm that several persons contacted by these investigators stated that the investigators identified Quinn Emanuel as the 'New York law Firm' that hired them, although the investigators would not reveal Quinn Emanuel's ultimate client."). | This is inadmissible hearsay, and hearsay within hearsay, under the Rules of Evidence. TEX. R. EVID. 801(d); 802. |
| Fortney Affidavit, at para. 6 ("I visited Christina S.'s page this morning and it appears to have been stripped of any<br><br>reference to Quinn Emanuel."). | This conclusion is based on the idea that there should have been a reference to Quinn Emanuel, when the evidence shows there is clearly not, and this evidence only further supports that. There is no factual basis to support these proffered conclusions. Thus, it is purely speculative and should be properly excluded. |

# VI.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Quinn Emanuel respectfully requests that the Court deny Plaintiff's TRO Application and grant its related Motion to Strike. Quinn Emanuel further requests any and all relief, at law or in equity, to which it has shown itself justly entitled.

**Dated: 12/6/2024**                    *Respectfully Submitted,*

# Bradley

By:    */s/ Robert H. Ford*
       Robert H. Ford
       TX State Bar No. 24074219
       rford@bradley.com
       Lauren Black
       Texas State Bar No. 24078979
       lblack@bradley.com
       Mary Grace Whitten
       TX State Bar No. 24143519
       mwhitten@bradley.com
       600 Travis Street, Suite 5600
       Houston, Texas 77002
       (713) 576-0366 Telephone
       (713) 576-0301 Telecopier

**ATTORNEYS FOR QUINN EMANUEL
URQUHART & SULLIVAN, LLP**

## <u>CERTIFICATE OF SERVICE</u>

I certify, pursuant to Texas Rule of Civil Procedure, that a true and correct copy of the foregoing has been served on all counsel of record for all parties on this the 6th day of December 2024, via the Court's eFiling system.



*/s/ Robert H. Ford*
Robert H. Ford

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Latisha Horn on behalf of Robert Ford
Bar No. 24074219
lhorn@bradley.com
Envelope ID: 95033608
Filing Code Description: No Fee Documents
Filing Description: Defendant's Response in Opposition to Plaintiff's
Procedurally Defective Application for TRO
Status as of 12/6/2024 1:22 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Anthony Buzbee | | tbuzbee@txattorneys.com | 12/6/2024 1:01:23 PM | SENT |
| Buzbee Law Firm | | efiling@txattorneys.com | 12/6/2024 1:01:23 PM | SENT |
| Colby Holler | | CHoller@txattorneys.com | 12/6/2024 1:01:23 PM | SENT |
| David C.Fortney | | dfortney@txattorneys.com | 12/6/2024 1:01:23 PM | SENT |
| Robert H.Ford | | rford@bradley.com | 12/6/2024 1:01:23 PM | SENT |
| Lauren Black | | lblack@bradley.com | 12/6/2024 1:01:23 PM | SENT |
| Mary GraceWhitten | | mwhitten@bradley.com | 12/6/2024 1:01:23 PM | SENT |
| Angela Davis | | adavis@bradley.com | 12/6/2024 1:01:23 PM | SENT |
| Latisha Horn | | lhorn@bradley.com | 12/6/2024 1:01:23 PM | SENT |

**Exhibit A**

Unofficial Copy Office of Marilyn Burgess District Clerk

1  Michael T. Lifrak (CA Bar No. 210846)
   Mari Henderson (CA Bar No. 307693)
2  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   865 S. Figueroa St. – 10th Floor
3  Los Angeles, CA 90017
   michaellifrak@quinnemanuel.com
4  marihenderson@quinnemanuel.com
   Telephone:   (213) 443-3000
5  Facsimile:   (213) 443-3100
6
7  *Attorneys for Plaintiff John Doe*

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/18/2024 9:13 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Sam, Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF LOS ANGELES

10

11  JOHN DOE,                          CASE NO. 24SMCV05637

12              Plaintiff,             **COMPLAINT FOR EXTORTION AND
                                       INTENTIONAL INFLICTION OF
13       vs.                           EMOTIONAL DISTRESS**

14  THE BUZBEE LAW FIRM, ANTHONY G.    DEMAND FOR JURY TRIAL
    BUZBEE,
15
                Defendants.
16

17

18

19

20

21

22

23

24

25

26

27

28

Complainant John Doe, by and through his attorneys, brings this Complaint against Defendants The Buzbee Law Firm and Anthony G. Buzbee for extortion, intentional infliction of emotional distress, and a civil harassment restraining order.

### INTRODUCTION

1.     Plaintiff John Doe is the victim of a scheme by Defendant Anthony G. Buzbee and his firm, The Buzbee Law Firm (collectively, "Buzbee" or "Defendants"), who are shamelessly attempting to extort exorbitant sums from him or else publicly file wildly false horrific allegations against him. Defendants have threatened to unleash entirely fabricated and malicious allegations of sexual assault—including multiple instances of rape of a minor, both male and female—against Plaintiff if he refuses to comply with their demands. These baseless accusations are nothing more than a weapon in a calculated plot to destroy Plaintiff's high-profile reputation for profit, despite the complete absence of any factual basis for such claims.

2.     This is not the first time Defendants have been involved in an extortionate scheme to extract money from high profile individuals by threatening baseless legal action. Just three years ago, the Federal Bureau of Investigation ("FBI") opened an extortion investigation in connection with Defendants' clients pursuit of football player Deshaun Watson for allegations of sexual misconduct. According to Watson's then-attorney, the FBI investigated "whether one of Buzbee's claimants against Watson had committed extortion in the way they were demanding money…or what they would do if he didn't pay up."[1] Ultimately, the criminal cases Defendant threatened to pursue against Watson were rejected by two separate grand juries and were never criminally prosecuted, further evidence that the baseless sexual misconduct claims in Defendants' demand letter would not have held up in civil court either. As an example of how the Defendants use the media as a weapon to further exert pressure on his high-profile targets, Buzbee publicly proclaimed that he would submit affidavits from the alleged victims to police, but he never did.[2]

---

[1]   https://www.khou.com/article/news/local/deshaun-watson-fbi/285-3b4e5cae-7c8e-4b30-bac3-cf60ab2ed00d

[2]   https://abc13.com/deshaun-watson-houston-texans-quarterback-lawsuits-civil-sued/10448283/

Unofficial Copy Office of Marilyn Burgess District Clerk

3.     Defendants have also taken up representations against high profile individuals who were targeted or set up by individuals seeking a pay day.  For example, Defendants brought suit against rappers Yella Beezy and Chris Brown after four men snuck back stage to provoke them into an altercation.[3]

4.     In addition to shaking down high-profile individuals with dubious claims he knows will not stand up in court, Buzbee often employs unscrupulous litigation tactics after filing suit.

5.     In one notable case, a federal court invalidated a referral agreement between Buzbee and a known fact witness in the case, which entitled the witness to 15% of the gross attorneys' fees awarded if the plaintiff was victorious. *Haywood v. Univ. of Pittsburgh*, No. 11-1200, 2012 U.S. Dist. LEXIS 179045, at *2. The Court held that such agreements were "invalid as a matter of public policy" and prohibited Buzbee from paying the witness any fee.

6.     In another unscrupulous move, to get a case heard in a favorable venue, Buzbee submitted "venue pleadings and [a client] affidavit" characterized as "at best, incorrect, and at worst, fraudulent." *See In re Lowe's Home Ctrs., LLC*, 531 S.W.3d 861 (Tex. App. 2017). After the defendant's counsel notified Buzbee's firm "that his clients misrepresented facts" that "affected the trial court's venue determination," Buzbee unilaterally nonsuited the case and refiled a substantially similar case in another favorable venue.

7.     Buzbee has also allegedly used his connections when navigating the judicial system, for his personal benefit, in a criminal case brought against him.  Buzbee was arrested in March of 2016 for driving while under the influence. But Harris County District Attorney Devon Anderson personally dismissed the case after Buzbee completed pretrial intervention.

8.     The dismissal raised significant concerns because having the District Attorney sign off on the dismissal was "exceedingly rare;" the pretrial intervention program generally lasts a year while Buzbee's cased was dismissed after 8 months; and there did not appear to be a formal contract for the DWI pretrial diversion program in Buzbee's file. Houston Mayor Sylvester Turner used the controversial dismissal as part of a political attack ad in Mayor Turn's successful defense

---

[3]  https://www.nbcdfw.com/news/local/chris-brown-dallas-rapper-yella-beezy-sued-over-alleged-assault-in-texas/3598675/

-2-

against Buzbee's run for mayor in 2019, accusing lawyers from Buzbee's firm of donating to

District Attorney Anderson while Buzbee's DWI case was pending.

9.      Earlier in his career, Buzbee was selected to serve as briefing attorney for United

States District Court Samuel B. Kent. Buzbee then gained a reputation for being on Judge Kent's

favored list.

10.     In 2001, 85 of Judge Kent's cases being handled by Buzbee's firm were transferred

to another District Court Judge "In the interest of the improved administration of justice." Judge

Jerry Buchmeyer, then Chief Judge of the Northern District of Texas commented that the transfer

was uncommon, unusual and that he did not "think we would do that."

11.     Buzbee represented several victims of the 2005 explosion at BP's Texas refinery.

On October 6, 2006, Judge Kent entered a crucial order requiring BP's CEO to be deposed in the

case. An anonymous source reported to the press that minutes after Judge Kent ordered the

deposition, Judge Kent jumped in Buzbee's Aston Martin to go to lunch. Within weeks of Judge

Kent's order, Buzbee settled his cases with BP.

12.     In 2009, Judge Kent pled guilty to obstruction of justice and acknowledged that he

had nonconsensual sexual contact with two women. Judge Kent was sentenced to 33 months in

prison. Although four articles of impeachment were passed by the House of Representatives

against Judge Kent, Judge Kent resigned before his trial in the Senate concluded.

13.     Defendants pursue claims they know will not stand up in a court of law, but target

high profile individuals who fear being tried in the court of public opinion could be worse than

going along with the racket.  Defendants do so through a combination of sending a demand letter

with vague allegations of horrific conduct, and then amplify the message broadly in the press.

Earlier this year, Defendants targeted football player Brandon McManus, in what Mr. McManus's

attorney deemed an "extortionate plot," again threatening a public sexual assault lawsuit.[4] The

---

[4]   https://www.outkick.com/sports/attorney-commanders-kicker-brandon-mcmanus-sexual-assault-extortion

claims Defendant threatened to file in court if Mr. McManus did not pay were investigated by the

National Football League, who found "insufficient evidence" for the claims and closed their case.[5]

14.     Now, in a fact pattern eerily similar to what Mr. Watson, Mr. McManus, and other

high-profile targets were subjected to, Plaintiff is on the receiving end of another one of

Defendants' extortionate plots.

15.     Defendants have an established pattern of making threats and then using third

parties to contact the extortion victim, thereby acting as puppet masters, orchestrating their

extortion plots from behind the scenes.  They follow a clear playbook: fabricate outrageous

allegations, send a threatening demand letter through intermediaries, and weaponize the media to

destroy their victims' reputations if they do not pay.  This tactic applies relentless pressure while

allowing Defendants to distance themselves from direct involvement, making their extortion even

more insidious.  By pulling the strings through third parties, Defendants not only escalate the

intimidation but also shield their own actions from scrutiny, amplifying the harm to their victims

while cloaking themselves in plausible deniability.  Not anymore.

16.     In the wake of explosive allegations against Sean Combs (a/k/a "P. Diddy," a/k/a

"Puff Daddy," a/k/a "Diddy," a/k/a "PD," and a/k/a "Love") in lawsuits filed by eight women and

one man, resulting in his indictment for racketeering, sex trafficking by force, and transportation

for purposes of prostitution, Defendants have managed to find some 120 plaintiffs (half male and

half female), including 25 minors, who claim to have been sexually assaulted by Combs and

others.

17.     Much like other revelations in the #MeToo Movement, the eight women and one

man suing Combs sought to find justice by proceeding in their own names in a court of law.

Meanwhile, Defendants have created a new pocket industry that capitalizes on the bravery of those

victims who came forward to shakedown innocent celebrities, politicians, and businesspeople with

an army of masked accusers.  Through use of a hotline advertised at press appearances and on a

website, Defendants leveraged the media attention from the Combs allegations coming to life to

---

[5]  https://www.espn.com/nfl/story/_/id/41535426/nfl-discipline-kicker-brandon-mcmanus-source-says

1  send the message that there is money to be made by calling the hotline, and nobody would ever

2  have to know it was you.

3      18.    With Combs behind bars, and payment unlikely to be forthcoming any time soon,

4  Defendants devised a scheme to obtain payments through the use of coercive threats from anyone

5  with any ties to Combs—no matter how remote—who was of sufficient means and reputation for

6  Defendants to expect they would pay an exorbitant sum of money rather than be named.

7  Defendants specifically targeted high-profile individuals who would suffer immeasurable loss

8  from being publicly accused of committing sex crimes, including drugging and raping minors,

9  even if those allegations are false.

10      19.    In order to effectuate their campaign of widespread extortion and extract the

11  maximum amount of money from as many high-profile individuals as possible, Defendants

12  concocted a narrative alleging the worst harm imaginable, including stories of alleged child

13  victims, both male and female, who were as young as nine years old at the time of their rape.

14      20.    Through a series of media statements and lawsuits describing the acts of unnamed

15  individual defendants, Buzbee made his threats to his celebrity targets clear—pay exorbitant sums

16  of money to remain anonymous, or be publicly named and shamed, offered up to the FBI for

17  criminal investigation, and accused of vile acts in statements to the media.

18      21.    After making the consequences for noncompliance with his shakedown clear,

19  Defendants closed in on their targets, sending demand letters to high-profile individuals, including

20  Plaintiff John Doe, accusing them of participating in Combs' crimes.

21      22.    In November 2024, Defendants made demands by written correspondence

22  ("Extortion Demands") to Plaintiff containing false allegations of vile conduct by Plaintiff, who

23  Extortion Demands characterize as having been friends with Mr. Combs based on the fact that the

24  two often attended similar events frequented by celebrities.

25      23.    The Extortion Demands alleged that Plaintiff raped multiple minors, both male and

26  female, who had been drugged at parties hosted by Combs.

27

28

24.     In the Extortion Demands, Defendants further threatened to find an untold number of other "victims" to bring claims similar against Plaintiff, that because the specious allegations in the demands had been made, there would certainly be more.

25.     Defendants put a ticking clock on the Extortion Demands, threatening to "take a different course" if Plaintiff did not commit to a "confidential mediation" to "resolve this delicate and important matter" by the deadline.

26.     Defendants' actions violate Rule 5-100(A) of the California Rules of Professional Conduct prohibiting attorneys from "threaten[ing] to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute."

27.     Plaintiff presently faces a gun to his head—either repeatedly pay an exorbitant sum of money to stop Defendants from the wide publication of wildly false allegations of sexual assault that would subject Plaintiff to opprobrium and irreparably harm Plaintiff's reputation, family, career and livelihood, or else face the threat of an untold number of civil suits and financial and personal ruin.  The theme of Defendants' statements and correspondence is the immediate and extensive threat of exposure if Plaintiff fails to make a sufficient offer of money. This is textbook extortion.

28.     Buzbee pretends to be speaking truth to power, but that is far from the truth. Defendants claim to be investigating the facts, but the reality is they are finding deep pockets and trying to smear all of them with the same brush.  It is a cynical extortion scheme that is dressed up in vindicating victims of actual sexual abuse.  Defendants corrupting this righteous cause by trying to monetize the victimization of the women who suffered at the hands of this one guy.

## PARTIES

29.     Plaintiff JOHN DOE is a celebrity and public figure who resides in Los Angeles, California.  Plaintiff brings this action under the pseudonym "John Doe" to avoid the irreparable harm to reputation that he seeks to prevent though this action. Plaintiff will disclose his identity to the Court through a sealed, *in camera* filing or as the Court otherwise deems appropriate.

30.     Defendant THE BUZBEE LAW FIRM is, on information and belief, a professional corporation with its principal place of business in the Houston, Texas.

31.     Defendant ANTHONY G. BUZBEE is, on information and belief, an attorney licensed to practice in the State of Texas and the State of New York, and is the owner of THE BUZBEE LAW FIRM.  THE BUZBEE LAW FIRM and ANTHONY G. BUZBEE may hereinafter be referred to collectively as "Buzbee."

## JURISDICTION AND VENUE

32.     The Court has personal jurisdiction over Defendants in this action.  The extortionate acts of Defendants took place in California where Plaintiff resides and was located when he received the Extortion Demands.  In addition, allegations in the Extortion Demands concern events that allegedly occurred in California.

33.     Venue is proper in the County of Los Angeles.  The relevant activities of Defendants took place in the County of Los Angeles where Plaintiff resides and was located when he received the Extortion Demands.  In addition, allegations in the Extortion Demands concern events that allegedly occurred in a residence located in the County of Los Angeles.

## STATEMENT OF FACTS

**A.     Defendants Used Their Representation of Diddy Accusers to Kick Off a Campaign of Threats and Harassment Against Others Affiliated with Diddy**

34.     On September 16, 2024, Sean Combs (a/k/a "P. Diddy," a/k/a "Puff Daddy," a/k/a "Diddy," a/k/a "PD," and a/k/a "Love") was arrested and charged with racketeering, sex trafficking by force, and transportation for purposes of prostitution.

35.     On September 17, 2025, the indictment ("Combs Indictment") charging Combs was unsealed, revealing allegations that for decades, Combs "threatened, and coerced women and others around him to fulfill his sexual desires, protect his reputation, and conceal his conduct." **Exhibit A** (Combs Indictment) ¶ 1.

36.     The Combs Indictment further alleges that Combs "relied on the employees, resources, and influence of the multi-faceted business empire that he led and controlled—creating a criminal enterprise whose members and associates engaged in, and attempted to engage in, among other crimes, sex trafficking, forced labor, kidnapping, arson, bribery, and obstruction of justice."  Ex. A ¶ 2.

37.     The Combs Indictment does not mention any sexual misconduct by other "celebrities" or high profile individuals.

38.     Still, Combs' arrest and indictment set off a media frenzy, with coverage by all major new outlets regarding speculation of what other celebrities may have been involved in the parties described by the Combs Indictment.

39.     Any association with Combs became toxic.  Other members of the entertainment industry were quick to make public statements condemning Combs and distancing themselves from him.

40.     Trading off the immense media coverage that came from the Combs Indictment, on September 27, 2024, Buzbee posted to Instagram that The Buzbee Law Firm would be acting "as Lead Counsel to pursue claims on behalf of more than fifty individuals who suffered sexual assault and abuse at the hands of Sean 'Diddy' Combs and his cohorts."  Buzbee ominously warned that "*many other individuals will be implicated*."  **Exhibit B** (Buzbee Instagram Post) (emphasis added).

41.     Buzbee followed up a press release on September 29, 2024 announcing that he would be holding a press conference where "information will be made available for the first time to the public regarding claims made by victims against Sean 'Diddy' Combs *and other alleged perpetrators where rape, sexual assault, and sexual exploitation are alleged*."  The press release continued, "Details provided at the conference will include information regarding *other potential defendants*."  The press release also included the following quote attributed to Defendant Buzbee: "This is an important matter that we intend to aggressively pursue.  We will leave no stone unturned to find all potentially liable parties, to include any individual or entity who participated in or benefitted from this egregious behavior."  **Exhibit C** (Buzbee Press Release) (emphasis added).

42.     On October 1, 2024, Defendants held a press conference in which Buzbee warned about the consequences of refusing to settle with his clients out of court.[6]  With a banner showing

---

[6]  https://www.fox26houston.com/video/1525043

COMPLAINT FOR EXTORTION

the number to a hotline for new claimants, Buzbee made the following comments with the intent

to send a clear message and shakedown high profile individuals who had not yet been implicated

in Combs' alleged crimes:

a. "We will find the silent accomplices.  We will expose the enablers who enabled this conduct behind closed doors.  We will pursue this matter who the evidence implicates."  **Exhibit D** (Oct. 1, 2024 Press Conference Tr.) 2:17-21.

b. "We now represent 120 individuals who intend to bring civil claims in civil court against Sean "Diddy" Combs, as well as claims against many other individuals and entities that we will name as defendants as we file these individual cases.  And you should know, to the extent the clients feel comfortable, we also intend to make these individuals available to the authorities, specifically to the FBI.  Ex. D 3:9-17.

c. "Now I know this.  Many of you came here thinking or hoping or perhaps believing that I may start naming names.  Well, that day will come, but it won't be today.  **The day will come when we will name names other than Sean Combs.**  And there's a lot of names.  Um, it's a long list already.  And of course, I already know who some of these individuals are."  Ex. D 11:20-12:5.

d. "[W]hat we've been told are names that will shock you.  These are individual cases.  There are indeed other perpetrators involved.  They will be revealed when that particular individual case is ready to be filed.  They already know who they are.  And I'm talking here not just about the cowardly and complicit bystanders.  That is, those people we know watched this behavior occur and did nothing.  I'm talking about the people that participated, encouraged, egged it on.  They know who they are.  I call them the facilitators of foul play.  Willing participants in vile conduct.  **As we identify them, each will be part of this case as defendants**."  Ex. D 12:10-13:1.

e. "These people who know who they are should just come forward now.  I would imagine as we speak here, there are a myriad of people who are very nervous.  You can't hide skeletons in the closet forever."  Ex. D 14:5-10.

f. "We welcome the FBI or any authority who wants to come to us, and we're going to make that available to these victims, because I think that's important.  My suspicion is based on talking with these folks is that that, you know, the FBI is just not aware of these people.  The FBI has talked to some of these folks.  And I'm going to try to make - - encourage the victims to in fact talk to the FBI because I think they have some very important things to say."  Ex. D 31:10-19.

-9-

43.    Notwithstanding the rhetoric, Defendants intentionally failed to identify at the press conference who these amorphous "perpetrators" might be—nor have they done so since.  The purpose of his ominous press conference was clear: extract lucrative pre-filing settlements from these perpetrators, or else he would announce names.

44.    The next day, in an interview with Law and Crime news on October 2, 2024[7], Buzbee made clear the scope of his scheme, claiming that he would "find and ferret out all the people involved, facilitated, benefitted from, profited from, and make sure that they are parties in these cases as we file them.  **Exhibit E** (Oct. 2, 2024 Interview Tr.) 10:5-8.  Buzbee set the stage to bring claims against his victims despite an absence of evidence through the use of intimidation, stating "I have no doubt that there are people right now who know that they were somehow involved in this who are now scrubbing their social media, who are searching their memories, who are deleting their texts, probably deleting pictures and trying to distance themselves from this.  And we know who they are or we will find out who they are.  So, you know, this is—this is not something that's going to happen overnight, but I think we're at the tip of the iceberg here."  *Id.* at 10:10-19.  And to those who refused to cooperate, Buzbee made the consequences crystal clear: "What I'm hoping is, and I'm encouraging my clients . . . [to] make themselves available to the federal authorities, to get—tell their story and I expect the indictment will grow."  *Id.* at 13:17-21.

45.    One day later, Buzbee told Steven Smith in an interview[8] that he intended to "make sure I capture a wide net and capture everybody involved and that's what I'm – that's what I'm trying to do.  And part of the – part of the purpose of the press conference was to encourage people that witnessed some of these events to come forward, and that's happening now."  **Exhibit F** (Oct. 3, 2024 Smith Interview Tr.) 20:5-11.

46.    Also on October 3, 2024, in an interview with Chris Hansen[9], Buzbee reiterated his threats to targets who refused to cooperate:

---

[7]    https://www.youtube.com/watch?v=aK3G5asaDhs

[8]    https://www.youtube.com/watch?v=nAqQn7NskFc

[9]    https://www.youtube.com/watch?v=0gM0S-SgNnw

a. "I expect that some of the, the, the people that were the closest to Sean Combs, who are with him at all times, will probably talk. I think, you know, the federal government is really good, as you know, at getting people who are not the targets to talk. I expect that will happen. I expect the indictment and the charges in the indictment will grow. I expect other people will be implicated, so I think that, like I say, I think we're only seeing the tip of the iceberg here." **Exhibit G** (Oct. 3, 2024 Hansen Interview Tr.) 21: 16-22:3.

b. "I call it the, you know, the the facilitators. You know, obviously the people that participated in this are terrible, terrible actions and terrible conduct and, and should be prosecuted and put underneath the jail." Ex. G 24:3-7.

c. "But you know what really irks me are the people that saw this happening, that enjoyed, enjoyed themselves while it was happening, that fancy themselves as upstanding people and knew this was happening and continue to go to these parties knowing this was going to happen. And they were in my view just as complicit. And - - and whether they, you know, they can be criminally charged or even civilly sued, people should know." Ex. G 24:8-17.

47.    Buzbee presented himself as a crusader for truth and justice but in reality, he is using his public platform to enable him to extract settlements from high profile individuals.

48.    For example, On October 7, 2024, Buzbee told TMZ in an interview that he had sent demand letters out to "a handful of individuals, many of which you've heard of before, and we'll continue to do that," and that they would "aggressively" go after anyone who did not settle out of court—punishing those who try to defend their name and reputation, rather than making a quick payout out of fear their reputation would be tarnished. **Exhibit H** (Oct. 7, 2024 TMZ Interview Tr.). Indeed, he went so far as to claim "[a] lot of people allowed it to go on, said nothing, didn't intervene, maybe benefited from it, profited from it. All of these individuals and entities, in my view, have exposure here." *Id.* He goes onto say "If you were attending one of these 'parties,' if you will, and you attended before or you knew what was going to happen, . . . in my view, you have a problem." *Id.* Buzbee made good on his threat and sent Plaintiff the Extortion Demands after this statement.

COMPLAINT FOR EXTORTION

49.     The same day, Buzbee also told Shaun Atwood in an interview[10] that his "view is if there were people present, had been at these parties in the past who knew that this was being used and put it in people's drinks or perhaps being put in oil that was rubbed, you know, people rubbing it up on each other, and they allowed that to occur, participated in that, sat there and watched it, didn't intervene or kept it quiet, as far as I'm concerned, you're just as complicit as the individual who coerced and engaged in some sort of sexual exploitation."  **Exhibit 1** (Oct. 7, 2024 Atwood Interview Tr.) 14:8-18.  Buzbee also disclosed the success of his strategy: "I will write a letter and usually when I write people a letter, you know, I've been doing this for almost 30 years, usually I get people's attention when I write them a letter."  *Id.* at 25:5-9.

50.     On October 14, 2024, Defendants began filing lawsuits on behalf of anonymous plaintiffs, referred to as "Jane Doe" or "John Doe," claiming to have been brutally assaulted by Combs and others.  Defendants described other individuals alleged to be involved in vague terms with no identifying details and used language to make clear that the complaint could be amended to add any individual who refused to pay Defendants as a named defendant.

A.     **Defendants Targeted Plaintiff for a Shakedown**

51.     Defendants sent Plaintiff multiple ostensibly "confidential" written demands ("Extortion Demands") in November 2024 alleging a litany of vile sexual misconduct committed by Plaintiff.

52.     The Extortion Demands falsely alleged that Plaintiff raped multiple two minors, male and female, who had been drugged at parties hosted by Combs.  The Extortion Demands were the first time Plaintiff learned of these allegations, none of which has any basis in fact.

53.     Defendants threatened in the Extortion Demands to "immediately file" a "public lawsuit" against Plaintiff repeating the same fabricated allegations unless Plaintiff agreed to resolve the matters through mediation for money.

---

[10]  https://podcasts.apple.com/il/podcast/buzbee-live-texas-lawyer-for-120-diddy-alleged-victims/id1434527138?i=1000672177342

54.     Some of the allegations were a copy and paste of the allegations in a public complaint filed by Defendants, with the obvious implication being that Defendants would amend that complaint if Plaintiff refused to cooperate.

55.     On information and belief, Defendants used identical language to put Plaintiff on notice that his name would be swapped in as one of the unnamed participants if he did not comply with Defendants' demands.

56.     In the Extortion Demands, Defendants further threatened to find an untold number of other "victims" to bring claims similar against Plaintiff, but did not indicate he had any basis to believe such "victims" exist.  This veiled threat is preceded by the following bolded sentence: "**It has been my experience that when someone does this to a victim once, the likelihood is that they have done the same or similar things to others.**" This is the only bolded sentence contained in the Extortion Demands, emphasizing its importance among all other allegations and demands.

57.     On information and belief, Defendants referenced additional "victims" to put Plaintiff on notice that Defendants would "find" additional claimants to seek payments from Plaintiff if Plaintiff did not pay out the two claimants referenced in the Extortion Demands, meaning the amount of money Defendants was seeking would balloon.

58.     The Extortion Demands also contained the web address of The Buzbee Law Firm (www.txattorneys.com) in bolded extra-large font at the top.  This website features a page dedicated to the "Sean 'Diddy' Combs Litigation" that contains the video of Defendants' October 1, 2024 press conference as well as text touting Defendants' experience "representing victims in high-stakes cases, including prominent lawsuits against various celebrities and corporations" and "approach to litigation characterized by his aggressive tactics and willingness to take on powerful opponents."

59.     Defendants put a ticking clock on the Extortion Demands, threatening to "take a different course" if Plaintiff did not commit to a "confidential mediation" to "resolve this delicate and important matter" by the deadline, giving Plaintiff a small window of time before making good on their threats.

60.     On information and belief, Defendants intended "take a different course" to be a reference to the threats he made in statements to the media, including that he would report Plaintiff to the FBI, file an untold number of civil suits, and make further statements to the media accusing Plaintiff of being a child rapist.

61.     After receiving the Extortion Demands, Plaintiff contacted Defendants to better understand the basis for the allegations made in the Extortion Demands and whether there was any evidence—or real claimants—behind those claims.  Though Defendants divulged sensitive details pertaining to claimant's accounts in the Extortion Demands and a public lawsuit, Defendants refused to provide any information, including the process for validating the claims, unless Plaintiff entered into confidentiality agreement.  Such an agreement would protect Defendants from being exposed for their own unethical and illegal conduct.

62.     After refusing to provide information supporting the legitimacy of the claims in the Extortion Demands, Defendant Buzbee appeared again on TMZ[11] to confirm that demand letters had been sent to multiple targets and threaten that if a "dialogue" fails, "we [will] just file a lawsuit."  **Exhibit J** (Nov. 14, 2024 Interview Tr.) at 3:7.  Buzbee confirmed he would be bringing claims against "other celebrities, politicians, businesspeople" because "these were very popular parties" and "this was the venue everybody wanted to be invited to." *Id.* at 2:11-19.  He warned, "if you were there and you knew somebody was being drugged because you had seen it happen in a previous party or previous situation and you didn't do anything, and you allowed it to happen, and you continued to—to enjoy yourself and part and whoop and holler and have a good time, as far as I'm concerned, you are just as liable as the individual who shipped the person in, who paid thee persons that were there, who keep them longer than they thought they were going to be there, who—who bought the drugs, who took the money out of the bank, who—who put the drugs in a little shot of either a lemon shot or some sort of champagne and participated in this egregious kind of—you're just as guilty as far as I'm concerned." *Id.* at 3:12-4:4.

---

[11]  https://www.tmz.com/2024/11/14/diddy-tony-buzbee-warns-celebrities-to-pay-lawsuits-freak-offs/

63.     The allegations in Defendants' extortionate demands are not true. Defendants are well aware, however, of the substantial, irreparable damage such false allegations would do to Plaintiff's well-earned reputation, along with the unavoidable damage to his family and the irreparable damage to his career and livelihood that would result if he made good on the threat to "publicly file" these fabricated lawsuits.

64.     Defendants' false allegations and his threats to wrongfully assassinate Plaintiff's character through the public airing of such revulsive and untrue allegations have caused Plaintiff emotional distress including anxiety and fear for himself and his family. Defendants' attempted extortion of Plaintiff for money through such untrue, lewd allegations constitutes intentional, outrageous conduct that was intended to and did in fact cause Plaintiff serious mental injury, amounting to an intentional infliction of emotional distress for which Plaintiff is entitled to recover compensatory and punitive damages.

65.     Plaintiff faces the risk of being falsely labeled with the most heinous accusations imaginable.  Such labels would permanently tarnish his reputation, subjecting him to public scorn and condemnation.  The fallout would irreparably harm his personal and professional life, destroying his career, legacy, and emotional well-being, while causing significant emotional and economic suffering.

### FIRST CAUSE OF ACTION

### (Extortion)

66.     Plaintiff repeats and re-alleges, as if fully set forth herein, the allegations of all the preceding paragraphs.

67.     Defendants sent the Extortion Demands to Plaintiff with an intent to extort consideration from Plaintiff.

68.     Defendants' actions violate Rule 5-100(A) of the California Rules of Professional Conduct prohibiting attorneys from "threaten[ing] to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute."

-15-

69.     Defendants' threats to publicly "accuse" Plaintiff of "a crime" or to "expose, or to impute to him . . . a deformity, disgrace, or crime" unless he acceded to Defendants' demand for an unspecified amount of money constitute extortion under Cal. Penal Code §§ 523, 524.

70.     As a result of Defendants' extortion, Plaintiff has suffered, and will continue to suffer, damages in an amount to be proven at trial.  Plaintiff seeks compensation for all damages and losses caused by Defendants' extortion.

## SECOND CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

71.     Plaintiff repeats and re-alleges, as if fully set forth herein, the allegations of all the preceding paragraphs.

72.     Defendants' conduct, and each part of it, was outrageous and intentional and, as Defendants well knew, was likely to inflict emotional distress on Plaintiff.

73.     As a direct and proximate result of Defendants' actions, Plaintiff in fact suffered emotional distress, causing him damage in an amount to be determined at trial.

74.     Defendants' aforementioned conduct was willful and malicious and was intended to oppress and cause injury to Plaintiff.  Accordingly, Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment and relief against The Buzbee Law Firm and Anthony G. Buzbee as follows:

1.     An award of actual damages in an amount to be proven at trial;

2.     An award of punitive damages;

3.     Reasonable costs and attorneys' fees pursuant to applicable law;

4.     Pre- and post-judgment interest as applicable; and

5.     Any other relief the Court deems just and appropriate.

COMPLAINT FOR EXTORTION

1    **REQUEST FOR JURY TRIAL**

2        Plaintiff hereby requests a jury trial on all issues triable thereby.

3

4    DATED:  November 18, 2024        Respectfully submitted,

5                                   QUINN EMANUEL URQUHART & SULLIVAN, LLP

6

7                               By: _____

                                 Michael T. Lifrak

8                                     Attorneys for John Doe

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-

# EXHIBIT A

Unofficial Copy Office of Marilyn Burgess District Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA | **SEALED INDICTMENT** |
| v. | 24 Cr. |
| SEAN COMBS,<br> a/k/a "Puff Daddy,"<br> a/k/a "P. Diddy,"<br> a/k/a "Diddy,"<br> a/k/a "PD,"<br> a/k/a "Love,"<br><br>                    Defendant. | **24 CRIM 542** |

**COUNT ONE**
**(Racketeering Conspiracy)**

The Grand Jury charges:

Overview

1.      For decades, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy,"

a/k/a "PD," a/k/a "Love," the defendant, abused, threatened, and coerced women and others around

him to fulfill his sexual desires, protect his reputation, and conceal his conduct.  To do so, COMBS

relied on the employees, resources, and influence of the multi-faceted business empire that he led

and controlled—creating a criminal enterprise whose members and associates engaged in, and

attempted to engage in, among other crimes, sex trafficking, forced labor, kidnapping, arson,

bribery, and obstruction of justice.

2.      SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD,"

a/k/a "Love," the defendant, operated his business, headquartered at various times in Manhattan

and Los Angeles, under a variety of United States-based corporate entities, including Bad Boy

Entertainment, Combs Enterprises, and Combs Global (collectively, the "Combs Business"). Corporate entities in the Combs Business included, among other things, record labels, a recording studio, an apparel line, an alcoholic spirits business, a marketing agency, and a television network and media company.

3.      At all times relevant to this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, engaged in a persistent and pervasive pattern of abuse toward women and other individuals. This abuse was, at times, verbal, emotional, physical, and sexual. As part of his pattern of abuse, COMBS manipulated women to participate in highly orchestrated performances of sexual activity with male commercial sex workers. At times, COMBS, and others acting at his direction, made arrangements for women and commercial sex workers to fly to COMBS' location. COMBS ensured participation from the women by, among other things, obtaining and distributing narcotics to them, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation and violence.

4.      Physical abuse by SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, was recurrent and widely known. On numerous occasions from at least in or about 2009 and continuing for years, COMBS assaulted women by, among other things, striking, punching, dragging, throwing objects at, and kicking them. These assaults were, at times, witnessed by others and included one instance at a Los Angeles hotel in or about March 2016, which was captured on video and later publicly reported, where COMBS kicked, dragged, and threw a vase at a woman as she was attempting to leave. When a member of the hotel security staff intervened, COMBS attempted to bribe the staff member to ensure silence.

2

COMBS' violence was also not limited to these women. It extended to his employees, witnesses to his abuse, and others.

5.    SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, used the Combs Business, including certain employees, to carry out, facilitate, and cover up his abuse and commercial sex. Those employees—including security staff, household staff, personal assistants, and high-ranking supervisors—and other close associates acted as COMBS' intermediaries, and their conduct was facilitated and assisted by COMBS' control of the Combs Business.

<u>The Combs Enterprise</u>

6.    From at least in or about 2008, through on or about the date of the filing of this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, and others known and unknown, were members and associates of a criminal organization (the "Combs Enterprise" or the "Enterprise"). Members and associates of the Combs Enterprise engaged in, and attempted to engage in, among other activities, sex trafficking, forced labor, interstate transportation for purposes of prostitution, coercion and enticement to engage in prostitution, narcotics offenses, kidnapping, arson, bribery, and obstruction of justice.

7.    The Combs Enterprise, including its leadership, its members, and its associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity. The Combs Enterprise consisted of: (i) SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant; (ii) entities within the Combs Business, including but not limited to Bad

Boy Entertainment, Combs Enterprises, and Combs Global; (iii) individuals employed by and associated with the Combs Business; and (iv) others known and unknown.

8.    The Combs Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Combs Enterprise.  The Combs Enterprise was engaged in, and its activities affected, interstate and foreign commerce.  The Combs Enterprise operated in the Southern District of New York and elsewhere.

9.    At all times relevant to this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, was the leader of the Combs Enterprise.

10.    SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, and others known and unknown, participated in unlawful and other activities related to the conduct of the Combs Enterprise's affairs.  These individuals included certain Combs Business employees, such as members of COMBS' security staff, household staff, personal assistants, and high-ranking supervisors, as well as other close associates of COMBS.

<u>Purposes of the Combs Enterprise</u>

11.    The purposes of the Combs Enterprise included the following:

a.    Operating a global business in the media, entertainment, and lifestyle industries, including, among other things, record labels, a recording studio, an apparel line, an alcoholic spirits business, a marketing agency, and a television network and media company;

b.    Preserving, protecting, promoting, and enhancing the power, reputation, and brand of SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, as a musician, entrepreneur, and figure in the entertainment industry;

Unofficial Copy Office of Marilyn Burgess, District Clerk

c.    Enriching members and associates of the Enterprise, including its leader, COMBS, and in particular those who demonstrated loyalty to COMBS and willingness to conceal his crimes;

d.    Preserving, protecting, promoting, and enhancing the power of the Combs Enterprise, including the power of its leader, COMBS, through violence, use of firearms, threats of violence, coercion, and verbal, emotional, physical, and sexual abuse;

e.    Fulfilling the personal desires of COMBS, particularly those related to COMBS' sexual gratification, including through the exploitation of women and the use of commercial sex workers;

f.    Enabling COMBS and other members and associates of the Combs Enterprise to engage in unlawful acts of violence, including sexual violence; sex trafficking; forced labor; interstate transportation for purposes of prostitution; coercion and enticement to engage in prostitution; narcotics distribution; and other crimes, and concealing the commission of such acts;

g.    Securing absolute loyalty from members of the Combs Enterprise, including through acts of violence and threats; and

h.    Protecting the Combs Enterprise and its members and associates, including COMBS, from detection and prosecution by law enforcement authorities through acts of intimidation, manipulation, bribery, and threats of retaliation against individuals who witnessed the crimes committed by members and associates of the Enterprise.

<u>Means and Methods of the Enterprise</u>

12.    Among the means and methods by which SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, and other members and

Unofficial Copy Office of Marilyn Burgess District Clerk

associates of the Combs Enterprise conducted and participated in the conduct of the affairs of the Combs Enterprise included the following:

      a.     COMBS, and other members and associates of the Combs Enterprise, wielded the power and prestige of COMBS' role at the Combs Business to intimidate, threaten, and lure female victims into COMBS' orbit, often under the pretense of a romantic relationship. COMBS then used force, threats of force, and coercion, to cause victims to engage in extended sex acts with male commercial sex workers that COMBS referred to as, among other things, "Freak Offs." Freak Offs were elaborate and produced sex performances that COMBS arranged, directed, masturbated during, and often electronically recorded. In arranging these Freak Offs, COMBS, with the assistance of members and associates of the Combs Enterprise, transported, and caused to be transported, commercial sex workers across state lines and internationally. Freak Offs occurred regularly, sometimes lasted multiple days, and often involved multiple commercial sex workers. During Freak Offs, COMBS distributed a variety of controlled substances to victims, in part to keep the victims obedient and compliant. Sometimes unbeknownst to the victims, COMBS kept videos he filmed of victims engaging in sex acts with commercial sex workers. After Freak Offs, COMBS and the victims typically received IV fluids to recover from the physical exertion and drug use.

      b.     Members and associates of the Combs Enterprise, including high-ranking supervisors, security staff, household staff, personal assistants, and other Combs Business employees, facilitated the Freak Offs by, among other things, booking hotel rooms for the Freak Offs; stocking the hotel rooms in advance with the required Freak Off supplies, including controlled substances, baby oil, lubricant, extra linens, and lighting; cleaning the hotel rooms after the Freak Offs to try to mitigate room damage; arranging for travel for victims, commercial sex

workers, and COMBS to and from Freak Offs; resupplying COMBS with requested supplies; delivering large sums of cash to COMBS to pay the commercial sex workers; and scheduling the delivery of IV fluids. In or about March 2024, during searches of COMBS' residences in Miami, Florida and Los Angeles, California, law enforcement seized various Freak Off supplies, including narcotics and more than 1,000 bottles of baby oil and lubricant.

        c.      COMBS subjected victims to physical, emotional, and verbal abuse to cause the victims to engage in Freak Offs. COMBS maintained control over his victims through, among other things, physical violence, promises of career opportunities, granting and threatening to withhold financial support, and by other coercive means, including tracking their whereabouts, dictating the victims' appearance, monitoring their medical records, controlling their housing, and supplying them with controlled substances. During and separate from Freak Offs, COMBS, among other things, hit, kicked, threw objects at, and dragged victims, at times, by their hair. These assaults often resulted in injuries that took days or weeks to heal. COMBS also threatened victims' careers and livelihoods, including if they resisted participating in Freak Offs. Victims believed they could not refuse COMBS' demands without risking their financial or job security or without repercussions in the form of physical or emotional abuse. COMBS also used the sensitive, embarrassing, and incriminating recordings that he made during Freak Offs as collateral to ensure the continued obedience and silence of the victims.

        d.      Members and associates of the Combs Enterprise, including COMBS' security personnel, at times carried firearms. On more than one occasion, COMBS himself carried or brandished firearms to intimidate and threaten others, including victims of and witnesses to his abuse. In or about March 2024, during searches of COMBS' residences in Miami, Florida and

Los Angeles, California, law enforcement seized firearms and ammunition, including three AR-15s with defaced serial numbers, as well as a drum magazine.

      e.    Members and associates of the Combs Enterprise enabled COMBS' control over victims by following his directions regarding financial payments to victims, advancing or suppressing the victims' career opportunities, and acquiring the controlled substances COMBS used to keep the victims compliant.  Members and associates of the Combs Enterprise at times witnessed COMBS' violence toward the victims, or the victims' injuries caused by Combs, without intervening.  Instead, members and associates of the Combs Enterprise helped conceal the violence and abuse by, among other things, assisting COMBS in monitoring and preventing victims from leaving locations, such as hotels or COMBS' residences.  These occasions included instances in which a victim was required to remain in hiding—sometimes for several days at a time—to recover from injuries COMBS inflicted, without being publicly observed.  Members and associates of the Combs Enterprise also assisted COMBS in locating and contacting victims who attempted to flee his abuse.

      f.    When employees, witnesses to his abuse, or others threatened COMBS' authority or reputation, COMBS and members and associates of the Enterprise engaged in acts of violence, threats of violence, threats of financial and reputational harm, and verbal abuse.  These acts of violence included kidnapping and arson.  In addition, on multiple occasions, COMBS threw both objects and people, as well as hit, dragged, choked, and shoved others.

      g.    When COMBS' authority or reputation was threatened by the possibility of negative publicity or legal or law enforcement action against him, including in or about late 2023 following public allegations of COMBS' crimes, COMBS and members and associates of the Enterprise pressured witnesses and victims, including through attempted bribery, to stay silent and

not report what they experienced or knew to law enforcement.  On phone calls, COMBS and other members and associates of the Enterprise, among other things, provided these victims and witnesses with a false narrative of events in an effort to conceal COMBS' crimes.  COMBS caused these calls to be recorded on at least two occasions.

### The Racketeering Conspiracy

13.    From at least in or about 2008, through on or about the date of the filing of this Indictment, in the Southern District of New York and elsewhere, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, and others known and unknown, being persons employed by and associated with the Combs Enterprise described in paragraphs 6 through 12 of this Indictment, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Combs Enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of:

a.    multiple acts involving kidnapping, chargeable under the following provisions of state law: California Penal Code § 207 (kidnapping), California Penal Code §§ 21(a), 664 (attempt), California Penal Code § 31 (aiding and abetting), and California Penal Code § 182 (conspiracy);

b.    multiple acts involving arson, chargeable under the following provisions of state law:  California Penal Code § 451 (arson), California Penal Code §§ 21(a), 664 (attempt), California Penal Code § 31 (aiding and abetting), and California Penal Code § 182 (conspiracy);

c.    multiple acts involving bribery, chargeable under the following provisions of state law:  California Penal Code § 137(a) (bribery of a witness), California Penal Code §§ 21(a), 664 (attempt),  California Penal Code § 31 (aiding and abetting), and California Penal Code § 182 (conspiracy);

d.    multiple acts indictable under Title 18, United States Code, Section 1512 (relating to tampering with a witness, victim, or an informant);

e.    multiple acts indictable under Title 18, United States Code, Sections 1589 and 2 (relating to forced labor);

f.    multiple acts indictable under Title 18, United States Code, Sections 1591 and 2 (relating to sex trafficking);

g.    multiple acts indictable under Title 18, United States Code, Sections 2421, 2422, and 2 (relating to transportation and inducement to travel for purposes of prostitution and other illegal sexual activities); and

h.    multiple offenses involving the possession with intent to distribute, or distribution of narcotics and controlled substances, including cocaine, oxycodone, alprazolam, 3,4-Methylenedioxymethamphetamine,    4-Bromo-2,5-dimethoxyphenethylamine,    gamma hydroxybutyric acid, and ketamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), (b)(1)(E), (b)(2), and 846 (distribution and possession with intent to distribute and conspiracy to do the same), and Title 18, United States Code, Section 2 (aiding, abetting, and willfully causing).

14.    It was a part of the conspiracy that SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, agreed that a conspirator would

commit at least two acts of racketeering activity in the conduct of the affairs of the Combs Enterprise.

Notice of Special Sentencing Factor

15.    From at least in or about 2009, up to and including in or about 2018, in the Southern District of New York and elsewhere, as part of his agreement to conduct and participate in the conduct of the affairs of the Combs Enterprise through a pattern of racketeering activity, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, agreed to, in and affecting interstate and foreign commerce, knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit by any means a person, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any combination of such means, would be used to cause the person to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591(a)(1) and (b)(1).

(Title 18, United States Code, Section 1962(d).)

**COUNT TWO**
**(Sex Trafficking by Force, Fraud, or Coercion)**
**(Victim-1)**

The Grand Jury further charges:

16.    From at least in or about 2009, up to and including in or about 2018, in the Southern District of New York and elsewhere, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, in and affecting interstate and foreign commerce, knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and solicited by any means a person, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, as described in Title 18, United

11

States Code, Section 1591(e)(2), and any combination of such means, would be used to cause the person to engage in a commercial sex act, and attempted, aided and abetted, and willfully caused the same, to wit, COMBS recruited, enticed, harbored, transported, and maintained a person ("Victim-1"), and attempted, aided and abetted, and willfully caused Victim-1, to engage in commercial sex acts, knowing and in reckless disregard of the fact that Victim-1 was engaging in commercial sex acts as a result of force, fraud, and coercion.

(Title 18, United States Code, Sections 1591(a)(1), (b)(1), 1594(a), and 2.)

## COUNT THREE
### (Transportation to Engage in Prostitution)

The Grand Jury further charges:

17.    From at least in or about 2009, up to and including in or about 2024, in the Southern District of New York and elsewhere, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, knowingly transported an individual in interstate and foreign commerce with intent that the individual engage in prostitution, and attempted, aided and abetted, and willfully caused the same, to wit, COMBS transported, aided and abetted, and willfully caused the transportation of female victims and commercial sex workers in interstate and foreign commerce on multiple occasions with the intent that they engage in prostitution.

(Title 18, United States Code, Sections 2421(a) and 2.)

## FORFEITURE ALLEGATIONS

18.    As a result of committing the offense alleged in Count One of this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963, any and all interests the defendant acquired or maintained in violation of Title 18, United

States Code, Section 1962; any and all interests in, securities of, claims against, and property or contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and any and all property constituting and derived from proceeds obtained, directly and indirectly, said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

19.    As a result of committing the offense alleged in Count Two of this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1594, any and all property, real and personal, involved in, used, or intended to be used to commit or to facilitate the commission of said offense and any and all property traceable to such property; any and all property, real and personal, constituting or derived from proceeds obtained, directly or indirectly, as a result of said offense, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense and proceeds traceable to the commission of said offense.

20.    As a result of committing the offense alleged in Count Three of this Indictment, SEAN COMBS, a/k/a "Puff Daddy," a/k/a "P. Diddy," a/k/a "Diddy," a/k/a "PD," a/k/a "Love," the defendant, shall forfeit to the United States, pursuant to (i) Title 18, United States Code, Section 2428, any and all property, real and personal, constituting or derived from proceeds obtained, directly or indirectly, as a result of said offense; and any and all property, real or personal, that was used or intended to be used to commit or facilitate the commission of said offense, and (ii) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any

and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

**Substitute Assets Provision**

21.   If any of the above described forfeitable property, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 18, United States Code, Section 1594;
Title 18, United States Code, Section 1963;
Title 18, United States Code, Section 2428;
Title 21, United States Code, Section 853;
Title 28, United States Code, Section 2461.)

Damian Williams

FOREPERSON                                  DAMIAN WILLIAMS
United States Attorney

14

# EXHIBIT B

Unofficial Copy Office of Marilyn Burgess District Clerk

# Instagram

Log In   Sign Up



United States Attorney's Office
Southern District of New York

Menu

Search

**PRESS RELEASE**

## Sean Combs Charged In Manhattan Federal Court With Sex Trafficking And Other Federal Offenses

Tuesday, September 17, 2024

Share >

tonybuzbee ✓ • Follow

tonybuzbee ✓ The Buzbee Law Firm has been associated by the Ava Law Group to act as Lead Counsel to pursue claims on behalf of more than fifty individuals who suffered sexual assault and abuse at the hands of Sean "Diddy" Combs and his cohorts. This group of brave individuals include both men and women; many were minors when the abuse occurred. Some of these brave individuals reported the incidents to the police, others did not. Each individual story is gut wrenching and

2,736 likes
September 26

Log in to like or comment.

Unofficial Copy Office of Marilyn Burgess Harris County District Clerk

11/10/24, 9:33 PM Tony Buzbee ⚫ Buzbee Law Firm has been asked to join the prestigious group trial team as Lead Counsel ... claims on beh...

Case 4:25-cv-00885 Document 1-2 Filed on 01/29/25 in TXSD Page 96 of 393

# Instagram

Log In    Sign Up



# EXHIBIT C

Unofficial Copy Office of Marilyn Burgess District Clerk

4:41

TONYBUZBEE
**Posts**

Follow

**tonybuzbee** ✔
JPMorgan Chase Tower

· · ·

## FOR IMMEDIATE RELEASE:

*The Buzbee Law Firm and AVA Law Group to Release Information Regarding Pending Lawsuits*

The Buzbee Law Firm and the AVA Law Group will hold a press conference on Tuesday, at 1 pm, CST, at The Buzbee Law Firm Houston Office, 75th Floor, JP Morgan Chase Tower, 600 Travis, Houston, Texas 77002. At the press conference information will be made available for the first time to the public regarding claims made by victims against Sean "Diddy" Combs and other alleged perpetrators where rape, sexual assault, and sexual exploitation are alleged.

At the conference Lead Counsel Tony Buzbee will release pertinent details regarding cases that will be filed on behalf of what is now well over 100 alleged victims. Details provided at the conference will include information regarding other potential defendants, information about the claimants themselves, where the alleged activity occurred, and what allegedly occurred. Mr. Buzbee also intends to share specific compelling stories of victims and take questions.

Also at the conference Mr. Buzbee will discuss the various state laws that apply, the venues where the cases will be filed, and expected next steps. Further, at the conference, Andrew Van Arsdale, co-counsel and attorney with the AVA Law Group, will publish the **Sexual Assault Hotline, 1-800-200-7474** and explain the process when witnesses or victims call that number.

♡ **1,522**   ◁ **842**

🔖

**tonybuzbee** A press conference setting out the claims alleged against Sean "Diddy" Combs and others will be at 1pm, Tuesday, on the 75th floor of Chase Tower. Access is restricted to those with press credentials only. The Buzbee Law Firm and the AVA Law Group represent well over 100 individuals at this point.

If you've been victimized or have witnessed such, call the Sexual Abuse Hotline at 1-800-200-7474. Be brave!!

www.txattorneys.com

September 29

4:42

**tonybuzbee** ✔
JPMorgan Chase Tower

•••

**According to Buzbee:** "This is an important matter that we intend to aggressively pursue. We will leave no stone unturned to find all potentially liable parties, to include any individual or entity who participated in or benefitted from this egregious behavior. As we do this important work, we ask that the public understand it is very difficult and takes an incredible amount of courage for victims to come forward. I ask that we treat these brave individuals with the dignity and compassion that they deserve as they go through this trying time. Further, I'm also asking that if you have been victimized, or are a witness to the alleged behavior, please come forward. Your identify will remain confidential at this time."

*Details of conference: Those without press credentials will not be admitted. Uniformed police personnel will be present. The 75th Floor of Chase Tower has a maximum capacity of 100 persons; it is encouraged that members of the press arrive early to gain admission.*

---**Attorney Tony Buzbee** is with The Buzbee Law Firm, headquartered in Houston, Texas and can be found on the web at www.txattorneys.com. **Inquiries:** tbuzbee@txattorneys.com; **713-223-5393.**
---**Attorney Andrew Van Arsdale** is with AVA Law Group, PPLC headquartered in San Diego, California. and can be found on the web at www.avalaw.com.

♡ 1,522    ✈ 842                                        🔖

**tonybuzbee** A press conference setting out the claims alleged against Sean "Diddy" Combs and others will be at 1pm, Tuesday, on the 75th floor of Chase Tower. Access is restricted to those with press credentials only. The Buzbee Law Firm and the AVA Law Group represent well over 100 individuals at this point.

If you've been victimized or have witnessed such, call the Sexual Abuse Hotline at 1-800-200-7474. Be brave!!

www.txattorneys.com

September 29

# EXHIBIT D

Unofficial Copy Office of Marilyn Burgess District Clerk



1

2

3

4

5

6           TRANSCRIPT OF VIDEO-RECORDED

7              PRESS CONFERENCE

8

9    "DIDDY LAWSUITS. LAWYER FOR MORE THAN 100 ALLEGED

10                VICTIMS SPEAKS"

11

12        https://www.fox26houston.com/video/1525043

13

14

15

16

17

18

19

20   Job No.: 561200

21   Pages: 1 - 33

22   Transcribed by: Christian Naaden

Transcript of Press Conference

2

1                    P R O C E E D I N G S

2

3          TONY BUZBEE:  Hello everyone. My name is Tony

4    Buzbee. I'm a lawyer here in Houston. I'm licensed in

5    Texas and in New York. And I'll introduce other members

6    of our team as they speak.

7            As many of you know, our law firm has been at

8    the forefront of some of the most important litigation

9    in the United States. We like the tough cases. We

10   thrive in the complicated cases. We've handled over the

11   last 25 years some very big and very important cases. I

12   believe that this first may surpass them all. There are

13   many facets to this.

14           The conduct we will describe today occurred

15   over more than 20 years. There are many people and many

16   entities involved, and we're going to follow this

17   evidence wherever it takes us. We will find the silent

18   accomplices.

19           We will expose the enablers who enabled this

20   conduct behind closed doors. We will pursue this matter

21   no matter who the evidence implicates. These brave

22   victims who have stepped forward deserve nothing less.

Transcript of Press Conference

3

```
1           The biggest secret in the entertainment
2   industry that really wasn't a secret at all has finally
3   been revealed to the world. The wall of silence has now
4   been broken and victims are coming forward.
5           Our team has had at this point, more than 3000
6   and 285 individuals contact us, with people claiming
7   people claiming to have been victimized by Sean Combs
8   after vetting.
9           We now represent 120 individuals who intend to
10  bring civil claims in civil court against Sean "Diddy"
11  Combs, as well as claims against many other individuals
12  and entities that we will name as defendants as we file
13  these individual cases.
14          TONY BUZBEE:  And you should know to the
15  extent the clients feel comfortable, we also intend to
16  make these individuals available to the authorities,
17  specifically to the FBI.
18          And you should also know a few of them have
19  already been spoken to by the FBI. Now, before we
20  discuss the nature of the claims and claimants
21  themselves, let me comment on the large volume of calls
22  we have received since our first announcement.
```

Transcript of Press Conference

4

1          Even before the indictment of Sean Combs, we

2     had received a small volume of calls and had screened a

3     handful of cases after the indictment of Sean Combs and

4     the announcement that we were pursuing these claims,

5     the floodgates opened.

6          People who wouldn't otherwise, for a variety

7     of reasons, are now stepping forward to make their

8     voices heard and to pursue justice. But no, most of

9     these people are scared. They fear backlash in their

10    communities.

11         They fear backlash in their own families. They

12    are afraid of retaliation from the perpetrators and

13    their associates. They are rightly afraid for their own

14    personal safety. I expect that through this process,

15    many powerful people will be exposed. Many dirty

16    secrets will be revealed.

17         We know what we are potentially up against.

18    And as is always the case in situations like this, when

19    a celebrity is involved, people can be downright mean

20    and nasty.

21         You would be shocked at the length fans will

22    go, no matter the evidence to the contrary, to defend

Transcript of Press Conference

5

1    celebrities they love. I mean, there's a reason for

2    this word "fans."

3         They're fanatics. I've personally already been

4    threatened multiple times on social media, and when I

5    agreed to pursue this, I expected as much. This isn't

6    my first rodeo, but victims who step forward to have

7    their voices heard should not be subjected to that kind

8    of conduct.

9         They should not be targeted. I want to say

10   this, and I want to be clear about it. Although we are

11   vetting each call as stringently as we can, I always

12   start with a mindset that I believe victims. I believe

13   victims because I understand the tremendous courage it

14   takes to step forward.

15        So if you're watching this, please hear me. If

16   you're out there and you have been victimized, you are

17   not alone. There is a great strength in numbers. You

18   can seek redress. You can obtain justice. We can help

19   you, and we will help you.

20        That being said, as stated, we are vetting

21   every call that we receive. We have had to turn away

22   some for each. We ask for corroboration for each. We

Transcript of Press Conference

6

1   ask for the identity of witnesses. We also have

2   collected pictures, videos, texts. We check venues. We

3   check dates.

4          We want to corroborate that the claims being

5   made have legitimacy and merit. We have on staff now a

6   former detective from the major offenders Unit of

7   Houston Police Department who is helping us vet each

8   claim.

9          We're using our common sense. We're being

10  stringent because, as I said, these are not easy cases.

11  They're very tough. The process is hard, and in some

12  cases the process is very lengthy.

13          TONY BUZBEE:  These cases are hard to prove.

14  Many times it's the victim's word against the alleged

15  perpetrator.

16          Each of these victims will no doubt be

17  publicly attacked by the alleged perpetrators and in

18  some cases, the general public. The feckless and

19  cowardly keyboard warriors love to attack. We know what

20  we're up against.

21          We did not enter this fray blindly. I wish it

22  was my last such foray. I wish this type of behavior

Transcript of Press Conference

7

1   wasn't so pervasive. But it is what it is. So we will

2   press on. As I said, our law firms have been retained

3   by 120 individuals at this point to pursue cases in

4   civil court against Sean "Diddy" Combs.

5        You should know in this group it is evenly

6   divided between males and females. There are 60 males

7   and 60 females who have joined us to pursue these

8   claims as plaintiffs in this group. 62 percent identify

9   as African American, 30 percent are white and the

10  remainder are Hispanic or Asian.

11       The victims are from more than 25 states. The

12  majority are from California, New York, Georgia and

13  Florida. And I want to focus on the ages of these

14  victims.

15       When we talk about the ages of the victims,

16  when the conduct occurred, it's shocking. Our youngest

17  victim at the time of the occurrence was nine years

18  old. We have an individual who was 14 years old.

19       We have one who is 15. 25 of the 120

20  individuals who are plaintiffs in these cases were

21  minors at the time of the acts complained of.

22       The time frame of the acts complained of is

Transcript of Press Conference

8

1    very wide. The conduct at issue spans from the years

2    1991 all the way to this year 2024. If you wonder why

3    there are so many alleged victims, that's your answer.

4            We're talking about more than 25 years of this

5    type of conduct. Now, although most of the victims who

6    have stepped forward were victimized after 2015, this

7    has been going on for a very long time now.

8            When you think about the fact that some of

9    this conduct occurred 25 years ago, and you wonder, why

10   would it take somebody so long to step forward?

11           I want to remind you that that many states in

12   the United States have recognized that it's very

13   difficult for a victim to step forward and to make

14   these types of allegations when something very terrible

15   has happened to them. I'll use New York, the state of

16   New York, as an example.

17           The state of New York has specific statutes in

18   place that revive claims that are even claims that

19   would typically be not able to be brought, that revive

20   such claims, and they can be brought even 25 to 30

21   years later, because there's a recognition there in New

22   York and California and other states that that it's

Transcript of Press Conference

1   very difficult for a victim to come forward.

2           And I would -- I would respectfully suggest

3   the only reason many of these people are coming forward

4   because they see other victims coming forward, and it

5   gives them some comfort that, hey, I won't be the only

6   one and I expect more victims will come forward.

7           TONY BUZBEE:  You know, there's an old saying

8   that says a lie has great speed, but truth has

9   endurance.

10          The acts complained of in these cases that

11  we're going to file occurred primarily in New York,

12  either Manhattan or the Hamptons, or occurred in

13  California, primarily in Los Angeles or in Florida,

14  primarily in Miami.

15          Most of these events and incidents occurred at

16  parties, typically after parties or album release

17  parties; New Year's Eve parties; 4th of July parties,

18  something they called a puppy party, the All White

19  Party.

20          Although several of these events occurred at

21  auditions Many times, especially young people, people

22  wanting to break into the industry were were coerced

Transcript of Press Conference

1    into this type of conduct in the promise of being made

2    a star or in the promise of of having Sean Combs listen

3    to their tape or even let them read for Sean Combs.

4            You should know that some of this behavior

5    occurred at well-known venues in New York City. Some of

6    this behavior occurred at private residences of people

7    that we all know.

8            Some of this behavior occurred at hotels that

9    we're all familiar with. You should know that more than

10   55 percent of the victims filed reports, reported this

11   conduct to either the authorities, that is, the police

12   or to hospitals.

13           We are in the process of collecting, with our

14   team assistance, medical records reports that were made

15   to the authorities. And I've already said that some of

16   the individuals in this group did, in fact, talk to the

17   FBI.

18           TONY BUZBEE:  You should know that that

19   several of the individuals and when I say several, I

20   mean many who did in fact seek medical treatment were

21   drug tested.

22           And drugs were found in their system. Weird

Transcript of Press Conference

1    drugs. Drugs that you probably never heard of. One in

2    particular that continues to pop up is a drug called

3    xylazine or tranq, which, based on our research, is

4    known as a horse tranquilizer.

5          Now, there's been a lot of reports that we're

6    filing a class action. This is not a class action.

7    Class action is when 1 or 2 people file a case on

8    behalf of a group of people. That's not this. These

9    cases will be individual cases.

10          Each case will live and die on its own merit.

11   These cases will be filed individually. One plaintiff

12   against whoever the defendants were involved in the

13   case. Each case may be filed in one venue, like

14   California.

15          Another case may be filed in New York. One

16   case may sue just Sean Combs, but multiple other

17   people. One case may sue a range of people. I would

18   expect most, though, to be filed, as I said, in New

19   York and Los Angeles.

20          Now I know this. Many of you came here

21   thinking or hoping or perhaps believing that I may

22   start naming names. Well, that day will come, but it

Transcript of Press Conference

12

1   won't be today.

2          The day will come when we will name names

3   other than Sean Combs. And there's a lot of names. Um,

4   it's a long list already. And of course, I already know

5   who some of these individuals are.

6          But because of the nature of this case, we're

7   going to make damn sure. Damn sure that we're right

8   before we do that. But the names that we're going to

9   name, assuming that our investigators confirm and

10  corroborate what we've been told our names that will

11  shock you.

12         These are individual cases. There are indeed

13  other perpetrators involved. They will be revealed when

14  that particular individual case is ready to be filed.

15  They already know who they are. And I'm talking here

16  about not just the cowardly but complicit bystanders.

17         That is, those people that we know watched

18  this behavior occur and did nothing. I'm talking about

19  the people that participated, encouraged it, egged it

20  on. They know who they are. I call them the

21  facilitators of foul play. Willing participants in vile

22  conduct as we identify them.

Transcript of Press Conference

13

1          Each will be part of this case as defendants.

2     These defendants will not only include individuals, but

3     would also include corporate entities who ultimately

4     profited off of this culture and behavior. I'm looking

5     at banks, pharmaceutical companies, hotels. We know

6     that many of these individuals were paid cash.

7          We know that that many of these individuals

8     involved, whether they were the ones being assaulted

9     and abused or they're witnessing other people being

10    assaulted and abused and then paid and threatened and

11    told to leave, typically paid ten grand in cash and

12    told to leave and then threatened as they were leaving.

13         So in addition to Sean Combs, you should know

14    the defendants in these cases were going to file will

15    include anyone, of course, who engaged in the assault

16    or exploitation.

17         TONY BUZBEE:  Anyone who participated in such

18    in any way. Anyone who encouraged or facilitated this

19    conduct.

20         Anyone who was in the room and watched it

21    happen but made no effort to stop it. Any venue or

22    venue owner who was aware of what was going on, but

Transcript of Press Conference

14

1   failed to stop it.

2          Any individual or entity who knew about the

3   conduct and benefited from it, but did nothing to

4   report it or stop it. And any individual or entity who

5   covered it up or helped cover it up. These people who

6   know who they are should just come forward now. I would

7   imagine as we speak here, there are a myriad of people

8   who are very nervous.

9          You can't hide skeletons in the closet

10  forever. I would expect there are many people out there

11  right now who are who are desperately searching their

12  memories as they delete their texts and data. Now,

13  although these are in fact individual cases, there is a

14  common theme, an MOT, if you will.

15         Typically, the victim is lured into a

16  situation where he or she is given a drink. Typically,

17  that drink reported by these victims is apparently

18  laced with something. Once that drink takes effect, the

19  perpetrators perform all kinds of sexual acts on the

20  victims.

21         Many times passing him or her around as other

22  people watch and enjoy the show and then leave the

Transcript of Press Conference

15

1  victim ashamed, confused, injured, and wondering what

2  happened. When the victim reaches out, he or she is

3  told not to say anything.

4        TONY BUZBEE:  Sometimes there are threats of

5  physical violence or financial repercussions or bodily

6  harm. The claims we intend to bring will include the

7  following.

8        Violent sexual assault or rape. Sexual abuse.

9  Facilitated sex with a controlled substance. False

10 imprisonment. Compelling prostitution. Sexual

11 misconduct. Dissemination of video recordings. False

12 imprisonment. Sexual abuse of minors.

13       Given the large volume of cases, and given our

14 other docket obligations, and given the fact that we

15 want to be sure when we file these cases that they are

16 fully vetted, I expect we'll start filing these cases

17 against Sean Combs and other perpetrators within the

18 next 30 days.

19       Now it's rare, you know, sexual abuse, sexual

20 exploitation, these types of this type of activity is

21 pervasive in our society, and it's rare we get a chance

22 where we can really focus on this as a country and

Transcript of Press Conference

16

1   really focus on this, about how pervasive this is and

2   what we as collectively can do about it.

3          So I thought I'd take this opportunity before

4   I go into some of the individual cases and talk about

5   some of the individual claims being made and some of

6   the. So you'll get a get a sense of what this 120 20

7   people group looks like individually. I want to bring

8   forward Carrie Paul.

9          She is a national victim advocate who helps

10  victims who have been victimized by this type of

11  conduct. And she has some important words and I hope

12  you'll you'll pay close attention. I think it's

13  important that you hear from her.

14         Carrie Paul:  Hello, I'm Carrie Paul with the

15  National Victim Advocate. It's not easy for any

16  survivor to come forward. Our culture doesn't believe

17  survivors.

18         It blames and questions them. Instead of

19  showing support, many choose to enable abusers. The

20  media runs stories asking why it took so long for

21  survivors to come forward Instead of asking what

22  barriers exist.

Transcript of Press Conference

17

1            We also don't equip law enforcement with the

2    ability to handle sexual assault crimes. Lack of

3    funding translates to lack of training. We have

4    officers in the field that don't know what to say to a

5    rape victim, and also an alarming amount of backlogged,

6    untested rape kits.

7            Prosecutors are focused on what they can prove

8    in a case, and if so, how to do that at time of trial,

9    advocates and staff are stretched thin with growing

10   caseloads in the criminal justice system. Most people

11   don't know how the criminal justice works in general.

12           There isn't enough staff or resources to

13   adequately explain the entire process to every victim

14   and survivor. Our culture works against victims and

15   survivors every day, and abusers know this.

16           Abusers work themselves into positions of

17   power, building a public image that is trusted and

18   financially large enough to make people look away.

19   Abusers are unfortunately very skilled at power and

20   control. The foundation of abuse. They seek victims who

21   are vulnerable, such as children, their employees and

22   their intimate partners.

Transcript of Press Conference

1          All who see a different version than the
2   public does. All who rely on the abuser in some way.
3   And for those that do come forward and aren't believed
4   face questions like, are you sure it happened that way?
5   Were you drinking? What were you wearing?
6          All of this creates an environment that
7   enables abusers to continue abusing them and future
8   victims to the survivors that have come forward,
9   despite not being believed at some point in time. Your
10  courage is like nothing we have seen before.
11         We thank you for coming forward for yourself
12  and all survivors. And lastly, I want all survivors
13  that are watching this to know we believe you and we
14  support you. Thank you.
15         TONY BUZBEE:  I want you now to hear from my
16  co-counsel, Andrew Van Arsdale. Um, you know, we've
17  we've created a sexual abuse hotline, and I want him to
18  visit with us just a few moments about how that works
19  and the kind of volume of calls we've received.
20         ANDREW VAN ARSDALE:  Thank you. Tony. Um, like
21  Tony said, my name is Andrew Van Arsdale. I'm the
22  managing partner of AVA Law Group. We have offices in

Transcript of Press Conference

19

1    California, Montana and North Carolina.

2              To build off of what you just so well said,

3    it's very hard to come forward. And given what we've

4    experienced the past ten days, is really unprecedented

5    in in my career at least.

6              We represent thousands of survivors of abuse

7    and never, ever in a ten day period have we seen over

8    3000 people come forward where we've confirmed and

9    decided to investigate and represent 120 people. While

10   we're continuing to work through another 100 plus cases

11   to prove them up, to validate what has happened here

12   and to hold those that are responsible, accountable.

13             And so, like Tony said, we've set this up.

14   It's 1-800-200-7474. I have a team of people standing

15   by, literally, if you know that this happened to

16   someone and you have information about it, please

17   contact us.

18             If this happened to you, come forward. There's

19   attorney-client privilege here. What you tell us is in

20   confidence. Yes. We'll have to go out and build your

21   case, but we will protect you. And the other thing that

22   I want to say is the pattern and practice of this,

Transcript of Press Conference

20

1    again, is unprecedented.

2         Over 30-plus years of the same sort of events

3    happening. People thrust into the circle, reportedly,

4    and horrible things happening to them as a result.

5         And from talking to these people that have

6    come forward these past ten days, I can tell you

7    unequivocally that because the federal government did

8    what it needed to do and indicted this man, that they

9    put him in jail and a judge kept him in jail. They tell

10   me directly this validates my feelings. For so long, I

11   thought it was my fault.

12        What is it about me that put myself in that

13   scenario? What was I wearing at the time? What did I do

14   to be subjected to such horrific treatment at these

15   people that I was trying to trust? Well, we know now it

16   was not your fault.

17        You were victimized by a group of powerful

18   people that operated for 30-plus years, taking

19   advantage of their wealth and the power that they held

20   within the music industry.

21        So again, thank you to every single person

22   that has come forward and contacted our office over the

Transcript of Press Conference

1  past ten days. If you or someone you know suffered the

2  same sort of treatment, please contact us at the number

3  behind me and we will help you. Thank you.

4        TONY BUZBEE:  I think it speaks to how

5  important this issue is in the United States and

6  frankly, internationally, that we have reputable people

7  here that want to provide the kind of information that

8  I think victims need to hear, witnesses need to hear,

9  the public needs to hear.

10       Let me introduce to you now, Olivia Rivers

11 from the Texas Association Against Sexual Assault, and

12 let her visit with you a few moments about these types

13 of cases.

14       Q. OLIVIA RIVERS:  Thank you. Good afternoon

15 everyone. My name is Olivia Rivers. I am just served my

16 sixth year as the board chair for the Texas Association

17 against sexual assault.

18       I'm also the CEO for The Bridge Over Troubled

19 Waters, which is a local rape crisis center here in the

20 Houston area. So thank you for being here as we address

21 these heinous crimes. Sexual assault is not just a

22 crime of violence against the body.

Transcript of Press Conference

1          It's an assault on the very essence of human

2     dignity and safety. It shatters lives. It destroys

3     confidence. And all too often, it leaves survivors

4     feeling like they are voiceless, isolated and

5     vulnerable.

6          The reality for many survivors is that coming

7     forward to report their assault is one of the most

8     difficult and daunting tasks that they will ever have

9     to do. And for some, it may take days, months, or even

10    years to speak up if they ever do.

11          The reasons for this have been mentioned, but

12    include the fear of being disbelieved, being blamed or

13    judged, and of course, retaliation.

14          The trauma of the assault itself being

15    compounded by the trauma of the criminal justice

16    process, where survivors must relive their experience

17    in order to seek justice, and these feelings and fears

18    are further exacerbated when the allegations are

19    against prominent figures in the entertainment industry

20    or Hollywood.

21          Cases involving powerful figures often attract

22    significant media attention, which can deter victims

Transcript of Press Conference

23

1  from coming forward due to fear of public exposure or

2  scrutiny.

3       The intense focus on these high profile cases

4  can make survivors feel that their personal lives are

5  being put under a microscope, causing further emotional

6  distress.

7       These allegations mentioned here today, as

8  reported, reflect deeply troubling claims that deserve

9  thorough investigation. And no individual, regardless

10  of their stature, is above the law or public

11  accountability.

12       Sadly, the statistics paint a very disturbing

13  picture. According to the National Sexual Violence

14  Resource Center, one in three women and one in six men

15  will experience some form of sexual violence in their

16  lifetime.

17       In the US alone, there are approximately

18  163,000 victims of rape or sexual assault every year,

19  and these numbers barely scratch the surface as sexual

20  violence remains one of the most underreported crimes.

21  But the numbers that follow tell an even more troubling

22  story.

Transcript of Press Conference

1           Only about 23 percent of sexual assaults are

2   reported to law enforcement. Of those, just 5 percent

3   lead to an arrest and even fewer. Less than 1 percent

4   of reported cases ever result in a conviction, which is

5   a devastating gap between the crime and the justice

6   that survivors deserve.

7           I want to briefly focus on our state here in

8   Texas. According to the Texas Association Against

9   Sexual Assault, 6.3 million Texans men and women will

10  experience some form of violence. That's every two

11  minutes someone is sexually assaulted.

12          Q. Olivia Rivers:  Meaning, during the course

13  of this press conference, around 60 individuals will

14  forever be changed by this violence. And those are just

15  a few of the victims. Obviously this is unacceptable.

16          We cannot allow this cycle of silence and

17  inaction to continue. We have to create an environment

18  where survivors feel empowered to come forward, where

19  they are met with empathy and respect and support, not

20  skepticism and blame.

21          We have to ensure that our legal system is

22  equipped to handle these cases with the seriousness

Transcript of Press Conference

25

1   they deserve, and that survivors have access to the

2   resources that they need beyond the legal courtroom.

3           We have to address the root causes of this

4   epidemic prevention, awareness and fostering

5   environments where respect, consent, and safety are

6   non-negotiable values. Additionally, support for

7   survivors has to be holistic.

8           They have to have access to counseling,

9   medical services, legal advocacy, and of course,

10  community support, regardless of whether they choose to

11  report or not.

12          To every survivor who has come forward, your

13  bravery is an inspiration to those who are still

14  grappling with their decision. Know that you are not

15  alone and that your voice matters.

16          Your story matters. We see you. We believe

17  you. And we are committed to fighting for a future

18  where sexual violence is no longer tolerated and where

19  justice is not the exception, but the standard. Thank

20  you.

21          TONY BUZBEE:  I want to visit with you real

22  quickly before we close here about some specific

Transcript of Press Conference

26

```
 1   instances without disclosing the victim's name. You

 2   probably know that depending on the age of the victim

 3   you can file these cases, these individual cases under

 4   Jane Doe or John Doe.

 5           Each state is different in that respect.

 6   Typically, there is a balancing test, like the public's

 7   right to know the name of the of the victim and

 8   plaintiff versus versus the confidentiality and the

 9   safety of the plaintiff.

10           So we'll have to struggle with that with each

11   one of these cases. Our intention, of course, is to,

12   like we always do, file these cases under a pseudonym

13   until the court tells us otherwise. But let me let me

14   share with you a few.

15           A few just kind of give you a sense of the

16   kind of cases and the kind of instances that people are

17   calling and reporting that we are trying to corroborate

18   that. And these are the ones that we've already

19   corroborated, vetted and collected evidence on.

20           One individual who was 22 years at the time.

21   She was assaulted, said that the typical M.O. at one of

22   these parties that have been widely discussed in the
```

Transcript of Press Conference

27

1  press was that when when you were handed a drink.

2          And now we know that the drink is laced with

3  something. If you refuse to drink it, you were kicked

4  out of the party.

5          Now, let that sink in for a minute. I mean,

6  the admission to this party was that you had to drink

7  the chosen drink that was handed to you.

8          And now we know that that in most cases, I

9  would say 90 percent of the cases. These individuals

10 were drugged with some sort of drug. That was kind of

11 the M.O.

12         Another instance, this individual who was nine

13 years old at the time, was taken to an audition in New

14 York City with Bad Boy Records. Uh, other boys were

15 there to audition as well. All of them were trying to

16 land a record deal. All of them were minors.

17         This individual was sexually abused, allegedly

18 by Sean Combs and several other people at the studio in

19 the promise to both his parents and to him himself of

20 getting a record deal.

21         Another instance, another minor told allegedly

22 by Sean Combs that he would make him a star, but he

Transcript of Press Conference

28

1   needed to visit with him in private about it away from

2   his parents once they were in a private area.

3   Allegedly, Mr. Combs made the victim perform oral sex

4   upon him.

5           Another incident, an individual 15 years old

6   at the time flown to New York City to attend a party,

7   was drugged and then taken into a private room,

8   allegedly in the presence of Mr. Combs, where this

9   female individual minor was raped and then other

10  individuals took turns raping her.

11          Another individual, 26 at the time of the

12  occurrence, was picked up by allegedly by Mr. Combs and

13  several other people in a black SUV from the airport;

14  was given one drink in the SUV and then literally woke

15  up the next day not knowing what had happened, but with

16  pain and damage to both her vagina and her anus where

17  she was then.

18          She then went to the hospital. She was missing

19  her underwear and her shoes. Another instance, an

20  individual, this time not a minor, was attending a

21  group dinner, allegedly with Sean Combs in Miami. She

22  wasn't drinking because she was pregnant, but she.

Transcript of Press Conference

29

1  Whatever she drank at the table, apparently, at least

2  according to her, was laced with something.

3           She blacked out and she woke up in the same

4  bed again, allegedly with Mr. Combs in his mansion in

5  Miami. Her vagina and her anus were torn and sore.

6           And I could go on. I mean, literally, you're

7  you're sensing a theme here. It's the same theme and it

8  all involves some sort of drug. One instance, an

9  individual who was 20 years old at the time was asked

10 to attend, just saw her on the street, asked to attend

11 a party in a hotel.

12          She was flattered, went to the party, was

13 given one drink and doesn't remember anything else.

14 Ultimately was so messed up. Was went to the hospital

15 where they found cocaine and this horse tranquilizer in

16 her blood system.

17          I want to give you a quote from a very young

18 man who told us over the phone about his experience and

19 all the things that happened to him.

20          He says, allegedly at the hands of Sean

21 "Diddy" Combs and his friends in the effort to try to

22 sign a record deal. This was kind of what he was told

Transcript of Press Conference

30

1    he would have to do.

2            His quote is had he not been in power, I feel

3    like I could have been something great. I quit. I quit

4    the industry because of what Sean Combs did to me. And

5    that's really what it comes down to.

6            We are pursuing this, asking you to support

7    this effort, to encourage witnesses and victims to come

8    forward and bring your evidence so we can continue to

9    break down this wall of silence, and we can continue to

10   have these stories heard.

11           This is the beginning of what I hope to be a

12   national dialog. This type of sexual assault, sexual

13   abuse and sexual exploitation should never happen in

14   the United States, United States, or anywhere else.

15           This should have never been allowed to go on

16   for so long. This conduct has created a mass of

17   individuals who are injured, scared and scarred. If you

18   are one of those individuals, we ask you to reach out.

19   If not to us, to someone you trust.

20           If you are someone who witnessed any of these

21   events, we ask you to reach out. Your name can remain

22   confidential. With that, I'll take a few questions. Not

Transcript of Press Conference

31

1   many, maybe two. But if you have a question, I'll be

2   pleased to try to answer it.

3           AUDIENCE:  Perfect. How many minors are making

4   accusation accusations in total? And are the feds aware

5   of the allegations of minors.

6           TONY BUZBEE:  In the case? I don't know what

7   the feds are aware of, but I do know it's 25 out of

8   this 120.

9           And Tony, I will I will say this to that

10  point. We welcome the FBI or any authority who wants to

11  come to us, and we're going to make that available to

12  these victims, because I think that's important.

13          My suspicion is based on talking with these

14  folks is that that, you know, the FBI is just not aware

15  of these people. The FBI has talked to some of these

16  folks.

17          And I'm going to try to encourage the victims

18  to, in fact, talk to the FBI because I think they have

19  some very important things to say.

20          AUDIENCE:  Tony, were all of the children

21  auditioning because they were musicians, or were any of

22  them kids of employees or anything like that?

Transcript of Press Conference

32

```
1          TONY BUZBEE:  All all seeking either TV or

2     some sort of music career with promises of, you know,

3     we're going to make you a star. Instead, basically did

4     things to them such that they don't want to have

5     anything to do with the entertainment industry ever

6     again.

7          All right, guys, thank you very much for your

8     attention. We're going to go now. Thank you.

9          AUDIENCE:  Tony, do you anticipate any Houston

10    cases, any filed here locally?

11         TONY BUZBEE:  Yeah, there's a few plaintiffs

12    here, but I don't anticipate filing here, probably in

13    New York City. Thank you.

14

15

16

17

18

19

20

21

22
```

Transcript of Press Conference

33

```
1               CERTIFICATE OF TRANSCRIBER

2        I, Chris Naaden, a transcriber, hereby declare

3   under penalty of perjury that to the best of my ability

4   from the audio recordings and supporting information;

5   and that I am neither counsel for, related to, nor

6   employed by any of the parties to this case and have no

7   interest, financial or otherwise, in its outcome, the

8   above 32 pages contain a full, true and correct

9   transcription of the tape-recording that I received

10  regarding the event listed on the caption on page 1.

11

12        I further declare that I have no interest in

13  the event of the action.

14

15

16        November 11, 2024

17        Chris Naaden

18

19  (561200, Diddy lawsuits-Lawyer for more than 100

20  alleged victims speaks)

21

22
```

# EXHIBIT E

Unofficial Copy Office of Marilyn Burgess District Clerk

THE STEPHEN A. SMITH SHOW

INTERVIEW WITH TONY BUZBEE

Tuesday, October 3, 2024

Job No.:  561873

Pages 1 - 22

Transcribed By:  Jennifer Candela-Alvarez

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                                    2

1              STEPHEN SMITH:  Joining me now is the

2    man who is representing the more than 100 men and

3    women who plan to file civil suits against Sean

4    Diddy Combs.  Tony Buzbee, who's representing about

5    120 people, held a press conference yesterday at

6    his firm in Houston, Texas.  Some of the cases they

7    intend to file will center around allegations of

8    sexual assault, rape, facilitating sex with a

9    controlled substance, dissemination of video

10   recordings, and sexual abuse of minors, just to

11   name a few.

12             Please welcome to the show Mr. Tony

13   Buzbee.  Good afternoon, Tony.  How are you?

14             TONY BUZBEE:  Good.  How are you?

15             STEPHEN SMITH:  Thank you for your time.

16   So let's get right into it.  How long have you been

17   working on these potential suits against P. Diddy

18   Combs?

19             TONY BUZBEE:  My co-counsel, who sent me

20   the cases, has been working on this for about six

21   months.  He got me involved about two weeks ago

22   actually.  And so I started talking to some of

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                                3

1    these victims and deciding whether I wanted to

2    become involved in this case.  Some of the things

3    that I was told by these folks are very compelling,

4    some of which I shared with the public yesterday.

5            So, for me, it's been about two weeks.

6    When I announced about ten days ago that I was

7    going to join these cases and serve as lead

8    counsel, the call volume went up to about 3200

9    calls.  And so far, as you as you've laid out, we

10   have 120 clients that are prepared to file suit.

11        STEPHEN SMITH:  Mm-hmm.  What made you

12   ultimately decide you wanted to get involved in it?

13   You said it just came to your attention a couple of

14   weeks ago.  What was the deciding factor that made

15   you want to get involved?

16        TONY BUZBEE:  Talking to these folks

17   and, you know, reviewing the indictment, and it was

18   very clear that the conduct that these people were

19   talking about was very consistent with what the

20   indictment lays out; and then, you know, just

21   hearing their voices and seeing their faces.

22            And I have to do a credibility check

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                          4

1    myself and decide if this is something that I want

2    to be involved in.  And, you know, this is -- you

3    know, I see this really as God's work.  And I think

4    -- you know, obviously, Sean Combs is arrested,

5    indicted, and his bail has been denied, but there's

6    more to it than that.  This is conduct that's went

7    on for more than 25 years.  These people who we

8    represent are from more than 25 states.  These are

9    people whose ages range from as young as nine years

10   old up to people in their 30s.

11           As you -- as you said, these are women

12   and men.  You know, it -- the scope of this is

13   really -- it's unfathomable that this could go on

14   for so long.  And, you know, I said yesterday "This

15   is -- this is the secret in the entertainment

16   industry that really wasn't a secret."  And I think

17   people are shocked to learn that this went on for

18   so long and some of the things that people say

19   happened to them.  And I think because of the

20   indictment, because the federal government got

21   involved, I think because of the arrest and because

22   of the denial of bail, it really gave people -- you

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                              5

1    know, really emboldened people to step forward and

2    be counted and tell their stories.

3            STEPHEN SMITH:  It's interesting because

4    I -- before I get to additional questions, you

5    talked about vetting them yourself or what have

6    you.  One will ask -- the suspicious minds would

7    ask.  Two weeks -- is that enough vetting that

8    could have possibly -- is that enough time to have

9    vetted all of these people to the point where you

10   feel comfortable and secure in representing them?

11   What do you say as a response to cynics with such

12   questions?

13           TONY BUZBEE:  Yeah.  There's -- you know

14   better than me there's always cynics and there's

15   always people that like to sit back and criticize.

16   And, you know, that's just the nature of the

17   business.  And, you know, I've been in this

18   business for almost 30 years.

19           STEPHEN SMITH:  Right.

20           TONY BUZBEE:  I would say that we have

21   more than 90 people who did the initial screening

22   and vetting.  Then we have --

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                          6

1           STEPHEN SMITH:  Got it.

2           TONY BUZBEE:  -- Houston Police

3     Department personnel who also are part of the

4     vetting process.  Then we have a team of lawyers

5     that are also a part of that.  And then, you know,

6     I've personally spoken to many of these folks

7     myself.  And then, ultimately, as we start to file

8     the case, I will talk to each one of these people

9     just to make sure one -- because, you know, it's a

10    high-profile case.

11           It's just like, you know, other cases

12    I've been involved in.  If I put my brand on it,

13    I'm going to make sure that it's something that I

14    feel comfortable with and that I'm fully behind

15    because, you know, these cases are tough enough

16    themselves.  You know, typically it comes down to

17    circumstantial evidence, corroborating evidence

18    from witnesses that saw this or that, and then it

19    comes down to the word of the victim versus the

20    words of the various perpetrators.

21           STEPHEN SMITH:  What impact did the

22    federal indictment have on the volume of suits

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                    7

```
1    you're now intending to file?
2              TONY BUZBEE:  I think it had a big
3    impact.  I think the original impact probably was
4    the Cassie situation and the video that was
5    released.  I think it was -- it was known that
6    there was a federal investigation going forward.
7    There had been several lawsuits, and there's been
8    more.  I think there's been as many as seven so far
9    against Sean Combs and other people.  And then the
10   indictment, the arrest, and then the denial of bail
11   and then, of course, us announcing that -- look.
12   There's -- there are a lot of people that intend to
13   pursue these cases.  Please come forward.  If
14   you're a witness, please come forward.  If you have
15   evidence, please come forward.  I think -- I think
16   that was instrumental in what we're seeing now.
17             Ever since -- I mean, in 24 hours, we've
18   received 12,000 calls if you can believe that.  Now
19   I don't know what -- if that's going to --
20             STEPHEN SMITH:  Twelve thousand calls?
21             TONY BUZBEE:  Yes, sir.
22             STEPHEN SMITH:  You said 12,000 calls?
```

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                    8

1    You received 12,000 calls?

2            TONY BUZBEE:  Now that doesn't mean

3    12,000 people who claim to be victimized.  It just

4    means 12,000 people have called this line that we

5    published yesterday.  Obviously, as you know,

6    there's going to be people --

7            STEPHEN SMITH:  Right.

8            TONY BUZBEE:  -- the crank calls and

9    people with foolishness and people with --

10            STEPHEN SMITH:  Understood.

11            TONY BUZBEE:  -- you know, malcontent,

12    but we are sifting through that and trying to, you

13    know, make sure that we identify and vet people

14    that have real claims, legitimate, credible claims.

15    Right now, you know, we're talking about 120 people

16    from 25 different states for conduct that occurred

17    over 25 years.

18            STEPHEN SMITH:  Twenty-five different --

19    25 different states?  Is that what you -- not

20    cities.  You said 25 different states?

21            TONY BUZBEE:  Yeah.  Yeah.  Yeah.

22    Because, you know, a lot of these parties obviously

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                    9

1    took place in Los Angeles; New York, Manhattan or

2    the Hamptons; and Miami.  And a lot of these people

3    --

4              STEPHEN SMITH:  Right.

5              TONY BUZBEE:  -- were flown in.  These

6    -- and this wasn't a secret.  I mean, it was known

7    that people were being flown in for these parties.

8    People were being paid cash to attend these

9    parties.  People were being identified at clubs or

10   at concerts or on the street even and invited to

11   these parties.  You have that group of people that

12   are involved, and then you have another group.  And

13   maybe this is a more sinister situation where, you

14   know, young people with stars in their eyes wanting

15   to break into the entertainment industry with

16   promises of stardom who are taken advantage of in

17   some cases, allegedly, drugged and abused and

18   basically just left behind, you know -- you know,

19   with shame and guilt.

20             You know, it's -- what I'm looking at --

21   obviously, you know, you have an individual who has

22   been indicted and arrested and whose bail has been

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                    10

1    denied, and obviously that's -- he's obviously a

2    target of this, but I'm looking more in addition to

3    that, of course.  Who else was involved?  What

4    venues were involved?

5              STEPHEN SMITH:  Right.

6              TONY BUZBEE:  What -- who sponsored some

7    of this conduct?  Who benefited from this?  Who

8    profited from this?  Who was there in the room?

9    Who encouraged this, facilitated this, didn't say a

10   word about it, kept it, kept it hush-hush.  I mean,

11   you can only imagine the number of entities --

12             STEPHEN SMITH:  Well --

13             TONY BUZBEE:  -- and individuals that

14   could potentially be complicit in all this.

15             STEPHEN SMITH:  Mr. Buzbee -- and I'm

16   getting there.  I was going right there because you

17   talk about the complicitness of those others that

18   may have been involved.  I want to know if the

19   survivors, the accusers, whatever word is

20   appropriate -- do they talk about and have they

21   talked about Diddy Combs?  Or have they named names

22   and provided names of other, dare I say,

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                                    11

1    co-conspirators in all of this?  What kind of --

2    what can you tell us on that front?

3                TONY BUZBEE:  We have a long list of

4    names, and obviously this is a very sensitive

5    situation.  The worst thing we could do is name

6    somebody who was involved or allegedly involved and

7    not have our ducks in a row.  I'm not going to do

8    that.  I'm not going to be involved --

9                STEPHEN SMITH:  Right.

10               TONY BUZBEE:   -- in ruining someone's

11   reputation --

12               STEPHEN SMITH:  Understood.

13               TONY BUZBEE:  -- by making a mistake.

14   You know, obviously, a lot of this is hard to

15   corroborate.  I mean, you're talking about a

16   situation where somebody is -- you know, who thinks

17   that all their dreams are about to come true.

18   They're with somebody who's a megastar and other

19   stars in the room, and they think all kinds of good

20   things are going to happen to them, and probably

21   the worst thing that could happen to them happens.

22               But, yes, there are people who owned

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                    12

1   private homes, people who owned private venues,

2   people that were in the room, people that I'm going

3   to allege knew what was going on and either

4   participated in it encouraged it, egged it on, if

5   you will, or somehow benefited from it, and that's

6   going to be different for every case.  I mean,

7   these --

8            STEPHEN SMITH:  Right.

9            TONY BUZBEE:  -- are individual cases at

10  different points in time with different people

11  involved, and there will be different defendants in

12  each case.

13            STEPHEN SMITH:  Without naming names --

14  because certainly I appreciate you being

15  responsible enough and, dare I say, I would have

16  been responsible enough to say I'm not -- I'm not

17  going to even get into names of allegations.  I

18  wouldn't put that out there.  But may I ask you,

19  from a general perspective or a generic

20  perspective, are these alleged co-conspirators --

21  are they public figures?  Are they well-known

22  people in Hollywood in the music industry?  Are

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                           13

1    they people who worked for P. Diddy Combs?  Could

2    you be specific in that regard?

3             TONY BUZBEE:  I would say yes to all of

4    the above.  Yeah.  People that --

5             STEPHEN SMITH:  Yes to all of the above?

6             TONY BUZBEE:  All the above.  People

7    that -- names that you would know.  Some people's

8    names you wouldn't know but are people that are in

9    management or executive positions, people that were

10   benefiting from this culture that was created,

11   people that were there knowing that this was going

12   to happen, people that actually participated,

13   venues that knew it was going on.

14             I mean, just think about it.  Just one

15   aspect of this.  You know, typically when an

16   entertainer of the stature that P. Diddy was at one

17   point, when he rents out a hotel, he typically

18   would rent out the entire floor and just a

19   revolving door of people showing up at the front

20   desk, whose names weren't being taken down, who

21   were just escorted right up to the floor, and

22   things are happening up there.

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                              14

1            I mean, it's hard to turn a blind eye.

2    You know, if you have any common sense whatsoever,

3    you know what's going on.  People that aren't from,

4    for instance, New York City that are being flown in

5    from Los Angeles, you know, five, ten, 15 at a time

6    were being paid in cash to attend these various

7    events that are occurring; people that are -- that

8    are identified in the crowd of a show and asked to

9    come backstage, and then they're whisked off to

10   some other party and they find themselves in the

11   morning, you know, not knowing what had happened

12   because they've been drugged and they're injured

13   and they're feeling shameful and, you know, blaming

14   themselves.  I mean, you can only imagine the

15   various individual scenarios.

16           But the common theme throughout this, at

17   least from what I've gathered, is there's always

18   some sort of drug involved.  There's always some

19   sort of drink that that I believe we'll be able to

20   show was spiked in some way with some kind of drug

21   that caused these individuals not to really be able

22   to fight back perhaps as much as they might have.

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                                    15

1  And then they wake up not knowing what had happened

2  to them other than they know that they're injured

3  in their private areas.

4           And so many of them went to seek medical

5  treatment.  Some of them were drug tested when they

6  did so.  I mean, there's several of these

7  individuals who their drug tests came back with

8  some weird -- and I haven't even heard of this --

9  you know, I own a farm, and I guess maybe my ranch

10 manager knows what this is -- but a horse

11 tranquilizer.  You know, it's called tranq.  I'd

12 never heard of this before.

13          STEPHEN SMITH:  A horse -- a horse

14 tranquilizer?

15          TONY BUZBEE:  A horse tranquilizer.  I

16 mean, it's just ridiculous.  It's just outrageous

17 when you think about it, but, you know, how did

18 this get into these people's bloodstream?  How did

19 -- how was -- you know, it's just -- I think -- I

20 think we're just now scratching the surface of

21 this.  You know, obviously all of this -- these are

22 allegations.  You know, even the indictment --

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                    16

1    those are allegations that the government must

2    prove, but you have -- you have a lot of people

3    coming forward saying the same thing.  All of it is

4    very similar.  And, you know, you have -- one of

5    the things I've said, and I think it's true, you

6    have a lot of people right now out there who are

7    watching this happen, who are probably scrubbing

8    their social media, who are probably searching

9    their memories, who are probably deleting texts and

10   data from their phones and are probably very

11   nervous right now, and I would -- I would think

12   they should be.

13          STEPHEN SMITH:  I'm not going to get in

14   too much to the nine-year-old because that's a

15   child.  There's no explanation for that.  Zero.

16   Okay?  But when you talk about some of these

17   survivors, you hear about half of them are men,

18   half are women.  Twenty-five were minors at the

19   time of the alleged incidents.

20          Number one, is that true?  And, number

21   two, when strictly speaking about the adults, what

22   about those who would say what are we talking about

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                    17

1    here?  If they were flown in, they were, quote/

2    unquote, sex workers, they knew what they were

3    getting into.  It was complicit.  It might be

4    reprehensible in some people's eyes, but as Diddy's

5    lawyer said on television weeks ago, "It's one

6    thing to be unethical.  It's another thing to be

7    illegal."  And it wasn't illegal because they were

8    given the impression that it was adult consent

9    involved.  What does Mr. Tony Buzbee say to that?

10         TONY BUZBEE:  I think every case stands

11   on its own merit.  I think -- I think -- you know,

12   I could -- I could imagine a scenario where

13   somebody was either through a broker or maybe a

14   staff member who went and collected individuals,

15   promised them payment to come and be -- you know,

16   you all have heard of atmosphere girls or people to

17   attend parties for the atmosphere, and then those

18   people could be taken advantage of and not being

19   allowed to leave and being coerced to do things

20   that perhaps they didn't expect they would have to

21   do.  I don't think that's outside the bounds of

22   imagination.

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                                    18

1            But I will say that, with regard to a

2    minor, when that's involved, it doesn't matter

3    whether there's payment and consent or attempted

4    consent.  Obviously, under the law, you cannot

5    consent to that kind of -- kind of conduct when

6    you're a minor.  And I'm not suggesting that the

7    120 people here are people that were flown in.  I'm

8    just suggesting that that's what they report.

9            Most of the people that I represent are

10   not those people that were recruited and flown in.

11   Most of them are people who were either trying to

12   break into the business or who were identified --

13   you know, were not, you know, part of some group

14   that would typically be flown in anywhere.  They

15   were just people that were invited to parties

16   because they were either on the street, in a club,

17   at a bar at a hotel lobby.  I mean, you name it,

18   every scenario you can think of probably fits the

19   bill with these 120-some-odd people.

20           STEPHEN SMITH:  When do you expect to

21   start filing these suits?

22           TONY BUZBEE:  I'm hoping to file -- I

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                    19

1    wanted to do it in a week, but to be -- to be

2    realistic, I said 30 days, but I expect within 30

3    days we'll start filing individual cases, and we'll

4    continue to file individual cases.  And, you know,

5    we'll pursue them aggressively.  And obviously it's

6    a herculean task when you're -- when you're dealing

7    with a lot of different individuals with -- each of

8    them has a different case, different evidence,

9    different defendants, different venue, different

10   law that applies.  So it's a -- it's a tough task,

11   but, you know, it's an important task because I

12   look forward to it.

13            STEPHEN SMITH:  Your thoughts or your

14   words to people who would say, well, you had a

15   press conference yesterday, and it was very, very

16   dramatic.  There's over 120 cases that you're going

17   to aim in the direction of P. Diddy Combs, and

18   you're still searching for additional evidence, et

19   cetera, et cetera.  So the argument will be made

20   that you don't really have a lock-solid case

21   against this man at this -- at this particular

22   moment in time.  They would say why have the press

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                    20

1   conference at all at this particular juncture as

2   you did yesterday.  To that, you say what, sir?

3            TONY BUZBEE:  To that I say, you know,

4   could I file the cases against Sean Combs right

5   now?  Absolutely.  Yeah.  But I want to make sure I

6   capture a wide net and capture everybody involved,

7   and that's what I'm -- that's what I'm trying to

8   do.  And part of the -- part of the purpose of the

9   press conference was to encourage people that

10  witnessed some of these events to come forward, and

11  that's happening now.

12           Because I want to make sure, when we

13  file the case, that we don't just -- you know, I

14  want to say it like this.  You know, Sean Combs,

15  you know, obviously has a lot of trouble on his

16  plate right now, and, you know, he ain't going

17  anywhere.  I want to make sure that anyone that

18  facilitated this, egged it on, participated,

19  benefited from, profited from, they're involved too

20  because that's really -- that's really what needs

21  to happen here.  It happens -- it happens in other

22  cases like that.  You want to make sure that you

Transcript of Steven A. Smith Interview with Tony Buzbee
Conducted on October 1, 2024                                    21

1    include everyone, especially those that enabled and

2    were complicit.

3              STEPHEN SMITH:  So, Tony Buzbee, to

4    close this interview, you're saying -- and I want

5    to make sure I'm quoting you accurately --

6    Sean Diddy Combs is not the only person you're

7    after?  You're after anyone who was involved,

8    anyone who was complicit -- public figure, private

9    figure, business folks, industries, et cetera.  You

10   don't give a damn who it is.  You want them all.

11   That's what you're here to do; is that correct?

12             TONY BUZBEE:  I think you summed it up

13   perfectly.  Yes.  That's true.

14             STEPHEN SMITH:  Tony Buzbee with the

15   Buzbee Law Firm based out of Houston, Texas, right

16   here on the Stephen A. Smith show over the digital

17   airwaves of YouTube and, of course, iHeartRadio.

18   Tony Buzbee, thank you so much for your time and

19   your expertise.  Really, really appreciate it, and

20   thank you so much.

21             TONY BUZBEE:  Thank you, sir.

22        (End of recording.)

```
1                CERTIFICATE OF TRANSCRIBER

2           I, Jennifer Candela-Alvarez, do

3    hereby certify that this transcript was prepared

4    from the digital audio recording of the foregoing

5    proceeding; that said transcript is a true and

6    accurate record of the proceedings to the best of

7    my knowledge, skills, and ability; and that I am

8    neither counsel for, related to, nor employed by

9    any of the parties to the case and have no

10   interest, financial or otherwise, in its outcome.

11

12   _____

13

14   JENNIFER CANDELA-ALVAREZ

15   NOVEMBER 15, 2024

16

17

18

19

20

21

22
```

# EXHIBIT F

Unofficial Copy Office of Marilyn Burgess District Clerk



1

2

3                    LAW & CRIMES NEWS

4             Interview of TONY BUZBEE

5               By SIERRA GILLESPIE

6

7          Wednesday, October 2, 2024

8

9

10

11

12

13

14

15

16

17

18

19

20   Job: 561873

21   Pages: 1 - 24

22   Transcribed by: Steph Mistele

Unofficial Copy Office of Marilyn Burgess District Clerk

Transcript of Interview Of Tony Buzbee

2

```
 1                    PROCEEDINGS

 2

 3        SIERRA GILLESPIE: Tony, thank you so much for

 4   coming on with us today.

 5        TONY BUZBEE: Thank you for having me.

 6        SIERRA GILLESPIE: So, let's start with the big

 7   question, why now? I mean, Diddy was indicted last

 8   month, but these allegations came out almost a year

 9   ago, starting in November of last year with Cassandra

10   Ventura, so why now are these plaintiffs planning to

11   file suit?

12        TONY BUZBEE: I think it's because the

13   indictment and then the denial of bail. You know, we

14   had several cases before the indictment and we were

15   just kind of waiting to see what the federal

16   government was going to do. We knew there was an

17   investigation ongoing.

18        Then when the indictment came about and then

19   when the arrest occurred and then when bail was

20   denied, I think those events led to more and more

21   calls. And then my co-counsel-- who then called me

22   and associated me with the case and thought that this
```

Transcript of Interview Of Tony Buzbee

1    would probably be the kind of case that I should

2    handle.

3         When I made an announcement that I was going to

4    pursue these cases, the floodgates really opened. We-

5    - in about a 10-day period, we got 3200 calls. And

6    then from the press conference we had yesterday,

7    we've had 12,000 calls since, I guess, in about what,

8    24 hours?

9         And so, our Herculean task is to try to sift

10   through every one of these calls and make sure that

11   we are identifying those who are victims and those

12   who are witnesses and collect evidence. I mean, it's-

13   - we have about-- almost 100 people working on this

14   task.

15        The 120 that we announced yesterday, those are

16   claims that we could file right now against Sean

17   Combs, but we're trying to make sure that when we

18   file the cases - and they're going to be filed on an

19   individual basis - that we include every potentially

20   liable party. And by those-- by that I mean any

21   entities or other individuals that either were

22   involved, participated, facilitated, egged it on,

Transcript of Interview Of Tony Buzbee

4

1   provided the venue, benefited from it, profited from

2   it, that sort of thing.

3        So, that's where we are now. We have 120 cases

4   that we are preparing to file and we're trying to

5   sift through another 12,000 phone calls and contacts

6   that we received in the last 24 hours. So, you know,

7   the volume of calls has been overwhelming and it's

8   been, you know, kind of shocking.

9        But when you put it in context that we re

10  talking about behavior-- alleged behavior that

11  occurred over 25 years with individuals that had

12  parties, I mean, you can only imagine the amount of

13  different types of parties that occurred. We're

14  talking about album release parties. We're talking

15  about the white parties you've heard about, after

16  parties after shows. Just, you know, impromptu

17  parties at hotels and clubs.

18       You know, I think the indictment and the arrest

19  kind of gave people a little bit more comfort that

20  they have more safety and support to step forward.

21  And I think announcing that there were 50 people that

22  were preparing to file suit kind of made people that

Transcript of Interview Of Tony Buzbee

5

1    were on the fence, that were still scared to step

2    forward.

3        Now anytime you have a situation like this, you

4    know, the real task is to make sure that every single

5    person that you sign on to represent has a legitimate

6    claim and that's the difficulty because one bad, you

7    know, apple spoils the barrel, as they say.

8        So, you're kind of-- it's kind of a balancing

9    test, really. On the one hand, you want to

10   absolutely, we believe victims. If you've been

11   victimized, please step forward. This is a safe space

12   for you. We can help you. We will help you. On the

13   other hand, we have to make sure that we fully vet

14   the case and we have to make sure that it's a

15   legitimate case. So, that's the process that we're

16   going through now.

17       You know, yesterday I announced that our team

18   intended to start filing cases within 30 days. It may

19   be sooner than that. But, you know, I was not

20   expecting the high volume of contact that we've

21   gotten in the last 24 hours.

22       SIERRA GILLESPIE: I mean, the sheer number of

Transcript of Interview Of Tony Buzbee

6

1   lawsuits that you're talking about as of yesterday,

2   120. To me, I'm like, wow, that is a giant number.

3   But now you're talking about over 1000 people that

4   came forward just overwhelming as you're discussing

5   that, but let's move onto another aspect of this.

6        A lot of people are talking about names that

7   could come up in these lawsuits. You referenced that

8   some of these names are pretty high profile and could

9   shock us. What can you tell me about those names? Are

10  there a lot of people that could be implicated in

11  future crimes? Is it possible that the things that

12  will be listed in these future lawsuits could be

13  prosecuted? What can you tell me?

14       TONY BUZBEE: Well, I'm very careful to talk

15  about whether someone did or did not commit a crime.

16  You know, the civil system is very different than the

17  criminal system. The criminal authorities are very

18  particular about which claims that they pursue

19  because they're-- the standard of proof is beyond a

20  reasonable doubt. In the civil system, the standard

21  of proof is more likely than not or preponderance of

22  the evidence. So, it's a lot lower standard in the

Transcript of Interview Of Tony Buzbee

1   civil system.

2        So-- but to answer your question as far as

3   crimes, I won't comment on that. But as far as

4   whether there will be additional individuals, people

5   that we all know, joined in some of these suits,

6   there's no doubt that will be the case. There's no

7   doubt that some of these events and these assaults

8   occurred at particular people's homes, some venues,

9   some hotels, some clubs. We know that there were

10  people in the room when some of these things

11  occurred.

12       It's my view that if you participated in it, if

13  you benefited from it, if you encouraged it, if you

14  watched it go on and were somehow involved, whether

15  it be even peripherally involved and did not try to

16  stop it, especially with regard to minors, then it's

17  my view that you have liability on the civil side.

18       So, that's what we're looking at and obviously

19  we want to be very careful about who we name because,

20  you know, I don t want, you know, an error in that

21  respect. It's not good for anyone. And I'm not going

22  to be the person that starts naming names of

Transcript of Interview Of Tony Buzbee

8

1   potential people and smearing people for no reason

2   because the case is about credibility.

3       So, I have made sure that each of these people

4   that we represent currently are people that I'm proud

5   to represent and that I believe in and I believe in

6   their case, but I want to make sure that we make sure

7   we include every potential liable party when we file

8   the case.

9       SIERRA GILLESPIE: These names that will be

10  included, the ones that you are willing to include in

11  these suits, why will they surprise us so much? Is it

12  because they're beloved people in the Hollywood

13  universe?

14      TONY BUZBEE: I've gotten this question so many

15  times and I know-- and you're doing your job,

16  obviously. You want to know who they are, some kind

17  of facts so you can kind of figure out who they are.

18      I think I'll just leave it at this, I mean, you

19  know, it was a secret that everyone knew about what

20  was going on with regard to these parties and some of

21  the things that happened at these so-called after

22  parties. There's a pattern and practice, custom of

Transcript of Interview Of Tony Buzbee

9

 1   behavior that went on for many, many years. The M-O

 2   of how it went down was pretty much the same for

 3   many, many years.

 4        It typically included, you know, people

 5   identified and specifically invited to certain venues

 6   and parties. When they showed up, they were given a

 7   specific drink. They were made to drink it. If they

 8   didn't drink it, they would many times be kicked out

 9   of the party. And a lot of these folks would drink

10   this drink that was provided to them and literally

11   could not remember hardly anything that happened

12   thereafter. And then next morning, woke up

13   disheveled, injured, confused, scared, ashamed, full

14   of guilt and wondering what in the heck happened to

15   them. Some of them of course have clear memory about

16   what happened, but could-- just literally could not

17   stop it from happening.

18        It's really-- it's incredibly egregious,

19   especially with regard to those that were minors at

20   the time this happened. And it's my view that if you

21   were around and you were there and you were watching

22   this and in some way participated in this, you know,

Transcript of Interview Of Tony Buzbee

10

1   you're complicit. You know, it's one thing to--

2   obviously anybody that was directly participating in

3   this, in my view, should be under the jail, but I'm--

4   that's not my decision to make. That's the

5   authorities. My job is to find and ferret out all the

6   people involved, facilitated, benefited from,

7   profited from, and make sure that they are parties in

8   these cases as we file them.

9        And there is a long list of people. You know,

10  I've said and I'll say it again, I have no doubt that

11  there are people right now who know that they were

12  somehow involved in this who are now scrubbing their

13  social media, who are searching their memories, who

14  are deleting their texts, probably deleting pictures

15  and trying to distance themselves from this. And we

16  know who they are or we will find out who they are.

17  So, you know, this is-- this is not something that's

18  going to happen overnight, but I think we're at the

19  tip of the iceberg here.

20       SIERRA GILLESPIE: You brought up the disturbing

21  pattern that we're hearing over and over again in the

22  civil suits that have already been filed and the

Transcript of Interview Of Tony Buzbee

11

1    indictment that Diddy would allegedly drug these

2    people, oftentimes against their will, and then

3    sexually assault them. And then the word that we're

4    hearing a lot is "Freak Offs", when these incidents

5    would oftentimes be recorded. Is this something that

6    you've seen from your clients that potentially they

7    have recordings?

8        TONY BUZBEE: The client-- some of the clients

9    have recordings. What-- the reason the press

10   conference was held yesterday is obviously we can

11   collect evidence from our own clients and we can

12   check their phones and we can-- you know, some of

13   this stuff happened years back, so some of that is

14   hard to do.

15       But what we really are interested in, not only

16   victims coming forward, but people that witnessed

17   these events coming forward. I have had so many

18   people send me unsolicited information that they

19   think might help. I was here. I saw this. Here's-- I

20   can corroborate this, that kind of thing, and that's

21   so important with a case like this.

22       You know, I don't know what the federal

Transcript of Interview Of Tony Buzbee

12

1  government has in its possession based on the raids

2  of Sean Combs' homes. So, I am doing what I can.

3  Obviously I've cast a very wide net and I put the

4  word out that, look, if you have evidence, please

5  come forward. Please provide us what you have. It may

6  be helpful. It may not.

7      You know, I've gotten a lot of videos and

8  pictures and it's hard to sort through that and

9  figure out, okay, let me try to put this in context,

10  you know, and figure out how this might help a claim

11  and how it might not.

12      But what we've seen is, you know, if you look

13  at the indictment of the three-count indictment

14  against Sean Combs, it describes a pattern of

15  activity that is very consistent with what we're

16  hearing from people that are calling us.

17      SIERRA GILLESPIE: You spoke of an eerie part of

18  this pattern, even more disturbing than the rest of

19  it that minors are involved. And this is something

20  you referenced in the press conference, someone as

21  young as 9 years old. You also listed a 14-year-old,

22  a 15-year-old. Obviously all these people are

Transcript of Interview Of Tony Buzbee

13

1  underage. They're minors at the time. So, are you

2  surprised that in the indictment there weren't any

3  charges to that effect?

4      TONY BUZBEE: I think that the government--

5  obviously, typically when you deal with the

6  government, you know, they do not bring an indictment

7  unless they can absolutely prove it beyond a

8  reasonable doubt. I mean, that's-- anytime you deal

9  with the feds, they're very thorough, but they will

10  not put something in an indictment that they do not

11  think they can slam dunk prove.

12      So, it's my suspicion-- I haven't talked to

13  them, but it's my suspicion that they certainly had

14  information that suggested the very kind of thing I

15  talked about yesterday, but maybe they don't have the

16  evidence to put it in an indictment and to prove it.

17      What I'm hoping is, and I'm encouraging my

18  clients, to those that-- to the extent that they are

19  willing to do so, to, you know, make themselves

20  available to the federal authorities, to get-- tell

21  their story and I expect the indictment will grow. I

22  expect there will be more counts.

Transcript of Interview Of Tony Buzbee

14

1      So, but again, that's not-- that's not my

2  bailiwick. My bailiwick is to pursue justice in a

3  civil system on behalf of the clients that I vetted

4  and I think their cases can win in court.

5      SIERRA GILLESPIE: That's interesting that you

6  said you think the indictment will grow, maybe more

7  charges could be filed against Diddy based on what

8  we're going to hear in these more than 100 lawsuits.

9      So, let's talk about those allegations for

10  second. Again, we're just seeing this pattern over

11  and over about sexual assault, false imprisonment,

12  drugging. Can you tell me a bit more about the

13  allegations that your clients are bringing?

14      TONY BUZBEE: I'll just talk generally about

15  them. It's-- I kind of put them in two different

16  buckets, if you will. The first bucket is

17  individuals, young people, trying to break into the

18  entertainment industry, whether it be acting,

19  singing, dancing, that sort of thing. People who are

20  recruited by affiliates of Sean Combs or others in

21  his group who-- one individual I'm thinking about in

22  particular who went to a studio to audition and ended

Transcript of Interview Of Tony Buzbee

15

1    up being allegedly sexually assaulted. That's one

2    bucket.

3         The larger bucket is just people who are

4    identified perhaps in a crowd, on the street, at a

5    club, recruited to come to parties and get to the

6    party and are drugged and then are assaulted. That's

7    the second bucket. That's the larger bucket.

8         And so, that's kind of-- the M-O's the same,

9    but, you know, the group of people is a little bit

10   different. You have some aspiring singers and

11   aspiring dancers and actors, that group, and then you

12   have people that just were flattered to be invited to

13   a party by somebody of Sean Combs' stature and

14   celebrity. So, you know, it's-- all of it's sad. All

15   of it's egregious, but each case is different.

16        SIERRA GILLESPIE: This next part is really--

17   just sad to even talk about. You mentioned that over

18   50%, half of these people who are filing suit

19   actually had already reported this, whether it be to

20   the police or to hospitals, maybe in the way of a

21   rape kit or something like that following a sexual

22   assault. So, this had already been on record. How do

Transcript of Interview Of Tony Buzbee

1  you feel about that? Do you think that charges

2  should've been filed when those things were reported?

3      TONY BUZBEE: You know, I'm still delving into

4  that, you know. The-- many of these folks who woke up

5  the next morning scared, ashamed, in some cases can't

6  find their shoes. The only thing they remember is

7  being forced to take a drink. You know, end up at the

8  hospital, drug tested and find drugs in their system

9  when they're not people that typically do drugs.

10     In several cases where they found what was

11  described as a horse tranquilizer in their system,

12  you know, obviously those people who went to the

13  hospital and reported that, you know, what happened

14  after that? Why wasn't it pursued?

15     You know, there's as many different reasons for

16  that as there are different clients. So, you know,

17  I'm not casting dispersions at the authorities or

18  casting dispersions at the hospital. It just is what

19  it is. And you should know, and I think you probably

20  do know is that any time someone is victimized in

21  this way, it takes a heck of a lot of courage to come

22  forward. The authorities know that these are

Transcript of Interview Of Tony Buzbee

17

1    incredibly hard cases to prove.

2        I think we released yesterday some statistics

3    about sexual abuse and assault and exploitation in

4    the United States. About the small percentage of

5    people that actually report it and the much, much,

6    much smaller percentage of cases that are ever

7    actually taken. And then the much, much smaller

8    percentage of prosecutions that ever actually occur.

9    It's just a nationwide pervasive issue.

10       And if you don't report it immediately, it

11   becomes that much harder to report because, you know,

12   the first thing we're going to hear, and I think

13   we've already heard from Mr. Combs' team is that if

14   something had happened, why didn't they report it

15   immediately? That's kind of the knee jerk reaction of

16   most people.

17       People who don't understand the scenario here

18   and how things actually work in the real world

19   because it's hard to prove these cases. Even if you

20   reported it on the spot, it's hard to prove these

21   cases. It makes it much harder, especially when

22   you're worried about ramifications from your family

Transcript of Interview Of Tony Buzbee

18

1   even, from your job, from your community. And also,

2   you're dealing with a celebrity who's, you know,

3   celebrated.

4       You know, and, you know, the word fanatic is--

5   the short for that is fan and fans can be quite

6   nasty. You know, I've already gotten a lot of threats

7   on social media just because I'm the lawyer

8   representing these folks. You know, there's a real

9   fear there.

10      And, you know, I think the fact that the

11  federal government took action, the fact that there

12  was an arrest and an indictment, the fact that bail

13  was denied I think now three times, gives people some

14  courage to step forward. And then when they see that

15  other people are stepping forward, I think it's a

16  good thing.

17      And to have a dialogue and a discussion about

18  the difficulty of these cases and how pervasive this

19  kind of conduct is, is good for everybody. And, you

20  know, so I'm glad that-- and proud these people are

21  stepping forward, of their courage and I'm going to

22  do my best to pursue their claims in aggressive

Transcript of Interview Of Tony Buzbee

19

1    fashion and make sure that, you know, the-- you know,

2    obviously one of the defendants will be Sean Combs,

3    but I think they'll be many more.

4         SIERRA GILLESPIE: You used the word courage and

5    I really want to highlight that because you're right,

6    this is such strength for these people to come

7    forward at maybe the darkest moment of their life and

8    reveal it to the world. But the strength there is

9    really important to highlight. And I'm wondering as

10   things move forward, if federal prosecutors do reach

11   out to any of your plaintiffs, do you think that

12   they'd be willing to testify and tell their story in

13   that way?

14        TONY BUZBEE: I'm certainly going to encourage

15   them to do so. Absolutely going to encourage them to

16   do so. You know, that's, of course, another level of

17   courage to do that. You know, one of the things that

18   each plaintiff has been told is that at some point

19   your name will be revealed. When we file the case,

20   obviously we're going to reveal your name to the

21   people that we sue and the entities that we sue.

22   We're going to file your case as John Doe or Jane

Transcript of Interview Of Tony Buzbee

20

1  Doe, but it's up to the court, ultimately, whether we

2  will have to reveal your name publicly. And I've

3  tried to make it clear that ultimately the court may

4  say, you must reveal your name. And so, I've tried to

5  make that clear on the front end.

6       Now that's even a step further when you talk

7  about, are you going to be a witness in a federal

8  prosecution? That's a big deal. You can't hide-- you

9  can't hide your name and your identity when you serve

10  as a witness in a case, especially a case against

11  somebody like Sean Combs. It's going to be very high

12  profile and, you know, every-- and you-- in these

13  cases, I think you probably, you know, common sense

14  tells you that the first defense is always going to

15  be to attack the victim. That's the first defense.

16  It's been that way since I've been handling these

17  cases for 20-some odd years.

18       And you got to make it clear on the front end

19  that, look, you're going to be put under a

20  microscope. Everything you've done and said in your

21  entire life is going to be examined. Anything you've

22  ever posted on the internet or social media is going

Transcript of Interview Of Tony Buzbee

21

1  to be examined. Every job you ever had, every

2  employer you've ever had, they're going to talk to

3  them. You know, they're going to do a deep, deep dive

4  into your background. And be prepared for that.

5      But ultimately, none of that has anything to do

6  with what happened in the room at the time that

7  individual was assaulted. So, you know, you have to

8  prepare people for that and that's one of the reasons

9  that people are very reluctant to come forward.

10  Laying aside the guilt and the shame and the self-

11  blame that people have, like, how did I put myself in

12  this position? That sort of thing.

13      You know, when I was representing the women who

14  were assaulted or allegedly assaulted by DeShaun

15  Watson, the football player, you know, we-- I-- at

16  the beginning I encouraged them to speak to the NFL.

17  And, you know, and the NFL investigators, former

18  federal prosecutors, these were very professional,

19  very sophisticated people who were leading the

20  investigation on behalf of the NFL. One of the first

21  questions they asked these women was, "What were you

22  wearing?" Which is indicative of what these folks

Transcript of Interview Of Tony Buzbee

22

1   face, which is, you know, even the people who are

2   supposedly trying to help you, who are trying to

3   gather information, their first thought is, somehow

4   you re to blame for the conduct of someone else.

5       And so, it's very hard to-- for the general

6   public to understand that because the general public

7   typically is going to look, well, if something

8   happened, you would've reported it. Well, if

9   something happened, what was your role in this? You

10  know, why did you take that drink?

11      You know, instead of looking at it from the

12  perspective of, I was sought out. I was flattered. I

13  thought, wow, this is something I can tell my

14  friends. I was invited to an after party with this

15  celebrity and other celebrities. And the next thing I

16  know I wake up confused and injured, you know,

17  through no fault of my own, but it's the natural

18  human tendency to want to blame yourself and

19  certainly the tendency of the general public to blame

20  the victim.

21      SIERRA GILLESPIE: This is a major update in the

22  widespread allegations against P. Diddy, so obviously

Transcript of Interview Of Tony Buzbee

23

1    we're going to continue to follow this one, but Tony,

2    thank you so much for coming on today and giving us

3    some insight into these future lawsuits.

4        TONY BUZBEE: Thank you very much.

5        SIERRA GILLESPIE: Following the news of these

6    impending civil lawsuits, Diddy's team released a new

7    statement saying quote, "As Mr. Combs' legal team has

8    emphasized, he cannot address every meritless

9    allegation in what has become a reckless media

10   circus. That said, Mr. Combs emphatically and

11   categorically denies as false and defamatory any

12   claim that he sexually abused anyone, including

13   minors."

14       Diddy has pleaded not guilty to the federal

15   charges, saying he plans to tell his side of the

16   story when it comes time for trial. Reporting for Law

17   & Crime, I'm Sierra Gillespie.

18

19

20   (The recording was concluded.)

21

22

Transcript of Interview Of Tony Buzbee

24

```
 1              CERTIFICATE OF TRANSCRIBER

 2          I, Steph Mistele, do hereby certify that

 3    this transcript was prepared from the digital audio

 4    recording of the foregoing proceeding; that said

 5    transcript is a true and accurate record of the

 6    proceedings to the best of my knowledge, skills, and

 7    ability; and that I am neither counsel for, related

 8    to, nor employed by any of the parties to the case

 9    and have no interest, financial or otherwise, in its

10    outcome.

11

12    [signature: Steph Mistele]

13

14    STEPH MISTELE

15    November 15, 2024

16

17

18

19

20

21

22
```

# EXHIBIT G

Unofficial Copy Office of Marilyn Burgess District Clerk

1

2

3

4

5                TRANSCRIPT OF VIDEO-RECORDED

6                      INTERVIEW

7

8    "INSIDE DIDDY'S FREAK OFFS WITH LAWYER TONY BUZBEE .

9          THE CHRIS HANSEN SHOW . EP 1"

10

11       https://www.youtube.com/watch?v=0gM0S-SgNnw

12

13

14

15

16

17

18

19

20  Job No.: 561200

21  Pages: 1 - 26

22  Transcribed by: Christian Naaden



Transcript of Interview - The Chris Hansen Show

2

1                P R O C E E D I N G S

2

3           CHRIS HANSEN:  Coming up, an interview with

4      the lawyer representing more than 100 victims of Sean

5      "Diddy" Combs, some of whom were underage. It seems not

6      a moment goes by without another very disturbing

7      allegation against the music impresario Sean "Diddy"

8      Combs, now being accused by Homeland Security and

9      federal prosecutors of operating a major human

10     trafficking and sex exploitation ring.

11           And Tony Buzbee, who is a lawyer based in

12     Houston, Texas, represents now more than 100 survivors,

13     victims, allegedly of Diddy. And Mr. Buzbee joins me

14     now from Houston, sir. Thank you for being with us

15     today.

16           TONY BUZBEE:  Glad to be here. Chris, how are

17     you?

18           CHRIS HANSEN:  I'm great. Thank you. Disturbed

19     by all this, though? We've been investigating predators

20     for for decades now.

21           And I'm at a loss to describe an alleged case

22     this big, this violent and this disturbing. How do you

Transcript of Interview - The Chris Hansen Show

3

1    get your arms around representing more than 100 alleged

2    victims, survivors of one man?

3            TONY BUZBEE:  It's difficult. It's obviously

4    very administrative intensive. You know, you have to

5    treat each one of these cases on its own merit. Um,

6    we've received at this point 3500 calls of people who

7    either claim to be victimized by Sean Combs or have

8    information they want to share about him, some sort of

9    interaction they had with him and things that they saw.

10   Um, so it's very tough.

11           You know, we have about 90 people who are

12   attempting to vet these claims on the on the front end.

13   And then we have retired Houston police officers,

14   including people that were in the Major Crimes Unit

15   here who are assisting us in running down witnesses,

16   collecting texts, pictures, video, that sort of thing.

17           We want to make sure, you know, because it's

18   such a high profile case, because there's a lot of

19   media attention. We want to make sure that that it's

20   done by the numbers and done correctly. So, you know,

21   we've been working on this probably for six months.

22           Uh, obviously after the indictment and

Transcript of Interview - The Chris Hansen Show

4

```
1    specifically after Sean Combs bail was denied for the

2    second time, I think, you know, that kind of opened the

3    floodgates. I think people are very, very fearful of of

4    Sean Combs and his his entourage.

5           You know, he's perceived to be you know,

6    connected with some sort of criminal element on the one

7    hand, but also very friendly with people in power and

8    also with other celebrities. So he's -- he's very

9    quick.

10          These victims will tell you that that when

11   they would cry out or complain about certain things, he

12   would be very quick to to make these either explicit

13   threats or, or implicit threats about, you know, them

14   speaking to anyone about the conduct that they had seen

15   or been involved in. So, you know, the floodgates.

16          CHRIS HANSEN:  You raise a critical point

17   here, Mr. Busby, in that one of the reasons his bail

18   was denied was because of this allegation of violent

19   witness tampering.

20          And now that he's clearly going to be held

21   without bail, based upon what we've seen in the courts

22   in New York, it would seem that a lot of these victims
```

Transcript of Interview - The Chris Hansen Show

5

1    would feel safe coming forward. But it speaks to the

2    violence alleged in these allegations.

3         TONY BUZBEE:  Yeah. I mean, there's there's

4    some of these victims that were on the receiving end of

5    some very, you know, not not implicit but very direct

6    violence against them.

7         But, you know, there's an M.O here when you,

8    when you, when you look at the range of these cases and

9    what what has been alleged. You kind of see an

10   overwhelming theme, which is, you know, he identifies

11   somebody that that he wants to either have sexual

12   contact with or he wants his cohorts to have sexual

13   contact with.

14        They are ultimately drugged in some way,

15   typically through a drink, and then they end up, you

16   know, being murky, not understanding what's going on

17   and wake up the next morning, in some cases without

18   their clothes or shoes, confused, injured, and not

19   knowing what to do.

20        That is a reoccurring theme. And so how this

21   was able to go on for so long. It's -- it's -- it's

22   hard to fathom because we know that, that a lot of this

Transcript of Interview - The Chris Hansen Show

6

1    conduct occurred at -- at, you know, venues, whether it

2    be hotels, clubs after parties, famous people's homes,

3    you know, publicized parties that that are all over the

4    internet, we can see that the clips from them.

5         And if you look at interviews that people that

6    attended the party, when they get to the point of

7    asking about certain things that would kind of get

8    close to some of the conduct we're talking about, you

9    know, they go quiet.

10         TONY BUZBEE:  So this was a secret in the

11    industry that everyone knew about. And I'm just very

12    proud that that, you know, that the chips have started

13    to fall.

14         You know, the Cassie case, I think was was

15    kind of the beginning of this and then the the

16    investigation and then the the indictment and then the

17    arrest and then the bail being denied. And now people

18    are coming forward.

19         In fact, we published a phone number for abuse

20    Hotline yesterday and it literally crashed. We had so

21    many calls. So we have a great task in front of us of

22    trying to sift through whether these folks who are

Transcript of Interview - The Chris Hansen Show

7

1    calling are victims or have information or just, you

2    know, you obviously, you know that in these types of

3    situations, there's people that just call for, you

4    know, and crank and that sort of thing.

5         We have to sift through that and we're going

6    to do that. But I expect we'll start filing cases in

7    New York federal court in the next two weeks to 30

8    days.

9         And I expect we're going to be joining

10   defendants in these cases that are going to raise some

11   eyebrows. And I look forward to, you know, following

12   this evidence wherever it goes and whoever.

13        CHRIS HANSEN:  Begs the question, Mr. Buzbee,

14   and you bring up one of the points that intrigues me

15   and a lot of other people so much is that other people

16   in the music industry had to know, perhaps even cover

17   up and, as you may allege in the future, have taken a

18   role in allowing Combs to do this.

19        AD:  Hey everyone, Chris Hansen here. We have

20   almost 100 new episodes on my streaming crime network.

21   Watch true blue.com. Use the code YouTube 24 for half

22   off your first month or YouTube year for $20 off a full

Transcript of Interview - The Chris Hansen Show

8

1   year. We'll see you soon on True Blue.

2           TONY BUZBEE:  It's my view that if you were in

3   the room, a miner is in the room being abused, and you

4   allow it to happen, you have liability. It's my view

5   that if you that if you facilitated or egged that on in

6   some way, you have liability.

7           It's my view that you -- if you provided the

8   venue knowing how he was and the things that he was

9   doing along with the people that he was, that he was

10  with, you have liability.

11          It's my view that if that -- if that -- if you

12  knew as a hotel owner that he was renting out an entire

13  floor and there were people appearing, multiple people,

14  young women and young men who were appearing at the

15  front desk, and you were not taking down their name and

16  you were sending them directly to his floor, you have

17  liability.

18          It's my view that if you're a bank and you

19  knew that he was withdrawing hundreds of thousands of

20  dollars in cash that was being used to pay for people

21  to be shipped from all across the country, as in

22  trafficked, you have liability.

Transcript of Interview - The Chris Hansen Show

9

1              I mean, I think the the facets of this and,

2       you know, everybody's really tuned into, you know, who

3       are the celebrities that might be named. But in my

4       view, the more sinister, the more sinister element of

5       this is all the corporations that benefited from this

6       and the venues that benefited from this, and the people

7       that profited from this culture that he created.

8              And I look forward to peeling back every layer

9       of that onion so we can all see what was going on here.

10             CHRIS HANSEN:   And there is precedent for

11      this. Jp Morgan Chase was held liable in the Epstein

12      case, as I'm sure you know, and in human trafficking

13      cases around the country, hotel chains, major companies

14      have been held responsible for allowing this sort of

15      human trafficking activity to occur on their

16      properties.

17             TONY BUZBEE:   Yeah, we know we know from the

18      victims that that, you know, that it was routine for

19      for the so-called atmosphere.

20             They had what they called atmosphere. Girls

21      who would be shipped in paid $10,000 per person to be

22      there and then coerced and bullied, and in some cases

Transcript of Interview - The Chris Hansen Show

10

1  forced to do certain things that they didn't anticipate

2  that they were supposed to be doing and then held.

3  They're not allowed to leave.

4        I mean, this is the kind of thing that was

5  going on and was going on at the same time that a lot

6  of people, they were taking pictures. It's going on

7  like literally, right, you know, right next to them.

8        And some of the same pictures that you see on

9  Instagram and other social media platforms. I think

10 this is going to be, you know, even bigger than people

11 can imagine. Um, give me.

12       CHRIS HANSEN:  A sense of the volume of

13 videotape and photographic evidence and recordings you

14 have.

15       TONY BUZBEE:  We are still sifting through

16 hundreds of pictures and video. You know, some of it,

17 it's without context. It's hard to even know what this

18 even means or what's, you know, how does this fit into

19 the picture?

20       We've been -- I've been sent just unsolicited

21 via email and direct message on social media, videos

22 and pictures and stuff. So we're trying to sift through

Transcript of Interview - The Chris Hansen Show

1    all that. So I couldn't even give you an estimate.

2            You know, yesterday there was there was an

3    individual who, of course, did not want to reveal who

4    she was, but was texting me just video after video

5    after video from some of these so-called freak offs.

6    And I'm just looking at this stuff like, man, I wish

7    this weren't on my phone. Number one. And number two,

8    she was.

9            CHRIS HANSEN:   Texting you on your personal

10   phone. Yeah. Videos of these freak-offs.

11           TONY BUZBEE:   Yeah, yeah.

12           CHRIS HANSEN:   And what does that say to you?

13   That somebody unsolicited feels so strongly about

14   what's happened to her and others that she would send

15   this material to you?

16           TONY BUZBEE:   Yeah, and I'm trying to. And

17   here I am trying to figure out, first off, you know, I,

18   I don't want this stuff on my phone, but.

19           CHRIS HANSEN:   No, of course.

20           TONY BUZBEE:   Not. I'm trying to figure out

21   the context. Like who, who is who are these people

22   doing these things that you would, you know, you would

Transcript of Interview - The Chris Hansen Show

12

1    typically wouldn't -- wouldn't see. And obviously you

2    couldn't -- couldn't show it to anybody in public. It's

3    pretty -- pretty graphic.

4         But -- but you know, I've had -- you know, we

5    have this large team of people trying to field all

6    these calls and all these media or this internet

7    contact and you know, trying to sift through that and

8    screen that and get people to the next level to start

9    talking to lawyers.

10        And the difficulty, as you might expect, is

11   what you want to do is you want to you want to make

12   sure that people believe you are believed. Okay. We

13   believe victims. We're not going to we're not going to

14   we're not here to cross-examine you at this point.

15   We're not here to -- to -- to, you know, to to be

16   skeptical.

17        But at some point we have to be because, as

18   you know, these are very difficult cases. These are

19   these these are difficult cases going against a

20   powerful group of people. So at some point, you know,

21   when they get to the third level, hard questions have

22   to be asked.

Transcript of Interview - The Chris Hansen Show

13

1        And so we're -- we're -- there's a balance we

2   have to cut here. We have to on the one hand, make sure

3   that people understand that we believe you. We want to

4   hear what you have to say. We want to hear your story.

5   We want to represent you and help you if we can. On the

6   other hand, you need to understand that this is this is

7   not going to be a cakewalk.

8        TONY BUZBEE:  You know, this is this is going

9   to be there's going to be a lot of attention on this.

10  And they're going to fight -- fight us tooth and nail.

11       And the first defense is going to be we never

12  don't know who you are. And you're just here to try to

13  get money. And the second defense is, well, if you've

14  proven that we were in the same room together, but we

15  didn't do anything to you and the entire defense is

16  going to be we're going to attack your character and

17  your lawyer's character, and we're going to attack, you

18  know, from the very beginning.

19       So this is -- I've been down this road before.

20  It's a -- it's a difficult road, but the fact that we

21  have 120 people who are willing to step forward, who

22  have been vetted now and are and are ready and willing

Transcript of Interview - The Chris Hansen Show

14

 1    and able to file their case, we're going to file them

 2    under the Jane Doe or the John Doe pseudonym.

 3           But we understand that eventually their names

 4    will be made public. I'm encouraging them to talk to

 5    the Homeland Security and the FBI. Um, I'm encouraging

 6    them to allow me to share their names and their

 7    information with the authorities.

 8           I'm encouraging them that at some point, let's

 9    let's step in front of a camera and let's tell your

10    story, because there's probably many, many other people

11    out there who, if they see you on the camera and they

12    hear what you have to say and it happened to them,

13    they'll step forward too. So that's kind of where we

14    are in this. And, you know, we're at the tip of the

15    iceberg.

16           CHRIS HANSEN:  How many of your victims? Mr.

17    Busby were underage, were minors at the time of the

18    offenses?

19           TONY BUZBEE:  Twenty-five of the 120.

20           CHRIS HANSEN:  Twenty-five.

21           TONY BUZBEE:  Twenty-five we're talking about.

22    And you would think that we're talking about females,

Transcript of Interview - The Chris Hansen Show

15

1   but we're you would be. I was surprised because I just

2   expected this was all these were all females.

3          But -- but of the 120 people, half are males.

4   And of the minors, about half are males as well. We

5   have a young man who was nine years old at the time

6   this occurred.

7          CHRIS HANSEN:  Nine years old, Mr. Busby. Nine

8   years.

9          TONY BUZBEE:  Old. 13 years old. 14 years old.

10  A 15 year old. All of these are, with one exception,

11  young men who were trying to break into the industry.

12         The nine year old young man was was was

13  essentially his parents responded to some sort of

14  advertisements. Somebody was recruiting young people to

15  break into the industry, and he he made the various

16  screening mechanisms they had.

17         And him, along with four other boys, went and

18  were able to meet Sean Combs and his his parents

19  essentially handed him off to Sean Combs. And they they

20  alleged that they handed him off.

21         And Sean Combs had had his way with this child

22  by coercing him and pressuring him and promising him

Transcript of Interview - The Chris Hansen Show

16

1  things. And, you know, to the point now that that, you

2  know, just devastated this, this young man's life, who,

3  you know, he doesn't want to have anything to do with

4  music.

5          I mean, it was his dream to be a musician. He

6  doesn't want to have anything to do with music. Of

7  course, his parents are have shame and guilt because

8  they helped facilitate that.

9          And that's kind of a typical story of what

10 we're talking about here. And I think I think it goes

11 without saying that, and it shouldn't be this way, but

12 it is this way that that it's even more difficult for a

13 for a young man to come forward when this happens to

14 him, you know, because there is a stigma involved in

15 that. So this is what we're dealing with.

16         And at the same time trying to be sensitive

17 you know, you've got to be aggressive and pursue the

18 case and make sure we leave no stone unturned, and we

19 gather all the evidence and we ask the hard questions

20 of the clients.

21         But at the other hand, on the other hand, we

22 have to be sensitive because this is tough stuff. And

Transcript of Interview - The Chris Hansen Show

17

1    this -- this young man's been living with this for a

2    long time.

3          CHRIS HANSEN:  I can't imagine the shame, the

4    degradation, the absolute destruction of a child's life

5    being exposed to this at the age of nine.

6          TONY BUZBEE:  You think about, you know, this

7    at the time this happened, this allegedly happened.

8    Sean Combs was the top of the top of the music

9    industry.

10          It was well known that if he if he liked you,

11   he could make you a star. And that's what the parents

12   were excited about. Obviously, the young man was

13   excited about. And then this -- this happens.

14          And, you know, it's like he's just on the

15   scrap heap of history, if you will. You know, just

16   devastates. I don't want to be too pessimistic because

17   my my hope is that the young man has a long, productive

18   life. But -- but boy, it's hard when something like

19   this happens to you.

20          CHRIS HANSEN:  In terms of predatory behavior.

21   You've investigated victims whom you've represented.

22   Where does this case rank? Mr. Busby?

Transcript of Interview - The Chris Hansen Show

18

1          TONY BUZBEE:  A lot of the cases that I've

2    had, the conduct has been secret, private. There were

3    some suspicions, but it was private, and it was usually

4    one person on one person.

5          And of course, you know, when you have this

6    predilection like this, it happens over and over. You

7    know, it doesn't just happen once. Typically when

8    something like this happens, you can you can bet that

9    it's probably happened more than once.

10         What's -- what's different about this case, in

11   my view, is that is that this was not a secret. I mean,

12   some of this behavior was happening in the presence.

13         And I'm not just talking about in the presence

14   because Sean Combs never went anywhere without

15   bodyguards, never went anywhere, never traveled

16   anywhere without some sort of entourage or posse, if

17   you will. And certainly those people knew what he was

18   up to and knew what his, his inclinations were.

19         But what's what's more disturbing about this

20   is, is that at some of these, these after parties

21   weren't just four or five people, these after-parties

22   were people that knew that about 1:00, you know, there

Transcript of Interview - The Chris Hansen Show

19

1   was going to be a shift in this party and things were

2   going to be different.

3         You know, this was not going to be, you know,

4   the party that you see on the -- on Instagram and so

5   forth.

6         TONY BUZBEE:  I mean, some of the conduct

7   occurred during the main party, but the most sinister

8   conduct occurred in the so-called after parties, and

9   those were not small affairs.

10        And so you wonder, you have people of note,

11  people who are known, who attended some of these and

12  knew about some of some of this behavior going on. I

13  mean, there was no secret that people were being flown

14  in.

15        I mean, there's no way you could you could not

16  know that unless you were just there's just no way you

17  could not know that.

18        And the things that were going on in the

19  presence of people, that of names that we've all heard

20  and venues that we all know and people's homes that we

21  all know, and how it went on for, for 25 or more years

22  without anybody saying anything.

Transcript of Interview - The Chris Hansen Show

20

1          You know, you've heard some celebrities say,

2     hey, I would never go to a Diddy party. There's --

3     there's a -- there's a group of celebrities out there

4     who are making that more and more well known because

5     obviously, what's going on.

6          But how did this go on for so long without

7     anyone saying, you know, enough is enough of this? I'm

8     going to speak out about this.

9     TONY BUZBEE:   You know, I know he's a powerful

10    person. I know he's connected with with some powerful

11    people. I know that, you know, politically, he's even

12    connected.

13         And maybe there's an element of some sort of

14    criminal element here that could be a danger. But I'm

15    going to say something because what I'm seeing is not

16    correct. It's not right. And I don't want to be a part

17    of it, and I don't want to be associated with it.

18         But you never heard that, you know, you heard

19    people like Katt Williams who have said some things

20    years back, you know, 50 Cent has said some things

21    about, about that, you know, you've heard interviews

22    here and there about when people ask about Sean Combs

Transcript of Interview - The Chris Hansen Show

21

1  parties, you know, they grow silent and they kind of

2  it's kind of hush-hush.

3          I can't talk about that. But why didn't they

4  ever say something, you know, why did they allow this

5  to happen and continue to happen?

6          It's my view that if you continue to attend

7  those parties knowing what was going on and not saying

8  anything. How are you not. How are you not complicit in

9  some way?

10         CHRIS HANSEN:  Do you have witnesses, insiders

11 who are willing to cooperate in this case?

12         TONY BUZBEE:  I think so. I also think that

13 certainly have witnesses who saw this, who weren't

14 involved but are willing, who have nothing to gain, who

15 are willing to talk.

16         I expect that some of the, the, the people

17 that were the closest to Sean Combs, who were with him

18 at all times, will probably talk. I think, you know,

19 the federal government is really good, as you know, at

20 getting people who are not the targets to talk. I

21 expect that will happen.

22             I expect the indictment and the charges in the

Transcript of Interview - The Chris Hansen Show

22

```
1    indictment will grow. I expect that other people will
2    be implicated. So I think that, like I say, I think
3    we're only seeing the tip of the iceberg here.
4              And, you know, I -- I'm what I'm most
5    interested in is, is every single person who is
6    victimized come forward and come forward now. You know,
7    there's a reason that that that New York State and
8    California have very long statutes of limitation for
9    these types of crimes because people are very, very --
10   you know, they don't cry out immediately.
11             Then it gets harder and harder as time passes
12   for them to come forward, because they're going to be
13   the first thing people say is, why didn't you come out
14   immediately? Because a lot of people don't understand
15   how hard it is to say, hey, this person did this to me
16   because it's a they don't.
17             TONY BUZBEE:  There may be financial
18   repercussions, safety concerns, family repercussions,
19   backlash from their community. You know, people can be
20   you know, there's a reason for this. You know, this
21   word "fan" is short for fanatics. And people are can be
22   really mean and nasty.
```

Transcript of Interview - The Chris Hansen Show

23

1          And when you're dealing with a, you know,

2    alleged criminal element, you know, people should feel

3    that. Yeah, there's blowback. And, you know, even for

4    me, you know, I've been -- you know, you can only

5    imagine, I'm sure, for you two, the kind of the kind of

6    messages you get on social media are people that are

7    going to do this to you, and they're going to do that

8    or to your wife.

9          And, you know, I've had my wife told me last

10   night, you know, we're going to have to get because I

11   have security at my house, but we're going to have to

12   you're going to have to have 24-hour security. I'm

13   thinking, come on, you know, you know, that's just a

14   bunch of foolishness. But but who knows? I mean.

15          CHRIS HANSEN:  It's real. I, I've seen it

16   personally, you know, and you're out there trying to do

17   the right thing and expose evil actors. And, you know,

18   there can be blowback from those people and their

19   associates.

20          There's no question. What? Before I let you

21   go, Mr. Buzbee, and I know you're a busy fellow. One

22   last question. What does this say about this particular

Transcript of Interview - The Chris Hansen Show

24

1   segment of the music industry that, as you have said

2   and has been proved, look the other way on this.

3            TONY BUZBEE:  I call it the, you know, the the

4   facilitators. You know, obviously the people that

5   participated in this are terrible, terrible actions and

6   terrible conduct and, and should be prosecuted and put

7   underneath the jail.

8            But you know, what really irks me are the

9   people that that saw this happening, that enjoyed,

10  enjoyed themselves while it was happening, that fancy

11  themselves as upstanding people and knew this was

12  happening and continue to go to these parties knowing

13  this was going to happen. And there were, in my view,

14  are just as complicit.

15           And -- and whether they, you know, they can be

16  criminally charged or even civilly sued, people should

17  know, know that they knew and they didn't do anything

18  about it.

19           CHRIS HANSEN:  Tony Buzbee from Houston, thank

20  you very much for spending all this time and taking us

21  inside this investigation.

22           I promise you we will stay in touch and we

Transcript of Interview - The Chris Hansen Show

25

1   will continue our work on our end as well. Thank you,

2   sir.

3           TONY BUZBEE:  Thank you Chris.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Transcript of Interview - The Chris Hansen Show

26

1                  CERTIFICATE OF TRANSCRIBER

2          I, Chris Naaden, a transcriber, hereby declare

3     under penalty of perjury that to the best of my ability

4     from the audio recordings and supporting information;

5     and that I am neither counsel for, related to, nor

6     employed by any of the parties to this case and have no

7     interest, financial or otherwise, in its outcome, the

8     above 25 pages contain a full, true and correct

9     transcription of the tape-recording that I received

10    regarding the event listed on the caption on page 1.

11

12          I further declare that I have no interest in

13    the event of the action.

14

15

16          November 11, 2024

17          Chris Naaden

18

19    (561200, Inside Diddy's FREAK OFFS with Lawyer Tony

20    Buzbee, The Chris Hansen Show, EP 1)

21

22

# EXHIBIT H

Unofficial Copy Office of Marilyn Burgess District Clerk

1

2

3

4

5              TRANSCRIPT OF VIDEO-RECORDED

6                        INTERVIEW

7

8    "LAWYER TONY BUZBEE SAYS MORE CELEBRITIES WILL BE SUED

9         WITH DIDDY, DEMAND LETTERS SENT"

10

11   https://www.tiktok.com/@unbotheredbabez/video/742309945

12         76396977073_r=1&_t=8rHk8WIXxbq

13

14

15

16

17

18

19

20   Job No.: 561200

21   Pages: 1 - 7

22   Transcribed by: Christian Naaden



Transcript of Interview - Demand Letters Sent

2

```
 1              P R O C E E D I N G S

 2

 3          HARVEY LEVIN:  Tony, you said last week at the

 4   news conference that you would begin filing lawsuits as

 5   early as this week. Um, do you have plans to do so? Um,

 6   and do they involve celebrities? Do they involve just

 7   Diddy people beyond Diddy?

 8          TONY BUZBEE:  I think I let the lawsuits speak

 9   for themselves. I don't expect there to be anything.

10   You know, everyone's focused on what what other

11   celebrities were involved.

12          HARVEY LEVIN:  Um, you know who's going to be

13   named? Who's going to be outed?

14          TONY BUZBEE:  I don't expect that to happen

15   this week. I'm hoping to file some lawsuits this week.

16   Will they, of course, will include Mr. Combs and some

17   corporate entities. Uh, but we want to make sure that

18   that, you know, if we name individuals beyond Mr.

19   Combs, that that we make sure that we've done our

20   homework because it's going to create a firestorm. We

21   understand that. So we're going to make sure that we

22   dot our I's and cross our T's.
```

Transcript of Interview - Demand Letters Sent

3

1          CHARLES LATIBEAUDIERE:  Tony, you said

2     something interesting there. You said I don't expect

3     that to happen this week. So that sounds like there

4     could be other people named other famous people named

5     down the road. I know you said this is going to be a

6     process over the next 30 days of filing these lawsuits.

7     So are you saying not this week, but maybe in the weeks

8     coming after this one?

9          TONY BUZBEE:  I would expect so. I really

10    don't want to get in into a situation where people are,

11    you know, if I don't file a lawsuit next week, then,

12    you know, there's a that creates a media frenzy that

13    the truth is, I want to be clear about something.

14          Um, if you were attending one of these

15    parties, if you will, and you attended, attended before

16    or you knew what was going to happen, that is, um, you

17    knew that a particular drug was being used in drinks

18    that was causing people, uh, to be coerced and taken

19    advantage of, and you were there in the room or you

20    participated, or you watched it happen and didn't say

21    anything, or you helped cover it up, in my view, you

22    have a problem.

Transcript of Interview - Demand Letters Sent

4

1          And as we file each one of these cases, we're

2     going to make an effort to resolve them on the front

3     end. But failing that, we're going to file public

4     lawsuits and pursue these cases aggressively.

5          HARVEY LEVIN:  So who will be named when they

6     will be named?

7          TONY BUZBEE:  All that will come out in due

8     course. But the bottom line is, you know, I want to be

9     clear about the scope of this. A lot of people attended

10    these parties. A lot of people saw this activity going

11    on.

12         A lot of people allowed it to go on, said

13    nothing, didn't intervene, maybe benefited from it,

14    profited from it. All of these individuals and

15    entities, in my view, have exposure here.

16         HARVEY LEVIN:  Are we talking about

17    celebrities on the level of Diddy?

18         TONY BUZBEE:  I would expect so. Yes.

19         HARVEY LEVIN:  Have you sent any demand

20    letters out to anybody other than Diddy saying, um,

21    here's what you've done, we want to settle with you or

22    we're going to file a lawsuit. Have you sent any to say

Transcript of Interview - Demand Letters Sent

5

1    other celebrities beyond Diddy?

2          TONY BUZBEE:  We have. And I want to I want to

3    explain that process because it's important, you know,

4    in every single case, especially cases like this, we

5    collect our data, collect our evidence, do our due

6    diligence, spend time with the victim.

7          And then because it's in the best interest of

8    the victim, we attempt to resolve these matters without

9    the filing of a public lawsuit. And we have done that

10   already. We've done that.

11         I would say, you know, with a handful of

12   individuals, many of which you've heard of before and

13   will continue to do that. That's just the standard

14   process that every lawyer in the United States who

15   handles these types of cases uses, because it's it's

16   it's the right way to do it.

17         HARVEY LEVIN:  But there are also people who

18   want to jump on the gravy train and want to make money,

19   and that's got to be a big slice of what you're

20   getting. I mean, it's not just automatically believing

21   somebody because they say it.

22         TONY BUZBEE:  No, I think, Harvey, I think

Transcript of Interview - Demand Letters Sent

```
1    you're right. You know, I was born at night, but I
2    wasn't born last night.
3           Um, you know, you get 3200 calls and that
4    turns into 100-some-odd clients. I think you see the
5    process that we're involved in.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
```

```
1                    CERTIFICATE OF TRANSCRIBER

2        I, Chris Naaden, a transcriber, hereby declare

3    under penalty of perjury that to the best of my ability

4    from the audio recordings and supporting information;

5    and that I am neither counsel for, related to, nor

6    employed by any of the parties to this case and have no

7    interest, financial or otherwise, in its outcome, the

8    above 6 pages contain a full, true and correct

9    transcription of the tape-recording that I received

10   regarding the event listed on the caption on page 1.

11

12        I further declare that I have no interest in

13   the event of the action.

14

15

16        November 11, 2024

17        Chris Naaden

18

19   (561200, Lawyer Tony Buzbee says more celebrities will

20   be sue wuth Diddy, Demand letters sent)

21

22
```

# EXHIBIT I

Unofficial Copy Office of Marilyn Burgess District Clerk



1

2

3

4

5

6

7

8

9

10              Atwood Unleashed

11                BUZBEE LIVE

12    Interview with Shaun Attwood and Tony Buzbee

13               October 7, 2024

14

15

16

17

18

19

20    Job No.:  561873

21    Pages 1 - 72

22    Transcribed by:  Jackie Scheer

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    2

```
 1              P R O C E E D I N G S
 2        MR. ATTWOOD:  Hello.  Shaun Attwood, true
 3   crime YouTube here in the UK.  I'm here with
 4   Tony Buzbee.  I was just saying to him he must
 5   be one of the busiest guys in the world right
 6   now after the press conference.  And I am
 7   honored that he's come here and we are live and
 8   he's able to answer your questions.
 9        So first off, huge thank you for coming
10   on.
11        Huge thanks for coming on, Tony.
12        MR. BUZBEE:  Oh, you're welcome.  Thank
13   you.  I didn't hear you.  Go ahead.
14        MR. ATTWOOD:  Yeah, no worries.  I think
15   one of the most -- when you speak to Chris
16   Hansen, one of the parts that stood out to us
17   the most was the fact that your wife was asking
18   you to beef up security, get it 24 hours.
19   We've been investigating the Franklin scandal
20   on this channel.  We've had Nick Bryant on.
21   The chief investigator in that case ended up
22   mysteriously going down in a plane crash.
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                              3

```
 1        What are you thinking right now about your
 2   safety considerations?  Because called out the
 3   banks, you've called out big pharma, you're
 4   calling out hotel XX.  I mean, whoo, you've
 5   called out a lot of people.  You've got huge
 6   cojones as far as I'm concerned.
 7        MR. BUZBEE:  Well, you know, I typically
 8   have security at my house.  She -- she -- you
 9   know, I've had so many unsolicited advice being
10   provided to me and the -- the overwhelming
11   theme is, Tony, you better get more security in
12   light of some of the allegations that are being
13   made against some of the individuals being
14   made.  I, you know, I try not to, you know, be
15   lax about it.  I don't want to, you know, make
16   a joke of it, but, you know, I was in the
17   Marines.  You know, I was a recon officer in
18   the Marines and served in Somalia and Desert
19   Storm and so, you know, I don't typically walk
20   around being scared.
21        That being said, you know, there's a
22   reason for the, you know, fan is short for
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    4

1    fanatic and, you know, there are going to be

2    some people named in these cases that are going

3    to raise some eyebrows and I've already made it

4    clear that -- that, you know, if you were a

5    bank and you were somehow facilitating this by

6    allowing, you know, hundreds and hundreds of

7    thousands of dollars of cash to be withdrawn to

8    be used for various things, or you were some

9    sort of pharmacy that ordered large volumes of

10   particular drugs were being purchased or maybe

11   you were a hotel or a club or this type of

12   activity was taking place, you're going to be

13   named.  And, you know, I guess, you know, a lot

14   of people have told me get more security, you

15   know, you need to be, you know, keep your head

16   on a swivel, which is kind of what my old

17   football coach used to tell me.  You know, and

18   we're going to do that.  But I'm not going to

19   go around being scared.  But I'm going to be

20   responsible.

21       MR. ATTWOOD:  You're not going to buy

22   yourself a thank.  All right.  So we got a

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    5

1    question from Michael and I'll just add a bit

2    to this because, you know, you had I think it

3    was 3,280 calls initially and then you

4    distilled that down to 120, but you were still

5    processing people.  You put the hotline number

6    out, it crashed.  I can only imagine the amount

7    of allegations and cases coming in, potential

8    cases coming in now has gone up exponentially

9    since you did the press conference.  What is

10   the present status of the amount of alleged

11   victims coming forward to your office?

12        MR. BUZBEE:  Well, let me -- let me kind

13   of go back in time a little bit.  So there's a

14   lawyer friend of mine who I did some work with

15   on the Boy Scout sexual assault cases.  He took

16   a very active role in those.  He knew of course

17   I handled the Deshaun Watson allegations.

18   Those went on for several years, they were very

19   high profile, and then there's been a few other

20   high profile individuals who we've had cases

21   against.  So he's been kind of following this

22   and as it was very clear there was an

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                6

1    investigation going forward, and so he began to

2    field calls from people who -- who claim that

3    they were victimized by Sean Combs or at a Sean

4    Combs party or by Sean Combs cohorts or friends

5    or attendees.  And so he had -- he had vetted

6    about 55 cases and called me and said, Tony,

7    you know, I have these cases and I'm looking

8    for somebody who has the -- the fire power to

9    handle them and the -- and the manpower to

10   handle them.  And so I said, you know, I'm

11   never one to shy away from -- from a case if

12   it's a good case.

13       So I did -- did my due diligence.  I had

14   the people here look at them and once I decided

15   to sign on and see if I could help these

16   people, I made one social media posting that we

17   were, you know, I would -- I had signed on to

18   these and I was going to pursue these.  Well,

19   you know, then his -- his number that he had

20   been using just started ringing off the hook.

21   I think 3,285 calls, and of those calls, and I

22   think that includes probably the previous calls

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                              7

```
 1   as well, but it was certainly nowhere in that

 2   range.  You know, we were able to sift through

 3   and vet and -- and come up with 120 cases that

 4   we were willing to pursue.  And that's not to

 5   say that there weren't other cases of people

 6   that we did not believe.  That's not to say

 7   that there were not legitimate cases that we

 8   turned away because we obviously turned away a

 9   lot of people.  And -- and you can only imagine

10   that -- that in situations like this, sometimes

11   people just call the number to see who will

12   answer.  Sometimes people call and do a prank

13   call.  There's people that, you know, call

14   and -- and, you know, feed you a line of

15   baloney and then, you know, laugh and hang up.

16   And then there's -- there's also people who

17   call and want to just tell you, hey, we support

18   you, we're on your team, you know, God's with

19   you, you know, we're -- we're behind you,

20   things like that which are kind and very nice

21   to hear.  And then, you know, there are people

22   that call that -- that have what they think is
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    8

1    evidence or they -- they -- they want to send

2    you a YouTube link, you know, that's of course

3    publicly available and I probably already have.

4    They want to send you a social media post and

5    that, you know, of course I've already seen.

6    But -- but, you know, I'm not going to

7    criticize them for that, they're trying to

8    help.

9         Then there's people who -- who send you

10   information that you've never seen before.

11   Videos that were taken at a particular party.

12   Pictures that were taken at a white party in

13   the Hamptons.  Things like that that you -- you

14   kind of put in a folder and say, okay, this

15   is -- this is information that we could use, we

16   just have to put it in context.  There's people

17   that call and say, hey, I witnessed this or I

18   saw this or I was at this party and here's how

19   it went or you should talk to this person.

20   Hey, this person has information, you should

21   find them and contact them.  There's that --

22   that group of people.  And then of course

1    there -- there are people that say I was a

2    victim of conduct that should have never

3    happened and I'm coming forward.

4         And so, you know, we have about a hundred

5    people who are -- who, you know, all hours of

6    the day who are sifting through this, returning

7    calls, talking to people, asking for

8    information to try to -- to try to figure out,

9    you know, how -- how large is the scope of

10   this.  And then of course we did the press

11   conference.  We received about 12,000 calls, so

12   much so that -- that the system, it's a

13   computerized call system, crashed.  But the

14   good news is is that the way it's set up is

15   that even if the call wasn't answered, the call

16   number was logged so they could be -- the call

17   could be returned.  And so we're sifting

18   through those.  And of course the goal is -- is

19   to only pursue the cases that are legitimate.

20   The -- only -- only pursue the cases that, you

21   know, that we can -- that we can corroborate,

22   with the understanding that, you know, I look

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                     10

```
 1    through this from the prism of if you're a
 2    victim and you have the courage to come forward
 3    and after I've read -- read you The Riot Act,
 4    which I always do, which is, hey, you need to
 5    understand these are difficult, you need to
 6    understand this is not a cake walk, it's not a
 7    walk in the park.  You need to understand
 8    that -- that when we -- ultimately, you know,
 9    first thing we're going to do is we're going to
10    send a letter with your identity involved in it
11    that lays out the allegations.  I'm going to
12    send that to the other side and we're going
13    to -- we're going to try to resolve your case
14    on the front end.  If that doesn't happen,
15    that's public.  Every court in the United
16    States is a public system.  So people can log
17    on and they can see who's filing what.  We're
18    going to file the case under a pseudonym but --
19    but the -- what the -- it's my full belief that
20    at some point, the other side, the alleged
21    perpetrators are going to try to force us to
22    disclose your name publicly, so you need to be
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                  11

1    prepared for that.

2         At some point as this process goes

3    forward, you're going to have to sit in a room

4    with an army of lawyers who have went into, you

5    know, done a deep dive into your past.  They're

6    going to go all the way back to your high

7    school.  They're going to look at everything

8    you did or failed to do.  They're going to look

9    at every social media post that -- that you've

10   done.  They're going to want to have a download

11   of your cell phone.  They're -- they're going

12   to look -- they're going to talk to everybody

13   that -- that knows you or has known you and

14   they're going to attack you and attack you and

15   attack you, because defense number one in cases

16   like this is attack the credibility of the

17   victim.  And they're going to deny, deny, deny.

18        They're going to deny that they ever were

19   in a room with you, they never heard of you,

20   they don't know you, they didn't do anything to

21   you.  And when we show that, you know what, we

22   can prove that you guys were in the same room

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    12

```
 1   at this point in time and we can prove that
 2   there were illicit drugs there that were being
 3   given to people without their knowledge, then
 4   they're going to say all that might be true but
 5   we still didn't do anything to you and you
 6   can't prove it.  And, you know, then it's going
 7   to come down to the word of the victim versus
 8   the word of the alleged perpetrator, and we're
 9   going to have to test the credibility of each
10   and ultimately the -- a jury will make that
11   decision.  And that's an arduous process.  It's
12   very difficult.  The court system doesn't make
13   it easy and, frankly, it shouldn't be easy,
14   because these types of allegations are very,
15   very serious and very egregious.  And so that's
16   the process that we're going through and it's
17   a -- for us it's a herculean task.  It's --
18   it's a lot of labor, a lot of administrative
19   work.
20       And so at this point we have 120 cases
21   that are, you know, I hope to start filing
22   cases in the coming weeks.  A lot of people are
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                          13

1    focused, you know, laser focused on, okay,

2    Tony, who are you going to name and, you know,

3    who are the celebs that you're -- that you're

4    going to out and all that and I'm not so

5    focused on that.  I'm more focused on making

6    sure that on each case that we -- that we

7    capture every entity and every individual who

8    was complicit.

9         And -- and let me be clear, and I've said

10   this a few times, because I think there's some

11   confusion.  The, you know, our allegation is

12   that -- that the situation that allowed these

13   types of things to occur was orchestrated by

14   Sean Combs.  We -- I believe that -- that any

15   individual who was present who knew what was

16   happening, that is, you know, we've heard

17   that -- the talk about the thousand bottles of

18   baby oil.  There's been some suggestion that

19   that baby oil was laced with -- with what's

20   called Liquid G.  You know, Liquid G is --

21   is -- is commonly referred to as the date rape

22   drug.  Typically it's put clandestinely into

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                              14

1   someone's drink.  It's odorless, it's

2   tasteless.  It -- it essentially removes your

3   inhibitions.  It essentially -- it's a libido

4   enhancer as well and it also for the most part

5   wipes your memory.  It makes you very, very

6   subjective -- or subject to coercion and to

7   persuasion and that's why it's called the date

8   rape drug.  And my view is if there were people

9   present, had been at these parties in the past

10  who knew that this was being used and put in

11  people's drinks or perhaps being put in oil

12  that was being rubbed, you know, people rubbing

13  it up on each other, and they allowed that to

14  occur, participated in that, sat there and

15  watched it, didn't intervene or kept it quiet,

16  as far as I'm concerned, you're just as

17  complicit as the individual who coerced and

18  engaged in some sort of sexual exploitation.

19       And, frankly, if you are some sort of

20  pharmacy or some sort of vendor that was

21  selling this particular drug or selling some --

22  some mixture of this particular drug or if

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    15

```
1    you're a club owner who knew this was happening

2    and it was common practice, because the

3    allegation is it was a common practice, and you

4    were profiting from this or benefiting from

5    this so called, you know, party culture.  Or

6    you're a hotel where the entire floor was being

7    rented out and you had -- there was basically a

8    revolving door at the front desk of people who

9    are not registered that were just showing up

10   and coming up to say -- let's say the ninth

11   floor and then you would see people leaving the

12   hotel just completely discombobulated and

13   disoriented and you did nothing about it and it

14   happened over and over.  Or maybe you're a bank

15   that -- that knew that hundreds of thousands of

16   dollars was being withdrawn with no -- with no

17   explanation as to, okay, why do you need all of

18   this cash.  And -- and we believe and we think

19   we'll be able to prove that cash was being used

20   to fly in individuals from all over the

21   country, specifically from Los Angeles and

22   various entities that we've identified in Los
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                      16

1    Angeles of people flown in that were drugged

2    that were kept longer than they should have

3    been kept, that -- that were coerced to do

4    things that they never expected would happen,

5    and then basically left disoriented and -- and,

6    you know, some -- in some cases without --

7    without a way to go home.

8        So I think the scope of this is much

9    larger than not -- any of us can fathom.  And

10   I'm not so laser focused on, you know, who's

11   going to be outed like everyone else is.  You

12   know, obviously there's a line of -- a long

13   line of people who -- whose names keep coming

14   up in some of these -- these incidents.  But,

15   you know, I'm more interested in the -- the

16   entities, corporations, banks, hotels, that

17   profited from this that should not be able to

18   escape liability.

19       MR. ATTWOOD:  Wow, okay.  So just going

20   back to what you said earlier about the vetting

21   of the people who are calling your office.

22   What do you do to back up their claims?  Is it,

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                              17

1    like, cell phone records, text messages,

2    hospital records, police reports?

3        MR. BUZBEE:  All of the above.  Obviously

4    I want -- if that exists, if anything, any

5    documentation exists, I want it.  You know,

6    sometimes it's a, you know, somebody went to a

7    party with their friend and their friend

8    supports what happened.  Sometimes it's a --

9    there's a plane ticket.  Sometimes there's --

10   there's a bank record that shows that a certain

11   amount of money went into someone's account.

12   Sometimes it's, you know, some cases, you know,

13   a lot of these individuals that attended these

14   parties, you know, they're super excited

15   about -- about being -- they're flattered to be

16   invited.

17       I'm thinking about one case where -- where

18   a 16-year-old young man who was at a concert

19   and was -- was -- was singled out and was

20   invited back and then -- then was told, hey,

21   why don't you come to the Hamptons.  We're

22   having a party in the Hamptons and so when he

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    18

1   got to the Hamptons he, you know, he took a --

2   took a, you know, a selfie with he and Sean

3   Combs.  And so he provided that to me and then,

4   you know, described to me what happened to him

5   thereafter.  You know, you're -- there's not

6   going to be a smoking gun.  I mean, we all wish

7   there was going to be, you know, like on TV,

8   there's some video that shows somebody, you

9   know, putting a -- a tab in a drink and then

10  somebody drinking it and then something very

11  terrible happening.  That's -- that's rarely,

12  rarely ever happens, especially in situations

13  like these.

14       What you have to do instead is the -- I've

15  always said that no matter what type of case it

16  is, whether it's a -- a case where you're

17  alleging fraud or a case where you're alleging

18  a personal injury or even a car wreck or -- or

19  a case like a sexual abuse case, the first --

20  the first and most important piece of evidence

21  is the plaintiff herself or the plaintiff

22  himself.  I have to believe them.  I have to

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    19

```
1    look them dead in the eye.  You know, I'm -- I
2    didn't just -- I didn't, you know, I was born
3    at night but I wasn't born last night.  And so
4    I, you know, I'm pretty good about looking
5    someone in the eye and asking them very hard
6    questions and making sure that they pass the
7    common sense test with me.  Which sometimes
8    it's unpleasant for them.  You know, I have to
9    ask hard questions because if they think the
10   questions I'm going to ask them are hard, it's
11   going to get a lot harder.
12       And, you know, so first is, you know, I
13   want to see, okay, tell me about your
14   background, tell me about what you've done
15   since and what you did before.  What do you do
16   with yourself now.  You know, tell me what kind
17   of -- what kind of family you come from, tell
18   me what kind of job you have.  All those kinds
19   of things.  Because most people, unless they're
20   just complete nuts, would not willingly put
21   themselves through this.  Unless something
22   happened.  And now, I'm not suggesting that
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    20

1   there aren't people like that, that would do

2   that.  But for the most part, somebody who's --

3   who has a comfortable life and they're doing,

4   you know, their everyday life, you know,

5   life -- for instance, I'm thinking about this

6   particular individual just because I just

7   recently had contact with him who, you know,

8   has a wife and four kids and a nice home and a

9   nice job.  You know, they're -- he has no

10  reason whatever to come forward and make up

11  some baloney.

12      So I start with that and then, you know, I

13  want to -- I want evidence that -- I want

14  evidence.  You know, what are the dates, what

15  are the locations, who was there, who will

16  support that, who will corroborate.  Where's

17  your -- if you flew there, if you drove there,

18  if you, you know, I'm -- I'm -- I want to

19  get -- if there's texts back and forth about

20  your going there, all of that.

21      Now, you need to understand -- your

22  viewers need to understand that a lot of this

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                21

```
 1   conduct occurred many years ago.  And a lot of

 2   these people, you know, until just recently

 3   were -- were -- didn't want to think about

 4   this.  This was a bad chapter in their life

 5   they were very happy to get past.  But, you

 6   know, one of the reasons for having that press

 7   conference was to get -- let people know that,

 8   you know, you should come forward.  If this

 9   happened to you, come forward.  Other people

10   have come forward.  It won't just be you.  It

11   just won't, you know, there's other witnesses

12   that have come forward.  There's a lot of

13   people that have called in support that have

14   come forward and we want to hear from you.  And

15   a lot of times, you know, when -- when the dam

16   finally breaks, the wall of silence, if you

17   will, breaks, you'll -- you -- you get people

18   that will come forward.

19        I'm thinking about as an example -- I

20   don't want to get off track too much but, you

21   know, in the Deshaun Watson case that some of

22   your viewers have -- may remember.  You know,
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    22

1    this was a -- a star quarterback who was the --

2    I think he was the first round draft pick for

3    the Houston Texans, was given -- he was traded

4    to the Cleveland Browns, was given a contract

5    of $230 million guaranteed.  There was one

6    individual who was involved.  He came into her

7    salon for a massage and some activity occurred

8    that was just way out of bounds.  And she was a

9    licensed massage therapist, nothing like this

10   had ever happened with her.  She didn't say

11   anything, but it just continued every time she

12   would go in to give a massage to anyone,

13   especially another male or a male, she would --

14   she would just have panic attacks, and finally

15   she called my office.  And, you know, she

16   talked to some of the -- the young associates

17   here and, you know, I -- typically the way it's

18   screened, you know, it goes through a several

19   person process and it finally makes its way to

20   me.  And, you know, I said I don't want to -- I

21   don't want to, you know, I -- I feel bad for

22   the -- for her but I don't want to pursue that.

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    23

1    I don't want to -- I don't want to do that, you

2    know, she's -- it's a -- he's a star

3    quarterback, you know.  She -- there's no --

4    there's no, quote, evidence.  Obviously it's

5    not on video.  It's going to be a -- when it

6    comes down to it, her word against his, but she

7    was persistent.  She might have -- I think she

8    called back three times and finally one of my

9    young lawyers said, Tony, you at least should

10   speak to her and hear what she has to say from

11   her own mouth.

12        So, you know, I -- I brought her in and

13   she told me and I was, like, I, you know, this

14   is the reason I got a law license, you know.

15   It wasn't just to ride around in a Rolls-Royce

16   and fly private jets, you know.  This is the

17   reason that -- that I signed on to do this, you

18   know.  I -- I -- I, you know, I have that kind

19   of fighting spirit.  You know, I could have

20   been a pilot and, you know, flown in the Marine

21   Corps.  I chose to be an infantry officer and

22   then chose to be a -- a reconnaissance officer,

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                        24

1    you know.  I could have avoided service in

2    Somalia.  I chose to go to Somalia.  You know,

3    it's just kind of in my DNA.  And so, you know,

4    I was thinking I don't know what a jury would

5    give this young woman.  You know, the

6    allegation was -- is that, you know, she asked

7    him to get under the draping and she left the

8    room and she came back and he was completely

9    nude standing there and wanted her to do things

10   that -- that, you know, you shouldn't ask a

11   masseuse to do.  And then, you know, touched

12   her with his -- with his genitals was the

13   allegation.  And, you know, I listened to her

14   and, you know, of course I asked the question,

15   you know, what -- what evidence do you have.

16   Well, she had a -- she had an appointment book

17   that showed that he made an appointment.  That

18   was her evidence other than what she told me.

19       Now, you know, some people would say,

20   well, that's not enough evidence to pursue a

21   case, Tony.  You know, that's a -- how can you

22   win that case?  Well, ultimately it comes down

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                25

```
 1    to what she says and what he says.  And -- and
 2    a lot of these cases may be the same way.  But
 3    that woman, you know, I -- just like I'm doing
 4    on these cases, I said, you know what, I will
 5    commit to a letter on your behalf.  I will
 6    write a letter and usually when I write people
 7    a letter, you know, I've been doing this for
 8    almost 30 years, usually I get people's
 9    attention when I write them a letter.  And then
10    I usually get a pretty prompt response and I
11    got a prompt response from some agent slash
12    lawyer from Los Angeles who was probably in
13    his, you know, fancy office and -- and thought,
14    oh, this is a lot of foolishness.  And I ended
15    up talking to him on the phone and I told him.
16    I said, look, man, I, you know, this woman
17    wants to resolve this confidentially.  You
18    know, ultimately she wants him just to
19    apologize and not do this anymore, ultimately.
20    And, you know, I got the typical response which
21    I'm expecting the same response from the Sean
22    Combs team.  And which I'm prepared for.
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                26

```
 1          And so I filed the first case and that

 2    first case, when it was filed, it got picked up

 3    by the local press and then ultimately by the

 4    national press.  And it just so happens that

 5    Watson was in negotiations with the Cleveland

 6    Browns on his -- on his large contract.  It

 7    became a national thing and -- and it -- and it

 8    encouraged a lot of other people to come

 9    forward.  20, 25, 20, 30 different women.  And

10    you -- and there were others that I turned away

11    because I just -- like, no, I -- I -- I don't

12    want to put you through this because I don't

13    think your case is strong enough, but I

14    believed them.  And that was just, you know,

15    conduct that occurred over an 18 month period,

16    and it was very specific in the

17    massage/masseuse context.

18          This is a lot different.  This is conduct

19    alleged against Sean Combs himself but also

20    against the people that surrounded him.  But

21    also his group of friends that would attend

22    these parties that watched what's going on.
```

```
1    And it happened the allegation is over 25 to 30
2    years.  And, you know, and I had the same
3    reaction as a lot of people, which is, well,
4    why did they wait.  Why didn't they come
5    forward.  But I've seen this time and time
6    again where victims, if they don't go -- if
7    they don't immediately go to the authorities,
8    which in many cases they're treated like the --
9    the -- the perpetrator when in fact they're the
10   victim, there's a lot of -- a lot of your
11   police departments -- I would say Houston
12   Police Department is set up and does a very
13   good job with people that are -- who allege
14   sexual abuse or assault or exploitation, but a
15   lot of places, they're very quick to dismiss it
16   and say what is your evidence.  And, you know,
17   it's, like, well, my evidence is what I'm
18   telling you is my evidence.  And, you know,
19   they -- a lot of them don't understand that,
20   you know, a person saying this happened to me,
21   that's your best piece of evidence right there.
22   But, you know, when you -- when you don't do
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    28

```
1    that immediately, every day that goes by it's
2    harder and harder to step forward.  And I think
3    most of the states in the United States
4    recognize that.  I mean, the common -- the
5    common sense is, you know, we should make the
6    time period for that allows people to come
7    forward as long as possible as we can do.  Like
8    the State of New York, they have statutes in
9    place that make it to where you can bring these
10   types of allegations even if they occurred 20,
11   25 to 30 years ago, because -- because they --
12   they recognize how difficult it is to step
13   forward.  But when one person steps forward and
14   two people step forward and five people step
15   forward, a lot of other people take note and
16   say, you know what, okay, that happened to me,
17   too.  I would never step forward alone but
18   there's other people that are stepping forward.
19   I'm going to -- I'm going to step forward and
20   be heard.  I'm going to -- I'm going to, you
21   know, I'm going to be brave and be heard.
22        And then you have other people who saw
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    29

```
 1   things occur or know things perhaps were --
 2   were somewhat involved but knew it was wrong
 3   when it was happening, they began to step
 4   forward and I think that's what you're seeing
 5   here.
 6         MR. ATTWOOD:  Yeah, we saw it with the
 7   Epstein case and we've interviewed some of the
 8   survivors of that case and many other survivors
 9   and you're right.  It's absolutely horrific
10   what they go through, and the results when they
11   do go through the full court process, quite
12   often their reputations get destroyed.  And --
13   and in the Franklin case, again, the only
14   people who ended up going to prison were some
15   of the survivors.
16         But anyway, going back to what you said
17   about -- on Chris Hansen's channel.  You said
18   that a woman had sent you videos of freak off
19   party activity that you -- you said you would
20   rather -- you hadn't seen, you said it wasn't
21   on your file.  What is the protocol for that?
22   Do you have to inform the feds that you've got
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    30

```
 1    this evidence?
 2         MR. BUZBEE:  No.  You know, obviously I --
 3    I encourage every client to talk to the feds.
 4    I encourage that and obviously if the feds
 5    contact me and ask for information, I will
 6    willingly provide it to them.  You -- we have
 7    to remember that we're dealing with two
 8    separate systems with two different standards
 9    of proof.  In the criminal system, the standard
10    of proof in the United States in every court is
11    beyond a reasonable doubt, which is very
12    difficult standard to prove.  That's why the
13    feds and most of your prosecutors across the
14    U.S. rarely will bring a case unless it is slam
15    dunk.  They have all their proof long before
16    they ever seek an indictment.  Specifically the
17    Federal Government.  I mean, they're very
18    particular in my experience of making sure they
19    have all of their ducks in line and all of
20    their evidence before they ever go in front of
21    a federal grand jury and ask for an indictment.
22    Typically they have -- they have their case in
```

```
 1    the bag before they ever even bring the case.

 2         That's a lot different than a civil case.

 3    In a civil case in the United States, the

 4    standard of proof is preponderance of the

 5    evidence, which I describe it when I'm trying

 6    cases -- and I've tried many cases -- I

 7    describe it to the jury as kind of a scale,

 8    more likely than not.  Which means basically,

 9    you know, you stack all the evidence on the --

10    each side of the scale for and against, and if

11    the scale tips ever so slightly in favor of the

12    victim, you must find in favor of the victim.

13         So it's a completely different standard.

14    And so, you know, when I'm reviewing evidence,

15    that's the way I look at it, where as perhaps

16    when the U.S. attorney is reviewing evidence,

17    he or she is looking at it from -- from their

18    prism.  And I don't want to be -- and I'm --

19    and I'm fairly certain, because having done

20    this type of case before when there was

21    other -- other activities going forward, for

22    instance, local authorities or the federal
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024    32

```
 1   authorities were pursuing things -- as an

 2   example, in the Deshaun Watson case I

 3   referenced, there were two different grand

 4   juries that were impaneled to -- to review the

 5   evidence there.  The -- typically the

 6   authorities do not want to be seen as working

 7   with a civil lawyer or -- or a, you know,

 8   coordinating.  So they're very reluctant to --

 9   to seek me out or to -- or to ask me for

10   evidence.  But -- but I have said publicly, you

11   know, to the extent I have evidence that will

12   be helpful to them, I will willingly and gladly

13   provide it.

14        In the Deshaun Watson case, I did in

15   fact -- I did in fact sit with and speak with

16   FBI agents about evidence that I had and did

17   make available to not only the local police

18   departments but also the FBI agents.  Some of

19   my clients, you know, I basically said

20   here's -- here's the clients I have.  Here's

21   what they -- what they say happened, here's

22   what they know, and they could pick and choose
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024    33

1    the ones that they wanted to speak to and I

2    helped facilitate that.  But -- but certainly,

3    you know, the Federal Government is going to do

4    its own thing.  The U.S. attorney has very

5    competent, very, very smart people that work

6    there that -- that -- that understand the --

7    the notoriety involved, the celebrity involved,

8    the -- all the eyes on them.

9        You know, I think it was the same U.S.

10   attorney that recently indicted the Mayor of

11   New York.  I mean, these -- these are -- in the

12   United States, these are very high profile

13   cases.  My -- my belief is they probably don't

14   want to be seen or even suggested that they're

15   working or coordinating with me.  But I'll say

16   it again like I've said when this question has

17   been asked.  I will willingly and gladly

18   provide them whatever I have.

19        And let me -- let me visit with you a

20   little bit -- on video, I may have said this.

21   But, you know, when you get sent video,

22   sometimes on social media, sometimes you get

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024    34

```
1    sent -- it's texted to you, somehow they get

2    your cell phone and text it to you, it's

3    e-mailed to you, pictures, that sort of thing.

4    You know, that type of evidence is, you know,

5    obviously it's helpful but without the witness

6    and without the victim herself or himself, it's

7    really -- it certainly doesn't -- doesn't

8    answer the questions that have to be answered.

9        MR. ATTWOOD:  So in terms of the 120

10   filed, based on the volume of calls that are

11   coming in, what do you think that could rise

12   to?  And since your previous announcements,

13   have more allegations involving minors come in?

14       MR. BUZBEE:  Yeah, it's been -- percentage

15   has been about the same.  You know, the

16   first -- the group that I announced last week

17   on Tuesday I believe it was, so, you know,

18   3,200 calls.  Of that, 120 clients that I

19   believe have cases that -- that are supportable

20   and should be pursued.  And then of that 120,

21   about 25 were minors at the point in time that

22   the -- that the conduct alleged occurred.  I
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    35

```
 1   would expect, you know, considering that we
 2   received so many calls after that press
 3   conference, 12,000 was the number that -- just
 4   in a 24 hour period, but obviously there's been
 5   many more since then.  You know, we're sifting
 6   through probably another hundred cases that we
 7   potentially will pursue.  But, you know, it's
 8   just hard to get your head around, you know,
 9   how pervasive this type of conduct was.
10        And I want to -- I want to be clear again.
11   I know I've said this once but I want to be
12   clear.  You know, we're talking about a long
13   period of time.  We're talking about a culture
14   that many of us really are -- are not even on
15   the outside looking in.  Many of us are
16   completely un-aware of.  The -- the party
17   culture which is, you know, you have people in
18   the entertainment industry who go from venue to
19   venue, party before and party after, and then
20   there's even an after party after that.  At
21   places all over the United States, but
22   primarily Miami, Los Angeles, New York,
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    36

```
 1    Manhattan and the Hamptons, and also Georgia
 2    was another place.  Atlanta, Georgia is a
 3    pretty hot spot for this type of activity.
 4    And, you know, a lot of different people
 5    involved.  A lot of -- a lot of drug activity.
 6    And I think, you know, when you -- when you
 7    consider it from that context, it's not
 8    surprising that you have 120 people who -- who
 9    stepped forward once the -- once the culture of
10    silence is broken and say, you know what, I was
11    taken advantage of.  I was drugged.  I was -- I
12    woke up not knowing where I was.  I didn't -- I
13    drank one drink.  I drank a -- a lemon drop.
14    You know, I didn't have any idea that that, you
15    know, this was 0this was supposed to be the
16    most -- the coolest thing I'd ever been invited
17    to.  There was no way I was going to get so
18    hammered that I didn't remember what was going
19    to happen.  I drank one drink and everything
20    after that is a blur and, you know, I -- I
21    wake -- they wake up disoriented, bewildered,
22    and injured in many cases.  So, you know,
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                37

```
 1   it's -- it's hard to get your head around but
 2   that's -- that's what we're dealing with.
 3        MR. ATTWOOD:  Yeah.  You gave me
 4   flashbacks of the horrific scenes in this movie
 5   that's just come out, Don't Blink Twice.
 6        So you talked about going after the
 7   facilitators of the foul deeds, the enablers.
 8   There was a legal quagmire for the prosecutors
 9   in the Epstein case because he set up a pyramid
10   scheme whereby women who came in, teenagers who
11   come in, if they didn't go all the way with
12   what he wanted them to do, he would try and get
13   some of those girls groomed into recruiting.
14   He had a scheme at a high school in Florida.
15   He was sending flowers in, some were getting
16   finders fees to send the girls over.  So in
17   this case, do you think you will have those
18   difficulties when it comes to classifying
19   people who are survivors who have also
20   facilitated these foul deeds?
21        MR. BUZBEE:  Yeah.  I think -- I think so.
22   I think that sounds -- sounds familiar.  Sounds
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    38

```
1    similar to what -- what we're talking about
2    here.  You had people that were recruiters.
3    You know, nothing more that -- the way I would
4    describe them when we get to court proceeding
5    is pimps who -- who went and collected
6    individuals and brought them to these places
7    and -- and, you know, that -- under the --
8    under the pretense of, hey, you know, we're
9    going to do a music video or this may be used
10   in a music video.  And then when they get to
11   the venue, you know, in some cases paid, some
12   cases not, they get to the venue, you know, the
13   next thing they know they're drugged.  Next
14   thing they know in some cases they're not
15   allowed to leave.  In some cases they're not
16   even -- their way, you know, their way back was
17   not paid for.
18        You know, there were -- with regard to
19   some of these younger individuals, there were
20   ads that were placed or -- or, you know, things
21   that were placed on the internet about, you
22   know, we're recruiting for -- for this -- this
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                           39

1   video, recruiting for, you know, you have a

2   chance to -- to audition for Bad Boy, you know,

3   you may even meet Sean Combs.  And, you know,

4   these kids come forward with stars in their

5   eyes thinking that they're going to be the next

6   Justin Bieber.  And, you know, things happen

7   and go very south and such that they don't want

8   to have anything to do with the music industry

9   ever again, and their parents are feeling guilt

10  and shame for having put them in that position.

11      So, you know, it pretty much ends --

12  every -- every scenario that you can think of

13  is involved here, whether it be a situation

14  where a female is picked out of a crowd at a

15  concert and, you know, you have people that --

16  that go through the crowd and either are

17  pointed out by the performers or they -- they

18  know what the criteria is and they -- they hand

19  backstage passes to people.  And then they come

20  backstage and -- and either stuff happens

21  backstage or the party, you know, reconvenes at

22  a hotel and then the next thing they know,

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    40

```
1    they're drugged and taken advantage of, not by

2    just one person but multiple people.  Some

3    cases it's videoed or, you know, they're

4    invited.  Maybe they're -- they're spotted at a

5    hotel lobby or they're spotted even on the

6    street and they're saying, hey, you should --

7    you should come to this party we're having and

8    you might be able to meet this person or that

9    person, and so they go to this party and, you

10   know, everything seems normal and they're

11   taking selfies and they're excited and happy.

12   And then the after party begins and the next

13   thing you know, they're -- they can't control

14   themselves because they've been drugged and

15   then bad things happen to them.  And they leave

16   there in shame and -- and not knowing what

17   happened.

18        You know, so you can imagine, I could go

19   on and on about the very scenarios because

20   there's -- every story's a little bit

21   different.  But -- but at the -- at the end of

22   the day, it all typically involves some sort of
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024　41

1　drug and it all involves taking advantage of

2　somebody, and with people around who benefited,

3　participated in or profited from it.

4　　　　MR. ATTWOOD:  It seems the priority of the

5　feds is always the big fish.  I mean, there's

6　cartel hitmen walking around free because they

7　cooperated against their superiors.  In this

8　case, do you think the facilitators of the foul

9　deeds will get passes if they cooperate against

10　Diddy?

11　　　　MR. BUZBEE:  I don't know.  You know, I

12　know that there's been allegations against

13　bodyguards.  There's been allegations against

14　certain executives or people that were -- kind

15　of surrounded Sean Combs.  Obviously those

16　people are -- are -- I'm assuming the feds are

17　looking very carefully at -- at those folks,

18　and I would expect some of those folks to

19　cooperate with the government.  I'm -- I'm --

20　I'm looking at it in a broader scope.  You

21　know, obviously I'm looking at those folks and

22　looking at Mr. Combs, but I'm also looking

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                              42

```
 1   at -- at the corporate entities who -- who knew

 2   this culture was being created, who had -- who

 3   had executives there at these parties that knew

 4   what was going on.  You'd have to be blind not

 5   to know that -- that, you know, they had a

 6   thousand bottles of -- of oil, you know, what

 7   was the purpose, what is a legitimate purpose

 8   of that.  And when people are -- are just

 9   openly, you know, having sex in front of

10   everyone and you can tell that they're

11   disoriented and they're conducting or engaging

12   in behavior like that and then people are being

13   passed around.  I mean, it's not illegal to

14   have sex at a party.  It's not illegal to

15   have -- to have sex in public.  It's not --

16   none of that's illegal.  But it becomes more

17   sinister when people are being drugged and

18   people being kept there against their will and

19   being -- are being coerced and people are being

20   given -- given a drink that's laced with

21   something and not being told that.  That

22   becomes -- that becomes, you know, you've
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                        43

```
 1   crossed a line there, whether you've crossed a
 2   line -- the legal line of criminal conduct or
 3   you crossed a line, certainly you've crossed
 4   the civil liability line as far as I'm
 5   concerned.
 6        MR. ATTWOOD:  So Diageo PLC here in the
 7   UK, the drink company, have stated that they've
 8   transferred Diddy a billion dollars since their
 9   relationship began in 2007.  You think that is
10   one of the companies that will end up in a
11   legal mess over this?
12        MR. BUZBEE:  I'm certainly looking in that
13   direction.  You know, you know, it's easy, you
14   know, Sean Combs is -- is obviously -- he's
15   indicted on three counts.  He's been arrested.
16   He's sought bail three times and been denied
17   each time.  And he's, you know, I know a lot of
18   people are looking at him and he's purportedly
19   the only target of the feds.  I don't think
20   that's the case.  Certainly not the case for me
21   and not the case with my clients.  You know,
22   I'm looking at -- at -- any time something like
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    44

```
1    this is allowed to happen and to go on for so

2    long, there have to be entities and individuals

3    who are facilitating this that are looking the

4    other way.  And usually when people are looking

5    the other way and ignoring this and not

6    intervening, it's usually because they're

7    profiting from this.  It's usually because

8    they're -- they're getting some sort of benefit

9    from this type of conduct.  Or whether it be

10   from just the culture itself that's been

11   created or whether it be, you know, maybe

12   you're a -- an alcohol company or maybe you're

13   a bank or maybe you're a hotel or a venue and,

14   you know, when -- when Sean Diddy Combs shows

15   up, you know, it raises your stature in some

16   way or -- or increases people to that -- attend

17   your concert or your venue.  You know, I'm

18   looking at all -- all of those individuals and

19   entities because, you know, it's -- it's Sean

20   Combs.  Of course there's many allegations

21   against him now and there will be more I

22   expect, but I expect there will be others
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    45

1   involved.

2        MR. ATTWOOD:  You mentioned holding execs

3   of big pharma responsible.  Who role could they

4   have played?

5        MR. BUZBEE:  Well, I just wonder how do

6   you get this -- this much Liquid G.  How do you

7   get that much.  How do you get the -- the

8   various drugs that have been alleged by these

9   victims to be involved.  It makes you really

10  wonder how do you -- how do you get that volume

11  of drugs.  And so we're looking into that

12  and -- and, you know, I don't know the answer

13  to that but I -- I certainly -- it's worth, you

14  know, a very hard look.

15       MR. ATTWOOD:  People are asking if you

16  could hypothesize why he got away with it for

17  so long and it's all just coming out presently.

18       MR. BUZBEE:  Yeah, I think -- I think --

19  just like we described, you mentioned it in the

20  Epstein -- the Epstein situation.  We talked

21  about the allegations against Deshaun Watson.

22  There's allegations against, you know, this is

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    46

```
1   not the first time this has happened in the

2   United States and otherwise where, you know,

3   Harvey Weinstein, you know, let's not forget

4   that situation where it was kind of a -- a

5   secret that everyone knew, you know.  Everybody

6   knew about the Weinstein casting couch.  You

7   know, this was something but nobody wanted to

8   talk about it.  And especially when, you know,

9   the individual that -- that was allegedly

10  involved in this conduct is -- has enough power

11  to keep you in or out of a movie that might win

12  an Oscar or keep you in and out of an industry

13  where you could become famous and perhaps

14  wealthy.  So part of it -- part of it is that.

15      The other part of it is -- is, you know,

16  the perception, at least from these victims'

17  points of view is Sean Combs was the -- at one

18  point in time, was the number one producer,

19  music producer in the U.S.  I mean, he could

20  make you a star.  He could also make sure that

21  you were never a star.  And then, you know,

22  you -- you're invited to these -- these parties
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                      47

```
 1   and you're picked out of a crowd and you're

 2   incredibly flattered and you -- you think this

 3   is going to be the time of your life and then

 4   something, you know, the most terrible thing

 5   that you can imagine happens to you.  And

 6   you're shame -- you're ashamed and you feel

 7   guilty and the natural reaction of most people

 8   that -- that are victimized like this is to

 9   first blame themselves.  How did I put myself

10   in this position.  Oh, I shouldn't have done

11   this, I shouldn't have done that, instead of

12   focusing on, you know, you were drugged.  You

13   know, you were coerced.  You came -- there's

14   nothing wrong with a famous celebrity picking

15   you out of a crowd and saying, hey, come to our

16   party.  And you go to the party and have a nice

17   time just like any other party and you go home

18   and that's the end of it.  That's not what

19   happened in many cases.  And so, you know, the

20   first inclination of these folks is to blame

21   themselves, and that's why a lot of, you know,

22   I think with our press conference we -- we had
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    48

```
 1   some professionals who -- who, you know, have

 2   made -- devoted their entire lives to helping

 3   victims of sexual assault and exploitation who

 4   went through some statistics about this, and

 5   how few of these types of -- this activities

 6   ever reported.  And then how few are ever

 7   investigated and then ultimately how -- how few

 8   of that, you know, it's a fraction of a

 9   fraction of a fraction are ever -- ever

10   prosecuted or a guilty verdict is obtained.  So

11   there's a reason for that and we have to --

12   part of it is people don't talk about these

13   things.  And -- and it -- it seems to me that

14   this culture that was created, this party

15   culture, you know, it kept getting more and

16   more extreme and it became -- it was

17   normalized.

18       And, you know, at some point obviously

19   enough people cried out about it to get the

20   attention, and I'm assuming that the -- the

21   Cassie video probably, you know, was very

22   important in some of this.  But, you know,
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                49

1    enough -- enough people came forward and said

2    enough things and said, you know, this just

3    isn't -- you know, the emperor has no clothes

4    here.  This ain't right.  They got the

5    attention of the U.S. attorney and, you know,

6    now here we are.  And people continue to come

7    forward and -- and, you know, anybody watching

8    this, I encourage you, be brave.  We, you know,

9    we believe you.  If you have a legitimate and

10   credible claim, we will pursue it.  It's a

11   tough -- it's a tough nut to crack but -- but,

12   you know, we're -- we're good at that.  And

13   we'll try to help you as much as we can.

14       MR. ATTWOOD:  One of the most harrowing

15   stories you told was that of the nine-year-old.

16   Is that person okay now?

17       MR. BUZBEE:  Well, I mean, as okay as you

18   as you can be when something like that happens

19   to you at that age.  You know, this person now

20   is -- is obviously not a minor anymore and

21   going about his life, you know.  Still when

22   talking about this, you know, cries these many

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    50

```
 1   years later.  You know, you think about
 2   children at that age are innocent and they're,
 3   you know, you want to be -- you, you know,
 4   you've been identified as somebody with talent.
 5   Your parents are super charged up because, you
 6   know, my son is super talented, he's going to
 7   be a star.  You get a chance to go to an
 8   audition at Bad Boy and you go there and, you
 9   know, the parents essentially hand you off
10   because it's going to be a several day thing
11   where they're screening -- screening young men.
12    Two different groups, in fact.  It was an
13   older group and a younger group and, you know,
14   there was a track record there, you know, Sean
15   Combs and Bad Boy records made people stars.
16   People are still stars from -- from, you know,
17   he made them stars.  And, you know, and I'm
18   sure the parents are home thinking, oh,
19   goodness, you know, this is, you know, God
20   smiled at us and I don't know why but, you
21   know, he touched us and this is my son's big
22   break, his dream is going to come true.  And
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    51

```
1    then something a lot, you know, unimaginable
2    happens, and -- and not only did his dream not
3    come true but his worst nightmare came true.
4    And young man has no interest whatsoever in the
5    entertainment industry, none at all.  You know,
6    his dream ended, was just extinguished.  And
7    then, you know, as the years past, just dealing
8    with -- with the guilt and shame of that.
9         And like I say, every day that passes when
10   you don't, you know, the catharticism of
11   getting -- just saying this happened to me, I
12   think most therapists will tell you is -- is
13   good for you.  Whether anything happens after
14   that or not, that's -- that, you know, that
15   remains to be seen.  But -- but him doing that
16   and coming forward I think is, you know, it's a
17   right -- the right step forward for him.
18        MR. ATTWOOD:  Yeah, he's a brave person.
19        Question from Michelle.  Because Diddy is
20   so powerful, will the claimants, any of the
21   claimants, have to go into witness protection?
22        MR. BUZBEE:  I wouldn't expect so.  I
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    52

1   would not expect that.  That would be

2   unprecedented, I would think.

3        MR. ATTWOOD:  So question from Taleetha.

4   Are your clients getting help emotionally, are

5   they protected?

6        MR. BUZBEE:  Yeah.  That's, as you might

7   imagine, super important to me.  And the good

8   news in that respect is a lot of the calls

9   we've received are people volunteering their

10  services.  Not because they're trying to make

11  money but because they're, like, look, I know

12  you have a large group of people.  This is a --

13  a real step that they've taken, you know, that

14  they -- they want their voice to be heard.  You

15  know, we're here to help, you know, this is

16  a -- I've been locally and nationally offered

17  help for any -- any victim who is -- who would

18  take advance of that sort of thing.  And the

19  good news is in most cases, you know, these

20  people are, like, look, this is

21  (incomprehensible).  You know, any -- would you

22  please make -- make, you know, us as one of the

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    53

```
 1    potential entities that would be willing to

 2    offer counseling and that sort of thing to

 3    anybody that's willing to take advantage of

 4    that, and I absolutely am going to make that

 5    and have made that available.

 6         MR. ATTWOOD:  Okay.  The speculation that

 7    the death of Kim Porter could be

 8    reinvestigated, the shooting involving J Lo in

 9    1999 in a nightclub could be relooked at.  Do

10    you have any thoughts on those types of

11    scenarios?

12         MR. BUZBEE:  No, I'm not going to wade

13    into that.  I mean, obviously that's -- that's

14    something that, you know, the -- the first

15    question I always get is, you know, who --

16    who -- who's involved, what big name

17    celebrity's involved.  And, you know, I rebuff

18    that.  And then I'm asked about the J Lo and,

19    you know, the shooting that you're referencing

20    or even the shooting of Tupac, and I have no

21    comments on any of that.  I don't know anything

22    about that other than what everyone else knows.
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    54

```
 1        MR. ATTWOOD:  All right.  Question from
 2   Marie about the banks.  So in the Epstein case
 3   we saw huge settlements, I think it was JP
 4   Morgan, hundreds of millions.  Do you see
 5   parallels in this case with the banks?  Is
 6   that -- is that the way it's going to play out?
 7        MR. BUZBEE:  The -- I do.  I really do,
 8   because whether, you know, there's a lot of
 9   cash exchanging hands.  And, you know, the
10   nature of the banking business is not that
11   you -- you go down and take out a half a
12   million dollars in cash without some
13   understanding as why.  You know, and I'm not
14   suggesting that -- that the person taking the
15   cash out is required to tell you that.  But if
16   it, you know, over and over or if there's wire
17   transfers being made, $10,000 a pop to various
18   people, you know, there's -- there's -- there's
19   all kinds of way to transfer money.  Primarily
20   what I've seen is mostly cash, which means
21   somebody had to go and take the cash out of the
22   bank.
```

```
1         But I do believe and that's obviously one
2    of the avenues that I'm very interested in is
3    that where did all this money come from,
4    because clearly this entire house of cards was
5    supported by a lot of cash.
6         MR. ATTWOOD:  Do you see any other
7    parallels with the Epstein case?
8         MR. BUZBEE:  I do.  I do.  I do see a lot
9    of parallels here.  I think the -- the play
10   book on how those cases were being pursued
11   and -- and, you know, everybody wanted to know
12   the -- the -- who flew on Epstein's plane and
13   who went to his island, right.  I get the --
14   it's very similar to the question I get all the
15   time, is who are the celebrities that you're
16   going to sue, you know.  You'll find that out
17   in due course but I don't -- it's not like I
18   have a list that I'm going to waive around and
19   publish, you know, like, Joe McCarthy or
20   something.
21        But -- but in -- in that Epstein case just
22   like in this case, and perhaps even more so in
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024    56

```
 1   this case, there are a lot of entities and

 2   individuals that had to be looking the other

 3   way or benefiting from this or facilitating

 4   this for this to go on for so long.

 5       MR. ATTWOOD:  Question from a viewer here.

 6   When can we expect court proceedings re the

 7   class act to start?

 8       MR. BUZBEE:  Let me -- let me visit with

 9   you on that a minute.  So this won't be a class

10   action.  This will be -- these will be

11   individual cases.  A class action in the United

12   States is an action where two or three people

13   who are considered to be class representatives

14   that are similarly situated with everybody else

15   in this class that you're trying to -- that

16   you're trying to represent, so two or three

17   people file a case on behalf of hundreds if not

18   thousands of people.  That's not this.  This

19   will be hundreds of people who file individual

20   cases, one case, one person.  As I say, I like

21   to say one horse, one rider.  And so that case

22   will live and die on its own merits.
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    57

```
 1        In -- in that case, I think in every one
 2   of the cases Mr. Combs will be one of the
 3   defendants.  But every case may have different
 4   defendants.  If it occurred at a particular
 5   residence, I would expect that the individual
 6   or entity that owned that residence would be a
 7   defendant.  If there were other people involved
 8   and engaged in the behavior, I would expect
 9   that they would be defendants in that
10   individual case.  If there were a bank that was
11   involved and, you know, cash that was used for
12   that -- to hand out money to certain
13   individuals at that particular party, I expect
14   the bank might be in that case.  And so it's
15   going to be -- every case is going to be
16   different.  That's the challenge here is
17   that -- that, you know, it's not like we're
18   talking about one event that occurred that
19   injured a hundred people.  We're talking about
20   a hundred different individual events that have
21   different defendants, different evidence,
22   different proof, different witnesses, on and
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    58

1   on.

2       MR. ATTWOOD:  In terms of the compensation

3   fund then, where would the money come from?

4   Would it be Diddy's assets, would it be future

5   royalties getting seized?  How does it work?

6       MR. BUZBEE:  That -- that, you know,

7   typically you -- you -- typically you don't

8   even go into, you know, what assets do -- does

9   a defendant have until after you have a

10  judgment, until after you've actually won the

11  case.  Now, you know, you're suing Sean Combs,

12  Bad Boy Records, perhaps you're suing the --

13  the companies that he was -- that were

14  sponsors, perhaps the venue where this

15  occurred.  Perhaps somebody sponsored the

16  particular party, somebody, you know, typically

17  at a -- parties like this you got multiple

18  sponsors.  Somebody, you know, is sponsoring

19  the liquor, somebody is sponsoring the party

20  itself, somebody, you know, that's -- that's

21  how it typically occurs at these types of

22  parties.  So, you know, you can see that there

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                     59

```
1   would be a lot of potential parties that would
2   have liability, and then, you know, on top of
3   that, then you have the individuals involved,
4   and then as I've -- I think I've said as
5   clearly as I can, anybody that knew this was
6   going to occur, that had seen it occur or was
7   watching it occur that didn't intervene and
8   kept it quiet either -- either explicitly, you
9   know, said it didn't happen or tacitly, you
10  know, let it happen without saying anything, as
11  far as I'm concerned, they have liability, too.
12       MR. ATTWOOD:  Could Diddy try and weasel
13  out through creative accounting?
14       MR. BUZBEE:  It's always a concern but --
15  but given -- given the fact that the -- the
16  Federal Government's involved, that's probably
17  less likely here.
18       MR. ATTWOOD:  Question from Kimberly.  Do
19  you have a limit on how many clients you can
20  represent?
21       MR. BUZBEE:  No, other than -- other than,
22  you know, every lawyer -- I'm licensed in the
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    60

```
 1   State of New York and the State of Texas and,
 2   you know, you have to -- you can't take on more
 3   clients than you can -- than you can represent.
 4   In other words, I have to be able to give my
 5   full attention to every client and pursue their
 6   case with -- with vigor, every case.  The good
 7   news is here we have 25 lawyers here on -- on
 8   this floor where I'm sitting right now on the
 9   75th floor of Chase Tower in Houston, Texas,
10   but I also have a cocounsel who has many
11   lawyers, and as need, you know, you can
12   associate as many lawyers as you want from
13   other firms.  And I would expect there will be
14   other firms that, given the notoriety of this
15   case, will probably come forward with their own
16   clients, and eventually the courts will have to
17   coordinate these cases.  Because, you know,
18   there's a -- there's a problem with
19   overwhelming the courts.
20        I remember when we -- when -- with BP
21   Horizon explosion, this was a -- a large
22   drilling vessel that exploded and burned and
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                                    61

```
 1    sank off the coast of Louisiana.  The -- our

 2    firm handled 14,000 clients.  Those were people

 3    that were entities impacted by the oil spill.

 4    And then I think we had -- there were 119 rig

 5    workers on board that rig and I think we

 6    represented about 30 of them.  But there were

 7    other lawyers that had their own cases from all

 8    over the country.  And so what -- when this

 9    happens, what the court system does is it -- it

10    forces the lawyers to form a committee, develop

11    a leadership structure, develop, you know, how

12    to collect evidence, how to take depositions,

13    how to -- how to file motions so it doesn't

14    overwhelm the court system.  And typically all

15    the cases are consolidated into one case and

16    assigned one judge to oversee the litigation.

17    So I would expect that even though, you know,

18    we're the first firm with the great majority of

19    the cases right now, I think there have been

20    seven cases filed before we stepped forward

21    with over a hundred, I would expect there are

22    other law firms that -- I know I've been called
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                              62

```
1    by several lawyers that have, you know, a
2    couple of cases here and there trying to send
3    me the cases or -- or, you know, want me to
4    help them on their cases.
5        But so it's not just the lawyers, whether
6    the lawyers have the -- the bandwidth to handle
7    this many cases, but it's also the court
8    service and making sure that -- that these are
9    coordinated in such a way that -- that the
10   plaintiffs get their day in court, the
11   defendant and defendants, you know, are not
12   sitting for, you know, a hundred different
13   depositions over a hundred days.  You know,
14   typically the coordination allows where you,
15   you know, we're going to -- we're going to
16   handle these 10 cases at once.  We're going to
17   do all the discovery and figure out what
18   happened with these 10 and then we're going to
19   do the next 10 and then we're going to do, you
20   know, it's -- so this could be a very long long
21   process.  It's very expensive.
22       Just -- if you think about just collecting
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                63

```
 1   data and collecting evidence and the one on one

 2   interviews and sending out subpoenas or -- or

 3   document requests to third parties when you're

 4   trying to corroborate somebody's presence at a

 5   particular point in time.  So, you know, the

 6   lawyers that do step up and have cases, you

 7   know, are making not only a substantial time

 8   commitment to this but also a substantial

 9   financial commitment.

10       MR. ATTWOOD:  Tony, we're almost at the

11   hour, mate.  This is the final question.  Do

12   you think the criminal case will go to plea

13   bargain or trial?

14       MR. BUZBEE:  Well, you know, I've -- I've

15   handled -- I've handled criminal cases in my

16   life and I know -- I never, you know, you

17   have -- you have to give certain statements to

18   the press because ultimately your case will be

19   decided by somebody who might read an article

20   or see an interview.  But, you know, so far

21   Mr. Combs' criminal lawyers have been very

22   defiant and, you know, claim that they're --
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    64

```
 1   they're -- demand their trial and claim that,

 2   you know, that my case are for -- as an

 3   example, are, you know, defamatory and, you

 4   know, and -- and Combs is going to testify and

 5   he's going to spill the beans and, you know,

 6   you've heard all this stuff.  And at one point

 7   Mr. Combs' lawyer was literally on the street

 8   corner being interviewed, you know, it seemed

 9   like every hour.  But that's -- that's the

10   public.  That's the public persona, if you

11   will.  That's -- that's what they're telling

12   the public.  If I'm sitting there and I'm being

13   accused of at this point only three counts,

14   and, you know, at this point, knowing that

15   there is an army of victims out there who have

16   had the bravery to step forward and tell their

17   story and that the likelihood is -- is that

18   there are going to be more people like me, Tony

19   Buzbee, step forward who, you know, with a

20   track record of aggressively pursuing these

21   things and leaving no stone unturned and

22   pulling every layer of the onion off, you know,
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                          65

1    the point of view might be a little different.

2         You know, does he -- does he want to

3    testify, how is he -- explain the thousand

4    bottles of baby oil that allegedly is laced

5    with Liquid G.  You know, at some point, you

6    know, the -- the bravado goes away and you have

7    to look very carefully about, you know, how the

8    rest of your life looks.  So I don't think that

9    there's going to be a criminal trial because I

10   think any time the Federal Government gets

11   involved and the U.S. attorney's office gets

12   involved and lawyers -- credible lawyers who

13   are handling that matter in Brooklyn, I think

14   they have the goods on Sean Combs and there

15   ain't a whole lot you can do when the Federal

16   Government has the goods other than try and cut

17   a deal.

18        MR. ATTWOOD:  So Tony's link is in the

19   description box below this video.  Do you want

20   to remind the survivors what they can do, they

21   can contact you and what the number is, please?

22        MR. BUZBEE:  Yeah.  I need to find that

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                66

```
 1    number, I'm sorry, I don't have it.  But -- but
 2    I'm easy to find on the web.  Tony Buzbee.
 3    It's justwin.com.  That's -- that's kind of
 4    the -- the e-mail and the website that I use.
 5    We also have a -- the 1-800 number.  Let me see
 6    if I can find it.
 7         MR. ATTWOOD:  1-800-200-7474.
 8         MR. BUZBEE:  There you go.  That -- that
 9    number's being handled by my cocounsel in -- in
10    Los Angeles and San Diego.  There are 90 people
11    standing by to take those calls and talk to
12    you, whether you were -- were victimized,
13    whether you saw something that you want to
14    share, whether you have a piece of evidence
15    that you would like to share.  You know, of
16    course, you know, the -- the -- the support
17    that you provide, the kind words, that's
18    appreciated as well, but -- but we're primarily
19    interested in if you've been victimized or have
20    evidence.
21         MR. ATTWOOD:  We salute your work and
22    thank you for being so generous with your time,
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                           67

1    Tony.  I'm going to close the show and let you

2    go, so thanks.

3          MR. BUZBEE:  Thanks, Shaun.  See you

4    later.

5          MR. ATTWOOD:  Take care, cheers.

6          Wow, what an amazing guest.  Thank you for

7    all the questions, guys.  Look, I know there

8    was a lot of questions in there about celebs

9    and stuff, but when I asked him about, you

10   know, the reopening of the J Lo, the shooting

11   at the club and the death of Kim Porter, he --

12   he indicated that he didn't want to go down

13   that road with any big names.  So I was not

14   going to put anything like that on him.  He's a

15   very serious guy, he's on a mission.  I can't

16   imagine the stress and pressure he is under

17   right now from the dark forces that are out

18   there going -- going after big pharma execs

19   like you just heard today.  He's going over the

20   bank centers as well as the facilitators of the

21   foul deeds.

22         So, you know, these people are worth huge

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    68

```
 1   amounts of money, and, like I said about the --
 2   if you've investigated the Franklin scandal and
 3   we got Nick Bryant on, who did publish the
 4   Epstein client list, he was the first guy to do
 5   it, we've got him coming on on Wednesday at
 6   9:30 to talk about the Diddy case.  He's doing
 7   a lot.  The guy who was investigating it went
 8   down in a plane, mysteriously crashed with his
 9   son, both died, and the only people who went to
10   prison in that case were some of the survivors.
11   All the higher ups were protected.  So there's
12   a wall of money and power, political power,
13   bank power.  It goes right to the top of the
14   pyramid and, you know, I can't imagine the
15   forces that are mounted against him right now.
16   You'd think when you're going after these
17   preds, these people who prey on the kids of the
18   world, the whole world would rally around you,
19   but as we know from the Jeffrey case, the
20   things that happened to me personally, the
21   channel -- I lost the channel twice, the hell I
22   went through, I ended up getting criminalized,
```

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                69

1    called into a cop shop, and they've restricted

2    my reporting on survivors now.  If I don't ask

3    survivors certain things when they come on, I

4    can go to prison.

5        When you start to expose people who are in

6    this class, and you know the class that I'm

7    talking about, in the Epstein class in

8    particular, once you go after people who are in

9    that class, they come for you.  And we don't

10   know the names that he's naming.  I know a lot

11   of people are putting the questions who are the

12   names, bla, bla, bla.  We -- we -- we can't

13   press this professional lawyer for that kind of

14   information.  There was no way he was going to

15   volunteer any of that.  But thank you for all

16   of the professional questions that did come in.

17   That kept it going and if you watch Lionel

18   Nation, he's been outspoken on the Diddy story

19   and he's becoming out with one of us this

20   evening.  I believe Ron is doing an after chat

21   very soon on the channel, so join us for that.

22   He's going to be analyzing in close detail what

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024                    70

1    Buzbee just told us, and then I will be back

2    tomorrow with the news update and Lionel.  And

3    these podcasts are we're helped by --

4          -- I've been hearing that a lot lately.

5    That's what I hear when we make another sale on

6    Shopify.  The all in one commerce platform to

7    start, run, and grow your business.  Shopify is

8    the commerce platform revolutionizing millions

9    of businesses worldwide.  Whether you're

10   selling Pokemon cards or hoodies, Shopify

11   simplifies selling online and in person so you

12   can successfully grow your business.  Covering

13   all your sales channels from a shop front ready

14   POS system so its all in one e-commerce

15   platform, Shopify even gets you selling across

16   social media marketplaces like Facebook,

17   Instagram, and Tiktok.  Full of the industry

18   leading tools ready to ignite your growth,

19   Shopify gives you complete control of your

20   business and your brand without learning new

21   skills and design or coding, and thanks to

22   award winning help and with an extensive

Transcript of Interview with Shaun Attwood and Tony Buzbee
Conducted on October 7, 2024    71

```
 1    business cost library, Shopify is ready to
 2    support your success every step of the way.
 3         What's lovely about Shopify is that no
 4    matter how big you want to grow, Shopify will
 5    be there to empower you with the confidence and
 6    control to take your business to the next
 7    level.  It's time to get serious about selling
 8    and get Shopify today.  This is possibility
 9    powered by Shopify.  Sign up for a one pound
10    per month trial period at Shopify.co.UK/shaun,
11    s-h-a-u-n, all lower case.  Go to
12    Shopify.co.UK/shaun to take your business to
13    the next level today.  Shopify.co.UK/shaun.
14    Link in description box if you're watching this
15    on YouTube.  Thanks for supporting our sponsor.
16    Back to the podcast.  Cheers.
17         (The recording was concluded.)
18
19
20
21
22
```

```
1                   CERTIFICATE OF TRANSCRIBER

2            I, Jackie A. Scheer, do hereby certify

3      that this transcript was prepared from the digital

4      audio recording of the foregoing proceeding; that

5      said transcript is a true and accurate record of the

6      proceedings to the best of my knowledge, skills, and

7      ability; and that I am neither counsel for, related

8      to, nor employed by any of the parties to the case

9      and have no interest, financial or otherwise, in its

10     outcome.

11

12

13

14

15     _____

16     JACKIE A. SCHEER

17           NOVEMBER 15, 2024

18

19

20

21

22
```

# EXHIBIT J

Unofficial Copy Office of Marilyn Burgess District Clerk



November 14, 2024

TMZ VIDEO

Job No.:  561803

Pages:  1 - 5

Transcribed by: Lauren Bishop

Transcript of TMZ Video

2

1          TANEA WALLACE: I was at one of P. Diddy's
2     freak offs.
3          HARVEY LEVIN: You saw celebrities there
4     that you recognized.
5          TANEA WALLACE: It was a rapper that we all
6     know.
7          MALE SPEAKER 1: Straight up porn directed
8     by Diddy.
9          TANEA WALLACE: I'm just grateful to have
10    made it out.
11         HARVEY LEVIN: You said that there were
12    other powerful people that you were looking at who
13    you allege were involved in some of these assaults.
14    Are we talking about cases involving other
15    celebrities? Politicians? Business people?
16         MR. BUZBEE: I think all the above. These
17    were very popular parties. This was the venue
18    everybody wanted to be invited to. So a lot of people
19    participated that would raise people's eyebrows.
20         HARVEY LEVIN: Have you been in touch with
21    any of them to say, we're looking at you. You did
22    something wrong. Have you had any contact beyond the

Transcript of TMZ Video

1   Diddy people?

2           MR. BUZBEE: I'm gonna -- I'm gonna just

3   not speak on that. I will say that -- that, you know,

4   the typical practice is to send a demand to layout

5   here's what we believe the situation was. Here's how

6   we think you were involved and try to start a

7   dialogue. Failing that, we just file a lawsuit.

8           HARVEY LEVIN: Safe to say, you've sent

9   some demand letters already?

10          MR. BUZBEE: That's true.

11          HARVEY LEVIN: Beyond Diddy?

12          MR. BUZBEE: True. In my view, if you were

13  there and you knew somebody was being drugged because

14  you had seen it happen in a previous party or

15  previous situation and you didn't do anything, and

16  you allowed it to happen, and you continued to -- to

17  enjoy yourself and party and whoop and holler and

18  have a good time, as far as I'm concerned, you are

19  just as liable as the individual who shipped the

20  person in, who paid the persons that were there, who

21  kept them longer than they thought they were going to

22  be there, who -- who bought the drugs, who took the

Transcript of TMZ Video

4

1    money out of the bank, who -- who put the drugs in a

2    little shot of either a lemon shot or some sort of

3    champagne and participated in this egregious kind of

4    -- you're just as guilty as far as I'm concerned.

5              (The recording was concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Transcript of TMZ Video

5

```
1                    CERTIFICATE OF TRANSCRIBER

2              I, Lauren Bishop, do hereby certify that

3     the foregoing transcript is a true and correct record

4     of the recorded proceedings; that said proceedings

5     were transcribed to the best of my ability from the

6     audio recording and supporting information; and that

7     I am neither counsel for, related to, nor employed by

8     and of the parties to this case and have no interest,

9     financial or otherwise, in its outcome.

10

11

12

13     _____

14     LAUREN BISHOP

15     PLANET DEPOS, LLC.

16     NOVEMBER 14, 2024

17

18

19

20

21

22
```

Cause No. 2024-84902

| | | | |
|---|---|---|---|
| THE BUZBEE LAW FIRM | § | IN THE DISTRICT COURT OF | Pgs-1 |
| vs.<br>QUINN EMANUEL URQUHART &<br>SULLIVAN LLP | §<br>§<br>§ | HARRIS COUNTY, TEXAS<br><br>011th JUDICIAL DISTRICT | TRORY |

---

ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER

---

On this day came on to be heard Plaintiff's Application for a Temporary Restraining Order. After having reviewed the motions, responses and arguments of the parties, the Court finds that Plaintiff's Application for Temporary Restraining Order should be **DENIED**.

It is therefore,

ORDERED, that Plaintiff's Application for a Temporary Restraining Order is **DENIED**.

Signed December 9, 2024.

_Michael Rang_

Ancillary Judge

12/30/2024 9:55 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 95704893
By: Patricia Gonzalez
Filed: 12/30/2024 9:55 AM

## CAUSE NO. 2024-84902

| | | |
|---|---|---|
| THE BUZBEE LAW FIRM, | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| QUINN EMANUEL URQUHART | § | |
| & SULLIVAN, LLP, | § | |
| | § | |
| **Defendant.** | § | |
| | § | **11th JUDICIAL DISTRICT** |

### QUINN EMANUEL URQUHART & SULLIVAN, LLP'S
### ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES
### TO PLAINTIFF THE BUZBEE LAW FIRM'S ORIGINAL PETITION

Defendant Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") hereby files its Original Answer and Affirmative Defenses to Plaintiff The Buzbee Law Firm's Original Petition.

## I.
### GENERAL DENIAL

1.      In accordance with Texas Rule of Civil Procedure 92, Quinn Emanuel generally denies each and every charge and allegation set forth in Plaintiff's Original Petition. Quinn Emanuel respectfully prays that Plaintiff be required to prove the claims and allegations asserted against Quinn Emanuel in this lawsuit by a preponderance of the evidence or such higher standard as may be applicable, as required by the Constitution and the laws of the State of Texas.

QUINN EMANUEL URQUHART & SULLIVAN, LLP'S
ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF THE BUZBEE LAW FIRM'S ORIGINAL PETITION

PAGE 1

2.      Quinn Emanuel reserves the right to amend or supplement this Answer in accordance with the Texas Rules of Civil Procedure and/or any scheduling order that the Court has entered or may enter in this lawsuit.

## II.
### AFFIRMATIVE DEFENSES

3.      In response to the claims asserted by Plaintiff in its Original Petition, and pursuant to Rule 94 of the Texas Rules of Civil Procedure, together with Texas Civil Practice and Remedies Code Section 33.004(j), Quinn Emanuel asserts that one or more John Doe(s) is or are responsible third part(ies), on the grounds that their alleged criminal, negligent, and/or other wrongful conduct was the sole and proximate cause of the alleged injuries or loss alleged in Plaintiff's live pleadings.[1] *See* TEX. CIV. PRAC. & REM. CODE §§ 33.004(j), 33.011(6).   More specifically, Quinn Emanuel notes that Plaintiff alleges that one or more John Doe(s)—whose identities are unknown to Quinn Emanuel and whom Plaintiff references, but does not name or join, in its Petition—is or are responsible third part(ies), as their alleged

---

[1] "For the avoidance of doubt, Quinn Emanuel does not concede The Buzbee Law Firm's allegation that any criminal activity, negligent, or wrongful conduct occurred, or that The Buzbee Law Firm has suffered any injuries or loss as a result of any alleged criminal activity, negligent, or wrongful conduct as alleged in its petition.  However, if The Buzbee Law Firm insists on alleging, without evidence, that one or more criminal actor(s)—whom The Buzbee Law Firm has yet to name—committed actionable conduct for which *Quinn Emanuel* ought to be held responsible, then Quinn Emanuel hereby reserves its right under applicable law to designate said, unknown criminal actor(s) as responsible third party(ies)."

QUINN EMANUEL URQUHART & SULLIVAN, LLP'S                                       PAGE 2
ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF THE BUZBEE LAW FIRM'S ORIGINAL PETITION

criminal, negligent, and/or other wrongful conduct was the sole and proximate cause of the injuries alleged in Plaintiff's Petition.

4.     In addition, and without waiver of prior or subsequent defenses, Quinn Emanuel asserts the following affirmative defenses and/or matters in avoidance in this lawsuit and reserves the right to add to, supplement, or amend same in accordance with the Texas Rules of Civil Procedure and/or any scheduling order that the Court has entered or may enter in this lawsuit:

a.  Plaintiff's claims are barred by virtue of Plaintiff's unclean hands.

b.  Plaintiff's claims are barred by virtue of Plaintiff's fraud.

c.  Plaintiff's claims are barred by virtue of the doctrine of illegality.

d.  Plaintiff's claims are barred by virtue Plaintiff's own and/or contributory negligence.

e.  Plaintiff's claims are barred or limited by Plaintiff's own conduct, which was the cause of Plaintiff's alleged damages, if any.

f.  Plaintiff's claims are barred due to Plaintiff's failure to mitigate its damages, if any.

g.  Plaintiff's claims are barred and/or limited by virtue of the fact that the alleged negligence and/or intentional conduct of one or more responsible third parties, over whom Quinn Emanuel possessed no right to control, was the cause of Plaintiff's alleged damages, if any.

h.  Plaintiff's claims are barred, in whole or in part, by the attorney-immunity doctrine.

i.  Plaintiff's claims are barred, in whole or in part, by the judicial-proceedings privilege.

j.  Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing.

k.  Plaintiff's claims are barred, in whole or in part, because Plaintiff is not entitled to recover in the capacity in which it sues and/or Quinn Emanuel is not liable in the capacity in which it is sued.

l.  Plaintiff's claims are barred by virtue of the doctrine of new and independent cause.

m.  Plaintiff's claims are barred by virtue of Plaintiff's own contributory negligence.

n.  Quinn Emanuel further asserts the defenses of comparative liability and contribution pursuant to Chapter 33 of the Texas Civil Practice and Remedies Code or such equal or higher standards as may be available. Quinn Emanuel asks that the trier of fact be directed to compare and assign percentages of responsibility to the parties, any settling defendants, and any relevant third parties (including those discussed in paragraph 3, *supra*). Quinn Emanuel further asks that any judgment rendered in connection with this lawsuit be done so pursuant to the rights of contribution accorded Quinn Emanuel, including but not limited to those set forth Chapter 33 of the Texas Civil Practice and Remedies Code. Quinn Emanuel similarly reserves its right to make an election under Sections 33.012 and/or 33.013 of the Texas Civil Practice and Remedies Code, including with respect to settlements made by any parties to this lawsuit, any settling defendants, and/or any relevant third parties (including those discussed in paragraph 3, *supra*)

o.  Quinn Emanuel asserts that Plaintiff's claims are barred by the doctrine of waiver and/or estoppel.

p.  Quinn Emanuel asserts that Plaintiff's claims are barred by laches.

q.  Quinn Emanuel asserts that it is entitled to an offset, setoff, and/or credit against Plaintiff's damages recovered in connection with its claims, if any.

r.  Quinn Emanuel posits that Plaintiff is not entitled to recover exemplary damages from Quinn Emanuel, including because it cannot show any damages caused by the willful act(s), willful omission(s), or gross negligence of Quinn Emanuel.

s.  Quinn Emanuel asserts that Plaintiff's claims are barred, in whole or in part, by limitations.

5.    Again, Quinn Emanuel asserts the aforementioned affirmative defenses and/or matters of avoidance in the alternative, and without waiver to one another. Moreover, Quinn Emanuel reserves the right to amend this pleading to withdraw or add one or more affirmative defenses and/or matters of avoidance as necessary.

## III.
## RULE 193.7 NOTICE

6.    Quinn Emanuel hereby gives notice to Plaintiff that any and all documents produced in response to written discovery may be used against it at any pretrial proceeding and/or at trial of this matter, without the necessity of authenticating the documents.

## IV.
## TEXAS RULE OF EVIDENCE 609(F) REQUEST FOR NOTICE

7.    Pursuant to Texas Rule of Evidence 609(f), Quinn Emanuel hereby requests that Plaintiff and any other party added to this lawsuit each provide sufficient written notice of their intent to introduce into evidence (or otherwise use)

the criminal conviction of any individual whom Quinn Emanuel identifies as someone Quinn Emanuel may or will call as a witness in this matter.

## V.
### CONCLUSION AND PRAYER

Defendant Quinn Emanuel Urquhart & Sullivan, LLP respectfully prays that the Court deny Plaintiff's prayer for relief in all respects and dismiss any and all claims against it with prejudice. Quinn Emanuel also prays for any and all additional relief to which it may show itself justly entitled, either a law or in equity.

**Dated: December 30, 2024**          *Respectfully Submitted,*

**Bradley**

By:     */s/ Robert H. Ford*
Robert H. Ford
TX State Bar No. 24074219
rford@bradley.com
Michael C. Williams
Texas Bar No. 24139101
mcwilliams@bradley.com
Lauren Black
Texas State Bar No. 24078979
lblack@bradley.com
Mary Grace Whitten
TX State Bar No. 24143519
mwhitten@bradley.com
BRADLEY ARANT BOULT CUMMINGS, LLP
600 Travis Street, Suite 5600
Houston, Texas 77002
(713) 576-0300 Telephone

(713) 576-0301 Telecopier

**ATTORNEYS FOR QUINN EMANUEL
URQUHART & SULLIVAN, LLP**

<u>**CERTIFICATE OF SERVICE**</u>

I certify, pursuant to the Texas Rules of Civil Procedure, that a true and
correct copy of the foregoing has been served on all counsel of record for all
parties on this the 30th day of December 2024, via the Court's e-Filing system.

*/s/ Robert H. Ford*
Robert H. Ford

STATE OF TEXAS                          §

                                        §

COUNTY OF HARRIS                        §


## VERIFICATION

My name is Robert Henry Ford, my date of birth is December 15, 1983, and my address is 600 Travis Street, Suite 5600, Houston, Texas 77002, United States of America.  I hereby verify and declare, under penalty of perjury that the following are true and correct:

1. the plaintiff lacks legal capacity to sue or that the defendant has not legal capacity to be sued; and

2. that the plaintiff is not entitled to recover in the capacity in which he sues, or that the defendant is not liable in the capacity in which it has been sued.

Executed in Harris County, State of Texas, on this **30th** day of **December, 2024**.

Robert H. Ford

Unofficial Copy Office of Marilyn Burgess District Clerk

4912-3992-9355.1

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Angela Davis on behalf of Robert Ford
Bar No. 24074219
adavis@bradley.com
Envelope ID: 95704893
Filing Code Description: Answer/ Response / Waiver
Filing Description: Quinn Emanuels Original Answer and Affirmative Defenses to Buzbees Original Petition
Status as of 12/30/2024 10:04 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robert H.Ford | | rford@bradley.com | 12/30/2024 9:55:38 AM | SENT |
| Angela Davis | | adavis@bradley.com | 12/30/2024 9:55:38 AM | SENT |
| Anthony Buzbee | | tbuzbee@txattorneys.com | 12/30/2024 9:55:38 AM | SENT |
| Buzbee Law Firm | | efiling@txattorneys.com | 12/30/2024 9:55:38 AM | SENT |
| Colby Holler | | CHoller@txattorneys.com | 12/30/2024 9:55:38 AM | SENT |
| Latisha Horn | | lhorn@bradley.com | 12/30/2024 9:55:38 AM | SENT |
| Lauren Black | | lblack@bradley.com | 12/30/2024 9:55:38 AM | SENT |
| Mary GraceWhitten | | mwhitten@bradley.com | 12/30/2024 9:55:38 AM | SENT |
| David C.Fortney | | dfortney@txattorneys.com | 12/30/2024 9:55:38 AM | SENT |
| Michael Williams | | mcwilliams@bradley.com | 12/30/2024 9:55:38 AM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk

1/27/2025 12:17:50 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 96619090
By: BRADFORD, TAIASHA N
Filed: 1/27/2025 12:17:50 PM

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2024-84902          **CURRENT COURT:** 11th Judicial District

**Name(s) of Documents to be served:** Plaintiff's First Amended Petition

**FILE DATE:** 1/27/2025          Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Lex Intelligence LLC

Address of Service: One Commerce Plaza, 99 Washington Avenue

City, State & Zip: Albany, New York 12231

Agent (if applicable) _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

- [X] **Citation**
- [ ] **Citation by Posting**
- [ ] **Citation by Publication**
- [ ] **Citations Rule 106 Service**
- [ ] **Citation Scire Facias**      Newspaper _____
- [ ] **Temporary Restraining Order**
- [ ] **Precept**
- [ ] **Notice**
- [ ] **Protective Order**
- [ ] **Secretary of State Citation ($12.00)**
- [ ] **Capias** (not by E-Issuance)
- [ ] **Attachment** (not by E-Issuance)
- [ ] **Certiorari**
- [ ] **Highway Commission/Texas Department of Transportation ($12.00)**
- [ ] **Commissioner of Insurance ($12.00)**
- [ ] **Hague Convention ($16.00)**
- [ ] **Garnishment**
- [ ] **Habeas Corpus** (not by E-Issuance)
- [ ] **Injunction**
- [ ] **Sequestration**
- [ ] **Subpoena**
- [ ] **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
- [ ] **ATTORNEY PICK-UP (phone)** _____
- [X] **E-Issuance by District Clerk**
- [ ] **MAIL to attorney at:** _____      **(No Service Copy Fees Charged)**
- [ ] **CONSTABLE**
- [ ] **CERTIFIED MAIL by CONSTABLE**
- [ ] **CERTIFIED MAIL by DISTRICT CLERK**

*Note:* The email registered with EfileTexas.gov must be used to retrieve the E-issuance Service Documents. Visit www.hcdistrictclerk.com for more instructions.

- [ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____     Phone: _____
- [ ] **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Anthony Buzbee      Bar # or ID 24001820

Mailing Address: 600 Travis, Suite 7500, Houston, Texas 77002

Phone Number: (713) 223-5393

1/27/2025 12:17:50 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 96619090
By: BRADFORD, TAIASHA N
Filed: 1/27/2025 12:17:50 PM

# Marilyn Burgess
## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2024-84902  **CURRENT COURT:** 11th Judicial District

**Name(s) of Documents to be served:** Plaintiff's First Amended Petition

**FILE DATE:** 1/27/2025  Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Christina Siess

Address of Service: One Commerce Plaza, 99 Washington Avenue

City, State & Zip: Albany, New York 12231

Agent (if applicable)

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

- [X] Citation
- [ ] Citation by Posting
- [ ] Citation by Publication
- [ ] Citations Rule 106 Service
- [ ] Citation Scire Facias    Newspaper
- [ ] Temporary Restraining Order
- [ ] Precept
- [ ] Notice
- [ ] Protective Order
- [ ] Secretary of State Citation ($12.00)
- [ ] Capias (not by E-Issuance)
- [ ] Attachment (not by E-Issuance)
- [ ] Certiorari
- [ ] Highway Commission/Texas Department of Transportation ($12.00)
- [ ] Commissioner of Insurance ($12.00)
- [ ] Hague Convention ($16.00)
- [ ] Garnishment
- [ ] Habeas Corpus (not by E-Issuance)
- [ ] Injunction
- [ ] Sequestration
- [ ] Subpoena
- [ ] Other (Please Describe)

**(See additional Forms for Post Judgment Service)**

---

**SERVICE BY** *(check one)*:
- [ ] **ATTORNEY PICK-UP (phone)**
- [X] **E-Issuance by District Clerk**
- [ ] **MAIL to attorney at:**    **(No Service Copy Fees Charged)**
- [ ] **CONSTABLE**  *Note:* The email registered with EfileTexas.gov must be
- [ ] **CERTIFIED MAIL by CONSTABLE**  used to retrieve the E-issuance Service Documents.
- [ ] **CERTIFIED MAIL by DISTRICT CLERK**  Visit www.hcdistrictclerk.com for more instructions.

- [ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up:    Phone:
- [ ] **OTHER,** *explain*

---

**Issuance of Service Requested By:** Attorney/Party Name: Anthony Buzbee    Bar # or ID 24001820

Mailing Address: 600 Travis, Suite 7500, Houston, Texas 77002

Phone Number: (713) 223-5393

1/27/2025 12:17:50 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 96619090
By: BRADFORD, TAIASHA N
Filed: 1/27/2025 12:17:50 PM

# Marilyn Burgess
## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2024-84902          **CURRENT COURT:** 11th Judicial District

**Name(s) of Documents to be served:** Plaintiff's First Amended Petition

**FILE DATE:** 1/27/2025          Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Lex Intelligence LLC

**Address of Service:** One Commerce Plaza, 99 Washington Avenue

**City, State & Zip:** Albany, New York 12231

**Agent (if applicable)** _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

[X] Citation      [ ] Citation by Posting      [ ] Citation by Publication      [ ] Citations Rule 106 Service

[ ] Citation Scire Facias     Newspaper _____

[ ] Temporary Restraining Order          [ ] Precept          [ ] Notice

[ ] Protective Order

[ ] Secretary of State Citation ($12.00)      [ ] Capias (not by E-Issuance)      [ ] Attachment (not by E-Issuance)

[ ] Certiorari          [ ] Highway Commission/Texas Department of Transportation ($12.00)

[ ] Commissioner of Insurance ($12.00)      [ ] Hague Convention ($16.00)      [ ] Garnishment

[ ] Habeas Corpus (not by E-Issuance)      [ ] Injunction          [ ] Sequestration

[ ] Subpoena

[ ] Other (Please Describe) _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
[ ] **ATTORNEY PICK-UP** (phone) _____
[ ] **MAIL to attorney at:** _____
[ ] **CONSTABLE**
[ ] **CERTIFIED MAIL by CONSTABLE**
[ ] **CERTIFIED MAIL by DISTRICT CLERK**

[X] **E-Issuance by District Clerk**
        **(No Service Copy Fees Charged)**
*Note*: The email registered with EfileTexas.gov must be used to retrieve the E-issuance Service Documents. Visit www.hcdistrictclerk.com for more instructions.

[ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____     Phone: _____
[ ] **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Anthony Buzbee     Bar # or ID 24001820

Mailing Address: 600 Travis, Suite 7500, Houston, Texas 77002

Phone Number: (713) 223-5393

1/27/2025 12:17:50 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 96619090
By: BRADFORD, TAIASHA N
Filed: 1/27/2025 12:17:50 PM

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2024-84902     **CURRENT COURT:** 11th Judicial District

**Name(s) of Documents to be served:** Plaintiff's First Amended Petition

**FILE DATE:** 1/27/2025 _____ Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Marcy Bryan Croft

Address of Service: 1501 Jacksonian Plaza 12159

City, State & Zip: Jackson, Mississippi 39211

Agent (if applicable) _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

[X] Citation     [ ] Citation by Posting     [ ] Citation by Publication     [ ] Citations Rule 106 Service

[ ] Citation Scire Facias     Newspaper_____

[ ] Temporary Restraining Order     [ ] Precept     [ ] Notice

[ ] Protective Order

[ ] Secretary of State Citation ($12.00)     [ ] Capias (not by E-Issuance)     [ ] Attachment (not by E-Issuance)

[ ] Certiorari     [ ] Highway Commission/Texas Department of Transportation ($12.00)

[ ] Commissioner of Insurance ($12.00)     [ ] Hague Convention ($16.00)     [ ] Garnishment

[ ] Habeas Corpus (not by E-Issuance)     [ ] Injunction     [ ] Sequestration

[ ] Subpoena

[ ] Other (Please Describe) _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY (check one):**

[ ] **ATTORNEY PICK-UP** (phone) _____     [X] **E-Issuance by District Clerk**
[ ] **MAIL to attorney at:** _____          **(No Service Copy Fees Charged)**
[ ] **CONSTABLE**                                        *Note:* The email registered with EfileTexas.gov must be
[ ] **CERTIFIED MAIL by CONSTABLE**                      used to retrieve the E-issuance Service Documents.
[ ] **CERTIFIED MAIL by DISTRICT CLERK**                 Visit www.hcdistrictclerk.com for more instructions.

[ ] **CIVIL PROCESS SERVER** - Authorized Person to Pick-up: _____     Phone: _____
[ ] **OTHER**, *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Anthony Buzbee     Bar # or ID     24001820

Mailing Address: 600 Travis, Suite 7500, Houston, Texas 77002

Phone Number: (713) 223-5393

1/27/2025 12:17:50 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 96619090
By: BRADFORD, TAIASHA N
Filed: 1/27/2025 12:17:50 PM

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2024-84902     **CURRENT COURT:** 11th Judicial District

**Name(s) of Documents to be served:** Plaintiff's First Amended Petition

**FILE DATE:** 1/27/2025   Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** MJ Legal, P.A

Address of Service: 1501 Jacksonian Plaza 12159

City, State & Zip: Jackson, Mississippi 39211

Agent (if applicable)

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

- [X] Citation
- [ ] Citation by Posting
- [ ] Citation by Publication
- [ ] Citations Rule 106 Service
- [ ] Citation Scire Facias   Newspaper
- [ ] Temporary Restraining Order
- [ ] Precept
- [ ] Notice
- [ ] Protective Order
- [ ] Secretary of State Citation ($12.00)
- [ ] Capias (not by E-Issuance)
- [ ] Attachment (not by E-Issuance)
- [ ] Certiorari
- [ ] Highway Commission/Texas Department of Transportation ($12.00)
- [ ] Commissioner of Insurance ($12.00)
- [ ] Hague Convention ($16.00)
- [ ] Garnishment
- [ ] Habeas Corpus (not by E-Issuance)
- [ ] Injunction
- [ ] Sequestration
- [ ] Subpoena
- [ ] Other (Please Describe)

**(See additional Forms for Post Judgment Service)**

**SERVICE BY (check one):**

- [ ] ATTORNEY PICK-UP (phone)
- [X] E-Issuance by District Clerk
- [ ] MAIL to attorney at:      **(No Service Copy Fees Charged)**
- [ ] CONSTABLE     *Note:* The email registered with EfileTexas.gov must be
- [ ] CERTIFIED MAIL by CONSTABLE     used to retrieve the E-issuance Service Documents.
- [ ] CERTIFIED MAIL by DISTRICT CLERK     Visit www.hcdistrictclerk.com for more instructions.

- [ ] CIVIL PROCESS SERVER - Authorized Person to Pick-up:          Phone:
- [ ] OTHER, *explain*

**Issuance of Service Requested By:** Attorney/Party Name: Anthony Buzbee   Bar # or ID   24001820

Mailing Address: 600 Travis, Suite 7500, Houston, Texas 77002

Phone Number: (713) 223-5393

1/27/2025 12:17:50 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 96619090
By: BRADFORD, TAIASHA N
Filed: 1/27/2025 12:17:50 PM

# Marilyn Burgess
## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2024-84902          **CURRENT COURT:** 11th Judicial District

**Name(s) of Documents to be served:** Plaintiff's First Amended Petition

**FILE DATE:** 1/27/2025          Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Roc Nation, LLC

Address of Service: 600 Mamaroneck Avenue, #400

City, State & Zip: Harrison, New York 10528

Agent (if applicable)

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

[X] Citation     [ ] Citation by Posting     [ ] Citation by Publication     [ ] Citations Rule 106 Service

[ ] Citation Scire Facias     Newspaper

[ ] Temporary Restraining Order     [ ] Precept     [ ] Notice

[ ] Protective Order

[ ] Secretary of State Citation ($12.00)     [ ] Capias (not by E-Issuance)     [ ] Attachment (not by E-Issuance)

[ ] Certiorari     [ ] Highway Commission/Texas Department of Transportation ($12.00)

[ ] Commissioner of Insurance ($12.00)     [ ] Hague Convention ($16.00)     [ ] Garnishment

[ ] Habeas Corpus (not by E-Issuance)     [ ] Injunction     [ ] Sequestration

[ ] Subpoena

[ ] Other (Please Describe)

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
[ ] **ATTORNEY PICK-UP** (phone) _____     [X] **E-Issuance by District Clerk**
[ ] **MAIL to attorney** at: _____          **(No Service Copy Fees Charged)**
[ ] **CONSTABLE**          *Note:* The email registered with EfileTexas.gov must be
[ ] **CERTIFIED MAIL by CONSTABLE**          used to retrieve the E-issuance Service Documents.
[ ] **CERTIFIED MAIL by DISTRICT CLERK**          Visit www.hcdistrictclerk.com for more instructions.

[ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____     Phone: _____
[ ] **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Anthony Buzbee     Bar # or ID 24001820

Mailing Address: 600 Travis, Suite 7500, Houston, Texas 77002

Phone Number: (713) 223-5393

1/27/2025 12:17:50 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 96619090
By: BRADFORD, TAIASHA N
Filed: 1/27/2025 12:17:50 PM

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2024-84902     **CURRENT COURT:** 11th Judicial District

**Name(s) of Documents to be served:** Plaintiff's First Amended Petition

**FILE DATE:** 1/27/2025     Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Jessica Santiago

Address of Service: Wherever she may be found

City, State & Zip:

Agent (if applicable)

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

- [X] **Citation**
- [ ] **Citation by Posting**
- [ ] **Citation by Publication**
- [ ] **Citations Rule 106 Service**
- [ ] **Citation Scire Facias**     Newspaper_____
- [ ] **Temporary Restraining Order**
- [ ] **Precept**
- [ ] **Notice**
- [ ] **Protective Order**
- [ ] **Secretary of State Citation ($12.00)**
- [ ] **Capias** (not by E-Issuance)
- [ ] **Attachment** (not by E-Issuance)
- [ ] **Certiorari**
- [ ] **Highway Commission/Texas Department of Transportation ($12.00)**
- [ ] **Commissioner of Insurance ($12.00)**
- [ ] **Hague Convention ($16.00)**
- [ ] **Garnishment**
- [ ] **Habeas Corpus** (not by E-Issuance)
- [ ] **Injunction**
- [ ] **Sequestration**
- [ ] **Subpoena**
- [ ] **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
- [ ] **ATTORNEY PICK-UP (phone)** _____
- [X] **E-Issuance by District Clerk**
- [ ] **MAIL to attorney at:** _____     **(No Service Copy Fees Charged)**
- [ ] **CONSTABLE**
- [ ] **CERTIFIED MAIL by CONSTABLE**
- [ ] **CERTIFIED MAIL by DISTRICT CLERK**

*Note*: The email registered with EfileTexas.gov must be used to retrieve the E-issuance Service Documents. Visit www.hcdistrictclerk.com for more instructions.

- [ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____     Phone: _____
- [ ] **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Anthony Buzbee     Bar # or ID 24001820

Mailing Address: 600 Travis, Suite 7500, Houston, Texas 77002

Phone Number: (713) 223-5393



1/27/2025 1
Marilyn Bu
Harris Cou
Envelope N
By: BRADF
Filed: 1/27/



# Marilyn Burgess
## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictcle

## Request for Issuance of Service

024-84902     **CURRENT COURT:**    11th Judicial Distric

s to be served:   Plaintiff's First Amended Petition

/27/2025 _____ Month/Day/Year

E ISSUED ON (Please List Exactly As The Name Appears In The Pleadi

Jessica Santiago

e:   Wherever she may be found

ble) _____

**ICE/PROCESS TO BE ISSUED:** (Check the proper Box)

☐ **Citation by Posting**   ☐ **Citation by Publication**   ☐ **Citations l**

e Facias   **Newspaper** _____

**Restraining Order**   ☐ **Precept**   ☐ **Notice**

**rder**

**State Citation ($12.00)**   ☐ **Capias** (not by E-Issuance)   ☐ **Attachm**

☐ **Highway Commission/Texas Department of Transp**

**r of Insurance ($12.00)**   ☐ **Hague Convention ($16.00)**   ☐ **Garnish**

☐ **Injunction**   ☐ **Sequest**

[Z1A]

CAUSE NO. 2024-84902

| | | |
|---|---|---|
| THE BUZBEE LAW FIRM, | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| QUINN EMANUEL URQUHART & | § | HARRIS COUNTY, TEXAS |
| SULLIVAN, LLP, | § | |
| | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | 11th DISTRICT COURT |

<u>**PLAINTIFF'S FIRST AMENDED PETITION**</u>

Plaintiff The Buzbee Law Firm (the "Firm") files this First Amended Petition against Defendants Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), Christina Siess, Lex Intelligence LLC ("Lex Intelligence"), Marcy Bryan Croft, MJ Legal, P.A. ("MJ Legal"), Roc Nation, LLC ("Roc Nation"), and Jessica Santiago (collectively, "Defendants"), seeking damages, and respectfully shows this Honorable Court the following:

<u>**INTRODUCTION**</u>

This case arises out of outrageous litigation gamesmanship by the Defendants. Specifically, Defendants have conspired to obstruct justice and tortiously interfere with the Firm's business by engaging shadowy operatives to illegally seek out more than two dozen[1] current and former clients of the Firm to convince or bribe those clients to bring frivolous cases against the Firm. In some cases, Defendants' agents pretend to work for the State of Texas and have flashed

---

[1] Exhibit A. Transcript between Jessica Santiago and Gerardo Garcia. "Exactly, we have like 70 people that are in this class action, and there will be more. You are on the list but we have other people too. Today I'm visiting with you, and with 3 more people who will sign up to be in the lawsuit. And it will increase daily. We have more pages with people. I don't know how many but there are many. And if there are more people in the class action, that is better for you, because that means you will collect something."

fake badges.[2]  In at least one case, Defendants' agents offered as much as $10,000 to a former client of the Buzbee Law Firm to sue the firm.[3]  Beyond these criminal actions, Defendants also have engaged in a campaign of misinformation by spreading defamatory rumors about the Firm to the Firm's former and current clients, again to harm the Firm's reputation and its business relationships.

Soliciting clients is a crime in the State of Texas.  Paying individuals to file false claims is unethical and criminal in the State of Texas. Impersonating a state official is also a crime. Unfortunately for the Defendants, their agents are not very smart, or careful. Their agents were caught on audiotape, red handed. Not knowing they were being recorded, Defendant's agents admitted that Defendant Marcy Croft, a licensed Texas lawyer and member of "Team Roc," was orchestrating the effort.  In other instances, phone numbers used by the investigators were traceable back to Defendant Lex Intelligence.  What is now unmistakably clear is that multiple Defendants acted in concert to pursue an all-out campaign to disrupt and undermine the Firm.

This illegal and tortious campaign against the Firm is in direct response to (and retaliation for) the Firm's pursuit of claims against Shawn "Jay-Z" Carter, whose interests all Defendants ultimately represent.  Defendant Roc Nation is financing the effort against the Firm.  Roc Nation and Jay-Z are synonymous – Jay-Z is founder and Chairman of Roc Nation.  Roc Nation's

---

[2] Exhibit A. Transcript between Jessica Santiago and Gerardo Garcia. "We are from the state."

[3] Exhibit B. Affidavit of Skylar Taylor; Exhibit C. Affidavit of Shannon Champagne. The Defendants were aggressive. "These men offered me money to sign on as a client with them. Specifically. they offered me $10,000 in exchange for signing with them as a client.". Affidavit of Shannon Champagne. Defendants' scheme has been successful in two instances thus far. Two cases have been filed to date—both utterly frivolous and patently false. Both will undoubtedly needlessly subject the former Buzbee Law Firm clients to fees and expenses, and will result in bar action against the law firms who accepted referrals of the cases from Defendant Marcy Croft. Croft, of course, will also be subject to bar complaints. Her conduct is despicable and criminal, despite being mandated by her client and self-described benefactor Roc Nation.

attorneys, Marcy Croft and Quinn Emanuel, are orchestrating the effort.  And the boots-on-the-ground investigators are working at the direction of one or more of these Defendants.

At the same time the illegal conduct described herein continues, the Firm is pursuing claims on behalf of at least one client against Jay-Z in New York federal court.  As a result of that client's claims, Jay-Z sued the Buzbee Law Firm in Los Angeles state court.  Defendant Quinn Emanuel, who represents Jay-Z in both cases (and who also frequently represents Roc Nation) denied in open court and in the press that it had any involvement in the scheme described herein.[4] But that denial was a bold-faced LIE.[5]

The illegal effort described here, which Roc Nation is funding, and which Defendants Croft and Quinn Emanuel are orchestrating, is intended to interfere with The Buzbee Law Firm's ability to represent its clients and conduct its business in general. Defendants' scheme is summarized in the following recording transcript:

> ***What we're trying to do is, we are trying put this thing together for the company that we're working for -- We could get you paid, . . . you could get money right soon, you know? We gave this kid 1,000 bucks to start yesterday just to get him on the right path.  At the end of the day, this is going to go through the courts, Buzbee is getting sued . . ."***

*See* Exhibit 4, page. 6. Offering payments to bring meritless lawsuits – because the Defendants believe that with enough pressure, the Firm will simply cave.  Defendants have a long history of the type of abusive and egregious conduct described herein. Because they have gotten away with it for so long, Defendants think they can come down to Texas and do whatever they choose with impunity. They are wrong.

---

[4] *See* Exhibit M, Affidavit of David Fortney.
[5] Mere days after Quinn Emanuel denied involvement in the "investigation," Quinn Emanuel partner Alex Spiro admitted Quinn Emanuel's involvement openly.  In a brief filed with the New York court, Spiro stated "**Plaintiff's counsel tried to prevent Quinn Emanuel from investigating Mr. Carter's claims of extortion** by trying to enjoin the firm from contacting anyone related to the Buzbee law firm."  *See* Shawn Carter's Motion to Deny Plaintiff's Request to Proceed Anonymously, filed in Case No. 24-cv-07975-AT (S.D.N.Y.), [Dkt. #38], at p. 17, fn. 1.

# I.
# PARTIES

Plaintiff is a law firm and resident of Texas and Harris County.

Defendant Quinn Emanuel Urquhart & Sullivan, LLP is a limited liability partnership which may be served at its Houston office located at 700 Louisiana Street, Suite 3900, Houston, Texas 77002.  Quinn Emanuel frequently represents Roc Nation and currently represents Jay-Z in a lawsuit against the Buzbee Law Firm.

Defendant Lex Intelligence LLC is a New York limited liability company, which can be served via personal service on the Secretary of State for New York State.

Defendant Christina Siess is a resident of New York and the founder of Lex Intelligence. She can be served via personal service on the Secretary of State for the New York State.

Defendant Marcy Bryan Croft is a Texas licensed attorney, and a self-admitted member of "Team Roc."  She can be served through the Texas Secretary of State at her office at 1501 Jacksonian Plaza 12159, Jackson, MS 39211.

Defendant MJ Legal, P.A., is a business corporation and law firm performing legal services in Texas.  This Defendant can be served through the Texas Secretary of State at her office via personal service to Marcy Bryan Croft at 1501 Jacksonian Plaza 12159, Jackson, MS 39211.

Defendant Roc Nation, LLC is a limited liability company organized in Delaware and headquartered in New York.  This Defendant can be served through the Texas Secretary of State via registered agent at C/O Corporate Creations Network, Inc., 600 Mamaroneck Avenue #400, Harrison, New York 10528.

Defendant Jessica Santiago is an individual and can be served via personal service at her home address or wherever she may be found.

## II.
## VENUE AND JURISDICTION

Venue is proper in Harris County, Texas pursuant to Section 15.002(a)(1) of the Texas Civil Practices and Remedies Code because all or a substantial part of the events or omissions giving rise to the claims occurred in Harris County, Texas.

The Court has subject matter jurisdiction because the amount in controversy is within the jurisdictional limits of this Court. Plaintiff seeks damages in excess of $25,000,000.00.

## III.
## DISCOVERY CONTROL PLAN

Plaintiff intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4 and affirmatively pleads that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169, because Plaintiff requests injunctive relief and Plaintiff seeks monetary relief over $100,000.

## IV.
## EVIDENCE

This filing is supporting by the following evidence, which is attached and incorporated herein:

A.  Transcript of Defendant Jessica Santiago and Gerardo Garcia.

B.  Transcript of Defendants' agent and Skylar Taylor.

C.  Affidavit of Skylar Taylor.

D.  Affidavit of Shannon Champagne.

E.  Affidavit of Deseree McIntosh.

F.  Affidavit of Tori Conklin.

G.  Affidavit of Angelique Townsend.

H.  Affidavit of Laura Delacruz.

I.   Declaration of Fernando Garza.

J.   Affidavit of Anna Faubus.

K.   Affidavit of Liz Buzbee.

L.   Affidavit of Mauricio Guevara.

M.  Affidavit of David Fortney.

**V.**
**FACTS**

**The Firm's Representation of Clients Against Diddy and Jay-Z**

Attorney Tony Buzbee, the Firm's principal, announced on October 1, 2024 that the Firm represented over one hundred victims of sexual assault perpetrated by Sean "Diddy" Combs. Combs is a rapper and businessman who is currently in federal prison, awaiting trial on sex-trafficking and other charges.  Combs, along with others, is alleged to have used his fame, money and power to systematically abuse men, women and children sexually over decades, and then by bribes or threats ensure his victims' silence afterwards.  His scheme worked for many years, but the dam has now broken as his victims pursue long-delayed justice.  On October 14, 2024, the Firm filed the first round of complaints against Combs, and since that time the Firm has filed dozens more.

As Mr. Buzbee indicated at his initial press conference on the "Diddy" cases, the evidence indicates that while Combs was at the epicenter of a large web of abuse and violence, he did not always act alone as a perpetrator.  Other celebrities – rich, famous, and powerful themselves – have been identified by victims as participants in Combs' depraved and illegal activities.  On behalf of two clients, Mr. Buzbee and the Firm sent demand letters to attorneys for one such celebrity, Shawn "Jay Z" Carter.  The letters made no monetary demand. They only sought a confidential sit down to discuss the clients' allegations.

### Defendants' Retaliatory Response

Mere days after the demands were sent, two lawsuits were filed simultaneously against Mr. Buzbee and the Firm.  One lawsuit filed in New York alleged a purported malpractice claim brought by an alleged former client.  Another, filed in Los Angeles by Defendant Quinn Emanuel, alleged that the Firm was trying to extort Jay-Z (who had been identified in pleadings as "John Doe" or "Celebrity A").  These lawsuits were, and are, frivolous, and will be dismissed.  However, the timing of the lawsuits clearly indicated that they were coordinated by persons acting on behalf of Jay-Z.  Moreover, it is equally clear that the lawsuits are intended to intimidate and silence Mr. Buzbee and the Firm as the Firm pursues justice for its clients.

Shortly after the two bogus lawsuits were filed against Mr. Buzbee and the Firm, persons representing themselves as "researchers," "investigators" and in some cases as "attorneys," began contacting a wide array of people associated with the Firm.  Sometimes these persons identified themselves as working for defendant Lex Intelligence, or as having been hired by defendant Quinn Emanuel, or the phone numbers used for the contact were associated with Lex Intelligence.  In other cases, the investigators stated that they were affiliated with defendant Marcy Croft and MJ Legal.  On information and belief, all of these "researchers," "investigators," "attorneys" and other persons were working on behalf of and at the behest of at least one if not all Defendants.

The investigators and attorneys contacted all of the following categories of people:  *former employees* of the Firm, *former clients* of the Firm, *current clients* of the Firm, *witnesses* in cases handled by the Firm*, family members* of Mr. Buzbee and employees of the Firm, and other third parties associated with the Firm or Mr. Buzbee. In addition, one *current employee* of the Firm caught on video two different men with tripods taking pictures of and around his house. Particular

descriptions of some of these encounters are detailed in affidavits filed herewith as Exhibits E through L.

In some instances, the investigators' behavior amounts to "mere" harassment. For example, investigators contacted certain former clients or witnesses on Firm cases and aggressively sought salacious information about Mr. Buzbee or the identity of other Firm clients. In other instances, family members of clients were repeatedly contacted, and in some cases family members of Mr. Buzbee or other Firm employees were contacted by investigators seeking salacious or controversial information.

In other instances, the investigators' behavior turned explicitly tortious. For example, several investigators represented to former and current Firm clients that they were part of an ongoing investigation into the Firm, or investigating "fraud" potentially committed by the Firm, or otherwise were part of an investigation into "fraud in Texas" and they "had questions about" the Firm. These statements implied that the Firm and its attorneys had committed fraud, and also that the Firm was the subject of an actual (i.e., legitimate) investigation.

The most egregious conduct was both tortious and illegal: solicitation and barratry, committed for the purpose of filing false lawsuits against the Firm. As part of Defendants' conspiracy to undermine and injure the Firm, investigators began soliciting the Firm's current and former clients, asking those clients to sue the Firm. The investigators used burner phones. Many times the investigators used fake names, or flashed badges or credentials but would not let the clients see them. During some of the contacts the investigators were pushy, and in at least two instances they pretended to be acting on behalf of the State of Texas. In numerous cases, the investigators offered the Firm's clients money – payments of up to $10,000 – if they would agree to pursue claims against the Firm. Several of the investigators' calls or interactions were caught on either camera or tape. In most instances, the investigators were careful not to disclose on whose behalf they were working. For good

reason – the Defendants here did not want to disclose their participation in the flagrant violation of Texas law.  But in one case, the investigator was caught, as described below.

*Solicitation of Gerardo Garcia*

One such target of Defendants' solicitation was Gerardo Garcia.  Mr. Garcia was a plaintiff in Jones Act lawsuit and hired the Firm to represent him.  His case was settled in 2020.  He was happy with the resolution of his case, and had no complaints with the Firm.  Nearly five years later after his case had resolved, not seeking to hire a lawyer or file a lawsuit, Mr. Garcia was contacted out of the blue by two "investigators."  This contact was an illegal solicitation and was made on behalf of and as part of a conspiracy involving (at minimum) Defendants Croft, Roc Nation, and Quinn Emanuel. One of these investigators identified herself as Jessica Santiago.

These two investigators approached Mr. Garcia at his home and flashed a badge.  They told Plaintiff Garcia several times that they were from the "State."  They asked Mr. Garcia if he was unhappy with his settlement from 2020 and whether they could see his settlement documents. They were pushy. They followed this up by explaining to him that they were with the State but could connect him with a private lawyer so he could sue the Firm.  They told Garcia several times that there was "money in this for you." These investigators' requests became increasingly aggressive and hostile. At some point, Defendants' agents demanded Mr. Garcia produce his medical records, and offered him money to hire a private lawyer to sue the Firm. Mr. Garcia ultimately decided to call the Firm and report the investigators' conduct.

Despite her best efforts in disguising the identities of those she was working for, investigator Jessica Santiago was caught on tape disclosing to Mr. Garcia that she was working for Defendant Marcy Croft at the law firm MJ Legal, P.A.

**Defendants Are Working Together in Service of One Ultimate Client: Jay-Z**

There is little question that all of the Defendants here are working in concert with each other for the benefit of their ultimate client, Jay-Z.

The law firm of Quinn Emanuel has for some time been closely affiliated with Jay-Z. Quinn Emanuel also has a long history of outrageous, sanctionable conduct and reputation to match.[6]  The Quinn partner in charge of the firm's representation of Jay-Z, Alex Spiro, is also no stranger to controversy or questions about his ethics.  Among other things, Spiro has been accused of flashing a badge (from his stint as a government attorney) for clout or to obtain entry into restricted locations,[7] and of interviewing victims of Harvey Weinstein while being employed by Weinstein's defense attorney – without disclosing that to the women who trusted him with the details of their cases.[8]

Quinn's (and Spiro's) outrageous and unethical behavior continues in this case.  When the Firm first filed this action and sought a temporary restraining order against Quinn Emanuel, Quinn Emanuel (through its counsel) flatly denied having any connection to or knowledge of the investigators that had so quickly inundated the Firm's client and employee community.[9]  But that was a complete and utter lie.  Mere *days* later, Spiro admitted in a filing in the New York action that Quinn *was in fact* behind the "investigation:" "Allegations by Plaintiff's counsel that routine investigative activities related to pending legal claims in other fora are "harassing" should be

---

[6] This reputation is even well-known to law school students seeking a job after graduation.  *See, e.g.,* https://www.top-law-schools.com/forums/viewtopic.php?f=23&t=309287&start=25 ("Quinn has the reputation of being a shop full of assholes who engage in ethically questionable and unnecessarily aggressive practice.").  Quinn Emanuel proudly boasts that it is the "most feared" law firm in the United States.  *See* https://www.quinnemanuel.com/the-firm/news-events/award-another-year-still-most-feared/#rootNodeId=1054&pageNumber=1&byNewsType=1749
[7] https://nypost.com/2018/06/25/harvey-weinstein-linked-lawyer-tried-to-use-badge-to-impress-women/
[8] "3 Women Who Had Encounters With Harvey Weinstein Question Lawyer's Motives," available at https://www.nytimes.com/2018/06/01/business/brafman-weinstein.html
[9] *See* Ex. M, Affidavit of David Fortney.

disregarded. **Plaintiff's counsel tried to prevent Quinn Emanuel from investigating Mr. Carter's claims of extortion by trying to enjoin the firm from contacting anyone related to the Buzbee law firm.**"[10]

Defendant Marcy Croft is an attorney in Jackson, Mississippi. Defendant MJ Legal is the law firm Ms. Croft purportedly owns. Ms. Croft advertises herself as a member of "Team Roc." Moreover, Ms. Croft advertises that she has become "actively involved with criminal justice reform and prison reform alongside RocNation's philanthropic arm, Team Roc." She further advertises herself as being involved in "numerous litigation actions pending on behalf of Team Roc, families, and hundreds of incarcerated men." Marcy Croft has worked with Roc Nation for years, alongside Quinn Emanuel's Alex Spiro. Croft and her firm MJ Legal's close connections with Defendants Roc Nation and Quinn Emanuel are further demonstrated in these public posts:

---

[10] *See* Shawn Carter's Motion to Deny Plaintiff's Request to Proceed Anonymously, filed in Case No. 24-cv-07975-AT (S.D.N.Y.), [Dkt. #38], at p. 17, fn. 1.







Defendant Lex Intelligence was also identified as being involved in this scheme by virtue of the fact that several phone numbers used to contact various parties described herein were from numbers registered to Lex Intelligence.  The investigators using those numbers were acting at the same time, in the same general manner, and for the same purpose as the other investigators in this case.  All of these Defendants have been conspiring with each other for the common end of causing harm to the Firm.

The behavior described above goes well beyond purported "due diligence" into a litigation opponent.  It is outrageous, despicable, harassing behavior that is clearly intended to besmirch the name and reputation of the Firm, start rumors regarding bogus "investigations" or business practices, to bother and harass persons associated with the Firm in order to apply pressure on Mr. Buzbee and the Firm, and to illegally drum up legal cases against the Firm for the same nefarious purposes.  It is beyond the bounds of decency and the law and it needs to end.

## V.
## CAUSES OF ACTION

### A. TORTIOUS INTERFERENCE WITH CONTRACT

Plaintiff incorporates the preceding paragraphs of this Petition as if set forth fully herein.

At all times relevant hereto, Plaintiff had contractual relationships with its current clients. Defendants were aware of Plaintiff's contractual relationships with its current clients.

By contacting Plaintiff's current clients and insinuating, among other things, that Plaintiff is the subject of ongoing fraud investigations, Defendants have sabotaged and are actively attempting to sabotage Plaintiff's contractual relationships, and to cause Plaintiff's clients to end their engagements with Plaintiff.

As a result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

Because Defendants' conduct was committed with actual malice, Plaintiff seeks exemplary damages against Defendants.

## B. TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

Plaintiff incorporates the preceding paragraphs of this Petition as if set forth fully herein.

Plaintiff's former employees and former clients often serve as referral sources for business to Plaintiff.

By contacting Plaintiff's former employees and former clients and insinuating, among other things, that Plaintiff is the subject of ongoing fraud investigations or that Plaintiff is the subject of other salacious rumors, and/or by being harassing and burdensome to former clients or former employees, and/or by attempting to solicit former employees and clients to file lawsuits against the Firm, Defendants are damaging Plaintiff's reputation and dissuading Plaintiff's referral sources from referring new work to Plaintiff.

Defendants' conduct is independently tortious due to the fact that it is defamatory and slanderous, by implying that Plaintiff is the subject of a fraud investigation or that Plaintiff is the subject of ongoing controversy.

As a proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

Because Defendants' conduct was committed with actual malice, Plaintiff seeks exemplary damages against Defendants.

## C. SOLICITATION AND BARRATRY (TEXAS PENAL CODE § 38.12)

Plaintiff incorporates the preceding paragraphs of this Petition as if set forth fully herein.

Defendants are attorneys or private investigators.

With the intent to obtain an economic benefit, Defendants solicited employment with

Plaintiff's former employees and/or former clients, specifically with regard to bringing lawsuits on those persons' behalf against Plaintiff.

Defendants' conduct was in violation of Texas Penal Code section 38.12.

As a proximate result of Defendants' conduct, Plaintiff suffered damages in an amount to be proven at trial.

### D.  <u>CIVIL CONSPIRACY – ALL DEFENDANTS</u>

Plaintiff incorporates the preceding paragraphs of this Petition as if set forth fully herein.

Defendants make up more than two persons who sought to accomplish a goal of committing barratry and soliciting clients to sue the Firm and/or tortiously interfering with the Firm's contracts and business relationships.  All Defendants had a meeting of the minds on this organized criminal conduct, and then took many unlawful acts to accomplish this criminal conduct. As a result, Plaintiff suffered damages in an amount to be proven at trial.

Because Defendants' conduct was committed with actual malice, Plaintiff seeks exemplary damages against Defendants.

### E.  <u>PUNITIVE DAMAGES</u>

Plaintiff incorporates the preceding paragraphs of this Petition as if set forth fully herein.

Defendants' conduct was committed with actual malice, and, as such, Plaintiff seeks exemplary damages against Defendants.

Moreover, because this involves the violation of a criminal statute, no damage caps are applicable to Plaintiff's damages.

As a proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

**VI.**
**DAMAGES**

Plaintiff incorporates the preceding paragraphs of this Petition as if set forth fully herein.

As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff suffered injury.

As a result of Defendants' acts, Plaintiff has suffered damage, including damage to its contractual relationships, reputational damage, and further damages more fully set forth below. Plaintiff seeks the following damages pursuant to Texas law:

   A.  Compensatory damages in an amount to be proven at trial;

   B.  Consequential and special damages in an amount to be proven at trial;

   C.  Exemplary damages;

   D.  Interest on damages (pre- and post-judgment) in accordance with law;

   E.  Costs of court;

   F.  Attorneys' fees;

   G.  Such other and further relief to which Plaintiff is entitled.

**VIII.**
**DEMAND FOR JURY**

Plaintiff respectfully demands a jury trial on those issues where appropriate.

**IX.**
**CONCLUSION AND PRAYER**

Upon trial of this matter, Plaintiff respectfully prays for judgment as follows:

   a.   The Court enter judgment in favor of Plaintiff for damages permitted by law;

b.      Such other relief, at law or in equity, to which Plaintiff may be justly

entitled.


Respectfully submitted,

## THE BUZBEE LAW FIRM

By: */s/ Anthony G. Buzbee*
Anthony G. Buzbee
State Bar No. 24001820
tbuzbee@txattorneys.com
David C. Fortney
State Bar No. 24068740
dfortney@txattorneys.com
JPMorgan Chase Tower
600 Travis Street, Suite 7500
Houston, Texas 77002
Tel: (713) 223-5393
Fax: (713) 223-5909
www.txattorneys.com

**ATTORNEYS FOR PLAINTIFF**


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been duly served on all known counsel of record pursuant to the Texas Rules of Civil Procedure on January 27, 2024.

*/s/ David C. Fortney*
David C. Fortney

Transcript between Gerardo Garcia and Jessica Santiago.

| :00 | PI | Do you have time today, so we can have an appointment, to talk and show you the papers, you can communicate with the lawyer? |
|---|---|---|
| :15 | Client | Yes. |
| :16 | PI | What time? |
| :17 | Client | Look, at 5pm? One thing, if I sign that contract, is there some money that you will pay me first? |
| :39 | PI | Depends on the lawyer, but what you will sign today, is only a contract to investigate. Giving permission to the lawyer to conduct an investigation into your case to see what happened and to recommend a separate lawyer more familiar with your kind of case. But she will not charge anything. And the separate lawyer also does not require any money. Only at the conclusion do they take out their fee, if they are able to recover the money you are entitled to. |
| 1:25 | Client | That lawyer is from the State or a private lawyer? |
| 1:30 | PI | It's a private lawyer, we are from the state. But it's a private lawyer that note what the Buzbee Law Firm was doing. For example last night, someone signed up with us and in his case Buzbee was depositing his checks in Buzbee's private account and not in a account for lawyers, and he was charging the interest and taking that money. And he was stealing the checks from insurance. And so he, didn't know that Buzbee was stealing. That was his case. Now I don't know much about your case but the lawyer you will speak with today she will explain, that she will open your case, see what happened with you. But your name appeared on the list of people that may have something unusual and she wants to investigate your case and then she will recommend someone more familiar in your kind of case to recover all that money. |
| 2:53 | Client | And they are from the state? |
| 2:57 | PI | The lawyer is from here, Texas and also has a license in New York. Us, the investigators are from the state but we are not lawyers. But the lawyer has her license here in Texas and also in New York. |
| 3:15 | Client | That class action is just for certain people who have had cases with the lawyer? |
| 3:30 | PI | Exactly with -that- lawyer. We have 70 people in the class action that had problems, because they are frauds – with that lawyer Buzbee. Last night the man who we spoke with, he has two cases because Buzbee was putting his checks in the private checking account, that a criminal case. But he also has a separate case, where he can recover the fees that Buzbee owes him. So he has two cases. We didn't know that |

Exhibit A

|     |        | until the lawyer last explained and told him, no you have two cases. One criminal and another to recover your money. Now we don't know about your case, because the lawyer first needs to open your case and investigate what happened with you. So it's possible you have two cases as well, depending on what he [Buzbee] did to you. |
| --- | --- | --- |
| 4:37 | Client | And so if I sign, there's money right? |
| 4:42 | PI | There's money that will be recovered, of course. The money that you are owed. And you will not need to go to court because there are lots of people in the class action. More than 70 people who have signed up with this lawyer. |
| 5:08 | Client | What's the process, to look at some documents first? Or do I need to go with a lawyer? |
| 5:13 | PI | No, no, no. She will be your lawyer. That's why we are asking for the documents that you have. If you don't have any, she can still do her search and she will read your case that you had with Buzbee and she will look into everything that happened. But it's better if you have documents too. |
| 5:37 | Client | No, well I lost all my documentation. This happened a long time ago, so I wouldn't have those documents now. But do I need to go to a lawyers office, or will you come to my house? |
| 5:59 | PI | I will send you a paper that explains where the lawyer is, it will explain everything in that paper. You can read it, then I can contact the lawyer, her name is Marcy Croft from MJ-Legal and she will explain more by telephone. But the document will explain what I have just told you know over the phone and you will have your copy, it's just an agreement so she can investigate more your case to see if there is something unusual, and if so she will recommend someone more familiar with your case. Because you know there are many lawyers, but she will recommend someone who is more known with this case, like from last night. |
| 6:55 | Client | Will you charge me anything? |
| 7:00 | PI | No, nothing. The lawyer who will have your case, yes of course like always. They always charge a fee. Normally the lawyers charge 30%. Whichever lawyer you go to they will charge you, yes. But the lawyer, she will not charge anything at first. She works with us in fraud cases and then she will recommend someone more familiar. Then at the conclusion of the case, they will charge their part and also pay you your part as well. |
| 7:41 | Client | Those papers can you just leave them at my house, or do you want me to go to the office? |
| 7:48 | PI | No, that's why I'm asking, what time you will be home, so we can show you the paper and explain, and we can speak with the lawyer |
| 8:05 | Client | So the agreement, I can see it? |

| 8:08 | PI | The agreement yes. |
|------|-----|---|
| 8:11 | Client | And so this is a class action, a lawsuit of many people? |
| 8:16 | PI | Exactly, we have like 70 people that are in this class action, and there will be more. You are on the list but we have other people too. Today I'm visiting with you, and with 3 more people who will sign up to be in the lawsuit. And it will increase daily. We have more pages with people. I don't know how many but there are many. And if there are more people in the class action, that is better for you, because that means you will collect something. |
| 8:51 | Client | What kind of percentage can I collect with this or what can i? |
| 8:58 | PI | That depends on your case because all the cases are different. The document I will show you today explains that it gives permission to open your case and to see what happened. But she will not charge anything for that. But then she will recommend someone familiar… |
| 9:32 | Client | Sorry to interrupt, the lawyer will be present today, or just you? |
| 9:35 | PI | Me and my partner but she is working now, but she told me we can contact her at any time. |
| 9:48 | Client | 5:30 is fine? |
| 9:49 | PI | Yes 5:30 is fine. |
| 9:55 | Client | Any change and we will call each other, true? And what is the name of the lawyer, pardon? |
| 10:00 | PI | Marcy Croft |
| 10:02 | Client | Okay. |
| 10:04 | PI | From MJ legal |
| 10:15 | Client | Okay…okay. so… |
| 10:18 | PI | I will give you a copy, you can read it good, and you can call her too with us present and she can explain it better. |
| 10:27 | Client | And what is your name? |
| 10:30 | PI | Me, my name is Jessica |
| 10:32 | Client | Jessica? Just Jessica? |
| 10:38 | PI | No, no, Jessica Santiago. |
| 10:40 | Client | Okay. Andale. So I will look at everything at 5:30 and we will be in contact. Very kind. Thank you |

| 10:51 | PI | Okay Geraldo. Thank you. Ciao. |

## AFFIDAVIT OF SKYLAR TAYLOR

This instrument was acknowledged before me by means of an interactive two-way audio and video communication on December 10, 2024 by Skylar Taylor. This notarial act was an online notarization with electronic signatures. Before me, the undersigned Notary, Skylar Taylor, personally came and appeared and, after being duly sworn, did state that:

1. My name is Skylar Taylor. I am an adult resident of the State of Louisiana, of sound mine, and capable in all respects of executing this Affidavit under oath.

2. The information contained in this Affidavit is made upon my personal knowledge and is true and correct.

3. Three men from the New York area visited my grandmother's home on multiple occasions showing up unannounced and demanding to speak with me. I did not know these men and had not solicited them.

4. When I spoke with these men, they stated they were investigators hired by an attorney to contact clients of the Buzbee Law Firm to join a class action against the Buzbee Law Firm. They refused to provide any further information on who they were, what investigation company they worked for, or what attorney hired them. Without knowing any of the details of my case, these men attempted to convince me to file a lawsuit against my attorneys at The Buzbee Law Firm.

5. These men offered me money to sign on as a client with them. These men stated that they and/or the attorney that hired them paid a former client of the Buzbee Law Firm $1,000 to sign on with them as a client and sue the Buzbee Law Firm.

6. The above and foregoing is true and correct to the best of my knowledge, information, and belief.

Signed by:

_Skylar_

SKYLAR TAYLOR

**Notary Seal**

ALIZA NOEMI TRIGO
Notary Public, State of Texas
ID# 129727161
My Commission Expires
May 21, 2027

**Digital Certificate**

_Aliza Noemi Trigo_

1 of 1

Exhibit B

## AFFIDAVIT OF SHANNON CHAMPAGNE

This instrument was acknowledged before me by means of an interactive two-way audio and video communication on December 10, 2024 by Shannon Champagne. This notarial act was an online notarization with electronic signatures. Before me, the undersigned Notary, Shannon Champagne, personally came and appeared and, after being duly sworn, did state that:

1. My name is Shannon Champagne. I am an adult resident of the State of Louisiana, of sound mine, and capable in all respects of executing this Affidavit under oath.

2. The information contained in this Affidavit is made upon my personal knowledge and is true and correct.

3. Three men from the New York area visited my home on multiple occasions showing up unannounced and demanding to speak with me. I did not know these men and had not solicited them.

4. When I spoke with these men, they stated they were investigators hired by an attorney to contact clients of the Buzbee Law Firm to join a class action against the Buzbee Law Firm. They refused to provide any further information on who they were, what investigation company they worked for, or what attorney hired them. Without knowing any of the details of my case, these men attempted to convince me to file a lawsuit against my attorneys at The Buzbee Law Firm.

5. These men offered me money to sign on as a client with them. Specifically, they offered me $10,000 in exchange for signing with them as a client.

6. The above and foregoing is true and correct to the best of my knowledge, information, and belief.

SHANNON CHAMPAGNE

**Notary Seal**

ALIZA NOEMI TRIGO
Notary Public, State of Texas
ID# 129727161
My Commission Expires
May 21, 2027

**Digital Certificate**

Exhibit C

1 of 1

IMG_7861

TRANSCRIPT OF AUDIO-RECORDED TELEPHONIC CONVERSATION


AUDIO FILE: IMG_7861


Transcribed By:  LAURA C. MONTEITH

<span style="color:red">Exhibit D</span>

Page 2

```
 1
 2                                          INDEX
 3
 4                                          PAGE
 5  Recording                                 3
 6  Certificate of Transcriptionist          7
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1                    R E C O R D I N G
 2                          * * *
 3           SPEAKER 1:  I heard you're looking for me?
 4           SPEAKER 3:  Hello.  Thank you so much for calling me
 5  back.  Yes, absolutely.  I'm actually in the car, and you're on
 6  speaker.  I have -- my partner is with me.  We wanted to
 7  actually talk to you regarding the case that you have.
 8           I know that you got hurt on the boat.  And there's
 9  something called the Jones Act.  I don't know whether you're
10  familiar with that.  It would take two minutes of your time to
11  answer my questions, and it might be very beneficial for you --
12  for you to speak with -- let me ask you something else.
13           Is your case still active?
14           SPEAKER 1:  I prefer not to answer questions, but I'll
15  hear you out.
16           SPEAKER 2:  Okay.  You -- you -- you don't need -- you
17  don't need to answer that question.
18           Let me ask -- let me --
19           SPEAKER 3:  David, good morning.  Hey, my name is Joe.
20  If I may -- can -- is there a place where we could meet up?  Any
21  place you'd like where -- where we can sit down and talk?  You
22  can listen to it, and if you don't like what we have to say, you
23  can say, "I don't want to cooperate," and then walk away, and
24  that's it.  No harm.  No foul.
25           SPEAKER 1:  No, I don't -- I don't do meet-ups with
```

Page 4

```
 1  nobody that I don't know, especially from out of state.
 2           SPEAKER 3:  No worries.  If you don't feel comfortable
 3  talking to us, that's fine.
 4           SPEAKER 1:  That's -- I can talk to you over the
 5  phone.  I can hear what you got to say over the phone.
 6           SPEAKER 3:  Okay.  So -- so here's -- here's the
 7  scenario:  When -- when you were out with -- with your
 8  lawsuit -- right? -- were you still getting paid from the
 9  company that you got hurt from?
10           SPEAKER 1:  Like I said, I don't answer questions,
11  but --
12           SPEAKER 3:  All right.  So --
13           SPEAKER 2:  Joe, (indiscernible.)
14           SPEAKER 3:  Yeah.
15           SPEAKER 2:  We can do conference.
16           SPEAKER 3:  I know, but --
17           SPEAKER 1:  Ya'll can --
18           SPEAKER 3:  This is (indiscernible)?
19           SPEAKER 2:  (Indiscernible.)
20           SPEAKER 3:  All right.  So I'm going to give you a
21  scenario.  We went to guy yesterday, who, same as you, got hurt
22  on a boat.  And what happened was, his lawyer, due to this act,
23  this Jones Act, he was supposed to get paid -- right? -- from
24  the company.  And the lawyer said, "No, no.  Don't pay him.  Pay
25  me, and I'll pay him."  So that's the arrangement he had with
```

Page 5

```
 1  the company.  But the thing is, though, he never paid this kid.
 2  Okay?
 3           On top of that, he ended up getting, like, something
 4  like 42 percent of the inquiry.  So this guy should have gotten
 5  a million dollars.  He ended up getting -- how much did he get?
 6           SPEAKER 2:  $80,000.
 7           SPEAKER 3:  At the end of the day, he got $80,000
 8  for -- and he only has three slipped discs -- I mean three discs
 9  that are normal.  Everything else is messed up in his back.
10           So there's a few things that happened there.  Okay?
11           SPEAKER 1:  Uh-huh.
12           SPEAKER 3:  We need you to cooperate with us and start
13  talking to us about what had happened in his story.  And he was
14  given a stipend.  Because there's going to be -- and -- and all
15  I can tell you is -- if I -- if I may ask, who is your lawyer?
16           SPEAKER 1:  Wait.  What's that?
17           SPEAKER 3:  Who is your lawyer?
18           SPEAKER 1:  Like I said, I don't answer questions, but
19  I'll hear what you got to say.
20           SPEAKER 3:  Okay.  Okay.  So -- so he -- he just
21  happened to have this lawyer, his -- his last name is Buzbee.
22  And -- and Buzbee -- apparently there's a couple of lawsuits
23  coming down where he was allegedly taking money off the top and
24  not paying his clients.
25           SPEAKER 1:  Okay.
```

IMG_7861

Page 6

1    SPEAKER 3:  In a couple of days or maybe by next week,
2  anyone Googling Buzbee and his company -- his practice -- you're
3  going to see some of these lawyers are in lit -- are going to be
4  going into litigation.  Okay?
5      What we're trying to do is, we are trying put this
6  thing together for the company that we're working for at this --
7  and if -- if you have a case, we could get you paid, and money
8  could get -- you could get money right -- soon, you know?
9      We gave this kid 1,000 bucks to start yesterday just
10  to get him on the right path.  Yeah.  So --
11    SPEAKER 1:  Okay.  Let me -- let me ask you a
12  question.
13    SPEAKER 3:  At the end of the day -- I appreciate your
14  question.  Just hold that thought for a second.  At the end of
15  the day, this is going to go through the courts, Buzbee is
16  getting sued, and eventually people are going to get paid out.
17  Now, it's up to you if you want to be part of --
18          (End of audio recording.)
19              * * *
20
21
22
23
24
25

Page 7

1          CERTIFICATE OF TRANSCRIBER
2
3
4      I, LAURA C. MONTEITH, do hereby certify that I was
5  authorized to transcribe the foregoing recorded proceeding; and
6  that the transcript is a true and accurate transcription, to the
7  best of my ability, taken while listening to the provided
8  recording.
9
10      I FURTHER CERTIFY that I am not of counsel or attorney
11  for either or any of the parties to said proceedings, nor in any
12  way interested in the events of this cause, and that I am not
13  related to any of the parties thereto.
14
15
16  Dated this 9TH day of DECEMBER 2024
17
18
19  _____
20  LAURA C. MONTEITH
21
22
23
24
25

**$**

**$80,000**
  5:6,7

**1**

**1**
  3:3,14,25
  4:4,10,17
  5:11,16,18,
  25 6:11
**1,000**
  6:9

**2**

**2**
  3:4,16 4:13,
  15,19 5:6
**2024**
  7:16

**3**

**3**
  3:19 4:2,6,
  12,14,16,18,
  20 5:7,12,
  17,20 6:1,13

**4**

**42**
  5:4

**9**

**9TH**
  7:16

**A**

**ability**
  7:7

**absolutely**
  3:5
**accurate**
  7:6
**act**
  3:9 4:22,23
**active**
  3:13
**allegedly**
  5:23
**apparently**
  5:22
**arrangement**
  4:25
**attorney**
  7:10
**audio**
  6:18
**authorized**
  7:5

**B**

**back**
  3:5 5:9
**beneficial**
  3:11
**boat**
  3:8 4:22
**bucks**
  6:9
**Buzbee**
  5:21,22 6:2,
  15

**C**

**called**
  3:9
**calling**
  3:4
**car**
  3:5
**case**
  3:7,13 6:7

**CERTIFICATE**
  7:1
**certify**
  7:4,10
**clients**
  5:24
**comfortable**
  4:2
**company**
  4:9,24 5:1
  6:2,6
**conference**
  4:15
**cooperate**
  3:23 5:12
**counsel**
  7:10
**couple**
  5:22 6:1
**courts**
  6:15

**D**

**Dated**
  7:16
**David**
  3:19
**day**
  5:7 6:13,15
  7:16
**days**
  6:1
**DECEMBER**
  7:16
**discs**
  5:8
**dollars**
  5:5
**due**
  4:22

**E**

**end**
  5:7 6:13,14,

  18
**ended**
  5:3,5
**events**
  7:12
**eventually**
  6:16

**F**

**familiar**
  3:10
**feel**
  4:2
**fine**
  4:3
**foregoing**
  7:5
**foul**
  3:24

**G**

**gave**
  6:9
**give**
  4:20
**good**
  3:19
**Googling**
  6:2
**guy**
  4:21 5:4

**H**

**happened**
  4:22 5:10,
  13,21
**harm**
  3:24
**hear**
  3:15 4:5
  5:19
**heard**
  3:3

Hey
   3:19
hold
   6:14
hurt
   3:8  4:9,21

I

indiscernible
   4:13,18,19
inquiry
   5:4
interested
   7:12

J

Joe
   3:19  4:13
Jones
   3:9  4:23

K

kid
   5:1  6:9

L

LAURA
   7:4,20
lawsuit
   4:8
lawsuits
   5:22
lawyer
   4:22,24
   5:15,17,21
lawyers
   6:3
listen
   3:22
listening
   7:7

lit
   6:3
litigation
   6:4

M

meet
   3:20
meet-ups
   3:25
messed
   5:9
million
   5:5
minutes
   3:10
money
   5:23  6:7,8
MONTEITH
   7:4,20
morning
   3:19

N

normal
   5:9

P

paid
   4:8,23  5:1
   6:7,16
part
   6:17
parties
   7:11,13
partner
   3:6
path
   6:10
pay
   4:24,25
paying
   5:24

people
   6:16
percent
   5:4
phone
   4:5
place
   3:20,21
practice
   6:2
prefer
   3:14
proceeding
   7:5
proceedings
   7:11
provided
   7:7
put
   6:5

Q

question
   3:17  6:12,14
questions
   3:11,14  4:10
   5:18

R

recorded
   7:5
recording
   6:18  7:8
related
   7:13

S

scenario
   4:7,21
sit
   3:21
slipped
   5:8

speak
   3:12
speaker
   3:3,4,6,14,
   16,19,25
   4:2,4,6,10,
   12,13,14,15,
   16,17,18,19,
   20 5:6,7,11,
   12,16,17,18,
   20,25 6:1,
   11,13
start
   5:12 6:9
state
   4:1
stipend
   5:14
story
   5:13
sued
   6:16
supposed
   4:23

T

taking
   5:23
talk
   3:7,21 4:4
talking
   4:3 5:13
thereto
   7:13
thing
   5:1 6:6
things
   5:10
thought
   6:14
time
   3:10
top
   5:3,23
transcribe
   7:5

**TRANSCRIBER**
  7:1
**transcript**
  7:6
**transcription**
  7:6
**true**
  7:6

---

### U

**Uh-huh**
  5:11

---

### W

**Wait**
  5:16
**walk**
  3:23
**wanted**
  3:6
**week**
  6:1
**working**
  6:6
**worries**
  4:2

---

### Y

**Ya'll**
  4:17
**yesterday**
  4:21 6:9

## <u>AFFIDAVIT OF DESEREE MCINTOSH</u>

This instrument was acknowledged before me by means of an interactive two-way audio and video communication on December 3, 2024 by Deseree McIntosh. This notarial act was an online notarization with electronic signatures. Before me, the undersigned Notary, Deseree McIntosh personally came and appeared and, after being duly sworn, did state that:

1. My name is Deseree McIntosh. I am an adult resident of the State of Louisiana, of sound mine, and capable in all respects of executing this Affidavit under oath.

2. The information contained in this Affidavit is made upon my personal knowledge and is true and correct.

3. I was a former client of The Buzbee Law Firm and my spouse, Shannon Champagne, is a current client. On December 2, 2024, two men came to my house harassing me for information about the Buzbee Law Firm. Specifically, these men asked if they could speak to Shannon Champagne and claimed to be investigating The Buzbee Law Firm for fraud.

4. I was uncomfortable with these men showing up to our house unannounced.

5. The above and foregoing is true and correct to the best of my knowledge, information, and belief.

Signed by:

*Deseree McIntosh*

68A147B2C76048F...

DESEREE MCINTOSH

**Notary Seal**

ALIZA NOEMI TRIGO
Notary Public, State of Texas
ID# 129727161
My Commission Expires
May 21, 2027

NOTARY PUBLIC
STATE OF TEXAS

**Digital Certificate**

Exhibit E

## AFFIDAVIT OF TORI CONKLIN

This instrument was acknowledged before me by means of an interactive two-way audio and video communication on December 3, 2024 by Tori Conklin. This notarial act was an online notarization with electronic signatures.

1. My name is Tori Conklin. I am an adult resident of the State of Louisiana, of sound mine, and capable in all respects of executing this Affidavit under oath.

2. The information contained in this Affidavit is made upon my personal knowledge and is true and correct.

3. My husband Robert Conklin is a former client of The Buzbee Law Firm. On November 30, 2024, two men came to my house harassing me and my husband for information about the Buzbee Law Firm. Specifically, these men claimed to be investigating The Buzbee Law Firm for fraud and asked prying questions about how we found The Buzbee Law Firm, whether we were coerced into having the Buzbee Law Firm represent us, whether we had any problems with their representation, what compensation we received from the firm, and whether we had received Venmo funds from the firm.

4. We were uncomfortable with these men showing up to our house unannounced and asking such prying questions.

5. The above and foregoing is true and correct to the best of my knowledge, information, and belief.

_____
TORI CONKLIN

**Notary Seal**

ALIZA NOEMI TRIGO
Notary Public, State of Texas
ID# 129727161
My Commission Expires
May 21, 2027

**Digital Certificate**

1 of 1

Exhibit F

## AFFIDAVIT OF ANGELIQUE TOWNSEND

This instrument was acknowledged before me by means of an interactive two-way audio and video communication on December 3, 2024 by Angelique Townsend. This notarial act was an online notarization with electronic signatures. Before me, the undersigned Notary, Angelique Townsend, personally came and appeared and, after being duly sworn, did state that:

1. My name is Angelique Townsend. I am an adult resident of the State of Louisiana, of sound mine, and capable in all respects of executing this Affidavit under oath.

2. The information contained in this Affidavit is made upon my personal knowledge and is true and correct.

3. I was a previously a girlfriend of a client of The Buzbee Law Firm, Cody Matherne. On November 30, 2024 at approximately 8:00 p.m., one man and a woman came to my house harassing me, threatening me, and demanding information about clients of the Buzbee Law Firm. Specifically, these "investigators" pretended to be trying to serve a warrant upon me for an alleged crime of fraud and identity theft in New York that I had nothing to do with. I later found out that the names of the alleged co-conspirators in this made-up crime who these "investigators" asked me about were also clients of The Buzbee Law Firm and these "investigators" were really trying to pry information from me about them.

4. I believe that the purpose of this visit was to harass and intimidate me and my family. This visit scared me and my family.

5. The above and foregoing is true and correct to the best of my knowledge, information, and belief.



DocuSigned by:

*Angelique Townsend*

B693B04BDD5441B...

ANGELIQUE TOWNSEND

**Notary Seal**                                        **Digital Certificate**

ALIZA NOEMI TRIGO
Notary Public, State of Texas
ID# 129727161
My Commission Expires
May 21, 2027

Exhibit G

## AFFIDAVIT OF LAURA DE LA CRUZ

| | | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | |
| **COUNTY OF HARRIS** | § | |

Before me, the undersigned notary, on this day personally appeared Laura De La Cruz, a person whose identity is known to me. After I administered an oath to the affiant, she testified as follows:

1. "My name is Laura De La Cruz, I am over 21 years old, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I reside in Houston, Texas and am an attorney at Schechter, Shaffer & Harris LLP in Houston, Texas, with a business address of 3200 Travis Street, Third Floor, Houston, Texas 77006.

3. I am licensed to practice law in the states of Texas and Louisiana.

4. I am currently co-counsel with The Buzbee Law Firm on a case pending in Washington.

5. I formerly worked as a receptionist and paralegal at the Buzbee Law Firm from approximately December 2008 to August 2010.

6. On November 25, 2024, at 1:09 PM, I received a voicemail on my cell phone from a woman stating she was doing "research" on The Buzbee Law Firm. The caller identified herself as "Chrissy", and the call came in from phone number: 518-662-0616.

7. A few minutes later, I returned her call from my cell phone. The reception quality was poor on my end. I offered to call "Chrissy" back from my office line, which I promptly did. When she answered, Chrissy explained she was doing "opposition research" on Tony Buzbee and The Buzbee Law Firm. I asked on whose behalf she was doing this research. Chrissy said she did not know the identity of the ultimate client.

8. I spoke with this woman for a few minutes. She knew I had worked for The Buzbee Law Firm. I confirmed that I had worked there years ago, beginning as a receptionist and then as a paralegal. She asked me about the conditions at The Buzbee Law Firm, whether I saw any poor treatment of employees or clients, whether I saw anything out of the ordinary for a law firm, and the reason why I stopped working for The Buzbee Law Firm. She stated she had been contacting several employees of The Buzbee Law Firm. She also asked if I had read the recent allegations against Tony Buzbee. I asked what she was referring to, and she mentioned extortion and his treatment of clients. I replied that I was unaware of any such allegations. She kept probing me about what I witnessed as an employee of The

1

<span style="color:red">Exhibit H</span>

Buzbee Law Firm and was quite suggestive in her questioning by feeding me certain phrases, such as discrimination, the treatment of women, and handling of clients. She asked whether I had experienced or witnessed discriminatory practices by the Firm. She was pushy and was pressing hard for some sort of negative information about Tony Buzbee and/or The Buzbee Law Firm. She quickly ended our conversation when it became clear I had not witnessed anything damaging that would assist in her research.

9. My conversation with the investigator left me with no doubt that she was searching for persons with either potential claims against The Buzbee Law Firm or who might have disparaging things to say about Tony Buzbee and/or the Buzbee Law Firm."

Further affiant sayeth not.

_____
Laura De La Cruz

_____
December 4, 2024
Date

**SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, on this the 4th day of December 2024, to certify which witness my hand and seal of office.**

CRISTINA DE LA CRUZ
Notary ID #131788779
My Commission Expires
November 7, 2026

_____
Notary Public, State of Texas

My Comm. Exp.: 11/7/26

2

CAUSE NO. _____

| | | |
|---|---|---|
| THE BUZBEE LAW FIRM, | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| QUINN EMANUEL URQUHART & | § | |
| SULLIVAN, LLP, and LEX | § | |
| INTELLIGENCE LLC, | § | |
| | § | |
| | § | |
| *Defendants.* | § | _____ DISTRICT COURT |

## <u>DECLARATION OF FERNANDO R. GARZA</u>

I, Fernando R. Garza, declare and state as follows, in accordance with section 132.001(a) of the Texas Civil Practice and Remedies Code:

1.     My name is Fernando R. Garza. I am a licensed attorney in the State of Texas. I was formerly employed at the Buzbee Law Firm as an associate. Several years ago, I parted ways to open my own firm.

2.     On or around November 25, 2024, I saw an Instagram post made by Tony Buzbee concerning a young female investigator employed by Lex Intelligence. I learned from this post that this woman and her associates were attempting to solicit former employees of the Buzbee Law Firm related to alleged wrongful termination and harassment related cases.

3.     On November 26, 2024, I received a call from who I believe is the same investigator Mr. Buzbee posted about the day prior. She identified herself as an employee of Lex Intelligence and that she was conducting investigations on the Buzbee Law Firm.  The caller called from the following telephone number: (332) 255-8548. During the phone call, she informed me she was hired by New York counsel to investigate potential claims related to Buzbee Law Firm's former employees. It was

<span style="color:red">*Exhibit I*</span>

clear her unsolicited communication with me was for the purposes of soliciting a wrongful termination or harassment claim related to my employment at the Buzbee Law Firm.

4.      I asked her to discontinue her shake down efforts against Tony Buzbee and the Buzbee Law Firm and ended the call.

I swear under penalty of perjury that the foregoing is true and correct. My office address is 5317 S. McColl Road, Edinburg, Texas, 78539. My date of birth is September 13, 1989.

/s/ *Fernando R. Garza*
Fernando R. Garza

STATE OF CALIFORNIA          §
                             §
COUNTY OF LOS ANGELES        §

## <u>SWORN AFFIDAVIT OF ANNA FAUBUS</u>

BEFORE ME, the undersigned authority, personally appeared, Anna Faubus, who being duly sworn by me, upon her oath stated as follows:

1. My name is Anna E. Faubus.

2. I am over the age of twenty-one (21) and am fully competent to execute this affidavit. All of the facts stated herein are within my personal knowledge and are true and correct.

3. I work as a legal intern for the Buzbee Law Firm.

4. I received a telephone on November 27, 2024 at 10:21 a.m. from a female caller who did not identify herself. The call came from a New York, NY phone number; (917) 730-9068.

5. The unknown caller left a voicemail message stating that she was conducting "due diligence on a law firm that [I] used to work at" and requested I give her a call back at the New York, New York number stated above and wanted to chat.

6. She called me back and wanted me to share my experiences about the Buzbee Law Firm.

7. She was not interested in any positive comments about the Buzbee Law Firm but wanted to know if there was anything controversial that happened while I was working at the firm.

8. I am related to a lawyer who works at the Buzbee Law Firm.

FURTHER, AFFIANT SAYETH NAUGHT.

Exhibit I

Docusign Envelope ID: 34C2FA55-452F-46C8-917F-328D13B852FB



DocuSigned by:

27CFD8A41F06467...    _____

Anna E Faubus

Fourth

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, on the _____ day of December, 2024.

ALIZA NOEMI TRIGO
Notary Public, State of Texas
ID# 129727161
My Commission Expires
May 21, 2027

_____
Notary in and for the State of Texas

My Commission expires: __05/21/2027__

STATE OF TEXAS        §
                                      §
COUNTY OF HARRIS    §

## SWORN AFFIDAVIT OF ELIZABETH ANNE BUZBEE

BEFORE ME, the undersigned authority, personally appeared, Elizabeth Anne Buzbee, who being duly sworn by me, upon her oath stated as follows:

1. My name is Elizabeth Anne Buzbee.

2. I am over the age of twenty-one (21) and am fully competent to execute this affidavit. All of the facts stated herein are within my personal knowledge and are true and correct.

3. I am Tony Buzbee's daughter.

4. I received a telephone on November 27, 2024 at 9:56 a.m. from an unknown caller. This caller did not identify herself, but called from a New York, New York phone number; (332) 255-8548.

5. The unknown caller left a voicemail message stating that she was conducting "due diligence" on The Buzbee Law Firm and requested I give her a call back at the New York, New York number stated above.

**Exhibit K**

FURTHER, AFFIANT SAYETH NAUGHT.



Signed by:

Elizabeth Anne Buzbee

Elizabeth Anne Buzbee

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, on the 4th _____ day of December, 2024, by Elizabeth Anne Buzbee. This notarial act was an online notarization with electronic signatures.



ALIZA NOEMI TRIGO
Notary Public, State of Texas
ID# 129727161
My Commission Expires
May 21, 2027

_____
Notary in and for the State of Texas

My Commission expires: 05/21/2027

## AFFIDAVIT OF MAURICIO GUEVARA

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF HARRIS** | § |

Before me, the undersigned notary, on this day personally appeared Mauricio Guevara, a person whose identity is known to me. After I administered an oath to the affiant, he testified as follows:

1. "My name is Mauricio Guevara, I am over 21 years old, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am an attorney at the Buzbee Law Firm in Houston, Texas.

3. I reside at 4108 Childress Street in Houston, Texas.

4. On December 2, 2024 at 9:41 AM an unknown man stood in front of my home and took pictures with a portable electronic device.

5. On December 2, 2024 at 12:16 PM a separate unknown man lurked in front of my house with a professional grade single-lens reflex camera and tripod. Then lightly tapped on my front door. The same man then lurked for a couple of minutes on my front patio and made a telephone call.

6. On December 3, 2024 I showed my neighbor the surveillance videos of the two unknown men and inquired if they were perhaps contractors that she hired. After that conversation with my neighbor I understood that the two men were not her hired contractors.

7. On December 3, 2024 I reviewed separate surveillance video of two men in front of the home of Robert Conklin. Mr. Conklin is a former client of the Buzbee Law Firm. It is my understanding that the two men were attempting to solicit Mr. Conklin for a claim against the Buzbee Law Firm.

8. After reviewing the surveillance videos from both my home and Mr. Conklin's home, it appears to me that the two men in front of Robert Conklin's home are the same two men in front of my home.

1

Exhibit L

Further affiant sayeth not.

_Mauricio Guevara_
Mauricio Guevara

December 3, 2024
Date

**SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, on this the _3rd_ day of _December_ 2024, to certify which witness my hand and seal of office.**

Joanna Ferrara-Nava
My Commission Expires
4/3/2027
Notary ID 131958318

Notary Public, State of Texas

My Comm. Exp.: 4/3/27

2

## AFFIDAVIT OF DAVID FORTNEY

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF HARRIS** | § |

Before me, the undersigned notary, on this day personally appeared David Fortney, a person whose identity is known to me. After I administered an oath to the affiant, he testified as follows:

1. "My name is David Fortney, I am over 21 years old, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am an attorney at The Buzbee Law Firm (the "Firm") in Houston, Texas.

3. On Friday, December 6, 2024, at 1:30 p.m., I appeared in Harris County District Court on behalf of the Firm for a hearing on the Firm's application for a temporary restraining order against Quinn Emanuel Urquhart & Sullivan, LLP.

4. Among other things, the Firm sought to restrain and enjoin Quinn Emanuel, along with what the Firm alleged were private investigators retained by Quinn Emanuel, from contacting the Firm's current and former clients and employees in connection with efforts to have those clients or employees file lawsuits against the Firm.

5. In response papers, Quinn Emanuel's counsel claimed that there was no evidence that the investigators were hired by Quinn Emanuel.

6. At the TRO hearing, Robert Ford of Bradley Arant Boult Cummings LLP, as counsel for Quinn Emanuel and as an officer of the court, represented to the presiding judge that (1) he had contacted each attorney at Quinn Emanuel involving in any matters connected to or involving the Firm, and (2) that each of those attorneys had denied that they or Quinn Emanuel had retained the investigators.

7. Attorney Ford's representation to the Court was a primary factor in the Court's denial of the temporary restraining order sought by the Firm.

Further affiant sayeth not.

_____
David Fortney

January 3, 2025_____

1

Exhibit M

**SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, on this the**

 3rd  **day of** January  **2025, to certify which witness my hand and seal of office.**



_____
Notary Public, State of Texas


My Comm. Exp.: __May 21, 2027_____

2

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2024-84902          **CURRENT COURT:** 11th Judicial District

**Name(s) of Documents to be served:** Plaintiff's First Amended Petition

**FILE DATE:** 1/27/2025          Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to**: Christina Siess

Address of Service: One Commerce Plaza, 99 Washington Avenue

City, State & Zip: Albany, New York 12231

Agent (if applicable) _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED**: (Check the proper Box)

[X] **Citation**     [ ] **Citation by Posting**     [ ] **Citation by Publication**     [ ] **Citations Rule 106 Service**

[ ] **Citation Scire Facias**     **Newspaper** _____

[ ] **Temporary Restraining Order**     [ ] **Precept**     [ ] **Notice**

[ ] **Protective Order**

[ ] **Secretary of State Citation ($12.00)**     [ ] **Capias** (not by E-Issuance)     [ ] **Attachment** (not by E-Issuance)

[ ] **Certiorari**     [ ] **Highway Commission/Texas Department of Transportation ($12.00)**

[ ] **Commissioner of Insurance ($12.00)**     [ ] **Hague Convention ($16.00)**     [ ] **Garnishment**

[ ] **Habeas Corpus** (not by E-Issuance)     [ ] **Injunction**     [ ] **Sequestration**

[ ] **Subpoena**

[ ] **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
[ ] **ATTORNEY PICK-UP (phone)** _____     [X] **E-Issuance by District Clerk**
[ ] **MAIL to attorney   at:** _____          **(No Service Copy Fees Charged)**
[ ] **CONSTABLE**          *Note*: The email registered with EfileTexas.gov must be
[ ] **CERTIFIED MAIL by CONSTABLE**          used to retrieve the E-issuance Service Documents.
[ ] **CERTIFIED MAIL by DISTRICT CLERK**          Visit www.hcdistrictclerk.com for more instructions.

[ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____     Phone: _____
[ ] **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Anthony Buzbee     Bar # or ID  24001820

Mailing Address: 600 Travis, Suite 7500, Houston, Texas 77002

Phone Number: (713) 223-5393

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2024-84902          **CURRENT COURT:** 11th Judicial District

**Name(s) of Documents to be served:** Plaintiff's First Amended Petition

**FILE DATE:** 1/27/2025          Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Jessica Santiago

Address of Service: Wherever she may be found

City, State & Zip:

Agent (if applicable)

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

[X] **Citation**    [ ] **Citation by Posting**    [ ] **Citation by Publication**    [ ] **Citations Rule 106 Service**

[ ] **Citation Scire Facias**    Newspaper_____

[ ] **Temporary Restraining Order**    [ ] **Precept**    [ ] **Notice**

[ ] **Protective Order**

[ ] **Secretary of State Citation ($12.00)**    [ ] **Capias** (not by E-Issuance)    [ ] **Attachment** (not by E-Issuance)

[ ] **Certiorari**    [ ] **Highway Commission/Texas Department of Transportation ($12.00)**

[ ] **Commissioner of Insurance ($12.00)**    [ ] **Hague Convention ($16.00)**    [ ] **Garnishment**

[ ] **Habeas Corpus** (not by E-Issuance)    [ ] **Injunction**    [ ] **Sequestration**

[ ] **Subpoena**

[ ] **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
[ ] **ATTORNEY PICK-UP (phone)** _____    [X] **E-Issuance by District Clerk**
[ ] **MAIL to attorney   at:** _____    **(No Service Copy Fees Charged)**
[ ] **CONSTABLE**    *Note*: The email registered with EfileTexas.gov must be
[ ] **CERTIFIED MAIL by CONSTABLE**    used to retrieve the E-issuance Service Documents.
[ ] **CERTIFIED MAIL by DISTRICT CLERK**    Visit www.hcdistrictclerk.com for more instructions.

[ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____    Phone: _____
[ ] **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Anthony Buzbee    Bar # or ID 24001820

Mailing Address: 600 Travis, Suite 7500, Houston, Texas 77002

Phone Number: (713) 223-5393

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2024-84902          **CURRENT COURT:** 11th Judicial District

**Name(s) of Documents to be served:** Plaintiff's First Amended Petition

**FILE DATE:** 1/27/2025          Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Lex Intelligence LLC

Address of Service: One Commerce Plaza, 99 Washington Avenue

City, State & Zip: Albany, New York 12231

Agent (if applicable)

**TYPE OF SERVICE/PROCESS TO BE ISSUED**: (Check the proper Box)

| | | | |
|---|---|---|---|
| [X] **Citation** | [ ] **Citation by Posting** | [ ] **Citation by Publication** | [ ] **Citations Rule 106 Service** |

[ ] **Citation Scire Facias**     Newspaper_____

[ ] **Temporary Restraining Order**     [ ] **Precept**     [ ] **Notice**

[ ] **Protective Order**

[ ] **Secretary of State Citation ($12.00)**     [ ] **Capias** (not by E-Issuance)     [ ] **Attachment** (not by E-Issuance)

[ ] **Certiorari**     [ ] **Highway Commission/Texas Department of Transportation ($12.00)**

[ ] **Commissioner of Insurance ($12.00)**     [ ] **Hague Convention ($16.00)**     [ ] **Garnishment**

[ ] **Habeas Corpus** (not by E-Issuance)     [ ] **Injunction**     [ ] **Sequestration**

[ ] **Subpoena**

[ ] **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
[ ] **ATTORNEY PICK-UP (phone)** _____     [X] **E-Issuance by District Clerk**
[ ] **MAIL to attorney   at:** _____          **(No Service Copy Fees Charged)**
[ ] **CONSTABLE**                                    *Note*: The email registered with EfileTexas.gov must be
[ ] **CERTIFIED MAIL by CONSTABLE**                  used to retrieve the E-issuance Service Documents.
[ ] **CERTIFIED MAIL by DISTRICT CLERK**             Visit www.hcdistrictclerk.com for more instructions.

[ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____     Phone: _____
[ ] **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Anthony Buzbee     Bar # or ID  24001820

Mailing Address: 600 Travis, Suite 7500, Houston, Texas 77002

Phone Number: (713) 223-5393

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:**  2024-84902                **CURRENT COURT:**  11th Judicial District

**Name(s) of Documents to be served:**  Plaintiff's First Amended Petition

**FILE DATE:**  1/27/2025          Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to**:  Marcy Bryan Croft

Address of Service:   1501 Jacksonian Plaza 12159

City, State & Zip:  Jackson, Mississippi 39211

Agent (if applicable)

**TYPE OF SERVICE/PROCESS TO BE ISSUED**: (Check the proper Box)

[X] **Citation**    [ ] **Citation by Posting**    [ ] **Citation by Publication**    [ ] **Citations Rule 106 Service**

[ ] **Citation Scire Facias**    **Newspaper**

[ ] **Temporary Restraining Order**    [ ] **Precept**    [ ] **Notice**

[ ] **Protective Order**

[ ] **Secretary of State Citation ($12.00)**    [ ] **Capias** (not by E-Issuance)    [ ] **Attachment** (not by E-Issuance)

[ ] **Certiorari**    [ ] **Highway Commission/Texas Department of Transportation ($12.00)**

[ ] **Commissioner of Insurance ($12.00)**    [ ] **Hague Convention ($16.00)**    [ ] **Garnishment**

[ ] **Habeas Corpus** (not by E-Issuance)    [ ] **Injunction**    [ ] **Sequestration**

[ ] **Subpoena**

[ ] **Other (Please Describe)**

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
[ ] **ATTORNEY PICK-UP (phone)**                [X] **E-Issuance by District Clerk**
[ ] **MAIL to attorney   at:**                     **(No Service Copy Fees Charged)**
[ ] **CONSTABLE**                          *Note*: The email registered with EfileTexas.gov must be
[ ] **CERTIFIED MAIL by CONSTABLE**            used to retrieve the E-issuance Service Documents.
[ ] **CERTIFIED MAIL by DISTRICT CLERK**        Visit www.hcdistrictclerk.com for more instructions.

[ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up:                Phone:
[ ] **OTHER,** *explain*

**Issuance of Service Requested By:** Attorney/Party Name:  Anthony Buzbee      Bar # or ID  24001820

Mailing Address: 600 Travis, Suite 7500, Houston, Texas 77002

Phone Number:  (713) 223-5393

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2024-84902                    **CURRENT COURT:** 11th Judicial District

**Name(s) of Documents to be served:** Plaintiff's First Amended Petition

**FILE DATE:** 1/27/2025             Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** MJ Legal, P.A

Address of Service: 1501 Jacksonian Plaza 12159

City, State & Zip: Jackson, Mississippi 39211

Agent (if applicable) _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

[X] **Citation**   [ ] **Citation by Posting**   [ ] **Citation by Publication**   [ ] **Citations Rule 106 Service**

[ ] **Citation Scire Facias     Newspaper** _____

[ ] **Temporary Restraining Order**   [ ] **Precept**   [ ] **Notice**

[ ] **Protective Order**

[ ] **Secretary of State Citation ($12.00)**   [ ] **Capias** (not by E-Issuance)   [ ] **Attachment** (not by E-Issuance)

[ ] **Certiorari**   [ ] **Highway Commission/Texas Department of Transportation ($12.00)**

[ ] **Commissioner of Insurance ($12.00)**   [ ] **Hague Convention ($16.00)**   [ ] **Garnishment**

[ ] **Habeas Corpus** (not by E-Issuance)   [ ] **Injunction**   [ ] **Sequestration**

[ ] **Subpoena**

[ ] **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
[ ] **ATTORNEY PICK-UP (phone)** _____   [X] **E-Issuance by District Clerk**
[ ] **MAIL to attorney   at:** _____       **(No Service Copy Fees Charged)**
[ ] **CONSTABLE**                                     *Note*: The email registered with EfileTexas.gov must be
[ ] **CERTIFIED MAIL by CONSTABLE**                   used to retrieve the E-issuance Service Documents.
[ ] **CERTIFIED MAIL by DISTRICT CLERK**              Visit www.hcdistrictclerk.com for more instructions.

[ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____   Phone: _____
[ ] **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Anthony Buzbee   Bar # or ID   24001820

Mailing Address: 600 Travis, Suite 7500, Houston, Texas 77002

Phone Number: (713) 223-5393

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

**CASE NUMBER:** 2024-84902    **CURRENT COURT:** 11th Judicial District

**Name(s) of Documents to be served:** Plaintiff's First Amended Petition

**FILE DATE:** 1/27/2025    Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** Roc Nation, LLC

Address of Service: 600 Mamaroneck Avenue, #400

City, State & Zip: Harrison, New York 10528

Agent (if applicable) _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

- [X] **Citation**  [ ] **Citation by Posting**  [ ] **Citation by Publication**  [ ] **Citations Rule 106 Service**
- [ ] **Citation Scire Facias**    Newspaper _____
- [ ] **Temporary Restraining Order**  [ ] **Precept**  [ ] **Notice**
- [ ] **Protective Order**
- [ ] **Secretary of State Citation ($12.00)**  [ ] **Capias** (not by E-Issuance)  [ ] **Attachment** (not by E-Issuance)
- [ ] **Certiorari**  [ ] **Highway Commission/Texas Department of Transportation ($12.00)**
- [ ] **Commissioner of Insurance ($12.00)**  [ ] **Hague Convention ($16.00)**  [ ] **Garnishment**
- [ ] **Habeas Corpus** (not by E-Issuance)  [ ] **Injunction**  [ ] **Sequestration**
- [ ] **Subpoena**
- [ ] **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** *(check one)*:
- [ ] **ATTORNEY PICK-UP (phone)** _____  [X] **E-Issuance by District Clerk**
- [ ] **MAIL to attorney at:** _____    **(No Service Copy Fees Charged)**
- [ ] **CONSTABLE**    *Note:* The email registered with EfileTexas.gov must be
- [ ] **CERTIFIED MAIL by CONSTABLE**    used to retrieve the E-issuance Service Documents.
- [ ] **CERTIFIED MAIL by DISTRICT CLERK**    Visit www.hcdistrictclerk.com for more instructions.

- [ ] **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____ Phone: _____
- [ ] **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Anthony Buzbee    Bar # or ID 24001820

Mailing Address: 600 Travis, Suite 7500, Houston, Texas 77002

Phone Number: (713) 223-5393

1/29/2025 2:36 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 96749096
By: Brenda Barrios
Filed: 1/29/2025 2:36 PM

Cause No. 2024-84902

| | | |
|---|---|---|
| THE BUZBEE LAW FIRM, | § | |
| | § | IN THE DISTRICT COURT OF |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, TEXAS |
| QUINN EMANUEL URQUHART & | § | |
| SULLIVAN, LLP, | § | |
| | § | |
| *Defendants.* | § | 11th JUDICIAL DISTRICT |
| | § | |
| | § | |

**DEFENDANTS MARCY BRYAN CROFT & MJ LEGAL, P.A.'S VERIFIED SPECIAL
APPEARANCE TO CONTEST PERSONAL JURISDICTION AND—SUBJECT TO
SPECIAL APPEARANCE—ANSWER, SPECIAL EXCEPTIONS, &
<u>AFFIRMATIVE DEFENSES</u>**

Defendants Marcy Bryan Croft and MJ Legal, P.A. (collectively, the "Croft Defendants") specially appear for the limited purpose of objecting to this Court's personal jurisdiction over them. Subject to and without waiving their special appearance, the Croft Defendants generally answer and raise special exceptions and affirmative defenses to Plaintiff The Buzbee Law Firm's First Amended Petition.

### The Croft Defendants' Special Appearance to Contest Personal Jurisdiction

Under Texas Rule of Civil Procedure 120a, the Croft Defendants make this special appearance to the entire proceeding to object to this Court's personal jurisdiction. The Croft Defendants file this special appearance before filing any other plea, pleading, or motion.

### Governing Legal Standard

A Texas court may not exercise personal jurisdiction over a nonresident defendant unless "(1) the defendant has established minimum contacts with [Texas], and (2) the exercise of jurisdiction comports with the traditional notions of fair play and substantial justice." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007). A nonresident defendant's minimum contacts can give rise to either general or specific personal jurisdiction. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574–76 (Tex. 2007).

As the plaintiff, The Buzbee Law Firm bears the burden to plead allegations sufficient for this Court to exercise personal jurisdiction over the Croft Defendants. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). A plaintiff's "conclusory statements" cannot satisfy this burden. *Predator Downhole Inc. v. Flotek Indus., Inc.*, 504 S.W.3d 394, 408–09 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (no specific jurisdiction when alleged contacts with Texas were "only implied or stated in a conclusory manner"); *see also Urban v. Barker*, 2007 WL 665118, at *5 (Tex. App.—Houston [14th Dist.] Mar. 6, 2007, no pet.) (same when the petition "contains conclusory

statements alleging misrepresentations and fraudulent conduct"); *Haferkamp v. Grunstein*, 2012 WL 1632009, at *6 (Tex. App.—Eastland May 10, 2012, pet. denied) ("[Plaintiff] did not meet her initial burden of pleading sufficient allegations to bring appellees within the provisions of the Texas long-arm statute . . . . [T]he petition was vague and conclusory regarding jurisdiction."). And the nonresident defendant may challenge a petition's jurisdictional allegations with an affidavit and exhibits. *See* Tex. R. Civ. P. 120a(3) (in resolving special appearance, a court must consider "the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony").

Plaintiff cannot establish either general or specific jurisdiction over the Croft Defendants. The Croft Defendants are not "at home" in Texas, and Plaintiff's claims do not arise from the Croft Defendants' purposeful contacts with Texas. The Croft Defendants' special appearances should therefore be sustained.

## I.    There Is No General Jurisdiction Over the Croft Defendants Because They Are Not "at Home" in Texas.

Outside of very rare situations, general jurisdiction exists only where a corporation is (1) incorporated and (2) headquartered or where an individual is domiciled. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 358–59 (2021). Indeed, only once has the Supreme Court found general jurisdiction outside of those contexts, and it took the disruption of World War II to create that exceptional circumstance. *See Perkins v. Benguet Mining* 342 U.S. 437, 448-49 (1952) (finding general jurisdiction over mining company in Ohio because company had relocated to Ohio from the Philippines after Japan occupied the latter). As the Texas Supreme Court has explained, general jurisdiction exists only when "affiliations with the State are so continuous and systematic as to render [the defendant] essentially at home in the forum State."

*Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 565 (Tex. 2018) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).  That very high bar exists because the consequences of finding that a party is subject to general jurisdiction in Texas are so great; it means that party can be sued in Texas for events happening anywhere in the world, even claims that have "nothing to do with Texas."  *Spir Star AG v. Kimich*, 310 S.W.3d 868, 874 (Tex. 2010).

The Croft Defendants are not "at home" in Texas.  As the petition acknowledges, Ms. Croft is domiciled in Mississippi and MJ Legal is her firm.  Pet. at 11.  MJ Legal is incorporated and headquartered in Mississippi.  Croft Decl. ¶¶ 1, 4.  Thus, the Croft Defendants are in no way "essentially at home in the Lone Star State."  *See Searcy*, 496 S.W.3d at 78.

The petition's cursory assertions (at 4) that Ms. Croft is "licensed in Texas" and that MJ Legal "perform[s] legal services in Texas" do not upset that conclusion.  As a Texas court recognized even before *Daimler*'s tightening of general jurisdiction, "a nonresident attorney's occasional representation of Texas residents is ordinarily insufficient to justify the exercise of general jurisdiction."  *Yuen v. Fisher*, 227 S.W.3d 193, 202 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  *Yuen*, for example, rejected arguments that Texas state courts had general jurisdiction over a California lawyer with a "national legal practice" who "regularly litigate[d] cases around the country" and had served as co-counsel years before in Texas federal court because such contacts were insufficient.  *Id.*

Because they are not "at home" in Texas, the Croft Defendants are not subject to the general jurisdiction in Texas that would allow them to be sued for events having no nexus to our state.

## II.    Texas Also Lacks Specific Jurisdiction over the Croft Defendants.

The exercise of specific jurisdiction over the Croft Defendants is likewise improper.  A state has specific jurisdiction over a nonresident defendant only when (1) the defendant has purposefully availed itself of the privilege of conducting activities within the state and (2) there is

a strong connection between the defendant's purposeful forum contacts and the plaintiff's claims. *Ford Motor*, 592 U.S. at 359–60; *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8-9 (Tex. 2021). When there are no purposeful forum contacts, or when the connection between those contacts and the plaintiff's claims is too attenuated, a defendant's special appearance must be sustained because personal jurisdiction is lacking. *AIKG, LLC v. CSP Consultants Grp., LLC*, 2022 WL 947197, at *4 (Tex. App.—San Antonio Mar. 30, 2022, no pet.).

In assessing purposeful availment, only the defendant's contacts are relevant; the plaintiff's contacts with the forum cannot create jurisdiction over the defendant. *See Walden v. Fiore*, 571 U.S. 277, 291 (2014); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). Moreover, neither "random, fortuitous, or attenuated contacts" nor the unilateral activity of another party or a third person meets the purposeful availment requirement of minimum contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (cleaned up). The defendant must have sought "some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Michiana*, 168 S.W.3d at 785. And the defendant's contacts alone are not enough. There must also be a "substantial connection" between the defendant's purposeful activities in the state and the case's operative facts. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc*., 512 S.W.3d 878, 890 (Tex. 2017).

The petition contains barebones allegations aimed at tying the Croft Defendants to Texas. But these allegations—that Ms. Croft is licensed in Texas and that MJ Legal at some unspecified point did in-state legal work divorced from this case—do nothing to satisfy Plaintiff's burden to establish specific jurisdiction. In fact, Plaintiff does not even allege that the Croft Defendants did anything in Texas related to this case—nor could it. Indeed, the petition doesn't assert that *any* defendant did anything in Texas at all. At best, it appears that Plaintiff is attempting to

manufacture specific jurisdiction based on a supposed Texas-related conspiracy and the alleged geographically-ambiguous acts of purported agents.  Neither basis supports the exercise of specific jurisdiction.

*A Texas Conspiracy Will Not Suffice.*  The petition alleges a conspiracy between the Croft Defendants, Quinn Emanuel, two New York-based businesses (Roc Nation and Lex Intelligence), and two so-called "investigators" (one who's not even named and another who apparently does not even exist).  The notion that  a conspiracy exists is a farce.  Setting that aside, the allegations of conspiracy cannot establish specific jurisdiction.  *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 560 (Tex. 2018) (*"*[T]he mere existence or an allegation of a conspiracy directed at Texas is insufficient to confer jurisdiction").  The Supreme Court of Texas has expressly rejected theories that would establish jurisdiction "based solely upon the effects or consequences of an alleged conspiracy in the forum state."  *Michiana*, 168 S.W.3d at 789.  That's because the "acts of conspirators cannot be imputed to a defendant as the basis for the assertion of specific jurisdiction," *Novamerican Steel, Inc. v. Delta Brands, Inc.*, 231 S.W.3d 499, 509 (Tex. App.—Dallas 2007). Accordingly, personal jurisdiction cannot be based on the petition's allegations of a so-called conspiracy.

*A Texas Victim Will Not Suffice.*  Plaintiff's allegations that a Texas resident was allegedly harmed fail for similar reasons.  "[M]ere injury to a forum resident is not a sufficient connection to the forum."  *Walden*, 571 U.S. at 290.  The Supreme Court of Texas has expressly rejected any theory that would permit specific jurisdiction based solely on allegations that the defendant "directed a tort" to the forum.  *See Michiana*, 168 S.W.3d at 790–92.  That's because jurisdiction is based on the defendant's own contacts—not the plaintiff's.  No facts connect the Croft Defendants to the Texas events underlying Plaintiff's claims—to the extent the events underlying

Plaintiff's claims even purportedly took place in Texas.  As a result, there is no specific jurisdiction over the Croft Defendants.

*A Third Party—Acting Unilaterally—Will Not Suffice.*  The unilateral acts of a third party are not relevant to personal jurisdiction over a particular defendant. *Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." (cleaned up)).  And although an agent's contacts may be imputed to a principal for personal-jurisdiction purposes, an agency relationship "will not be presumed, and the party asserting the relationship has the burden of proving it." *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 588 (Tex. App.—Houston [14th Dist.] 2005, reh'g overruled).

To clear this high bar, a plaintiff must plead (1) that the defendant had the right to control both the means and the details of the third party's work, (2) evidence of actual or apparent authority, or (3) that the defendant later ratified the third party's conduct. *See Greenfield Energy, Inc. v. Duprey*, 252 S.W.3d 721, 734 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (agency standard); *Cap. Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 83 (Tex. App.—Houston [1st Dist] 2008) (burden of proof).  The "critical test" for determining whether a third party's contacts with a forum state may be imputed to a defendant "remains that of the right or exercise of control." *Greenfield Energy*, 252 S.W.3d at 733; *see also Stocksy United v. Morris*, 592 S.W.3d 538, 548 (Tex. App.—Houston [1st Dist] 2019) (same).  That is, "the principal must have control of *both* the means *and* details of the process by which the agent is to accomplish his task in order for the agency relationship to exist." *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 588 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (emphases added).

Plaintiff cannot plead—much less prove—facts to clear even one of the three principal-agent hurdles. *First*, the Croft Defendants did not control any "investigators" involved in this case—and the petition does not allege such control or even allege that such investigators acted in Texas. Croft Decl. ¶¶ 5–6; Exs. C, E–G (alleging events in Louisiana). *Second*, the "investigators" lacked both actual and apparent authority to act as the Croft Defendants' agents—authority that can be created *only* through the principal's conduct "communicated either to the agent (actual authority) or to a third party (apparent authority)." *Disney Enters., Inc. v. Esprit Fin., Inc.*, 981 S.W.2d 25, 30 (Tex. App.—Houston [San Antonio] 1998, pet. dism'd w.o.j.); Croft Decl. ¶¶ 5–6. The petition points to no "written or spoken words or conduct by [the Croft Defendants] that communicated [any third party held] actual or apparent authority as [the Croft Defendants'] agents." *Greenfield Energy*, 252 S.W.3d at 733. At best, Plaintiff relies on statements by an "investigator" purportedly named "Jessica Santiago," who—according to an unofficial transcript of an audio recording Plaintiff has refused to provide the Croft Defendants—identified Ms. Croft "from MJ Legal" as a lawyer with whom third party Gerardo Garcia could speak about potential claims. Pet. at 2, 9; Ex. 1. Ms. Croft has never heard of or talked to such a person. Croft Decl. ¶ 6. In any event, even statements by a "purported agent which may mislead persons into false inferences of authority"—the most generous reading of Plaintiff's allegations—cannot "serve as predicate for apparent authority" even when the inferences are "reasonable." *Disney*, 981 S.W.2d at 30.

Finally, the Croft Defendants have never ratified the "investigators'" conduct, which occurs when the defendant "for whom an act was done retains the benefits of the transaction after acquiring full knowledge of the transaction." *Id.* at 31. The petition in no way alleges such a ratification. And it's impossible for the Croft Defendants to have "full knowledge"; they have

never heard of these "investigators" or otherwise directed anyone to contact Garcia or any other former client of Plaintiff.  Croft Decl. ¶¶ 5–6.  It also follows from this lack of awareness of any investigators' contacting Garcia that no "transaction" was initiated on the Croft Defendants' behalf or for their benefit.

### III.     The Exercise of Personal Jurisdiction over the Croft Defendants Would Offend Traditional Notions of Fair Play and Substantial Justice.

To conclude that Texas has personal jurisdiction over a Mississippi resident (Ms. Croft) or a Mississippi entity (MJ Legal) on any of Plaintiff's groundless theories would offend traditional notions of fair play and substantial justice.  Such an exercise of jurisdiction—based on conclusory allegations of a "conspiracy" involving Texans or on an agency theory invented out of whole cloth—would render personal jurisdiction "universal jurisdiction," that is, "no defense at all."  *See Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317, 320 (5th Cir. 2021).  The Croft Defendants' indirect and incidental "contacts with Texas—which have nothing to do with Plaintiff or this lawsuit—[a]re too fortuitous and attenuated" for the exercise of specific jurisdiction to comply with due process.  *See Searcy*, 496 S.W.3d at 62.

<u>SUBJECT TO SPECIAL APPEARANCE, THE CROFT DEFENDANTS' ORIGINAL ANSWER</u>

Under Texas Rule of Civil Procedure 92, the Croft Defendants generally deny each and every material allegation contained in Plaintiff's petition and state that Plaintiff should be required to prove its allegations by a preponderance of the evidence as required by law.

<u>SUBJECT TO SPECIAL APPEARANCE, THE CROFT DEFENDANTS' AFFIRMATIVE DEFENSES</u>

Under Texas Rule of Civil Procedure 94, the Croft Defendants set forth affirmatively the following matters constituting an avoidance or an affirmative defense:

1)     The Croft Defendants are not liable to Plaintiff in this Court because the Court lacks personal jurisdiction over the Croft Defendants.

2)      Plaintiff's claims against the Croft Defendants are barred because Plaintiff's injuries, if any, occurred as the proximate result of some independent, intervening cause, or some new and independent cause, that the Croft Defendants could not reasonably have foreseen and over which the Croft Defendants did not exercise authority or control.

3)      Plaintiff's claims are barred because there was no special relationship between the Croft Defendants and Plaintiff, or between the Croft Defendants and the third parties whom the Petition alleges were the direct cause of Plaintiff's injuries.  In the absence of any special relationship, the Croft Defendants had no duty to control the conduct of those third parties or to warn Plaintiff of the dangers created by those third parties' conduct.

4)      Plaintiff's claims against the Croft Defendants are barred by the First Amendment because they implicate the Croft Defendants' freedom of association.

5)      Plaintiff's claims against the Croft Defendants are barred by the Texas Citizens' Participation Act.  *See generally* Tex. Civ. Prac. & Rem. Code § 27.003.

6)      Plaintiff's Solicitation and Barratry claim is barred because Plaintiff lacks standing to bring such cause of action.

The Croft Defendants reserve the right to assert such other and further matters constituting an avoidance or an affirmative defense as may be revealed in further discovery and/or investigation in this action.

## SUBJECT TO SPECIAL APPEARANCE, THE CROFT DEFENDANTS' SPECIAL EXCEPTIONS

The Croft Defendants file these special exceptions under Texas Rule of Civil Procedure 91 to identify defects in the petition.

*First*, the thirteen exhibits attached to Plaintiff's petition must be struck because they violate Texas Rule of Civil Procedure 59, which permits only a "narrow class" of exhibits (not

present here) to be attached to pleadings. *Bethel v. Quilling*, 595 S.W.3d 651, 654 (Tex. 2020); *see also Tex. Elec. Serv. Co. v. Commercial Standard Ins. Co.*, 592 S.W.2d 677, 684 (Tex. Civ. App.—Fort Worth 1979, writ ref'd n.r.e.) (deposition transcript) (sustaining special exceptions that sought to strike deposition excerpts as improperly attached to pleadings).

*Second*, the petition fails to plead the elements of Plaintiff's barratry claim because Plaintiff was neither a client nor prospective client and there is no allegation that the Croft Defendants solicited employment or offered to pay a prospective client with "intent to obtain an economic benefit" or that the Croft Defendants "knowingly finance[d]" the commission of an offense under section 38.12(a) of the Texas Penal Code.

*Third*, the petition fails to plead the elements of Plaintiff's conspiracy claim because it does not adequately allege a "meeting of the minds" as required by Texas law.

**PRAYER**

For all of these reasons, the Croft Defendants ask the Court to set their Special Appearance to Contest Personal Jurisdiction for hearing and, after the hearing, to sustain their Special Appearance and enter a final judgment dismissing Plaintiff's claims for want of jurisdiction.

Subject to and without waiver of their Special Appearance, the Croft Defendants request that their Special Exceptions be sustained.

Subject to and without waiver of their Special Appearance, the Croft Defendants request that their Original Answer be deemed good and sufficient and that the Court order that all Plaintiff's requested relief be denied with prejudice, that all costs and court and legal fees be taxed against Plaintiff, and that the Croft Defendants be awarded all such other and further relief, legal, equitable, general, or special, to which they may justly be entitled.

Dated: January 29, 2025          Respectfully submitted,

*/s/  Gregg J. Costa*

Gregg J. Costa
  State Bar No. 24028160
Sydney A. Scott
  State Bar No. 24088379
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, TX 77002
Telephone: 346.718.6600
gcosta@gibsondunn.com
sascott@gibsondunn.com

Reed Brodsky (*pro hac vice* application forthcoming)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000
rbrodsky@gibsondunn.com

**ATTORNEYS FOR DEFENDANTS MARCY BRYAN CROFT & MJ LEGAL, P.A.**

## VERIFICATION

State of _____Mississippi_____        §
                                        §
_____Madison_____ County              §


      My name is Marcy Bryan Croft, my date of birth is June 7, 1974, and my business address

is 1501 Jacksonian Plaza 12159, Jackson, Mississippi  39211.  I declare under penalty of perjury

that to the best of my knowledge and understanding as of the date on which I am executing this

verification, the factual statements in Defendants Marcy Bryan Croft & MJ Legal, P.A.'s Verified

Special Appearance to Contest Personal Jurisdiction are true and correct.


Executed in ___Madison___ County, State of ___Mississippi___, on the 28th day of January, 2025.


Signed by:

34DE1E6C85F9407...

Declarant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of January, 2025, the foregoing document was filed and served on all counsel of record by electronic case filing in accordance with the Texas Rules of Civil Procedure.

*/s/ Gregg J. Costa*
GREGG J. COSTA

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Stefanie Beach on behalf of Gregg Costa
Bar No. 24028160
SBeach@gibsondunn.com
Envelope ID: 96749096
Filing Code Description: Answer/ Response / Waiver
Filing Description: Defendants Marcy Bryan Croft and MJ Legal, P.A.'s
Verified Special Appearance to Contest Personal Jurisdiction and -
Subject to Special Appearance - Answer, Special Exception, and
Affirmative Defenses
Status as of 1/29/2025 2:54 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robert H.Ford | | rford@bradley.com | 1/29/2025 2:36:46 PM | SENT |
| Angela Davis | | adavis@bradley.com | 1/29/2025 2:36:46 PM | SENT |
| Anthony Buzbee | | tbuzbee@txattorneys.com | 1/29/2025 2:36:46 PM | SENT |
| Buzbee Law Firm | | efiling@txattorneys.com | 1/29/2025 2:36:46 PM | SENT |
| Colby Holler | | CHoller@txattorneys.com | 1/29/2025 2:36:46 PM | SENT |
| Michael Williams | | mcwilliams@bradley.com | 1/29/2025 2:36:46 PM | SENT |
| Latisha Horn | | lhorn@bradley.com | 1/29/2025 2:36:46 PM | SENT |
| Lauren Black | | lblack@bradley.com | 1/29/2025 2:36:46 PM | SENT |
| Mary GraceWhitten | | mwhitten@bradley.com | 1/29/2025 2:36:46 PM | SENT |
| TX-MAO TX-MAO | | pacer-tx@gibsondunn.com | 1/29/2025 2:36:46 PM | SENT |
| David C.Fortney | | dfortney@txattorneys.com | 1/29/2025 2:36:46 PM | SENT |
| Gregg Costa | | GCosta@gibsondunn.com | 1/29/2025 2:36:46 PM | SENT |
| Gregg Costa | | GCosta@gibsondunn.com | 1/29/2025 2:36:46 PM | SENT |
| Sydney Scott | | SAScott@gibsondunn.com | 1/29/2025 2:36:46 PM | SENT |
| Johanna Smith | | JESmith@gibsondunn.com | 1/29/2025 2:36:46 PM | SENT |
| Pleasant N.Garner | | PGarner@gibsondunn.com | 1/29/2025 2:36:46 PM | SENT |
| Amber  Sladovnik | | ASladovnik@gibsondunn.com | 1/29/2025 2:36:46 PM | SENT |
| Reed Brodsky | | rbrodsky@gibsondunn.com | 1/29/2025 2:36:46 PM | SENT |
| Destiny Dike | | ddike@gibsondunn.com | 1/29/2025 2:36:46 PM | SENT |
| Blythe Cardenas | | bcardenas@gibsondunn.com | 1/29/2025 2:36:46 PM | SENT |

Cause No. 2024-84902

| | | |
|---|---|---|
| THE BUZBEE LAW FIRM, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, TEXAS |
| QUINN EMANUEL URQUHART & | § | |
| SULLIVAN, LLP, | § | |
| | § | |
| *Defendants.* | § | 11th JUDICIAL DISTRICT |
| | § | |
| | § | |

**MARCY BRYAN CROFT'S DECLARATION IN SUPPORT OF DEFENDANTS MARCY BRYAN CROFT & MJ LEGAL, P.A.'S VERIFIED SPECIAL APPEARANCE TO CONTEST PERSONAL JURISDICTION AND—SUBJECT TO SPECIAL APPEARANCE—ANSWER, SPECIAL EXCEPTIONS, & AFFIRMATIVE DEFENSES**

I, Marcy Bryan Croft, make this declaration under Section 132.001 of the Texas Civil Practice and Remedies Code and hereby declare the following under penalty of perjury:

1.      I am an attorney with over twenty-five years' experience litigating complex civil matters. I am the incorporator and director of my own law practice, MJ Legal, P.A. ("MJ Legal"), which is a co-defendant in the above-captioned action. I submit this declaration based upon my own personal knowledge, and if called upon to do so, could and would testify competently to the matters set forth herein.

2.      I am a Mississippi-licensed attorney and primarily practice there, although I also hold an active Texas bar license. The last time I represented a client in Texas state court was prior to 2021. That representation was unrelated to the claims in the case. MJ Legal has never represented a client in Texas state court.

3.      I have never represented any Texas client in connection with Roc Nation, LLC, Quinn Emanuel Urquhart & Sullivan, LLP, Christina Siess, or Lex Intelligence LLC. I have never

represented any client in any suit against Plaintiff, in the State of Texas or elsewhere.  I do not target any advertising toward the state of Texas and do not pay taxes in the State.

4.      MJ Legal is a professional corporation incorporated in Mississippi and with its principal place of business in Jackson, Mississippi.  MJ Legal is not registered as a foreign corporation licensed to conduct business within the state of Texas.  Neither MJ Legal nor I personally have agents, employees, bank accounts, or offices in the State of Texas.  Neither MJ Legal nor I own or lease any real property in the State of Texas.

5.      I do not have any agents soliciting business on my behalf in the State of Texas.  I never authorized any individuals to go to Gerardo Garcia's home on my behalf; nor did I have the means to control any individuals allegedly involved in solicitation of Mr. Garcia.

6.      I do not know anyone by the name "Jessica Santiago," including any investigator.

*       *       *

My name is Marcy Bryan Croft, my date of birth is June 7, 1974, and my business address is 1501 Jacksonian Plaza 12159, Jackson, Mississippi  39211.  I declare under penalty of perjury that the foregoing is true and correct.

Executed in <u>Madison</u>     County, State of <u>Mississippi</u>     , on the <u>28</u>th day of January, 2025.

Signed by:

34DE1E6C85F9407...

Marcy Bryan Croft

1/29/2025 11:36 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 96734520
By: Cassie Combs
Filed: 1/29/2025 11:36 AM

CAUSE NO. 202484902

COPY OF PLEADING PROVIDED BY PLT

RECEIPT NO.

1058357

TRACKING NO: 74431308

Plaintiff:                                      In The 011thJudicial District
THE BUZBEE LAW FIRM                             Court of Harris County, TX
vs.
Defendant:
QUINN EMANUEL URQUHART & SULLIVAN LLP                      Houston, Texas

CITATION (SECRETARY OF STATE NON-RESIDENT)

THE STATE OF TEXAS
County of Harris

To:   CROFT, MARCY BRYAN (A TEXAS LICENSED ATTORNEY) MAY BE SERVED THROUGH THE TEXAS
SECRETARY OF STATE PO BOX 12887 CAPITOL STATION AUSTIN TEXAS 78711
FORWARD TO
     1501 JACKSONIAN PLAZA 12159, JACKSON MS 39211

     Attached is a copy of PLAINTIFF'S FIRST AMENDED PETITION.

This instrument was filed on January 27, 2024 in the above cited cause number and court.
The instrument attached describes the claim against you.

     YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file
a written answer with the District Clerk who issued this citation by 10:00 a.m. on the
Monday next following the expiration date of 20 days after you were served this citation and
petition, a default judgment may be taken against you.  In addition to filing a written
answer with the clerk, you may be required to make initial disclosures to the other parties
of this suit.  These disclosures generally must be made no later than 30 days after you file
your answer with the clerk.  Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
     This citation was issued onJanuary 29, 2025, under my hand and seal of said court.

Issued at the request of:
BUZBEE, ANTHONY GLENN                           Marilyn Burgess, District Clerk
600 TRAVIS, STE. 7500                           Harris County, Texas
HOUSTON, TX  77002                              201 Caroline,  Houston TX 77002
713-223-5393                                    (POBox 4651, Houston, TX 77210)
Bar Number: 24001820

                                                Generated By:

Tracking Number: 74431308

CAUSE NUMBER: 202484902

| | |
|---|---|
| PLAINTIFF: THE BUZBEE LAW FIRM | In the 011th |
| vs. | Judicial District Court of |
| DEFENDANT: QUINN EMANUEL URQUHART & SULLIVAN LLP | Harris County, Texas |

OFFICER – AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ____.M. on the _____ day of _____,
20_____.                              Executed                              at
Address)_____ in
_____ County at o'clock ____.M. on the _____ day of
_____, 20_____, by Summoning the
_____ Delivering to
_____in person a corporation By leaving in the
principal office during office hours_____ of the
said_____ a true copy of this notice, together with
accompanying copy of _____To certify which I
affix my hand officially this _____day of _____, 20___.

Fees $_____

_____          By_____
              Affiant                                                    Deputy
On this day, _____, known to me to be the
person whose signature appears on the foregoing return, personally appeared.  After being by
me duly sworn, he/she stated that this citation was executed by him/her in the exact manner
recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME, On this _____ day of _____,
20___

_____
                                         Notary Public

CAUSE NUMBER: 2024-84902

THE BUZBEE LAW FIRM
PLAINTIFF

VS.                                          IN THE 11TH JUDICIAL DISTRICT COURT
                                             OF HARRIS COUNTY, TEXAS

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
DEFENDANT

## RETURN OF SERVICE

My name is **ANDREW SWATZELL**. I am over the age of eighteen (18), I am not a party to this case, and have no interest in its outcome. I am in all ways competent to make this affidavit and this affidavit is based on personal knowledge. The facts stated herein are true and correct. My business address is: 1108 Lavaca St Ste 110-549 , Austin  TX , 78701, U.S.A.

ON **Tuesday January 28, 2025 AT 09:29 AM - TWO DUPLICATE COPIES OF CITATION (SECRETARY OF STATE NON-RESIDENT); PLAINTIFF'S FIRST AMENDED PETITION; EXHIBIT(S) A THROUGH M; $55 JURISDICTIONAL FEE** came to hand for service upon **MARCY BRYAN CROFT (A TEXAS LICENSED ATTORNEY) BY SERVING THE TEXAS SECRETARY OF STATE**.

On **Tuesday January 28, 2025** at **03:28 PM -** The above named documents were hand delivered to: **MARCY BRYAN CROFT (A TEXAS LICENSED ATTORNEY) BY SERVING THE TEXAS SECRETARY OF STATE @ 1019 BRAZOS, ROOM 105, AUSTIN, TX 78701**, **in Person.** By delivering to Michael Orta, Authorized Person.

**FURTHER AFFIANT SAYETH NOT.**

STATE OF TEXAS                          DECLARATION

"My name is **ANDREW SWATZELL,** my date of birth is 11/24/1983 my business address is  1108 Lavaca St Ste 110-549 , Austin  TX , 78701, U.S.A., and I declare under penalty of perjury that this affidavit is true and correct."

Executed in **Travis County, State of Texas on Tuesday January 28, 2025**

**PSC#18592 EXP. 09/30/26**
Declarant; Appointed in accordance with State Statutes.

2025.01.976632

efile@courtrecords.com

1/29/2025 11:40 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 96735336
By: Cassie Combs
Filed: 1/29/2025 11:40 AM

CAUSE NO. 202484902

COPY OF PLEADING PROVIDED BY PLT

RECEIPT NO.

1058357

TRACKING NO: 74431318

Plaintiff:                                              In The 011thJudicial District
THE BUZBEE LAW FIRM                                     Court of Harris County, TX
vs.
Defendant:
QUINN EMANUEL URQUHART & SULLIVAN LLP                                Houston, Texas

CITATION (SECRETARY OF STATE NON-RESIDENT)

THE STATE OF TEXAS
County of Harris

To:   MJ LEGAL P A (A BUSINESS CORPORATION) MAY BE SERVED THROUGH THE TEXAS SECRETARY OF
STATE PO BOX 12887 CAPITOL STATION AUSTIN TEXAS 78711
FORWARD TO
      1501 JACKSONIAN PLAZA 12159, JACKSON MS 39211

      Attached is a copy of PLAINTIFF'S FIRST AMENDED PETITION.

This instrument was filed on January 27, 2025 in the above cited cause number and court.
The instrument attached describes the claim against you.

      YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file
a written answer with the District Clerk who issued this citation by 10:00 a.m. on the
Monday next following the expiration date of 20 days after you were served this citation and
petition, a default judgment may be taken against you.  In addition to filing a written
answer with the clerk, you may be required to make initial disclosures to the other parties
of this suit.  These disclosures generally must be made no later than 30 days after you file
your answer with the clerk.  Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
   This citation was issued onJanuary 27, 2025, under my hand and seal of said court.

Issued at the request of:                        Marilyn Burgess, District Clerk
BUZBEE, ANTHONY GLENN                            Harris County, Texas
600 TRAVIS, STE. 7500                            201 Caroline,  Houston TX 77002
HOUSTON, TX  77002                               (POBox 4651, Houston, TX 77210)
713-223-5393
Bar Number: 24001820

                                       Generated By:

Tracking Number: 74431318

CAUSE NUMBER: 202484902

PLAINTIFF: THE BUZBEE LAW FIRM                In the 911th
    vs.                                          Judicial District Court of
DEFENDANT: QUINN EMANUEL URQUHART & SULLIVAN LLP    Harris County, Texas

OFFICER - AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ____.M. on the _____ day of _____,
20_____.                        Executed                    at
Address)_____ in
_____ County    at    o'clock    .M.    on    the    _____    day    of
_____,        20_____,        by        Summoning        the
_____    Delivering    to
_____in person a corporation  By leaving in the
principal    office    during    office    hours_____    of    the
said_____    a    true    copy    of    this    notice,    together    with
accompanying copy of _____To certify which I
affix my hand officially this _____day of _____, 20___.

Fees $_____

_____              By_____
      Affiant                                        Deputy
On this day, _____, known to me to be the
person whose signature appears on the foregoing return, personally appeared.  After being by
me duly sworn, he/she stated that this citation was executed by him/her in the exact manner
recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME, On this _____ day of _____,
20___

_____
                              Notary Public

CAUSE NUMBER: 2024-84902

THE BUZBEE LAW FIRM
PLAINTIFF

VS.                                          IN THE 11TH JUDICIAL DISTRICT COURT
                                             OF HARRIS COUNTY, TEXAS
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
DEFENDANT

RETURN OF SERVICE

My name is **ANDREW SWATZELL**. I am over the age of eighteen (18), I am not a party to this case, and have no interest in its outcome. I am in all ways competent to make this affidavit and this affidavit is based on personal knowledge. The facts stated herein are true and correct. My business address is: 1108 Lavaca St Ste 110-549 , Austin  TX , 78701, U.S.A.

ON **Tuesday January 28, 2025 AT 09:29 AM - TWO DUPLICATE COPIES OF CITATION (SECRETARY OF STATE NON-RESIDENT); PLAINTIFF'S FIRST AMENDED PETITION; EXHIBIT(S) A THROUGH M; $55 JURISDICTIONAL FEE** came to hand for service upon **MJ LEGAL PA (A BUSINESS CORPORATION) BY SERVING THE TEXAS SECRETARY OF STATE**.

On **Tuesday January 28, 2025** at **03:28 PM -** The above named documents were hand delivered to: **MJ LEGAL PA (A BUSINESS CORPORATION) BY SERVING THE TEXAS SECRETARY OF STATE @ 1019 BRAZOS, ROOM 105**, **AUSTIN**, **TX 78701**, **in Person.** By delivering to Michael Orta, Authorized Person.

**FURTHER AFFIANT SAYETH NOT.**

STATE OF TEXAS                          DECLARATION

"My name is **ANDREW SWATZELL,** my date of birth is 11/24/1983 my business address is  1108 Lavaca St Ste 110-549 , Austin  TX , 78701, U.S.A., and I declare under penalty of perjury that this affidavit is true and correct."

Executed in **Travis County, State of Texas on Tuesday January 28, 2025**

**PSC#18592 EXP. 09/30/26**
Declarant; Appointed in accordance with State Statutes.

2025.01.976629

efile@courtrecords.com

1/29/2025 11:44 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 96735708
By: Cassie Combs
Filed: 1/29/2025 11:44 AM

CAUSE NO. 202484902

COPY OF PLEADING PROVIDED BY PLT

RECEIPT NO.

1058357

TRACKING NO: 74431329

Plaintiff:                                          In The 011thJudicial District
THE BUZBEE LAW FIRM                                 Court of Harris County, TX
vs.
Defendant:
QUINN EMANUEL URQUHART & SULLIVAN LLP                          Houston, Texas

CITATION (SECRETARY OF STATE NON-RESIDENT)

THE STATE OF TEXAS
County of Harris

To:   ROC NATION LLC (A LIMITED LIABILITY COMPANY) MAY BE SERVED THROUGH THE TEXAS SECRETARY
OF STATE PO BOX 12887 CAPITOL STATION AUSTIN TEXAS 78711
FORWARD TO
ITS REGISTERED AGENT AT C/O CORPORATE CREATIONS NETWORK INC
      600 MAMARONECK AVENUE #400, HARRISON NY 10528

      Attached is a copy of PLAINTIFF'S FIRST AMENDED PETITION.

This instrument was filed on January 27, 2025 in the above cited cause number and court.
The instrument attached describes the claim against you.

      YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file
a written answer with the District Clerk who issued this citation by 10:00 a.m. on the
Monday next following the expiration date of 20 days after you were served this citation and
petition, a default judgment may be taken against you.  In addition to filing a written
answer with the clerk, you may be required to make initial disclosures to the other parties
of this suit.  These disclosures generally must be made no later than 30 days after you file
your answer with the clerk.  Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
   This citation was issued onJanuary 27, 2025, under my hand and seal of said court.

Issued at the request of:                           Marilyn Burgess, District Clerk
BUZBEE, ANTHONY GLENN                                Harris County, Texas
600 TRAVIS, STE. 7500                                201 Caroline,  Houston TX 77002
HOUSTON, TX  77002                                   (POBox 4651, Houston, TX 77210)
713-223-5393
Bar Number: 24001820

Generated By:

Tracking Number: 74431329

CAUSE NUMBER: 202484902

PLAINTIFF: THE BUZBEE LAW FIRM                          In the 011th
        vs.                                             Judicial District Court of
DEFENDANT: QUINN EMANUEL URQUHART & SULLIVAN LLP        Harris County, Texas

OFFICER – AUTHORIZED PERSON RETURN

Came to hand at _____ o'clock ____.M. on the _____ day of _____,
20_____.                            Executed                                at
Address)_____ in
_____ County at o'clock ____.M. on the _____ day of
_____, 20_____ by Summoning the
_____ Delivering to
_____in person a corporation By leaving in the
principal office during office hours_____ of the
said_____ a true copy of this notice, together with
accompanying copy of _____To certify which I
affix my hand officially this _____day of _____, 20___.

Fees $_____

_____          By_____
        Affiant                                                      Deputy
On this day, _____, known to me to be the
person whose signature appears on the foregoing return, personally appeared.  After being by
me duly sworn, he/she stated that this citation was executed by him/her in the exact manner
recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME, On this _____ day of _____,
20___

_____
                                              Notary Public

## CAUSE NUMBER: 2024-84902

**THE BUZBEE LAW FIRM**
**PLAINTIFF**

**VS.**                                         **IN THE 11TH JUDICIAL DISTRICT COURT**
                                               **OF HARRIS COUNTY, TEXAS**

**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
**DEFENDANT**

### RETURN OF SERVICE

My name is **ANDREW SWATZELL**. I am over the age of eighteen (18), I am not a party to this case, and have no interest in its outcome. I am in all ways competent to make this affidavit and this affidavit is based on personal knowledge. The facts stated herein are true and correct. My business address is: 1108 Lavaca St Ste 110-549 , Austin  TX , 78701, U.S.A.

ON **Tuesday January 28, 2025 AT 09:29 AM - TWO DUPLICATE COPIES OF CITATION (SECRETARY OF STATE NON-RESIDENT); PLAINTIFF'S FIRST AMENDED PETITION; EXHIBIT(S) A THROUGH M; $55 JURISDICTIONAL FEE** came to hand for service upon **ROC NATION LLC (A LIMITED LIABILITY COMPANY) BY SERVING THE TEXAS SECRETARY OF STATE**.

On **Tuesday January 28, 2025** at **03:28 PM -** The above named documents were hand delivered to: **ROC NATION LLC (A LIMITED LIABILITY COMPANY) BY SERVING THE TEXAS SECRETARY OF STATE @ 1019 BRAZOS, ROOM 105**, AUSTIN, **TX 78701**, **in Person.** By delivering to Michael Orta, Authorized Person.

**FURTHER AFFIANT SAYETH NOT.**

STATE OF TEXAS                                 DECLARATION

"My name is **ANDREW SWATZELL,** my date of birth is 11/24/1983 my business address is  1108 Lavaca St Ste 110-549 , Austin , TX , 78701, U.S.A., and I declare under penalty of perjury that this affidavit is true and correct."

Executed in **Travis County, State of Texas on Tuesday January 28, 2025**

**PSC#18592 EXP. 09/30/26**
Declarant; Appointed in accordance with State Statutes.

2025.01.976614

efile@courtrecords.com