## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| | § | |
| THE BUZBEE LAW FIRM, | § | |
| | § | Civil Action No. 4:25-cv-00385 |
| Plaintiff, | § | |
| | § | JURY |
| v. | § | |
| | § | |
| QUINN EMANUEL URQUHART & | § | |
| SULLIVAN, LLP, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## CROFT DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO REMAND

Marcy Bryan Croft and MJ Legal, P.A. (together, "Croft Defendants") file this response to Plaintiff's motion to remand. This Court has jurisdiction because there is complete diversity among the properly joined parties. Under longstanding principles of removal jurisdiction, the only purported Texas Defendants—"Jessica Santiago" and Quinn Emanuel Urquhart & Sullivan, LLP—must be disregarded in assessing diversity. Caselaw and common sense dictate that the unknown and apparently nonexistent "Santiago" does not count because a fictitious party, who of course has no citizenship, cannot be added to defeat jurisdiction. Quinn Emanuel also is improperly joined because not a single factual allegation ties it to any of the alleged claims. For these reasons, the Court should deny the motion to remand.

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ............................................................................................... 1

NATURE AND STAGE OF THE PROCEEDING .......................................... 2

STATEMENT OF RELEVANT FACTS........................................................... 2

STATEMENT OF THE ISSUES ...................................................................... 5

LEGAL STANDARD ....................................................................................... 5

SUMMARY OF THE ARGUMENT ................................................................ 6

ARGUMENT..................................................................................................... 7

   I.   "Jessica Santiago" Does Not Defeat Complete Diversity ........................... 7

     A.   "Jessica Santiago" Is a Fictitious Name ............................................ 7

     B.   The Amended Petition Does Not Allege "Jessica Santiago's" Citizenship....... 11

   II.   Quinn Emanuel Does Not Destroy Complete Diversity .......................... 12

     A.   There Is No Reasonable Possibility of Recovering Against Quinn Emanuel for Tortious Interference .................................................. 13

     B.   There Is No Reasonable Possibility of Recovering Against Quinn Emanuel for Barratry .................................................................... 15

     C.   There Is No Reasonable Possibility of Recovering Against Quinn Emanuel for Conspiracy ................................................................. 17

     D.   Plaintiff's Attempt to Rescue Its Insufficient Claims Fails ............... 19

CONCLUSION ............................................................................................... 22

CERTIFICATE OF SERVICE ....................................................................... 24

i

## INTRODUCTION

Plaintiff The Buzbee Law Firm seeks to evade federal jurisdiction by claiming that two defendants—an alleged private investigator, "Jessica Santiago" and Quinn Emanuel—defeat diversity jurisdiction. But federal jurisdiction does exist because, under Fifth Circuit law, those two defendants cannot be considered in the diversity analysis.

Plaintiff admits—in both its petition and remand motion—that it has no idea who "Jessica Santiago" is. Nor does Plaintiff provide any factual support for its guess that "Santiago," real or fictitious, resides in Harris County, Texas. That is why Plaintiff has not even attempted to serve "Santiago." With zero indication that "Santiago" is the name of a real person and no allegations about her citizenship, that Defendant is irrelevant for jurisdictional purposes.

Plaintiff fares no better with Quinn Emanuel. Looking at the only specific allegations against the firm, Plaintiff appears to have sued the firm because (1) it participated in unrelated litigation against Plaintiff's counsel, Anthony "Tony" Buzbee, and (2) has been "involved with" or "associated" with other Defendants in Mississippi public-interest litigation years ago. Such generalized, conclusory group pleadings about other conduct come nowhere close to establishing the barratry, conspiracy, or tortious interference claims alleged in this case. Plaintiff thus fails to plead facts showing a reasonable possibility of recovery against Quinn Emanuel, meaning the firm is improperly joined and its Texas citizenship should likewise be disregarded.

With "Jessica Santiago" and Quinn Emanuel properly disregarded, complete

1

diversity exists.  And there is no dispute that the amount in controversy exceeds $75,000.

This Court thus has jurisdiction, and the motion to remand should be denied.

## NATURE AND STAGE OF THE PROCEEDING

On January 27, 2025, Plaintiff filed suit, alleging barratry, conspiracy to commit barratry, tortious interference with contract, and tortious interference with prospective business relations in the 11th Judicial District Court of Harris County.  ECF 1-2 at 316 (*The Buzbee Law Firm v. Quinn Emanuel Urquhart & Sullivan, LLP, et al.*, Cause No. 2024-84902).  Plaintiff asserts all claims against all Defendants.  *Id.* at 330–32.

The Croft Defendants timely removed the case to federal court under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and complete diversity of citizenship exists among the real parties in interest.  ECF 1.  Plaintiff now seeks remand. ECF 16.

## STATEMENT OF RELEVANT FACTS

Plaintiff filed this suit amidst the mounting legal problems of its owner, Anthony "Tony" Buzbee.  On the eve of two former clients suing him for breach of fiduciary duty relating to the mishandling of settlement funds,[1] Plaintiff brought this suit to try and deter others from coming forward with similar claims.

Plaintiff alleges that Defendants engaged in barratry and conspired to commit barratry by "engaging shadowy operatives to illegally seek out more than two dozen current and former clients of [The Buzbee Law Firm] to convince or bribe those clients to

---

[1] *See Thompson v. Buzbee*, No. 2:24-cv-02827 (E.D. La. filed Dec. 9, 2024); *Guidry v. Buzbee*, No. 2:24-cv-02873 (E.D. La. filed Dec. 13, 2024).

bring frivolous cases against [The Buzbee Law Firm]." ECF 1-2 at 316 (footnote omitted). According to Plaintiff, "investigators" using "fake names" contacted its former clients, one of whom identified herself as "Jessica Santiago." *Id.* at 323–24. "Jessica Santiago" also purportedly said that "she was working for Defendant Marcy Croft at the law firm MJ Legal, P.A." *Id.* at 324. As for Quinn Emanuel, Plaintiff asserts that the firm "orchestrated" the conspiracy. *Id.* at 318.

The petition alleges that "Plaintiff is a law firm and resident of Texas and Harris County." *Id.* at 319. The Buzbee Law Firm is the trade name under which Anthony G. Buzbee, L.P., a limited partnership, was authorized to operate. *See* The Buzbee Law Firm Business Organizations Inquiry, TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/acct/acct-login.asp (originally filed November 1, 2006). The citizenship of a partnership is determined by the citizenship of its general and limited partners. *See Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990). Buzbee is owner and limited partner of Anthony G. Buzbee, L.P., and Services by AGB, L.L.C. is president and general partner. *See* Anthony G. Buzbee, LP, Texas Franchise Tax Public Information Report (Form 05-102) (July 23, 2024). "[T]he citizenship of a[n] LLC is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). Buzbee is the president, manager, and sole member of Services by AGB, L.L.C. *See* Services by AGB, LLC, Texas Franchise Tax Public Information Report (Form 05-102) (July 23, 2024). Buzbee resides in Houston, Texas and, as a former mayoral and city council candidate in Houston, treats that Texas residence as his home, making him a Texas citizen. Plaintiff is thus a citizen of Texas.

3

Marcy Croft resides in Mississippi and treats that Mississippi residence as her home, making her a Mississippi citizen. ECF 1 ¶ 11. MJ Legal's only member is Marcy Croft, making it a citizen of Mississippi, too. *Id.*

The petition alleges that Roc Nation, LLC is a limited liability company organized under the laws of Delaware that maintains a headquarters in New York. ECF 1-2 at 319. Roc Nation has members in Delaware, California, New York, and New Jersey and, thus, is a citizen of those States. *See* ECF 1-7 ¶ 3. Roc Nation does not have members with Texas citizenship, so it is diverse from Plaintiff.

The petition alleges that Christina Siess is a resident of New York and the founder of Lex Intelligence. ECF 1-2 at 319. On information and belief, Christina Siess resides in New York and treats that New York residence as her home, making her a New York citizen.

The petition alleges that Lex Intelligence LLC is a limited liability company organized under the laws of New York that maintains its headquarters in New York. *Id.* On information and belief, Lex Intelligence does not have members who are Texas citizens and thus is not a Texas citizen and is diverse from Plaintiff.

The petition further alleges that Defendant Quinn Emanuel is a limited liability partnership with some partners in Texas, making it a citizen of Texas among other States. *See id.*

The petition does not allege any place of residence or citizenship for "Jessica Santiago" or list an address for her, stating: "Defendant Jessica Santiago is an individual and can be served via personal service at her home address or wherever she may be found." *Id.* Plaintiff has not served her.

4

The Croft Defendants removed the case to this Court, asserting that neither "Jessica Santiago" nor Quinn Emanuel should be considered when determining diversity of citizenship.  With those nominal Defendants properly disregarded, there is complete diversity because The Buzbee Law Firm is a citizen of Texas but none of the real Defendants—Marcy Croft, MJ Legal, Roc Nation, Lex Intelligence, and Christina Siess— are.

## STATEMENT OF THE ISSUES

1. Should a federal court disregard, when assessing diversity jurisdiction, the alleged citizenship of a defendant when (a) the plaintiff admits the defendant's identity is unknown and (b) the plaintiff has no factual basis to allege the defendant's citizenship?

2. Should a federal court disregard, for the same jurisdictional purpose, the alleged citizenship of a defendant whose connection to the case is limited to group pleadings, conclusory allegations, and generalized allegations of unrelated association with other defendants?

## LEGAL STANDARD

Removal to federal court is proper when there is complete diversity among the real parties to the case, the amount in controversy and exceeds $75,000, and "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).

A defendant is improperly joined when "the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the

plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

"A mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder." *Id.* at 573 n.9 (citation and internal quotation marks omitted). Instead, the pleading must include specific factual allegations that could plausibly give rise to liability on the part of the in-state defendant. *See id.* at 573. In making this determination, courts "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* This analysis employs the *Twombly/Iqbal* plausibility standard even if the case was filed in a state court with more relaxed pleading standards. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200–08 (5th Cir. 2016).

The court determines whether a party is improperly joined based on the allegations in the state court petition at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co*., 44 F.3d 256, 265 (5th Cir. 1995). A plaintiff cannot cure an improper joinder by amending after removal to eliminate federal jurisdiction. *Id*. at 264 (explaining why removal jurisdiction should be determined on the allegations at the time of removal).

**SUMMARY OF THE ARGUMENT**

The Court should deny Plaintiff's motion to remand because complete diversity exists among all defendants properly joined.

"Jessica Santiago" does not defeat diversity jurisdiction because "Santiago" is an unknown and fictitious defendant. Fictitious defendants—the classic case being a "Jane

6

Doe"—do not count for diversity jurisdiction for the basic reason that there is no way to determine the citizenship of an unknown person.  This case illustrates that problem: the amended petition does not allege anything about "Jessica Santiago's" citizenship.  Plaintiff has not listed an address for her nor served her.  As a fictitious defendant without any allegations about her citizenship, "Santiago" does not count when assessing diversity.

Nor does Quinn Emanuel's Texas citizenship defeat diversity.  Plaintiff's group pleadings, conclusory assertions, and generalized allegations fall far short of plausibly alleging barratry, conspiracy, tortious interference with contract, or tortious interference with prospective business relations.  With no reasonable probability of recovery against Quinn Emanuel, the firm is improperly joined.  That means its alleged citizenship must likewise be ignored.

## ARGUMENT

The Court should deny Plaintiff's motion to remand because complete diversity exists when the improperly joined defendants are disregarded.

## I.    "Jessica Santiago" Does Not Defeat Complete Diversity

### A.    "Jessica Santiago" Is a Fictitious Name

The Court should disregard "Jessica Santiago" when determining diversity because she is a fictitious defendant—the functional equivalent of a Jane Doe.

The removal statute is clear on this point: the citizenship of "defendants sued under fictitious names" shall be disregarded.  28 U.S.C. § 1441(b)(1).  Courts do not consider fictitious defendants for diversity because there is no way to determine citizenship of a person whose identity has not been ascertained.  *Brooks v. Purcell*, 57 Fed. App'x 47, 51

(3rd Cir. 2002) ("[W]e believe that Congress intended parties to be disregarded unless they were identified so that their citizenship could be ascertained.").  And allowing fictitious or anonymous defendants to destroy diversity is a recipe for allowing plaintiffs to circumvent federal jurisdiction.  *See Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 476 n.5 (5th Cir. 2001) (explaining plaintiffs cannot defeat federal jurisdiction merely by naming "unknown defendant[s]" and guessing at their citizenship); *see also Mosely v. Doe #1*, 2022 WL 1102867, at *3 (N.D. Tex. Apr. 13, 2022) ("[T]he present risk that [John Doe] might have nondiverse citizenship does not bear on the propriety of [the diverse defendant's] removal."); *see also* Charles Alan Wright & Arthur R. Miller, FEDERAL PRAC. AND PROC. § 3642 (3d ed.) (June 2024 Update) ("Congress amended the general removal statute . . . in order to curtail the practice of naming fictitious defendants in a state court action to destroy diversity of citizenship . . . .").

Plaintiff offers no factual support—only speculation—for the idea that "Jessica Santiago" is anything other than an unidentified placeholder: no address, no phone number, no identifying details of any kind.  It is no surprise, then, that Plaintiff has not served the supposed "Santiago."  ECF 1-8 ¶¶ 2–3.

Unable to muster even a shred of evidence to prove that Jessica Santiago is the real name of a person—let alone of a Texas citizen—Plaintiff advances three legal arguments that miss the mark.

Plaintiff first argues that it did not designate "Santiago" as a "Jane Doe," ECF 16 at 7, but labels don't control.  Section 1441(b)(1) does not mention the name "Jane Doe"; it refers to "defendants sued under fictitious names."  *See Brooks*, 57 Fed. App'x at 50 (3rd

8

Cir. 2002) (explaining bar on fictitious defendants applies to names that a plaintiff "has no reason to believe are those of real people"). What matters is not whether the plaintiff chooses "Doe," a common name, or some other nomenclature. *See e.g.*, *Weaver v. Metro. Life Ins. Co*., 939 F.3d 618, 623 (5th Cir. 2019) ("Unknown Payee is the kind of fictitious name this provision covers."). Rather, the critical question is whether the plaintiff has any factual basis to believe that the name corresponds to a real person who can be identified, located, and served. If only "Jane Does" were disregarded for diversity purposes, then the same problems that led to section 1441(b)(1) would persist: There would be no way to determine the citizenship of defendants sued under fictitious names, so adding such defendants would be an easy ploy to defeat federal jurisdiction that is otherwise proper.

The allegations and evidence show that "Jessica Santiago" is a fictitious name. Indeed, Plaintiff's own filings confirm as much. Plaintiff's petition recognizes these so-called investigators used "fake names," ECF 1-2 at 323, yet never alleges "Jessica Santiago" was the one-off instance in which one of the investigators provided a real name. The motion to remand can only say that "Plaintiff's own investigation has revealed *dozens* of women named 'Jessica Santiago' in Harris County and elsewhere in Texas who *could* be the woman who spoke with Plaintiff." ECF 16 at 6 (emphasis added). Yet Plaintiff does not dispute the evidence cited in the notice of removal explaining that no licensed private investigator in Texas is named "Jessica Santiago." ECF 1 ¶ 21; ECF 1-8 ¶¶ 2–3.

Plaintiff next argues that naming "Jessica Santiago" differs from naming a Jane Doe defendant because, it says, "Ms. Santiago is not a theoretical person whom Plaintiff merely hypothesizes had something to do with the conduct alleged here"—she is "unquestionably

9

a real person."  ECF 16 at 2, 7; *see also id.* at 6 ("Whether or not 'Jessica Santiago' is that woman's real name, she is not 'fabricated' or 'nonexistent.'").   This argument goes nowhere.   "Jane Doe" (and the male "John Doe") defendants are not "theoretical," "hypothesized," or "nonexistent" people; the term is used for real people who just cannot be identified or do not want to be.   *E.g.*, Bryan A. Garner, GARNER'S DICTIONARY OF LEGAL USAGE 292–93 (3d ed. 2011) ("[E]specially in the U.S., *John Doe, Jane Doe, Richard Poe, Jane Roe,* and *Peter Poe* have come to identify a party to a lawsuit whose true name is either unknown or purposely shielded.").   Section 1441(b)(1) applies in exactly that situation because when a real name is not used, citizenship cannot be determined which creates the potential for jurisdictional manipulation that the statute guards against.   *See, e.g.*, *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1235 (10th Cir. 2006); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948 (6th Cir. 1994); *cf. Howell by Goerdt v. Tribune Entm't Co.*, 106 F.3d 215, 218 (7th Cir. 1997) ("[B]ecause the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, 'John Doe' defendants are not permitted in federal diversity suits.").

Plaintiff also contends that the Croft Defendants are best positioned to clarify uncertainties about "Santiago," arguing that discovery from Ms. Croft about "Santiago's" existence and identity is required.  ECF 16 at 7–8.  But defendants have no obligation— and here no ability—to help plaintiffs destroy federal jurisdiction.  *New Orleans City v. Aspect Energy, L.L.C.*, 126 F.4th 1047, 1056 (5th Cir. 2025) ("It is not incumbent on the named defendants to negate the existence of a potential defendant whose presence in the action would destroy diversity." (quoting *Lincoln Prop.*, 546 U.S. at 84)); *Brooks*, 57 Fed.

App'x at 50–51 ("While it is conceivable that the named defendants could have identified these defendants they were under no obligation to do so . . . ."). Plaintiff's hope of uncovering "Jessica Santiago's" identity through the Croft Defendants does not transform speculative allegations into jurisdictional facts. *See also Lepretre v. CVS 5282 LA LLC*, 2022 WL 1010657, at *1 (W.D. La. Mar. 2, 2022), ("[A]n anticipated identification of a fictitious defendant does not defeat removal in advance." (citing *Weaver*, 939 F.3d at 623)), *recommendation adopted*, 2022 WL 1009096 (W.D. La. Apr. 4, 2022).

In any event, as discussed, the Croft Defendants' own investigation has revealed that no "Jessica Santiago" is licensed as a private investigator in Texas. ECF 1-8 ¶¶ 2–3. And Ms. Croft has declared that she does not know anyone named "Jessica Santiago." *See* ECF 1-2 at 384; ECF 1-2 at 60. Plaintiff offers nothing to rebut the overwhelming evidence that "Jessica Santiago" is fictitious.

B.     **The Amended Petition Does Not Allege "Jessica Santiago's" Citizenship**

Regardless of whether "Jessica Santiago" is a fictitious name, no factual allegations show "Santiago's" citizenship. That is the broader problem with "Santiago": Without any allegations of her actual citizenship, "Jessica Santiago" must be disregarded for diversity purposes.

The unverified petition says nothing about "Santiago's" citizenship—not a single word. *See Brooks*, 57 Fed. App'x at 50 (holding diversity jurisdiction not destroyed when "[the plaintiff] did not supply sufficient information for the district court to know the specific identity of the four partially named defendants"). The petition merely states: "Defendant Jessica Santiago is an individual and can be served via personal service at her

11

home address or wherever she may be found"—yet, no address is listed for "Santiago." ECF 1-2 at 319. As the Third Circuit put it, parties must be "disregarded unless they [are] identified so that their citizenship [can] be ascertained." *Brooks*, 57 Fed. App'x at 51.

Plaintiff's featured retort—that "Santiago" is "believed to be [a] Texas resident[]," ECF 16 at 2—doesn't do the work Plaintiff hopes. First, Plaintiff's "belief" about "Santiago's" Texas residency surfaces for the first time in Plaintiff's remand motion; the amended petition does not allege Texas citizenship or contain any facts to support such a claim. Even if claims in briefing counted, a belief alone is not a factual allegation. *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003) ("[W]hile allegations may be based upon information and belief, 'the complaint must set forth a factual basis for such belief.'").

Because Plaintiff offers no factual basis from which the Court could determine the citizenship of "Santiago," she should not factor into the assessment of diversity jurisdiction.

## II.   Quinn Emanuel Does Not Destroy Complete Diversity

The amended petition does not show a reasonable possibility of recovery against Quinn Emanuel, rendering the firm "improperly joined" and thus irrelevant for evaluating diversity.

Here is the entirety of the petition's allegations against Quinn Emanuel:

- "Marcy Croft and Quinn Emanuel[] are orchestrating the effort." ECF 1-2 at 318.

- "Marcy Croft has worked with Roc Nation for years, alongside Quinn Emanuel's Alex Spiro. Croft and her firm MJ Legal's close connections with

12

Defendants Roc Nation and Quinn Emanuel are further demonstrated in [] public posts." *Id.* at 326; *see also id.* at 325 (alleging Quinn Emanuel is "closely affiliated" with Jay-Z).

- "Defendant Quinn Emanuel, who represents Jay Z in both cases (and who also frequently represents Roc Nation) *denied* in open court and in the press that it had any involvement in the scheme described herein." *Id.* at 318 (emphasis added); *see also id.* at 325 (alleging Quinn Emanuel "denied having any connection to or knowledge of the investigators").

- "The illegal effort described here, which Roc Nation is funding, and which Defendants Croft and Quinn Emanuel are orchestrating, is intended to interfere with The Buzbee Law Firm's ability to represent its clients and conduct its business in general." *Id.* at 318.

- "One lawsuit . . . filed in Los Angeles by Defendant Quinn Emanuel, alleged that the Firm was trying to extort Jay-Z . . . ." *Id.* at 322.

- "This contact was an illegal solicitation and was made on behalf of and as part of a conspiracy involving (at minimum) Defendants Croft, Roc Nation, and Quinn Emanuel." *Id.* at 324.

  - "Sometimes these persons identified themselves as working for defendant Lex Intelligence, or as having been hired by defendant Quinn Emanuel, or the phone numbers used for the contact were associated with Lex Intelligence." *Id.* at 322.[2]

## A. There Is No Reasonable Possibility of Recovering Against Quinn Emanuel for Tortious Interference

The petition fails to allege basic elements of a tortious interference with contract claim against Quinn Emanuel. Missing are allegations identifying the provision of the contract that was allegedly breached, as well as actual damage or loss that occurred. *See Hart v. Manriquez Holdings, LLC*, 661 S.W.3d 432, 439 (Tex. App.—Houston [14th Dist.] 2023, no pet.); *All. Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 532 (Tex.

---

[2] Plaintiff further alleges that "Quinn Emanuel also has a long history of outrageous, sanctionable conduct and reputation to match." *Id.* at 325. This allegation doesn't require a response because it has nothing to do with this case.

App.—Fort Worth 2009, pet. denied).  Plaintiff's unremarkable allegation that it "had contractual relationships with its current clients" does not move the needle.  Without these details about what provision was breached or how Plaintiff was injured from the unidentified breach, the petition does not assert a plausible basis for recovery against Quinn Emanual for tortious interference with contract.

Fundamental defects likewise plague the tortious interference with business expectation claim asserted against Quinn Emanuel.  Plaintiff does not allege (1) a reasonable probability that it would have entered a future business relationship with other parties and (2) a tortious or unlawful act by the defendant that prevented the relationship from occurring.  *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 168 (Tex. App.—Houston [14th Dist.]  2017, no pet.).

On the first defect, Plaintiff does not allege any specific business relationship that would have come to life absent Quinn Emanual's alleged conduct.  Plaintiff's claim is not saved by its allegation that "[its] former employees and former clients often serve as referral sources for business to Plaintiff."  ECF 1-2 at 331.  A plaintiff must "describe the specifics of a proposed agreement that never came to fruition," alleging potential, speculative, or diffuse impacts on future referrals will not suffice.  *Pureshield, Inc. v. Allied Bioscience, Inc.*, 2021 WL 4492861, at *3 (E.D. Tex. Sep. 30, 2021) (citing *Corrosion Prevention Techs. LLC v. Hatle*, 2020 WL 6202690, at *4 (S.D. Tex. Oct. 22, 2020) (Hanen, J.)).

On the second, Plaintiff does not adequately allege that Quinn Emanuel's conduct was independently tortious or unlawful, that is, that it would be actionable under a

recognized tort.  *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

Plaintiff summarily asserts that this element is satisfied because the Defendants' conduct

was purportedly "defamatory and slanderous, by implying [to former employees and

former clients] that Plaintiff is the subject of a fraud investigation or that Plaintiff is the

subject of ongoing controversy."  ECF 1-2 at 331.  But such conclusory allegations do not

meet the *Iqbal* and *Twombly* pleading standard.  For example, no specific defamatory

statements are alleged, let alone tied to Quinn Emanuel.  *See Davis v. Prosperity Bank*, 383

S.W.3d 795, 804 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (affirming grant of

summary judgment in favor of defendant where plaintiffs failed to identify "any specific

statements they claim[ed] to be defamatory").  And without identifying such statements, it

also follows that the petition cannot allege their falsity.

For these reasons, the petition fails to assert a plausible basis for recovery against

Quinn Emanual for tortious interference with contract or tortious interference with

business expectations.

### B.     There Is No Reasonable Possibility of Recovering Against Quinn Emanuel for Barratry

For several reasons, there is no possibility of Plaintiff recovering against Quinn

Emanuel on the barratry claim.  The first is that Plaintiff lacks standing to sue under

criminal barratry law.  Plaintiff's barratry claim rests solely on the Texas Penal Code, ECF

1-2 at 331, but Texas does not recognize a private cause of action for an alleged violation

of the Penal Code's prohibition on barratry.  *See Neese v. Lyon*, 479 S.W.3d 368, 376, 378

(Tex. App.—Dallas 2015, no pet.) (noting that Texas did not recognize a private right of

action for barratry until the enactment of the civil barratry statute, even though the state "has long . . . crim[inalized]" barratry); *Smith v. Wilmington Sav. Fund Soc'y FSB as Tr. for Stanwich Mortg. Loan, Tr.*, 2019 WL 2996571, at *11 (N.D. Tex. June 14, 2019), *report and recommendation adopted*, 2019 WL 2995943 (N.D. Tex. July 8, 2019). Given that improper joinder is determined at the time of removal, this failure to allege a legally cognizable claim means there is no possibility of recovery.

The second reason is that, even if the petition could be rewritten to cite an actual civil barratry claim, Plaintiff lacks statutory standing to bring such a claim. The allegation is that Plaintiff's clients were solicited, *see e.g.*, ECF 1-2 at 331–32, and only solicited clients may sue for barratry, *see* Tex. Gov't Code § 82.0651(a), (c). Yet, the only plaintiff in this case is The Buzbee Law Firm. Again—no standing, no claim, no recovery against Quinn Emanuel. *See* Tex. Gov't Code § 82.0651(a), (c); *see also Merkle v. Gragg, 2019 WL 6327584*, at *13 n.5 (W.D. Tex. Nov. 26, 2019) ("Because [plaintiff] is neither a client of the defendant attorneys nor alleges that he has been solicited by them, he fails to state a claim for barratry."); *Nguyen v. Watts*, 605 S.W.3d 761, 772 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (explaining that § 82.0651(c) of the civil barratry statute requires "each individual plaintiff to show solicitation").

The third reason is that, even if Plaintiff had standing, the factual allegations needed to support such a claim are glaringly absent. Plaintiff does not allege that Quinn Emanuel (1) "solicit[ed] employment"; (2) "offer[ed] to pay, give, or advance to a prospective client . . . anything of value to obtain employment" from him; or that Quinn Emanuel (3) "knowingly finance[d] the commission of [such an offense]" or (4) "is a professional who

knowingly accept[ed] employment" resulting from such an offense.  *See* Tex. Gov't Code § 82.0651(a), (c); Tex. Penal Code § 38.12(a)–(b).

Underscoring the lack of factual allegations against Quinn Emanuel for a barratry claim, the petition highlights unrelated lawsuits involving Quinn Emanuel's representation of Jay-Z in disputes against Buzbee and asserts in a conclusory fashion that Quinn Emanuel is closely connected or affiliated with Marcy Croft and Roc Nation principal Jay-Z.  *E.g.*, ECF 1–2 at 318, 322, 325–26.  Mere association with other parties, though, is not enough. That Quinn Emanuel "filed" suit against Buzbee in California for extortion and defamation, or that Quinn Emanuel represented Jay-Z in a suit Buzbee filed in New York, *see id.* at 318, 322, a suit Buzbee filed and has since dismissed[3] against Jay-Z in New York, in no way supports a claim that Quinn Emanuel engaged in barratry or conspired to commit barratry involving Buzbee's former personal-injury clients along the Gulf Coast.

## C.    There Is No Reasonable Possibility of Recovering Against Quinn Emanuel for Conspiracy

Plaintiff's conspiracy claim against Quinn Emanuel also fails for several independent reasons.  First, because the civil conspiracy claim depends on the underlying barratry claim, the defects just mentioned also doom the conspiracy claim.  *Agar Corp., Inc. v. Electro Circuits Intl, LLC*, 580 S.W.3d 136, 138 (Tex. 2019) ("[C]ivil conspiracy is

---

[3] On February 14, 2025—exactly one week after Jay-Z withdrew his Rule 11 sanctions motion lodged against Buzbee in the New York case and approximately 24 hours after the Committee on Grievances denied Buzbee admission in the United States District Court for the Southern District of New York—Buzbee filed a motion to dismiss the New York lawsuit with prejudice.  Notice of Voluntary Dismissal Pursuant to rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, *Doe v. Combs*, Case No. 24-cv-07975-AT (S.D.N.Y Feb. 14, 2025), ECF 91.

a derivative tort that 'depends on participation in some underlying tort . . . .'" (quoting *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)); *accord Homoki v. Conversion Servs. Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (applying Texas law) ("In order to adequately plead a claim for civil conspiracy, a plaintiff must adequately plead the underlying tort."). Without a viable allegation of civil barratry, there's no conspiracy to commit barratry either.

Second, the allegations of joint conduct are all conclusion and no facts. The petition asserts Quinn Emanuel "orchestrated" a conspiracy to commit barratry. ECF 1-2 at 318. These "allegations" merely track the general language of conspiracy law without offering any specific facts to back them up. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (explaining that a plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (explaining that courts should not accept "conclusory allegations, unwarranted deductions, or legal conclusions" (quoting *Southland Sec. Corp. v. Inspire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004))); *Bernal v. State Farm Lloyds*, 2015 WL 12712685, at *3 (N.D. Tex. Sept. 2, 2015) (denying motion to remand because the allegations against the nondiverse defendant were "general assertions of wrongdoing" that recited elements of claim and thus did not support possibility of liability). The petition recognizes how lacking it is in any details tying Quinn Emanuel to the alleged conspiracy. It is forced to resort to listing the fact that Quinn Emanuel "denied" involvement in the alleged barratry conspiracy as evidence of Quinn Emanuel's involvement in the conspiracy! ECF 1-2 at 318.

18

Third, trying to salvage its conspiracy claim against Quinn Emanuel, Plaintiff resorts to improper group pleading, repeatedly referring to all "Defendants" as an undifferentiated monolithic group, without distinguishing individual conduct.  ECF 1-2 at 316–18, 322–30.  Group pleading does not establish a possibility of recovery against any defendant captured by the collective allegation—much less a defendant plaintiff singles out to destroy diversity.  *See ln re Settoon Towing, L.L.C.*, 2024 WL 3520166, at *2 n.13 (5th Cir. July 24, 2024) (per curiam) (noting that the "[p]laintiffs' complaint is more akin to a 'group pleading' complaint, which this Court has rejected"); *Armstrong v. Ashley*, 60 F.4th 262, 274 (5th Cir. 2023) ("Armstrong's allegation also suffers from the distinct problem of group pleading: she simply faults the eight [defendants] as a group without factual material suggesting that any particular defendant suppressed evidence.").

Fourth, the petition fails to allege other elements of conspiracy.  It does not allege the requisite "meeting of the minds" between Quinn Emanuel and other defendants.  Nor does it detail how Quinn Emanuel's (un)alleged conduct caused the harm Plaintiff claims he suffered—both necessary elements of a conspiracy claim.  *See* ECF 1 ¶¶ 31, 42; *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010) (discussing Texas law).

With a petition this threadbare, Plaintiff fails to assert a plausible basis for recovery against Quinn Emanual for conspiracy, and—with that—its last hope of establishing any possibility of recovery against Quinn Emanuel disappears entirely.

**D.    Plaintiff's Attempt to Rescue Its Insufficient Claims Fails**

Plaintiff contends that Quinn Emanuel can't be improperly joined because it was the first defendant sued in the lawsuit.  ECF 16 at 8.  Plaintiff offers no caselaw saying this

sequencing matters or an explanation for why it should. Indeed, Plaintiff ignores rulings that a first-named defendant was improperly joined. *See, e.g.*, *Sanders v. River Oaks Chrysler Jeep, Inc.*, 2021 WL 1723659, at \*1, \*4 (S.D. Tex. Mar. 31, 2021), *report and recommendation adopted*, 2021 WL 1721866 (S.D. Tex. Apr. 30, 2021) (Hughes, J.) (finding improper joinder of first defendant to litigation). It makes sense that a first-named defendant can be improperly joined because such a finding is not tantamount to a finding of *fraudulent* joinder as it does not require showing wrongful intent from the plaintiff. *Smallwood*, 385 F.3d at 573 (rejecting the prior label of "fraudulent joinder" for a misnomer). Whether there is "fraud in the pleading of jurisdictional facts" is a different way to establish improper joinder. *Id.* The notice of removal in this case asserted the other aspect of improper joinder, which requires a showing only that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against" Quinn Emanuel. *Id.* So Quinn's status for jurisdictional purposes does not depend on whether it was sued first or last; it hinges on whether, at the time of removal, the allegations show a reasonable possibility of recovery against the firm. For the reasons explained, the petition does not show that possibility of recovery.

Plaintiff next tries to manufacture some support for its bare allegations by mischaracterizing a statement from Quinn Emanuel attorney Alex Spiro in a New York filing. Plaintiff describes this statement as an "admi[ssion] that [Quinn Emanuel was] involved in the 'investigatory' actions" giving rise to Plaintiff's suit. ECF 16 at 9. This argument misses the mark because it has nothing to do with the allegations of barratry involving Buzbee's former personal-injury clients. The footnote in the New York filing

20

acknowledges only that Quinn Emanuel engaged in routine investigative work related to Jay-Z's extortion claims lodged against The Buzbee Law Firm in a separate case.[4]  There is nothing in the footnote about Buzbee's misappropriation of client funds or attempts to talk to Buzbee's former clients about that malfeasance.  Allegations about unrelated litigation in no way supports the barratry and conspiracy claims lodged here.  *See supra* pp. 18–23.

Desperate to conjure up any link between Quinn Emanuel and the alleged conspiracy, Plaintiff contends that the petition alleges that Quinn Emanuel is "orchestrator of a conspiracy," including "instruct[ing] other members of the conspiracy regarding actions to be taken."  ECF 16 at 9–10.  But the petition makes no such allegation nor does it allege facts to support any such allegation.  Allegations of "orchestrating and instructing" without factual detail of what direct actions Quinn Emanuel took with respect to those investigators are textbook conclusory pleading.  And lumping Quinn Emanuel together with other defendants is classic group pleading—insufficient to establish a reasonable possibility of recovery.

Plaintiff's final effort to avoid federal court acknowledges the weakness of his allegations.  He argues that there is a reasonable possibility of recovery against Quinn

---

[4] The footnote reads in full: "Allegations by Plaintiff's counsel that routine investigative activities related to pending legal claims in other fora are 'harassing' should be disregarded. Plaintiff's counsel tried to prevent Quinn Emanuel from investigating Mr. Carter's claims of extortion by trying to enjoin the firm from contacting anyone related to the Buzbee law firm. That request was denied two days before the Amended Complaint was filed in this case—further evidencing Attorney Buzbee's retaliatory behavior." Defendant Shawn Carter's Motion to Deny Plaintiff's Request to Proceed Anonymously Pursuant to Fed. R. Civ. P. 10(a) or to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) at 17 n.1, *Doe v. Combs*, Case No. 24-cv-07975-AT (S.D.N.Y Dec. 9, 2024), ECF 38.

Emanuel because "any deficiencies can easily be addressed through amendment."  ECF 16 at 5.  Plaintiff even asks for leave to amend and promises to plead more specific facts as to each defendant, though notably without providing a single example of what those new allegations might be.[5]  *Id.* at 10.  But it doesn't matter.  Better pleading tomorrow, or promises of the same, will not undo today's improper joinder: When it comes to assessing jurisdiction, Plaintiff is stuck with the petition he had at the time of removal.  *See Cavallini*, 44 F.3d at 265; *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *LNY 5003 LLC v. Zurich Am. Ins. Co.*, 558 F. Supp. 3d 416, 419–20 (S.D. Tex. 2021) (Eskridge, J.), *aff'd sub nom. LNY 5003, L.L.C. v. Zurich Am. Ins. Co.*, 2023 WL 6621677 (5th Cir. Oct. 11, 2023).

\* \* \*

The petition does not show a possibility of recovery from Quinn Emanuel.  Fact-free claims, guilt-by-association, conclusory allegations, and group pleadings do not establish barratry, conspiracy, a tort, or anything else. Without a reasonable possibility of recovering from Quinn Emanuel, the firm is improperly joined.  That means its Texas citizenship has no place in the diversity analysis.

## CONCLUSION

When only the properly joined parties are considered, this is a case brought by a Texas plaintiff against out-of-state Defendants.  That means there is diversity jurisdiction.

---

[5] What is more, during a requisite pre-12(b) motion conference in a related matter, the Court explicitly asked Plaintiff's counsel if Plaintiff intended to amend before the Croft Defendants moved to dismiss.  *See Garcia v. Croft*, Case No. 4:25-cv-00353 (S.D. Tex. Jan. 28, 2025), ECF 6, 10.  Plaintiff's counsel said yes—only to let the deadline come and go.

The Court should deny Plaintiff's Motion to Remand.  ECF 16.

Dated: March 21, 2025                    Respectfully submitted,

                                         */s/ Gregg J. Costa*
                                         Gregg J. Costa
                                         *Attorney-in-Charge*
                                           State Bar No. 24028160
                                           SDTX Federal No. 32779
                                         Sydney A. Scott
                                           State Bar No. 24088379
                                           SDTX Federal No. 3126470
                                         Johanna E. Smith
                                           State Bar No. 24126934
                                           SDTX Federal No. 3716571
                                         Kylie Calabrese
                                           State Bar No. 24120738
                                           SDTX Federal No. 3699266
                                         GIBSON, DUNN & CRUTCHER LLP
                                         811 Main St., Suite 3000
                                         Houston, TX 77002
                                         Telephone: (346) 718-6600
                                         GCosta@gibsondunn.com
                                         SAScott@gibsondunn.com
                                         JESmith@gibsondunn.com

                                         Reed Brodsky (*pro hac vice*)
                                         GIBSON, DUNN & CRUTCHER LLP
                                         200 Park Avenue
                                         New York, NY 10166
                                         Telephone: (212) 351-4000
                                         rbrodsky@gibsondunn.com

                                         *Attorneys for Defendants Marcy Bryan Croft*
                                         *& MJ Legal, P.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of March 2025, a true and correct copy of the foregoing was served by email and/or by electronic filing service on all counsel of record.

 */s/ Gregg J. Costa*
Gregg J. Costa